UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: LOTTERY.COM, INC. SECURITIES LITIGATION | Case No. 1:22-cv-07111 (JLR)<br><br>**Oral Argument Requested** |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LOTTERY.COM, INC.'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

---

Lars L. Berg
Texas State Bar No. 00787072
lars.berg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 878-3503
Facsimile: (817) 878-9280
*Admitted Pro Hac Vice*

Steven P. Benenson
New York State Bar No. 5378773
SPBenenson@pbnlaw.com
PORZIO, BROMBERG & NEWMAN, PC
1675 Broadway, Suite 1810
New York, New York  10019-3800
(212) 265-6888

ATTORNEYS FOR LOTTERY.COM, INC.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................1

II. STATEMENT OF FACTS AND LOTTERY.COM'S SEC FILINGS .....................................2

   A.   The Business Combination and the Proxy. ........................................................2

   B.   The alleged misrepresentations concerning financial results and internal controls............4

   C.   Plaintiffs incorrectly claim that Lottery.com "later admitted" that these statements were "were materially false or misleading when made." ....................................................5

III. ARGUMENT ................................................................................................................6

   A.   Plaintiffs have not sufficiently identified the alleged false statements and have not explained with particularity why each statement is false. ..................................................7

   B.   Plaintiffs have failed to establish contemporaneous falsity.................................................8

   C.   All of Plaintiffs' claims against Lottery.com fail because Plaintiffs have not adequately pled scienter................................................................................................10

      1.   Plaintiffs have not sufficiently alleged motive and opportunity............................11

      2.   Plaintiffs have not established strong circumstantial evidence of conscious misbehavior or recklessness...................................................................................12

      3.   The other scienter allegations in the ACAC are meritless. ...................................14

      4.   Fraud is not remotely the more compelling inference. ...........................................17

   D.   Revenue forecasts and projections are protected as forward-looking statements and under the "bespeaks caution" doctrine. ............................................................................18

   E.   Plaintiffs have failed to plead a viable omissions theory....................................................20

   F.   Plaintiffs have failed to plead with particularity the facts underlying any violation of law....................................................................................................................................22

   G.   Lottery.com's "belief" about its compliance with laws and regulations is an opinion and Plaintiffs have not satisfied *Omnicare*'s pleading standard.......................................23

   H.   The statements regarding Lottery.com's relationship with regulators are puffery...........24

IV. CONCLUSION..............................................................................................................25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anschutz Corp. v. Merrill Lynch & Co.*,
690 F.3d 98 (2d Cir. 2012)......................................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................................6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).................................................................................................1, 10

*In re Bemis Co. Sec. Litig.*,
512 F. Supp. 3d 518 (S.D.N.Y. 2021).......................................................................................8

*In re BioScrip, Inc. Sec. Litig.*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015).......................................................................................15

*Bisel v. Acasti Pharma, Inc.*,
21 Civ. 6051 (KPF), 2022 WL 4538173 (S.D.N.Y. Sept. 28, 2022)....................................1, 6

*In re BISYS Sec. Litig.*,
397 F. Supp. 3d 430 (S.D.N.Y. 2005).....................................................................................16

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
506 F. App'x 32 (2d Cir. 2012) ................................................................................................7

*In re Braskem S.A. Sec. Litig.*,
246 F. Supp. 3d 731 (S.D.N.Y. 2017).....................................................................................20

*In re: Bristol-Myers Squibb Company CVR Sec. Litig.*,
21-CV-8255 (JMF), 2023 WL 2308151 (S.D.N.Y. Mar. 1, 2023)..............................10, 11, 15

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (2d Cir. 2004) ........................................................................................12

*C.D.T.S. v. UBS AG*,
No. 12 Civ 4924 (KBF), 2013 WL 6576031, (S.D.N.Y. Dec. 13, 2013), *aff'd
sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5
(2d Cir. 2015)...........................................................................................................................16

*City of Coral Springs Police Officers' Retirement Plan v. Fartech Ltd.*,
565 F. Supp. 3d 478 (S.D.N.Y. 2021).....................................................................................17

*Denny v. Barber*,
    576 F.2d 465 (2d Cir. 1978)...................................................................................14

*Deutsche Bank Sec. Litig.*,
    16 Civ. 3495 (AT), 2017 WL 4049253 (S.D.N.Y. June 28, 2017)............................................7

*In re DraftKings Inc. Sec. Litig.*,
    21 Civ. 5739 (PAE), 2023 WL 145591 (S.D.N.Y. Jan. 10, 2023) ....................................1, 23

*ECA, Loc. 134 IBEW Joint Penson Tr. of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)................................................................................11, 12, 13, 16

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    445 F.3d 187 (2nd Cir. 2009)..................................................................................25

*In re Ferroglobe PLC Sec. Litig.*,
    No. 19 Civ. 629 (RA), 2020 WL 6585715 (S.D.N.Y. Nov. 10, 2020) ...................................14

*Francisco v. Abengoa, S.A.*,
    481 F. Supp. 3d 179 (S.D.N.Y. 2020).......................................................................9

*Francisco v. Abengoa, S.A.*,
    559 F. Supp. 3d 286 (S.D.N.Y. 2021).......................................................................11

*Fries v. Northern Oil & Gas, Inc.*,
    354 F. Supp. 3d 384 (S.D.N.Y. 2018).......................................................................21

*Gagon v. Alkermes PLC*,
    368 F. Supp. 3d 750 (S.D.N.Y. 2019).........................................................................3

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011).......................................................................15

*Hadar v. Concordia Yacht Builders, Inc.*,
    No. 92 Civ. 3768 (RLC), 1997 WL 436464 (S.D.N.Y. Aug. 4, 1997)....................................22

*Iowa Public Employees' Retirement Sys. v. MF Global, Ltd.*,
    620 F.3d 137 (2d Cir. 2010)................................................................................20

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014).................................................................7, 8, 9, 24

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015).................16, 17

*In re Marsh & Mclennan Cos., Inc. Sec. Litig.*,
    501 F. Supp. 452 (S.D.N.Y. 2006) .................................................................13, 24

*Menaldi v. Och-Ziff Capital Management Group LLC*,
    164 F. Supp. 3d 568 (S.D.N.Y. 2016)...............................................................................21, 25

*In re Nine West LBO Sec. Litig.*,
    482 F. Supp. 3d 187 (S.D.N.Y. 2020)...........................................................................................3

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)...............................................................................................12, 13

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund.*
    575 U.S. 175 (2015)....................................................................................................2, 23, 24

*In re PetroChina Co. Ltd. Sec. Litig.*,
    120 F. Supp. 3d 340 (S.D.N.Y. 2015)...........................................................................................7

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) ....................................................................................................22, 23

*Ressler v. Liz Claiborne, Inc.*,
    75 F. Supp. 2d 43 (E.D.N.Y. 1998) ...........................................................................................8, 9

*Richman v. Goldman Sachs Group, Inc.*,
    868 F. Supp. 2d 261 (S.D.N.Y. 2012)........................................................................................20

*Rombach v. Chang*,
    355 F.3d 164, 177 (2d Cir. 2004)................................................................................12, 13, 17

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013).............................................................................................................6

*Rudman v. CHC Group Ltd.*,
    217 F. Supp. 3d 718 (S.D.N.Y. 2016)........................................................................................25

*Sachsenberg v. IRSA Inversiones y Representaciones Sociedad Anonima*,
    339 F. Supp. 3d 169 (S.D.N.Y. 2018).......................................................................................10

*Scott v. Gen. Motors Co.*,
    46 F. Supp. 3d 387 (S.D.N.Y. 2014), *aff'd* 605 F. App'x 52 (2d Cir. 2015)..........................24

*Seibert v. Sperry Rand Corp.*,
    586 F.2d 949 (2d Cir. 1978).......................................................................................................22

*Shapiro v. TG Therapeutics, Inc.*,
    22-cv-6106 (JSR), 2023 WL 405020 (S.D.N.Y. Jan. 25, 2023)..............................................18

*Singh v. Cigna Corp.*,
    277 F. Supp. 3d 291 (D. Conn. 2017).................................................................................14, 25

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019)...................................................................................6

*Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010)...........................................................................17, 18

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015)................................................................................11

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008).............................................................................14

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)..............................................................................7, 10, 17

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)..............................................................................23

*Town of Davie Police Officers Ret. Sys. v. Nat. Gen. Hldgs. Corp.*,
    21-909-cv, 2021 WL 5142702 (2d Cir. Nov. 5, 2021) ............................................15

*Tyler v. Liz Claiborne, Inc.*,
    814 F. Supp. 2d 323 (S.D.N.Y. 2011)................................................................15

**Statutes**

15 U.S.C. § 78u-4(b)(1) ...........................................................................................6

15 U.S.C. § 78u-4(b)(2)(A)........................................................................................6

15 U.S.C. § 78u-5(i)(1)(A) & (C) ..............................................................................18

15 U.S.C. § 78u-5(c) ..............................................................................................18

Defendant Lottery.com, Inc. ("Lottery.com") respectfully submits this memorandum in support its Motion to Dismiss Plaintiffs' Amended Class Action Complaint [ECF No. 52] pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 78 U.S.C. §78u-4 (the "PSLRA").

## I. INTRODUCTION

Pursuant to Rule 9(b) and the PSLRA, "[s]ecurities fraud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 89 (2d Cir. 2007).  As against Lottery.com, the Amended Class Action Complaint (the "ACAC") alleges violations of Sections 10(b) and 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act").  Both claims against Lottery.com are subject to the heightened pleading standards imposed by Rule 9(b) and the PSLRA.  *See In re DraftKings Inc. Sec. Litig.*, 21 Civ. 5739 (PAE), 2023 WL 145591, at *15 (S.D.N.Y. Jan. 10, 2023); *Bisel v. Acasti Pharma, Inc.*, 21 Civ. 6051 (KPF), 2022 WL 4538173, at *6–7 (S.D.N.Y. Sept. 28, 2022).  Rather than setting forth detailed and particularized facts, as required by Rule 9(b) and the PSLRA, the ACAC does nothing more than repackage the contents of Lottery.com's SEC filings with conclusory labels and conjecture.  Rule 9(b) and the PSLRA demand more.

The ACAC fails to state a claim against Lottery.com for several reasons.  *First*, the ACAC does not specifically identify each purported misrepresentation or failure to disclose and does not explain why each alleged statement was false.  *Second*, Plaintiffs have not alleged sufficient facts to establish contemporaneous falsity, *i.e.*, facts sufficient to show that the alleged misstatements were false when made.  *Third*, Plaintiffs have made no showing of scienter.  There is no evidence of Lottery.com's "motive and opportunity" and there is no "strong circumstantial evidence" of conscious misbehavior or recklessness.  The lack of unusual stock sales and that Lottery.com made corrective disclosures and took remedial measures are contrary to any inference of scienter.

*Fourth*, Lottery.com's revenue forecasts and projections, which Plaintiffs claim were false, are protected as forward-looking statements and under the "bespeaks caution" doctrine.  *Fifth*, Plaintiffs have not pled a viable omissions theory because Lottery.com's statements were not misleading when made.  *Sixth*, Lottery.com's statements about compliance with laws are not actionable because Plaintiffs have not alleged with particularity an underlying violation of law.  *Seventh*, Lottery.com's belief that it was in compliance with laws is an opinion statement subject to the Supreme Court's *Omnicare* pleading requirements, which Plaintiffs have not satisfied.  Finally, purported statements by Lottery.com about its relationship with lottery regulators are not actionable because they constitute puffery.  For these reasons, the claims against Lottery.com should be dismissed with prejudice.

## II. STATEMENT OF FACTS AND LOTTERY.COM'S SEC FILINGS

In addition to claims against Lottery.com, the ACAC also alleges claims against certain of Lottery.com's former executives (collectively, the "Individual Lottery Defendants") and certain former executives of Lottery's predecessor, Trident Acquisitions Corp. ("TDAC, and such executives of TDAC are referred to herein as the "Individual TDAC Defendants").  A table listing each of the public statements challenged by Plaintiffs is attached as Appendix A hereto.[1]

### A.    The Business Combination and the Proxy.

TDAC, a special purpose acquisition company, entered into a "Business Combination Agreement" with AutoLotto, Inc., pursuant to which Lottery.com would become a publicly traded company.[2]  ACAC, ¶¶ 2, 46, 61.  Lottery.com operates a proprietary online platform to play official, state-sanctioned lottery games.  *Id.* at ¶ 59.  On October 18, 2021, Lottery.com filed its

---

[1] The Appendix lists the ACAC paragraph reference, source, date, challenged statement and its number, and summary of the reasoning why each statement is non-actionable.

[2] The transactions contemplated by the Business Combination Agreement (the "Business Combination") were completed on October 29, 2021, and soon thereafter, Lottery.com began trading on the NASDAQ.  ACAC, ¶ 61.

proxy statement and prospectus on Form 424B3 (the "Proxy"). *Id.* at ¶ 77. Plaintiffs claim the Proxy contained misrepresentations, and failed to disclose information, about Lottery.com's compliance with laws and regulations, its financial performance, and its internal accounting controls. *Id.* at ¶¶ 62, 81. Plaintiffs also complain that Lottery.com represented in the Proxy that its revenue projection for 2021 was $71 million and claim, without factual support, this figure was "overstated." *Id.* at ¶ 64.

Contrary to Plaintiffs' assertion, the Proxy made investors aware of the very risks that Plaintiffs now fault for their losses. The Proxy contained significant and specific cautionary statements advising investors that Lottery.com's business "is subject to extensive regulation by multiple domestic and foreign governmental authorities," and although Lottery.com is "firmly committed to full compliance with all applicable laws," it "cannot ensure that [its] compliance program will prevent the violation of one or more laws or regulations . . . ." Dec. of Amar Ali, Ex. 1, pp. 33, 38.[3] Regarding its financial projections, Lottery.com cautioned in the Proxy that "[t]he Projections were prepared solely for internal use and not with a view toward public disclosure," "[t]he Projections have not been audited," and "the projections reflect numerous estimates and assumptions with respect to general business, economic, regulatory, market and financial conditions . . . ." *Id.* at pp. 87, 88. The Proxy also identified specific and important risk factors and made investors aware that Lottery.com's "[f]ailure to maintain adequate financial, information technology and management processes and controls has resulted in and could result in material weaknesses which could lead to errors in financial reporting, which could adversely affect our

---

[3] In ruling on this Motion, the Court may consider documents referenced in the ACAC or any other document "upon which [plaintiffs] relied in bringing the suit." *Gagon v. Alkermes PLC*, 368 F. Supp. 3d 750, 762 (S.D.N.Y. 2019). Lottery.com includes as Exhibits to the accompanying Declaration of Amar Ali certain public statements and filings relied upon in the ACAC. The documents were filed with the SEC, but have been downloaded from Lottery.com's website because they are easier to read than the copies on the SEC's website. In all material respects, the documents are identical. The Court can take judicial notice of Lottery.com's SEC filings. *In re Nine West LBO Sec. Litig.*, 482 F. Supp. 3d 187, 203 fn. 20 (S.D.N.Y. 2020) (holding Court can take judicial notice of SEC filings).

business" and which may require Lottery.com "to restate [its] financial statements from prior periods." *Id.* at p. 51–52.

> **B.**    **The alleged misrepresentations concerning financial results and internal controls.**

Plaintiffs contend that, beginning on October 21, 2021, Lottery.com made additional misrepresentations and/or failed to disclose information about its financial performance and its internal controls through various SEC filings and press releases.  Plaintiffs claim that a press release dated October 21, 2021, which made preliminary projections about Lottery.com's Q3 2021 performance, made false or misleading statements about its "financial results and projections." *Id.* at ¶ 83–84.

Plaintiffs also contend that the $32.25 million in revenue, including the $30 million sale of affiliate marketing credits, reported on Form 10-Q, Form 8-K, and Management's Discussion and Analysis, all filed on November 15, 2021, were false.  ACAC, ¶ 65.  The Form 10-Q also disclosed a material weakness regarding the classification of warrants, which necessitated the Company to restate its financials on Form 10-K/A.  *Id.* at ¶ 87.  Lottery.com also disclosed that its "disclosure controls and procedures were not effective as of September 30, 2021." *Id.*

Regarding Lottery.com's 2021 10-K, filed on April 1, 2022, Plaintiffs contend Plaintiffs misrepresented the $68.5 million in revenue and $21,696,653 in accounts receivables, which Plaintiffs claim falsely "suggested that [the Company] had collected more than half the revenue from [the sale of] marketing credits." *Id.* at ¶ 66.  As the ACAC acknowledges, the 2021 Annual Report "identified a material weakness in internal control over financial reporting," which Lottery.com announced that it had "commenced measures to remediate." *Id.* at ¶ 93.

And regarding Lottery.com's quarterly report for Q1 2022 and the associated Form 8-K and press release, the ACAC alleges that Lottery.com made false or misleading statements about "the Company's cash and revenue" by reporting that its Q1 2022 revenues were $21.2 million and

that it had $50.8 million in cash.  *Id.* at ¶¶ 95–96.  Plaintiffs further claim that "[e]ach of Lottery's financial statements issued during the Class Period" contain false and misleading certifications required by the Sarbanes-Oxley Act of 2002.  *Id.* at ¶¶ 99–100.

Critically, Plaintiffs claim that *all* of these public filings and certifications "were materially false or misleading when made" for the exact or substantially same reason: "because the Company failed to disclose that (i) the Company lacked adequate internal accounting controls, including controls over financial reporting and cash and revenue, (ii) the Company was improperly recognizing revenue, and (iii) that as such, the Company's financial results were materially overstated."  *Id.* at ¶¶ 84, 86, 88, 90, 92, 94, 96, 98, and 100.

### C.    Plaintiffs incorrectly claim that Lottery.com "later admitted" that these statements were "were materially false or misleading when made."

Plaintiffs repeatedly assert in the ACAC that Lottery.com "later admitted" that its prior statements concerning compliance with regulations and laws, financial performance, and internal accounting controls "were materially false or misleading when made."  *Id.* at ¶¶ 76, 79, 81, 84, 86, 88, 90, 92, 94, 96, 98, and 100.  Lottery.com made no such admission.  Instead, Lottery.com disclosed in a Form 8-K on July 6, 2022, that an internal investigation had revealed "issues pertaining to the Company's internal accounting controls" and "instances of non-compliance with state and federal laws concerning the state in which tickets are procured as well as order fulfillment."  *Id.* at ¶ 9.  Moreover, Lottery.com disclosed on July 15, 2022, that its internal investigation had revealed that "it has overstated its available unrestricted cash balance by approximately $30 million and that, relatedly, in the prior fiscal year, it improperly recognized revenue in the same amount."  Lottery.com subsequently revealed on July 22, 2022, that its auditor had determined that its financial statements for 2021 and Q1 2022 should no longer be relied upon. *Id.* at ¶ 11.  In subsequent disclosures, Lottery.com informed investors that "there is substantial doubt about the Company's ability to continue as a going concern" and that it had furloughed the

majority of its employees. *Id.* at ¶¶ 12–13. Contrary to Plaintiffs' repeated assertions, Lottery.com made no admission that its prior statements were false when made, and Plaintiffs have not pleaded facts to establish that Lottery.com's prior statements were materially false or misleading when made.

## III. <u>ARGUMENT</u>

"To avoid dismissal under Section 10(b) and 10b-5, a complaint must plausibly allege: (1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance . . .; (5) economic loss; and (6) loss causation." *Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019). Similarly, "[t]o state a claim under Section 14(a) and Rule 14a-9(a), a plaintiff must allege that: (1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiffs' injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Bisel*, 2022 WL 1538173, at *7 (cleaned up and internal quotation marks omitted). While well-pled factual allegations are accepted as true, this Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 6778 (2009).

Rule 9(b) requires Plaintiffs to specify the time, place, and contents of each misrepresentation, and "explain why the statements were fraudulent." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012). The PSLRA similarly requires Plaintiffs to allege with particularity "each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). These particularized facts must "giv[e] rise to a strong inference that the defendant acted with the required state of mind. 15 U.S.C. §

78u-4(b)(2)(A).  The PSLRA thus "requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'"  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).

A.    **Plaintiffs have not sufficiently identified the alleged false statements and have not explained with particularity why each statement is false.**

To state a claim, Plaintiffs must identify each false statement and state with particularity *why* each of the alleged statements was false.  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014). "The Second Circuit has commented that district courts should not have to 'search for long quotations in the complaint for particular false statements, and then determine on its own initiative how and why the statements were false and how other facts might show a strong inference of scienter.'"  *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 356 (S.D.N.Y. 2015) (quoting *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 38 (2d Cir. 2012)).  Yet this is precisely the approach taken by Plaintiffs.

Plaintiffs fail to state a claim regarding each statement referenced in the ACAC because the ACAC contains large block quotations, often spanning multiple paragraphs and pages, which have been copied and pasted from Lottery.com's SEC filings and press releases, without specifically identifying which particular statements in the quotations are alleged to be false. *See, e.g.*, ACAC, ¶¶ 74, 78, 80, 83, 87, 93, and 99. Similarly, Plaintiffs regularly use a boilerplate and conclusory paragraph after each block quotation in a fruitless effort to explain why the preceding quote was false.  *Id.* at ¶¶ 84, 86, 88, 90, 92, 94, 96, 98, and 100. This approach has been squarely rejected by Second Circuit courts multiple times. *Deutsche Bank Sec. Litig.*, 16 Civ. 3495 (AT) (BCM), 2017 WL 4049253, at *5 (S.D.N.Y. June 28, 2017) (holding Plaintiffs did not plead an actionable misstatement where Complaint was "replete with . . . block quotations" and used "the

same conclusory formula" to explain why "all of the alleged material misrepresentations" were false); *Bahash*, 506 F. App'x at 38.  On this basis alone, the ACAC should be dismissed.

    **B.**    <u>**Plaintiffs have failed to establish contemporaneous falsity.**</u>

    "A violation of Section 10(b) and Rule 10b-5 premised on misstatements cannot occur unless an alleged material misstatement was false *at the time it was made*."  *Lululemon*, 14 F. Supp. 3d at 571 (emphasis in original).  "A statement believed to be true when made, but later shown to be false, is insufficient."  *Id.*  "In such a circumstance, there is a lack of actionable falsity."  *Id.*  Thus, "without *contemporaneous* falsity, there can be no fraud."  *Id.* (emphasis in original).  This same analysis applies to claims under Section 14(a) and Rule 14a-9.  *See In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 539 (S.D.N.Y. 2021). "The Second Circuit has emphasized that Rule 9(b)'s particularity requirement demands specific factual allegations demonstrating that a statement was false or misleading when made."  *Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 52 (E.D.N.Y. 1998).  To satisfy this requirement, "a plaintiff must detail specific contemporaneous data or information known to the defendant that was inconsistent with the representation in question."  *Id.*

    Here, Plaintiffs contend Lottery.com made statements in its SEC filings and press releases that falsely "touted its compliance with applicable regulations and close communication with regulators."  ACAC, ¶ 74.  Though it is not clear in the ACAC, Plaintiffs appear to allege that Statements 1 through 6 on Appendix A contain false and/or misleading statements about Lottery.com's legal compliance.  *See* Appendix A.  Plaintiffs contend these statements were proven to be false when Lottery.com subsequently disclosed in its in its Form 8-K filed on July 6, 2022, that an internal investigation had revealed "instances of non-compliance with state and federal laws concerning the state in which tickets are procured as well as order fulfillment." ACAC, ¶¶ 63, 76.  That statement, however, makes none of Lottery.com's prior statements about

legal and regulatory compliance false at the time they were made. Thus, the ACAC contains no specific, particularized allegations of fact to support the claim that Statements 1, and 3–6 are false. Plaintiffs' claim regarding Statement 2—that Lottery.com "believe[s] that [it is] in compliance with all material domestic and international laws and regulatory requirements applicable to [its] business," also fails because the "mere disclosure of adverse information shortly after a positive statement does not support a finding that the prior statement was false at the time it was made." *Ressler*, 75 F. Supp. 2d at 52; *see Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 210 (S.D.N.Y. 2020) (holding statement that company had "no plans" to raise capital was not false simply because the company announced the next business day it was seeking "a massive capital increase").

To the extent Plaintiffs rely on the internal investigation discussed in Lottery.com's SEC filings, an "unsupported general claim of the existence of confidential company . . . reports [containing adverse information] . . . is insufficient to survive a motion to dismiss." *Id.* (quoting *Arazie v. Mullane*, 2 F.3d 1456, 1467–68 (7th Cir. 1993)). Thus, Plaintiffs must indicate "who prepared the reports, when the reports were prepared, what the reports said, how firm the data was, and who at the company reviewed the reports and when." *Id.* Plaintiffs have not done so.

Plaintiffs also claim Lottery.com made false statements or failed to disclose information about the company's financial performance and its internal controls over financial reporting. Specifically, Plaintiffs assert that Statements 7 through 16 on Appendix A were rendered false or misleading through the company's subsequent disclosure that an internal investigation had revealed "issues pertaining to the Company's internal accounting controls," and that the company had "overstated its available unrestricted cash balance by approximately $30 million" and "improperly recognized revenue in the same amount." ACAC, ¶¶ 68–69. But simply because a statement is later shown to be false does not mean it was false when made. *Lululemon*, 14 F. Supp. 3d at 571 (requiring "*contemporaneous falsity*"). And although Plaintiffs allege that "[i]t appears

that the Company and the Individual Defendants knew" that its revenue projection "was overstated," Plaintiffs point to no specific, contemporaneous information that was known or available to Lottery.com or the Individual Defendants that made the Company's public declarations false at the time they were made.  ACAC, ¶ 64. In addition, such equivocal allegations fail to state a 10(b) claim.  *Sachsenberg v. IRSA Inversiones y Representaciones Sociedad Anonima*, 339 F. Supp. 3d 169, 181 (S.D.N.Y. 2018).  Failure to establish contemporaneous falsity is fatal to all of Plaintiffs' claims against Lottery.com.

> ### C.    All of Plaintiffs' claims against Lottery.com fail because Plaintiffs have not adequately pled scienter.

The PLSRA also requires a plaintiff plead scienter—the defendant's "intention to deceive, manipulate, or defraud"—with particularity. *Tellabs*, 551 U.S. at 313. "To satisfy that requirement, a complaint must, with respect to each defendant and 'with respect to each act or omission alleged to [constitute securities fraud], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *In re: Bristol-Myers Squibb Company CVR Sec. Litig.*, 21-CV-8255 (JMF), 2023 WL 2308151, at *3 (S.D.N.Y. Mar. 1, 2023) (quoting *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).  The "strong inference" must be "more than merely plausible or reasonable." *Tellabs*, 551 U.S. at 314.  Using an "inherently comparative" inquiry, the Court "must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 323.  A complaint alleging securities fraud will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

In the Second Circuit, the scienter pleading requirement may be satisfied in one of two ways: "by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or

recklessness." *ATSI Comms.*, 493 F.3d at 99.  To show that defendants had motive and opportunity, the plaintiff must allege that the defendants "benefitted in some concrete and personal way from the purported fraud." *ECA, Loc. 134 IBEW Joint Penson Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (internal quotation marks omitted).  To establish "strong circumstantial evidence of conscious misbehavior or recklessness," the plaintiff must allege either actual intent or "conscious recklessness — *i.e.*, a state of mind approximating actual intent, and not merely a heightened form of negligence." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015).  "More specifically, a plaintiff must allege, 'at the least,' that the defendant engaged in 'conduct which was highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Bristol-Meyers*, 2023 WL 2308151, at *4 (quoting *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).  Measured against these demanding standards, Plaintiffs' allegations of scienter fall far short as to each purported misstatement referenced in the ACAC.

### 1.    Plaintiffs have not sufficiently alleged motive and opportunity.

Although Plaintiffs attempt to plead motive and opportunity, Plaintiffs' allegations are insufficient.  "Motive is generally met when corporate insiders allegedly make a misrepresentation in order to sell their own shares at a profit." *JP Morgan Chase*, 553 F.3d at 198.   But "general motives common to most corporate officers do not constitute 'motive' for the purpose of establishing scienter." *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 317 (S.D.N.Y. 2021). "Therefore, the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation do not suffice to establish motive." *Id.*

Plaintiffs have made no specific allegation of motive or opportunity against Lottery.com. However, Plaintiff claims the Individual TDAC Defendants had motive because they received

shares of TDAC and invested cash capital in TDAC that would have been rendered worthless if the Business Combination was not completed.[4]  ACAC, ¶ 139.  Plaintiffs also contend the Individual Lottery Defendants stood to personally benefit from the Business Combination through additional shares, "lucrative pay and benefits packages," and "earnout awards."  *Id.* at ¶ 140.  But the ACAC is void of any allegations of unusual stock sales, which are generally required to establish motive.  *JP Morgan*, 553 F.3d at 198.  Because Plaintiffs "do not allege that defendants sold stock or profited in any way during the relevant period," any inference of scienter is undermined since Defendants "shared the pain" when the Company's stock collapsed.  *Rombach v. Chang*, 355 F.3d 164, 177 (2d Cir. 2004).  Moreover, the executive compensation and benefits packages, including performance-based compensation, that Plaintiffs rely on do not show motive.  *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (2d Cir. 2004) (stating the Second Circuit "has rejected performance-based compensation as evidence of motive"). Plaintiffs have not established that Lottery.com or any other Defendant "benefitted in some concrete and personal way" from the purported fraud, as required to properly allege motive and opportunity.  *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)

### 2.    Plaintiffs have not established strong circumstantial evidence of conscious misbehavior or recklessness.

Although failing to sufficiently establish motive and opportunity is not fatal, the "strength of the circumstantial allegations must be correspondingly greater" if there is no motive.  *ECA*, 553 F.3d at 199.  "At least four circumstances may give rise to a strong inference of the requisite scienter: where the complaint sufficiently alleges that the defendants (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew

---

[4] Plaintiffs attempt to impute the purported scienter of the Individual Defendants to Lottery.com through *respondeat superior*, but as discussed herein, Plaintiffs have not established the scienter of the Individual Defendants.  Moreover, the ACAC contains no factual basis for its allegation that the Individual Defendants were "acting within his/her role as an executive employee and representative of Lottery."  ACAC, ¶ 142.

facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *Id.*

First, beyond the insufficient allegations of motive and opportunity discussed above, Plaintiffs make no other allegations regarding any "concrete and personal" benefit to Lottery.com. *Id.* No inference of scienter can be made from Plaintiffs' bare allegations of motive and opportunity, and in light of Plaintiffs' failure to allege any unusual stock sales by Defendants, the inference of scienter is actually undermined. *Rombach*, 355 F.3d at 177.

Second, Plaintiffs make no effort to plead deliberate illegal behavior.  Examples of deliberate, illegal behavior include "securities trading by insiders privy to undisclosed and material information," and "knowing sale of a company's stock at an unwarranted discount."  *Novak*, 216 F.3d at 308.  No such behavior is pleaded in the ACAC.

Third, Plaintiffs have not alleged specific and particularized facts to establish that Lottery.com "knew facts or had access to information suggesting that [its] public statements were not accurate."  *ECA*, 553 F.3d at 199.  When "plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."  *Novak*, 216 F.3d at 309.   In conclusory fashion, Plaintiffs contend that each of the Individual Lottery Defendants, "[b]ecause of their positions and access to material non-public information available to them but not to the public, . . . knew or had reason to know that the adverse facts specified [in the ACAC] had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading." ACAC, ¶ 31.  Plaintiffs make similarly bare allegations regarding the Individual TDAC Defendants.  *Id.* at ¶ 38.  Plaintiffs have not alleged that "*specific* contradictory information was available to the defendants *at the same time* they made their misleading statements," as required in the Second Circuit.  *In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 452, 484

(S.D.N.Y. 2006) (emphasis added); *see also Singh v. Cigna Corp.*, 277 F. Supp. 3d 291, 321 (D. Conn. 2017) ("[B]y merely alleging that Defendants had *access* to information, the Court cannot then conclude there exists circumstantial evidence of conscious misbehavior or reckless disregard." (emphasis in original)).

Similarly, the ACAC references Lottery.com's corrective SEC disclosures, but those disclosures do not demonstrate that Lottery.com had contradictory information *at the time* it made the original, allegedly fraudulent statements. The corrective disclosures resulted from an internal investigation conducted *after* the original disclosures. As Courts in the Second Circuit have held often, "Plaintiffs are not permitted . . . to proceed with allegations of 'fraud by hindsight,' in which statements are proven false on the basis of subsequent information." *In re Ferroglobe PLC Sec. Litig.*, No. 19 Civ. 629 (RA), 2020 WL 6585715, at *6 (S.D.N.Y. Nov. 10, 2020); *see also Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (rejecting plaintiff's securities fraud claim as "fraud by hindsight" where the plaintiff "seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones.").

Fourth, the ACAC falls short of alleging sufficient facts to establish that Defendants "failed to check information they had a duty monitor." Where plaintiffs rely on "duty to monitor" allegations to establish scienter, they must specifically identify "any reports or statements that would have come to light in a reasonable investigation and that would have demonstrated the falsity of the allegedly misleading statements." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008). The ACAC identifies no such "duty to monitor" and no such specific reports or statements.

### 3.    The other scienter allegations in the ACAC are meritless.

The other scienter allegations in the ACAC fail as a matter of law. For example, Plaintiffs claim the Individual Defendants "were aware of the Company's compliance issues," since

"[l]otteries are extensively regulated by state and federal laws" and compliance is therefore "vital to the business."  ACAC, ¶ 104.  But Plaintiffs cannot demonstrate scienter by "merely noting that an area of the business was vital to the company" and then conclude that Lottery.com must have known any false information related thereto.  *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 738 (S.D.N.Y. 2015).  Similarly, Plaintiffs cannot rely on any due diligence performed prior to the consummation of the Business Combination as a ground for scienter since Plaintiffs have not identified any specific documents, reports, or information obtained through that due diligence that contradicted Lottery.com's public statements.  *Town of Davie Police Officers Ret. Sys. v. Nat. Gen. Hldgs. Corp.*, 21-909-cv, 2021 WL 5142702, at *2 (2d Cir. Nov. 5, 2021).

In addition, the size of the overstated revenue in relation to the Company's total revenue and other allegations of the size of the purported fraud do not advance Plaintiffs' scienter argument.  ACAC, ¶¶ 108–110.  Such allegations of magnitude are routinely rejected.  *See, e.g.*, *BioScrip*, 95 F. Supp. 3d at 738 (rejecting argument that "Defendants *must have known* their statements to have been untrue due to the segment's significance and the size of the client").  Plaintiffs' arguments are similar to the "core operations" doctrine, the viability of which has been questioned by Courts in the Second Circuit since the passage of the PSLRA.  *See In re Bristol-Myers*, 2023 WL 2308151, at *6 ("[I]t is far from clear that the core operations doctrine remains valid in light of the PSLRA.").  In the limited situations in which courts have applied the core operations doctrine, it has been used to "bolster" the strength of the inference of scienter from other facts showing that the defendants knew their statements were false.  *See Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 343 (S.D.N.Y. 2011) (collecting cases).  Where, as here, plaintiffs make insufficient allegations to establish that "defendants had knowledge of their statements' falsity at the time those statements were made," allegations of magnitude and core operations cannot save the day for Plaintiffs.  *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 596–97 (S.D.N.Y. 2011).

The ACAC similarly relies heavily on the fact that several of Lottery.com's senior executives and board members and its auditor recently resigned. ACAC, ¶¶ 111–17. Plaintiffs, again in conclusory fashion, claim that the "most logical inference" to be drawn from these departures "is that Lottery's management . . . had knowledge of the conduct alleged herein or acted recklessly in not knowing." ACAC, ¶ 117. No factual basis is provided for this assertion. The departure of executives does not support scienter because "there are any number of reasons that an executive might resign, most of which are not related to fraud." *In re BISYS Sec. Litig.*, 397 F. Supp. 3d 430, 446–47 (S.D.N.Y. 2005). Even a temporal connection the alleged fraud and the resignation of executives is insufficient without other "facts linking the resignation" to the alleged fraud. *Id.* (rejecting scienter claim based on resignation of executives "shortly before and/or coterminous" with disclosure of financial shortfalls). These allegations do not support scienter. *C.D.T.S. v. UBS AG*, No. 12 Civ 4924 (KBF), 2013 WL 6576031, at *7 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015) (holding that defendants' resignations did not show scienter).

Finally, Plaintiffs claim that Lottery.com's alleged GAAP violations and its inability to "uncover[] a massive accounting scheme" after prior disclosures of inadequate accounting controls and assurances to improve accounting controls somehow leads to the inference that Lottery.com's "executives were aware that the cash balances and revenues were grossly overstated." ACAC, ¶ 135. Plaintiffs are wrong. "Allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim," and "[o]nly where such allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient." *ECA*, 553 F.3d at 200. No such fraudulent intent has been adequately alleged in the ACAC. That Lottery.com acknowledged a material weakness in its internal controls and commenced remedial measures does not support an inference of scienter. *In re Magnum Hunter Res. Corp. Sec. Litig.*,

26 F. Supp. 3d 278, 295 (S.D.N.Y. 2014) ("The fact that defendants recognized problems, announced that they were implementing effective controls and procedures, and then recognized more problems does not indicate that their statements were false at the time they were made."), *aff'd*, 616 F. App'x 442 (2d Cir. 2015).  The Second Circuit has consistently held that remedial measures are "a prudent course of action that weakens rather than strengthens an inference of scienter." *Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010).

### 4.    Fraud is not remotely the more compelling inference.

"A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.  That is not the case here. First, Plaintiffs have not alleged any concrete, personal benefit to Lottery.com or other Defendants, and the lack of unusual stock sales contradicts any inference of scienter. *Rombach*, 355 F.3d at 177.  Second, Lottery.com made extensive disclosures about the uncertain state of its ability to comply with complex lottery laws and regulations and about its lack of adequate internal controls.  "[A] defendant's decision to make significant disclosures about the exact risk he or she is purportedly trying to hide is inconsistent with" scienter.  *City of Coral Springs Police Officers' Retirement Plan v. Fartech Ltd.*, 565 F. Supp. 3d 478, 490 (S.D.N.Y. 2021). Third, Lottery.com announced its accounting errors and weaknesses in its internal controls and took remedial measures.  The revelation of internal control weaknesses in "dribs and drabs, as it were, over the relevant period," does not allow an inference of scienter.  *Magnum Hunter*, 26 F. Supp. 3d at 297–98. "Rather, it is equally plausible that defendants were in a constant game of 'Catch Up'—acknowledging the company's material weaknesses and disclosing their continued efforts to resolve them, only to learn of yet more.  While this pattern supports an inference of potentially poor accounting management, it does not support fraud." *Id.*  In short, the ACAC does not give rise to a "strong inference" of scienter.

**D.**    <u>**Revenue forecasts and projections are protected as forward-looking statements and under the "bespeaks caution" doctrine.**</u>

A defendant is not liable for a forward-looking statement if it is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c).  Forward-looking statements where the plaintiff fails to establish that the statement was "made with actual knowledge that it was false or misleading" are also not actionable. *Id.*; *Shapiro v. TG Therapeutics, Inc.*, 22-cv-6106 (JSR), 2023 WL 405020, at *4 (S.D.N.Y. Jan. 25, 2023). The "scienter requirement for forward-looking statements is stricter than for statements of current fact." *Slayton*, 604 F.3d at 774.

Statements 7, 8, and 9 contain protected forward-looking statements.  For example, the statements copied from the Proxy in Paragraph 80 of the ACAC, stating that "Lottery.com is anticipated to generate more than US$70 million in revenue and more than $3 million in EBITDA," and "the Projections forecast a 32% FY21E Gross Profit margin and 5% FY21E EBITDA margin," are classic forward-looking statements because they are "projections of revenue, income, . . . earnings . . . or other financial items" or statements "of future economic performance."  15 U.S.C. § 78u-5(i)(1)(A) & (C).  The Proxy unequivocally identified these statements as forward-looking statements, referred to them through the defined term "Projections," and warned that "The Projections were prepared solely for internal use and not with a view toward public disclosure," "The Projections have not been audited," and "[T]he projections reflect numerous estimates and assumptions with respect to general business, economic, regulatory, market and financial conditions and other future events . . . all of which are difficult to predict and many of which are beyond Lottery.com's and TDAC's control."  Dec. of Amar Ali, Ex. 1, p. 87, 88.

The Proxy also contained a lengthy section titled "Cautionary Statement on Forward-Looking Statements," in which it identified important factors that could cause actual results to

18

differ, including, "changes in applicable laws and regulations," and other specifically identified

risk factors.  The Risk Factors section in the Proxy specifically disclosed that:

> As a private company, we have not been required to document and test our internal controls over financial reporting nor has our management been required to certify the effectiveness of our internal controls and our auditors have not been required to opine on the effectiveness of our internal control over financial reporting.  ***Failure to maintain adequate financial, information technology and management processes and controls has resulted in and could result in material weaknesses which could lead to errors in our financial reporting, which could adversely affect our business***.

*Id.* at p. 19 (emphasis added).  The Proxy further detailed that:

> Our management has concluded that this material weakness is due to the fact that, prior to this proxy statement/prospectus, we were a private company with limited resources. We did not have the necessary business processes and related internal controls, or the appropriate resources or level of experience and technical expertise, that would be required to oversee financial reporting processes or to address the accounting and financial reporting requirements. The material weakness will not be considered remediated until management designs and implements effective controls that operate for a sufficient period of time and management has concluded, through testing, that these controls are effective. Our management is in the process of developing a remediation plan and ***we cannot assure you that the measures that we implement will fully address the material weakness and deficiencies in our internal control over financial reporting or that we may conclude that they have been fully remediated. The material weakness remains unremediated as of June 30, 2021***.
>
> ***If we fail to maintain the adequacy of our internal control over financial reporting . . . we may not be able to conclude on an ongoing basis that we have effective internal control over financial reporting*** . . . .  Generally speaking, if we fail to achieve and maintain an effective internal control environment, ***it could result in material misstatements in our financial statements*** and could also impair our ability to comply with applicable financial reporting requirements . . . .  As a result, our business, financial condition and results of operations may be materially and adversely affected.  Additionally, ineffective internal control over financial reporting could expose us to increased risk of fraud . . . .  ***We may also be required to restate our financial statements from prior periods***.

*Id.* at p. 51–52 (emphasis added).

Investors were therefore meaningfully warned of the very risks that Plaintiffs fault for their

alleged losses, namely Lottery.com's alleged failure to maintain adequate financial controls and

overstatement of its revenues.  In addition, Plaintiffs have not sufficiently alleged that any forward-looking statements were made with "actual knowledge" of their falsity.  The forward-looking statements Plaintiffs complain about are therefore non-actionable.  Moreover, considering the challenged statements in light of the express cautions describing the very risks that ultimately materialized, the statements are also non-actionable under the "bespeaks caution" doctrine because "no reasonable investor could have found the statements materially misleading."  *Iowa Public Employees' Retirement Sys. v. MF Global, Ltd.*, 620 F.3d 137, 141–42 (2d Cir. 2010)

### E.    Plaintiffs have failed to plead a viable omissions theory.

"An omission is actionable only when the disclosure of information in question is necessary to make . . . statements made, in the light of the circumstances under which they were made, not misleading."  *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 752 (S.D.N.Y. 2017) (internal quotation marks omitted).  Moreover, "revealing one fact about a subject does not trigger a duty to reveal all facts on the subject, so long as what was revealed would not be so incomplete as to mislead."  *Richman v. Goldman Sachs Group, Inc.*, 868 F. Supp. 2d 261, 273–74 (S.D.N.Y. 2012). As detailed below, *none* of the statements identified in the Complaint were misleading in light of the circumstances under which they were made.

Although the ACAC repeatedly attempts to state a claim for fraud by omission by stating that "the Company failed to disclose that, in fact, it was not complying with state and federal laws concerning the state in which tickets are procured as well as order fulfillment," Lottery.com's statements about its relationship with regulators and compliance with laws were not misleading and therefore there was no duty to disclose further information.  For example, the Form 10-K filed on April 1, 2022 stated that:

- "While we believe that we are in compliance with all material domestic and international laws and regulatory requirements applicable to our business, ***we cannot ensure that our activities or the activities of those third parties with whom we do business will not***

*become the subject of regulatory or law enforcement proceedings*."  Dec. of Amar Ali, Ex. 2, p. 37 (emphasis added).

- Its forward-looking statements, including those using the word "believe," are subject to "a number of risks, uncertainties or other assumptions that may cause actual results or performance to be materially different," including "*[o]ur inability to comply with complex, ever-changing and multi-jurisdictional regulatory regimes and other legal requirements applicable to the gaming and lottery industries*."  *Id.* at pp. ii–iii (emphasis added).

- "*Our compliance with local, territorial and federal laws is based on our interpretation of existing state and federal laws* regarding lottery services such as ours.  We have obtained legal advice and notified certain lottery authorities in the U.S. jurisdictions where we do business of the services that we offer, but in most cases, *we have not received definitive determinations of the law applicable to our services*."  *Id.* at p. 20 (emphasis added).

- "While we believe we are currently in compliance in all material respects with all applicable laws and regulatory requirements, *we cannot assure that our activities or our users' activities will not become the subject of any regulatory or law enforcement investigation, proceeding or other governmental action* . . . ."  *Id.* (emphasis added).

The Proxy similarly disclosed that although that:

> We will continually develop internal compliance programs and requirements in an effort to ensure that we comply with legal requirements imposed in connection with our activities and generally applicable to all publicly traded companies, however, *we cannot ensure that they will prevent the violation of one or more laws, which may have an adverse impact on our business, financial condition, and results of operations*.

Dec. of Amar Ali, Ex. 1, p. 17.  These statements properly advised investors of the risks faced by Lottery.com regarding regulatory and legal compliance, and conveyed that, despite Lottery.com's efforts to comply, the company "cannot assure" that its activities would not violate any laws and regulations.  Because of these disclosures, Lottery.com's statements about its relationship with regulators and compliance with laws were not misleading and did not trigger any duty to disclose.  *See Fries v. Northern Oil & Gas, Inc.*, 354 F. Supp. 3d 384, 393 (S.D.N.Y. 2018) (holding there was no duty to disclose because "Defendants' statements did not mislead investors about any underlying material facts.").  Moreover, "[c]orporations do not . . . have a duty to 'disclose

uncharged, unadjudicated wrongdoing.'" *Menaldi v. Och-Ziff Capital Management Group LLC*, 164 F. Supp. 3d 568, 580 (S.D.N.Y. 2016) (holding defendant had no duty to disclose "illegal conduct" and "no duty to announce to investors that it was violating the law").

Plaintiffs also contend that each of Lottery.com's press releases and SEC filings referenced in the ACAC were false or misleading because they failed to disclose that "the Company lacked adequate internal accounting controls," that "the Company was claiming it had cash that it did not have and was improperly recognizing revenue" and that "the Company's financial results were materially overstated." ACAC, ¶¶ 81, 84, 86, 88, 92, 96, and 98. Plaintiffs ignore that the Proxy disclosed these very issues, stating that its failure to maintain adequate financial controls "has resulted in and could result in material weaknesses which could lead to errors in our financial reporting, which could adversely affect our business." Dec. of Amar Ali, Ex. 1, p. 19. As the ACAC alleges, subsequent statements by Lottery.com further disclosed issues with the company's internal accounting controls. ACAC, ¶ 130–134. A company has no duty to re-disclose what it has already disclosed once. *See Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978) (holding there is no duty to disclose "information to one who reasonably should already be aware of it" and no duty to disclose "where information is equally available to both parties"). In addition, Plaintiffs' omission theory lacks merit because Plaintiffs have not alleged any specific facts to establish that the purported "true facts" were known to Lottery.com when it made the alleged false or misleading statements. "No liability accrues for failing to disclose what one does not know." *Hadar v. Concordia Yacht Builders, Inc.*, No. 92 Civ. 3768 (RLC), 1997 WL 436464, at *5 (S.D.N.Y. Aug. 4, 1997).

### F.    Plaintiffs have failed to plead with particularity the facts underlying any violation of law.

"When a securities fraud claim is premised on the defendant's predicate violations of law[,] . . . the facts of that underlying violation must be pled with particularity." *Plumber & Steamfitters*

*Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 99 (2d Cir. 2021). "In other words, the plaintiff must specify *what* law or standard the defendant violated and *how* the alleged violation occurred." *Id.* For example, in *In re DraftKings*, the plaintiffs alleged that DraftKings made misrepresentations about its compliance with laws because the company allegedly "operated directly in Malaysia," which prohibits "all forms of sports betting . . . and online gambling." 2023 WL 145591, at *20. The Court, however, held that this allegation was insufficient because the complaint did not identify what specific laws were violated and how those violations occurred. *Id.*

Here, Plaintiffs' claims related to legal compliance rely entirely on Lottery.com's disclosure of "instances of non-compliance with state and federal laws concerning the state in which tickets are procured as well as order fulfillment." ACAC, ¶¶ 63, 76. The ACAC does not identify which federal laws were violated. Nor does the ACAC identify which state's laws and which specific laws of that state were not complied with. The ACAC also does not explain how those violations occurred. As a matter of law, Plaintiffs have failed to sufficiently plead that Lottery.com violated any laws and thereby committed securities fraud.

### G.    Lottery.com's "belief" about its compliance with laws and regulations is an opinion and Plaintiffs have not satisfied *Omnicare*'s pleading standard.

Statements by a company about its "belief" that it is in compliance with applicable laws and regulations are statements of opinion that must satisfy the pleading standards in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund.* 575 U.S. 175 (2015) (holding that company's statement to the effect that "we believe we are obeying the law" were "pure statements of opinion"). Under *Omnicare*, a statement of opinion or belief is not actionable unless "either 'the speaker did not hold the belief she professed' or 'the supporting fact[s] she supplied were untrue.'" *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (quoting *Omnicare*, 575 U.S. at 186). To avoid dismissal, a complaint challenging opinion statements must include factual allegations supporting an inference that the speaker did not believe the opinions or that they did not "fairly align[]" with

information available *at the time*.  *Tongue*, 816 F.3d at 212 (quoting *Omnicare*, 575 U.S. at 189).

Truth or falsity must be "assessed in light of the information available at the time [it was]

published."  *Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 394 (S.D.N.Y. 2014), *aff'd* 605 F.

App'x 52 (2d Cir. 2015).

Plaintiffs here have not alleged that Lottery.com's opinion about complying with laws and

regulations were not honestly held when such statement was included in the company's Form 10-

K filed on April 1, 2022.  Moreover, Plaintiffs have not alleged that Lottery.com's opinion about

being in compliance with laws and regulations did not "fairly align[]" with information

Lottery.com had in its possession at the time.  Although Plaintiffs claim that the "Individual

Defendants were aware of the Company's compliance issues," no factual basis is provided for this

allegation other than a conclusory allegation that Lottery.com's employees focus on compliance.

ACAC, ¶ 104.  The ACAC contains no details about which employees or Individual Defendants

were aware of non-compliance issues nor any details on how and when they became aware of such

issues.  The ACAC also contains absolutely no details about what specific "compliance issues"

any employees or Individual Defendants knew.  The ACAC falls far short of establishing that

"*specific* contradictory information was available to the defendants *at the same time* they made

their misleading statements," as required in the Second Circuit.  *In re Marsh & Mclennan Cos.,*

*Inc. Sec. Litig.*, 501 F. Supp. 452, 484 (S.D.N.Y. 2006) (emphasis added).  That Lottery.com

subsequently disclosed "instances of non-compliance" does not give rise to an actionable claim

under *Omnicare*.  575 U.S. at 186 ("[A] sincere statement of pure opinion is not an 'untrue

statement of material fact,' regardless whether an investor can ultimately prove the belief wrong.").

## H.    The statements regarding Lottery.com's relationship with regulators are puffery.

This Court and the Second Circuit have consistently held that "statements that are loosely

optimistic regarding a company's well-being" and "expressions of optimism" are not actionable.

*Lululemon*, 14 F. Supp. 3d at 572–73 (collecting cases). Lottery.com's statements about its efforts to "maintain effective relationships with applicable legislative and regulatory authorities," being a "pioneer in the lottery industry," "working closely with state regulators to advance the industry into the digital age," and similar statements are not actionable because they constitute mere puffery, not concrete statements of existing fact. These statements "are too general to cause a reasonable investor to rely upon them. *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 445 F.3d 187, 206 (2nd Cir. 2009) (holding that statements about bank's "highly disciplined" risk management practices were puffery). The statements were "merely generalizations regarding [Lottery.com's] business practices" and are "precisely the type of 'puffery' that this and other circuits have consistently held to be inactionable." *Id.* (internal quotation marks omitted); *see also Menaldi*, 277 F. Supp. 3d at 513 (holding that statements about a company's "global compliance program," "comprehensive policies and procedures," "mandatory compliance training," and "strong relationships with a global network of local attorneys," were not actionable); *Rudman v. CHC Group Ltd.*, 217 F. Supp. 3d 718, 728 (S.D.N.Y. 2016) (holding statements about a company's "strong customer relationship" with its top-ten customers was "no more than 'puffery' which does not give rise to securities violations").

### IV. CONCLUSION.

The claims asserted against Lottery.com in the ACAC should be dismissed with prejudice because the ACAC fails to state a claim. Merely block quoting Lottery.com's SEC filings and attaching labels and conclusions is not enough to allege securities fraud under Rule 9(b) or the PSLRA. Plaintiffs have not specifically identified the purported misrepresentations nor alleged with particularity why each such statement was false. The ACAC also fails to establish contemporaneous falsity. In addition, Plaintiffs have not established scienter. For the foregoing reasons, the claims against Lottery.com should be dismissed with prejudice.

Respectfully submitted,

*/s/ Lars L. Berg* _____
Lars L. Berg
Texas State Bar No. 00787072
lars.berg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 878-3503
Facsimile: (817) 878-9280

*/s/ Steven P. Benenson*
Steven P. Benenson
New York State Bar No. 5378773
SPBenenson@pbnlaw.com
PORZIO, BROMBERG & NEWMAN, PC
1675 Broadway, Suite 1810
New York, New York  10019-3800
(212) 265-6888

ATTORNEYS FOR LOTTERY.COM, INC.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 3rd day of April, 2023, a true and correct copy of the foregoing document was transmitted to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Steven P. Benenson*
Steven P. Benenson

27