*In re Lottery.com Securities Litigation,* Civil Action No.: 1:22-cv-07111 (JLR)
<u>Chart of Allegedly False and Misleading Statements in Hoffman's Original Complaint</u>[1]

| Statement No. | Compl. Paragraph(s) | Source | Date | Text or Description of Challenged Statement | Summary of Reasons Not Actionable (*See* Memorandum of Law) |
|---|---|---|---|---|---|
| 1 | ¶ 30 | Form 8-K | November 15, 2021 | "The reports of Marcum on TDAC's financial statements as of and for the fiscal years ended December 31, 2020 and December 31, 2019, did not contain an adverse opinion or a disclaimer of opinion, and were not qualified or modified as to uncertainty, audit scope or accounting principles.<br><br>During TDAC's fiscal years ended December 31, 2020, December 31, 2019 and during the subsequent interim period through November 10, 2021, the date of dismissal of Marcum, there were no disagreements between TDAC or the Company and Marcum on any matter of accounting principles or practices, financial statement disclosure, or auditing scope or procedure.<br><br>During TDAC's fiscal year ending December 31, 2020, December 31, 2019 and during the subsequent interim period through November 10, 2021, the date of dismissal of Marcum, there were no "reportable events" (as defined in Item 304(a)(1)(v) of Regulation S -K under the Securities Exchange Act of 1934, as amended) other than the material weakness in internal controls identified by management related to evaluating complex accounting issues relating to the warrants issued inconnect ion with TDAC's initial public offering, which resulted in the restatement of TDAC's financial statements as set forth in TDAC's Form 10K/A for the year ended December 31, 2020, as filed with the SEC on June 28, 2021." | • Fails to specifically identify false statement (§ III.A)<br><br>• Fails to specifically identify why statement is false (§ III.A)<br><br>• Insufficient allegation of contemporaneous falsity  (§ III.B)<br><br>• No scienter (§ III.C)<br><br>• No viable omissions theory pled (§ III.D) |

---

[1] All emphases are as they appear in the Complaint.

| Statement No. | Compl. Paragraph(s) | Source | Date | Text or Description of Challenged Statement | Summary of Reasons Not Actionable (*See* Memorandum of Law) |
|---|---|---|---|---|---|
| 2 | ¶ 31 | Form 10-Q | November 15, 2021 | "In connection with the preparation of the Company's financial statements as of September 30, 2021, management identified errors made in its historical statements where, at the closing of the Company's Initial Public Offering, the Company improperly valued its common stock subject to possible redemption." | • Fails to specifically identify false statement (§ III.A)<br><br>• Fails to specifically identify why statement is false (§ III.A)<br><br>• Insufficient allegation of contemporaneous falsity (§ III.B)<br><br>• No scienter (§ III.C)<br><br>• No viable omissions theory pled (§ III.D) |
| 3 | ¶ 32 | Form 10-Q | November 15, 2021 | "On April 12, 2021, the staff of the SEC issued a new Staff Statement on Accounting and Reporting Considerations for Warrants Issued by Special Purpose Acquisition Companies ("SPACs") (the "SEC Statement"). The SEC Statement addresses certain accounting and reporting considerations related to warrants. In the SEC Statement, the staff of the SEC expressed its view that certain terms and conditions common to SPAC warrants may require the warrants to be classified as liabilities on the SPAC's balance sheet as opposed to equity. Based upon that evaluation and in light of the SEC Statement, our certifying officers concluded that, *due solely to the material weakness identified that resulted in the restatement of the Company's financial statements to reclassify the Company's Private Warrants and UPO Warrants as described in the Explanatory Note to the 10K/A, our disclosure controls and procedures were not effective as of September 30, 2021*." | • Fails to specifically identify false statement (§ III.A)<br><br>• Fails to specifically identify why statement is false (§ III.A)<br><br>• Insufficient allegation of contemporaneous falsity (§ III.B)<br><br>• No scienter (§ III.C)<br><br>• No viable omissions theory pled (§ III.D) |
| 4 | ¶ 33 | Form 10-Q | November 15, 2021 | **"Changes in Internal Control Over Financial Reporting**<br><br>*Other than what was described in the 10 -K/A, there were no changes in our internal control over financial reporting* (as such term is defined in Rules 13a 15(f) and 15d-15(f) of the Exchange Act) during the most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting. In light of the | • Fails to specifically identify false statement (§ III.A)<br><br>• Fails to specifically identify why statement is false (§ III.A) |

2

| Statement No. | Compl. Paragraph(s) | Source | Date | Text or Description of Challenged Statement | Summary of Reasons Not Actionable (*See* Memorandum of Law) |
|---|---|---|---|---|---|
| | | | | restatement of our financial statements included in the 10-K/A, *we plan to enhance our processes to identify and appropriately apply applicable accounting requirements to better evaluate and understand the nuances of the complex accounting standards that apply to our financial statements*. Our plans at this time include providing enhanced access to accounting literature, research materials and documents and increased communication among our personnel and third-party professionals with whom we consult regarding complex accounting applications. The elements of our remediation plan can only be accomplished over time, and we can offer no assurance that these initiatives will ultimately have the intended effects." | • Insufficient allegation of contemporaneous falsity (§ III.B)<br><br>• No scienter (§ III.C)<br><br>• No viable omissions theory pled (§ III.D) |
| 5 | ¶ 34 | Form 10-Q | November 15, 2021 | "1. I have reviewed this quarterly report on Form 10-Q of Lottery.com Inc. for the quarterly period ended September 30, 2021;<br><br>2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;<br><br>3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flow s of the registrant as of, and for, the periods presented in this report;<br><br>4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a -15(e) and 15d- 15(e)) for the registrant and internal control over financial reporting (as defined in Exchange Act Rules 13a -15(f) and 15d-15(f)) for the registrant and have:<br><br>a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under my supervision, to ensure that material information relating to | • Fails to specifically identify false statement (§ III.A)<br><br>• Fails to specifically identify why statement is false (§ III.A)<br><br>• Insufficient allegation of contemporaneous falsity (§ III.B)<br><br>• No scienter (§ III.C)<br><br>• No viable omissions theory pled (§ III.D) |

| Statement No. | Compl. Paragraph(s) | Source | Date | Text or Description of Challenged Statement | Summary of Reasons Not Actionable (*See* Memorandum of Law) |
|---|---|---|---|---|---|
| | | | | the registrant, is made known to us by others within those entities, particularly during the period in which this report is being prepared; and<br><br>b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under my supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; and<br><br>c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report my conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation;<br><br>and<br><br>d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and<br><br>5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):<br><br>a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and | |

| Statement No. | Compl. Paragraph(s) | Source | Date | Text or Description of Challenged Statement | Summary of Reasons Not Actionable (*See* Memorandum of Law) |
|---|---|---|---|---|---|
| | | | | b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting." | |
| 6 | ¶ 35 | Form 10-Q | November 15, 2021 | Description from Complaint:<br><br>"Also pursuant to Section 906 of the Sarbanes-Oxley Act, Defendants DiMatteo and Dickinson certified that the Q3 2021 10-Q 'fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934' and that '[t]o my knowledge, the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company as of and for the period covered by the Report.'" | • Fails to specifically identify false statement (§ III.A)<br><br>• Fails to specifically identify why statement is false (§ III.A)<br><br>• Insufficient allegation of contemporaneous falsity (§ III.B)<br><br>• No scienter (§ III.C)<br><br>• No viable omissions theory pled (§ III.D) |
| 7 | ¶ 36 | Press Release and Form 8-K | March 31, 2022 | Description from Complaint:<br><br>"On March 31, 2022, the Company issued a press release, also filed as an attachment to a Form 8-K filed with the SEC on that date, which reported Lottery.com's 'strong' financial results for the fourth quarter ('Q4') and full-year 2021. Among the information provided, the Company reported revenue of $21.5 million for Q 4 2021 (an increase of $18.2 million over the prior year period) and revenue of $68.5 million for the full year 2021 (an increase of $61 million over 2020). The Company also reported cash for Q4 2021 of $62.6 million – an increase of $58.8 million over the prior year period." | • Fails to specifically identify false statement (§ III.A)<br><br>• Fails to specifically identify why statement is false (§ III.A)<br><br>• Insufficient allegation of contemporaneous falsity (§ III.B)<br><br>• No scienter (§ III.C)<br><br>• No viable omissions theory pled (§ III.D) |
| 8 | ¶ 37 | Form 10-K | April 1, 2022 | "In connection with the audits of our condensed consolidated financial statements included in this Annual Report, *our management has identified a material weakness in internal control over financial reporting as of December 31, 2021 and 2020 relating to deficiencies in the design and operation of the procedures relating to the closing of our financial statements.* | • Fails to specifically identify false statement (§ III.A) |

| Statement No. | Compl. Paragraph(s) | Source | Date | Text or Description of Challenged Statement | Summary of Reasons Not Actionable (*See* Memorandum of Law) |
|---|---|---|---|---|---|
| | | | | These include: (i) our lack of a sufficient number of personnel with an appropriate level of knowledge and experience in accounting for complex or non-routine transactions, (ii) the fact that our policies and procedures with respect to the review, supervision and monitoring of our accounting and reporting functions were either not designed and in place or not operating effectively; (iii) the timely closing of financial books at the quarter and fiscal year end, and (iv) incomplete segregation of duties in certain types of transactions and processes*.*<br><br>***We have commenced measures to remediate the identified material weakness,*** including (i) adding personnel with sufficient accounting knowledge; (ii) adopting a more rigorous period -end review process for financial reporting; (iii) adopting improved period close processes and accounting processes, and (iv) clearly defining and documenting the segregation of duties for certain transactions and processes. The implementation of our remediation is ongoing and will require validation and testing of the design and operating effectiveness of internal controls over a sustained period of financial reporting cycles. We may also conclude that additional measures may be required to remediate the material weakness in our internal control over financial reporting." | • Fails to specifically identify why statement is false (§ III.A)<br><br>• Insufficient allegation of contemporaneous falsity (§ III.B)<br><br>• No scienter (§ III.C)<br><br>• No viable omissions theory pled (§ III.D) |
| 9 | ¶ 40 | Press Release and Form 8-K | May 16, 2022 | Description from Complaint:<br><br>"On May 16, 2022, the Company issued a press release, filed with the SEC on Form 8-K, in which it announced its 'strong' financial results for the first quarter 2022, ended March 31, 2022 ('Q1 2022'). Among the highlights, Defendants reported that Lottery's Q1 2022 revenues were $21.2 million, an increase of $15.7 million over the prior year period. The Company further reported Q1 2022 cash of $50.8 million, up $32.5 million over the prior year period." | • Fails to specifically identify false statement (§ III.A)<br><br>• Fails to specifically identify why statement is false (§ III.A)<br><br>• Insufficient allegation of contemporaneous falsity (§ III.B)<br><br>• No scienter (§ III.C)<br><br>• No viable omissions theory pled (§ III.D) |

| Statement No. | Compl. Paragraph(s) | Source | Date | Text or Description of Challenged Statement | Summary of Reasons Not Actionable (*See* Memorandum of Law) |
|---|---|---|---|---|---|
| 10 | ¶ 41 | Form 10-Q | May 16, 2022 | "Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, *as of the end of the period covered by this Quarterly Report, our disclosure controls and procedures were not effective due to the material weakness in our internal control over financial reporting with respect to our financial statement close and reporting process*…. <br><br> *** <br><br> Notwithstanding such material weakness in our internal control over financial reporting, our management concluded that *our condensed consolidated financial statements included in this Quarterly Report fairly present, in all material respects, our financial position*, results of operations and cash flows as of the dates and for the periods presented in conformity with GAAP." | • Fails to specifically identify false statement (§ III.A) <br><br> • Fails to specifically identify why statement is false (§ III.A) <br><br> • Insufficient allegation of contemporaneous falsity (§ III.B) <br><br> • No scienter (§ III.C) <br><br> • No viable omissions theory pled (§ III.D) |
| 11 | ¶ 42 | Form 10-K | April 1, 2022 | "On October 29, 2021, the Company and AutoLotto consummated the transactions contemplated by the Merger Agreement. At the Closing, each share of common stock and preferred stock of AutoLotto that was issued and outstanding immediately prior to the effective time of the <br><br> Merger (other than excluded shares as contemplated by the Merger Agreement) was cancelled and converted into the right to receive approximately 3.0058 shares (the "Exchange Ratio") of Lottery.com. common stock. <br><br> The Merger closing was a triggering event for the Series B convertible notes, of which $63.8 million was converted into 3,248,526 shares of AutoLotto that were then converted into 9,764,511 shares of Lottery.com common stock using the Exchange Ratio. <br><br> At the Closing, each option to purchase AutoLotto's common stock, whether vested or unvested, was assumed and converted into an option to purchase a number of shares of Lottery.com common stock in the manner set forth in the Merger Agreement. | • Fails to specifically identify false statement (§ III.A) <br><br> • Fails to specifically identify why statement is false (§ III.A) <br><br> • Insufficient allegation of contemporaneous falsity (§ III.B) <br><br> • No scienter (§ III.C) <br><br> • No viable omissions theory pled (§ III.D) |

| Statement No. | Compl. Paragraph(s) | Source | Date | Text or Description of Challenged Statement | Summary of Reasons Not Actionable (*See* Memorandum of Law) |
|---|---|---|---|---|---|
| | | | | The Company accounted for the Business Combination as a reverse recapitalization whereby AutoLotto was determined as the accounting acquirer and TDAC as the accounting acquiree. Refer to Note 2, Summary of Significant Accounting Policies, for further details. Accordingly, the Business Combination was treated as the equivalent of AutoLotto issuing stock for the net assets of TDAC, accompanied by a recapitalization. The net assets of TDAC are stated at historical cost, with no goodwill or other intangible assets recorded.<br><br>The accompanying consolidated financial statements and related notes reflect the historical results of AutoLotto prior to the merger and do not include the historical results of TDAC prior to the consummation of Business combination.<br><br>Upon the closing of the transaction, AutoLotto received total gross proceeds of approximately $42,794,000, from TDAC's trust and operating accounts. Total transaction costs were approximately $9,460,000, which principally consisted of advisory, legal and other professional fees and were recorded in additional paid in capital. Cumulative debt repayments of approximately $11,068,000, inclusive of accrued but unpaid interest, were paid in conjunction with the close, which included approximately $5,475,000 repayment of notes payable to related parties, and approximately $5,593,000 payment of accrued underwriter fees.<br><br>Pursuant to the terms of the Business Combination Agreement, the holders of issued and outstanding shares of AutoLotto immediately prior to the Closing (the "Sellers") were entitled to receive up to 6,000,000 additional shares of Common Stock (the "Seller Earnout Shares ") and Vadim Komissarov, Ilya Ponomarev and Marat Rosenberg (collectively the "TDAC Founders") were also entitled to receive up to 4,000,000 additional shares of Common Stock (the "TDAC Founder Earnout Shares" and, together with the Seller Earnout Shares, the "Earnout Shares"). One of the earnout criteria had not been met by the December 31, 2021 deadline thus no earnout shares were granted specific to that criteria. As of December 31, 2021, 3,000,000 of the Seller Earnout Shares and 2,000,000 TDAC | |

| Statement No. | Compl. Paragraph(s) | Source | Date | Text or Description of Challenged Statement | Summary of Reasons Not Actionable (*See* Memorandum of Law) |
|---|---|---|---|---|---|
| | | | | Founder Earnout Shares are still eligible Earnout Shares until December 31, 2022." | |