UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE LOTTERY.COM, INC. SECURITIES
LITIGATION

Case No. 1:22-cv-07111 (JLR)

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MATTHEW
CLEMENSON AND RYAN DICKINSON'S MOTION TO DISMISS AMENDED CLASS
<u>COMPLAINT</u>**

Franklin Monsour Jr
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
Tel. 212-506-3512
fmonsour@orrick.com

Aaron Brecher (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street
Suite 3300
Seattle, WA 98101
Tel. 206-839-4332
abrecher@orrick.com

*Attorneys for Defendants
Matthew Clemenson and Ryan Dickinson*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

I.    PRELIMINARY STATEMENT ............................................................. 1

II.   FACTUAL BACKGROUND .................................................................. 2

      A.    Lottery.com is a dynamic technology company offering lottery-related
      products and information to its customers ............................................. 2

      B.    TDAC acquires AutoLotto—which ultimately becomes Lottery.com ................. 3

      C.    Lottery.com alerts investors to issues with its internal controls and
      compliance ................................................................................. 4

      D.    Plaintiffs bring claims under the Securities Exchange Act..................... 5

III.  ARGUMENT ......................................................................................... 6

      A.    The Rules of Civil Procedure and the Reform Act require detailed
      allegations for a securities fraud claim to survive dismissal.................... 6

      B.    Plaintiffs fail to meet the Reform Act's high standards for alleging scienter
      to support their Section 10(b) claim ................................................. 8

            1.    Plaintiffs do not sufficiently allege motive and opportunity to
            commit fraud ...................................................................... 8

            2.    Plaintiffs have not alleged sufficient circumstantial evidence of
            knowledge or recklessness ..................................................... 9

      C.    Plaintiffs have not adequately pleaded falsity to support their Section
      10(b) claim .............................................................................. 14

      D.    Plaintiffs' Section 14(a) claim fails ............................................... 17

      E.    The Section 20(a) claims cannot survive ........................................ 19

IV.   CONCLUSION..................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AmTrust Financial Services, Inc. Securities Litigation, AmTrust*,
   No. 17-CV-1545, 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)...................................16, 17, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)...............................................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................................6, 18

*In re BISYS Sec. Litig.*,
   397 F. Supp. 2d 430 (S.D.N.Y. 2005).......................................................................11, 12, 13

*Bond Opportunity Fund v. Unilab Corp.*,
   No. 99 Civ. 11074 (JSM), 2003 WL 21058251 (S.D.N.Y. May 9, 2003).........................7, 18

*Campo v. Sears Holdings Corp.*,
   371 Fed. App'x. 212 (2d Cir. 2010)...................................................................................12

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   750 F.3d 227 (2d Cir. 2014)...............................................................................................7

*In re Carter-Wallace, Inc., Sec. Litig.*,
   220 F.3d 36 (2d Cir. 2000).................................................................................................9

*In re Citigroup Inc. Sec. Litig.*,
   753 F. Supp. 2d 206 (S.D.N.Y. 2010)...............................................................................12

*City of Brockton Ret. Sys. v. Shaw Group Inc.*,
   540 F. Supp. 2d 464 (S.D.N.Y. 2008)...............................................................................12

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
   450 F. Supp. 3d 379 (S.D.N.Y. 2020)..........................................................................10, 11

*Dekalb Cty. Pension Fund v. Transocean Ltd.*,
   817 F.3d 393 (2d Cir. 2016), *as amended* (Apr. 29, 2016)................................................7

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)...............................................................................................6

*Fresno Cty. Employees' Retirement Ass'n v. Comscore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017)......................................................................................7

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)....................................................................................10

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
    No. 15-cv-6369, 2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018)............................................19

*Jun v. 500.com Ltd.*,
    CV 20-806 (GRB) (AKT), 2021 WL 4260644 (E.D.N.Y. Sept. 20, 2021)...........................10

*In re Keyspan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...................................................................................9

*Magluta v. Samples*,
    256 F.3d 1282 (11th Cir. 2001) .............................................................................................18

*In re MBIA, Inc. Sec. Litig.*,
    700 F. Supp. 2d 566 (S.D.N.Y. 2010)....................................................................................11

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)....................................................................................................8

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 176 (2015).........................................................................................................14, 16

*In re Party City Sec. Litig.*,
    147 F. Supp. 2d 282 (D.N.J. 2001) .......................................................................................10

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
    Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)..............................................................................12, 13

*In re Silvercorp Metals, Inc. Sec. Litig.*,
    26 F. Supp. 3d 266 (S.D.N.Y. 2014)......................................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................................8

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)...................................................................................................15

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
    195 F. Supp. 3d 528 (S.D.N.Y. 2016)...............................................................................7, 19

**Statutes**

Exchange Act § 10(b) ...................................................................................... *passim*

Exchange Act § 10b-5 ................................................................................................7

Exchange Act § 14(a) ................................................................................5, 7, 18, 19

Exchange Act § 20(a) ................................................................................5, 7, 18, 19

Fed. R. Civ. P. 8 ......................................................................................................18

Fed. R. Civ. P.  8(a) .............................................................................................6, 18

Fed. R. Civ. P. 9(b) ...................................................................................................6

Fed. R. Civ. P.  12(b)(6) .........................................................................................2, 6

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ....................1,  6

Securities Act § 11 .............................................................................................14, 15

Securities Exchange Act ............................................................................................5

## I.    PRELIMINARY STATEMENT

This case involves the federal securities laws and their application to statements made by Lottery.com—a technology company providing access to lottery games and other services to consumers. Plaintiffs, seeking to represent a class of Lottery.com shareholders, accuse the company and several former officers and directors of lying to investors to pump up the price of Lottery.com's stock. Defendants Matthew Clemenson and Ryan Dickinson, the former Chief Revenue Officer and Chief Financial Officer, respectively, seek dismissal of the claims against them.

Much of Plaintiffs' Complaint relates to the purported evils of Special Purpose Acquisition Companies ("SPACs") and the supposed improprieties of the SPAC that acquired Lottery.com for venturing outside its area of stated expertise in European energy markets. These alleged missteps have nothing to do with Mr. Clemenson, Mr. Dickinson, or the operation of their business and the opinions they expressed about its performance.

But even when the Complaint turns to events connected with Clemenson and Dickinson, Plaintiffs' allegations fall short of the standard for pleading securities fraud under the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4. To start, Plaintiffs have failed to allege scienter. Despite repeated invocations of the facts surrounding the individual Defendants' departure from Lottery.com and the significance of errors in accounting and internal controls that the company disclosed, the facts alleged do not show that either Clemenson or Dickinson knew that the views they expressed were incorrect or that they acted recklessly. Next, the Supreme Court has instructed that statements of opinion are not actionably false unless the speaker did not believe the opinion at the time, supplied some untrue supporting fact, or omitted information necessary to prevent listeners from being misled. The Complaint fails to allege facts sufficient to show that the purported misstatements—all of them protected statements of opinion and conclusions of Lottery.com's management—were false. Indeed, the Complaint alleges virtually nothing about Mr. Clemenson other than his

resignation and his signature on a single annual filing with the SEC. Securities claims cannot proceed when the Complaint fails to even allege a false statement. Third, Plaintiffs also fail to show negligent misstatements in the company's Proxy Statement or to adequately allege the role played by Clemenson or Dickinson in those purported misstatements. Last—flowing automatically from the above failures—Plaintiffs cannot demonstrate Defendants' individual liability as controlling persons of entities that violated the securities laws.

Mr. Clemenson and Mr. Dickinson thus ask the Court to dismiss the Complaint against them.[1]

## II.     FACTUAL BACKGROUND

Because Dickinson and Clemenson bring this motion under Rule 12(b)(6), this memorandum assumes the truth of all non-conclusory factual allegations in the Complaint.[2] The Complaint arises out of Lottery.com's public disclosures in 2022 of deficiencies related to internal controls and compliance with state and federal lottery regulations.

### A.     Lottery.com is a dynamic technology company offering lottery-related products and information to its customers.

Lottery.com, a publicly owned company whose common stock is traded on the Nasdaq exchange, is a Texas-based technology company providing access to lottery games to consumers in the U.S. and around the world. *See* Compl. ¶¶ 3, 26, 59. The company, which facilitates the purchase of lottery tickets through its proprietary app and websites, also generates revenue through selling credits to marketing partners that can be exchanged for promotional packages and through allowing other business partners to purchase lottery games for resale. *Id.* ¶ 3, 59. Lottery.com also provides data—including winning lottery numbers and other results—to hundreds of publishers and media organizations. *Id.* ¶¶ 59. These services allow users to play the

---

[1] Through this motion, Defendants Clemenson and Dickinson also adopt all relevant arguments for dismissal raised by their co-defendants.

[2] Unless otherwise indicated, references to the Complaint are to the Amended Class Action Complaint filed on January 31, 2023. ECF No. 52.

lottery from their phone and participate in well-known state-sanctioned lottery games like Powerball and Mega Millions. *See id.* ¶ 59.

Lottery.com is the result of the combination of two predecessor companies (the "Business Combination"): Trident Acquisitions Corp. ("TDAC") and AutoLotto, Inc. *See id.* ¶¶ 2, 26, 59–61. Following the Business Combination, Mr. Dickinson served as the company's President, Treasurer and acting Chief Financial Officer. *Id.* ¶ 28. Mr. Clemenson served as Lottery.com's Chief Commercial Officer, and later Chief Revenue Officer, as well as on the board. *See id.* ¶ 29. The other Individual Lottery Defendants include Lottery.com CEO Anthony DiMatteo (*id.* ¶ 27) and COO and Chief Legal Officer Kathryn Lever (*id.* ¶ 30).

The remaining individual Defendants ("Individual TDAC Defendants") are former officers and directors of TDAC from before the Business Combination. *See id.* ¶¶ 33–38.

**B.    TDAC acquires AutoLotto—which ultimately becomes Lottery.com.**

Much of the Complaint relates to the alleged conflicts of interest "inherent" to SPACs like TDAC. *See, e.g.*, *id.* ¶¶ 40–45. Plaintiffs allege that TDAC formed in 2016 "for the purpose of entering in a merger, share exchange, asset acquisition, stock purchase, recapitalization, reorganization or other similar business combination." *Id.* ¶ 46. Despite the intention to focus on seeking a business combination with "an oil and gas or other natural resources [company] in Eastern Europe," TDAC ultimately combined with AutoLotto and took it public as Lottery.com, despite the TDAC officers and directors having no experience in the lottery industry or online gaming. *See id.* ¶¶ 49, 51, 58–61.

Plaintiffs allege that the Proxy Statement and prospectus soliciting approval for the Business Combination contained misstatements. *See* Compl. ¶¶ 77–82. The Proxy Statement was allegedly "signed by the Individual TDAC Defendants." *Id.* ¶ 77. The Complaint also identifies purportedly false statements underlying the Individual TDAC Defendants' reasons for approving the Business Combination. *Id.* ¶ 80.

C. **Lottery.com alerts investors to issues with its internal controls and compliance.**

According to Plaintiffs, Lottery.com and its officers also made a series of false statements following the issuance of the Proxy Statement. *See* Compl. ¶¶ 83–100. The Complaint charges that statements about Lottery.com's compliance, financial results, and projections were false because Defendants misrepresented or failed to disclose that Lottery.com "(i) … lacked adequate internal accounting controls, including controls over financial reporting of cash and revenue, (ii) the Company was improperly recognizing revenue and (iii) that as such, the Company's financial results were materially overstated." *Id.* ¶¶ 84, 86, 88. The Complaint also alleges that the "Company was claiming it had cash that it did not have …." *E.g.*, *id.* ¶ 92.

The Complaint identifies several of these allegedly false statements. For example, a November 2021 quarterly Form 10-Q noted errors in historical financial statements and stated that the company's "certifying officers had concluded that, due solely to the material weakness identified," which related to particular SEC guidance, certain financials needed to be restated and Lottery.com's controls were not effective. *Id.* ¶¶ 87.

In March 2022, Lottery.com issued a press release, also attached to a Form 8-K filed with the SEC, reporting the company's strong financial results for the fourth quarter and full year 2021. *Id.* ¶ 91. The reported results included $68.5 million in revenue for 2021. *Id.* These statements reported cash for the fourth quarter of 2021 of $62.6 million.

Lottery.com's April 1, 2022, Form 10-K filing, signed by Clemenson and Dickinson, among others, "reiterated the financial results released the prior day" in a Form 8-K reporting significant increases in revenue and cash from the prior year. *Id.* ¶ 91. That same April 1, 2022, Form 10-K also disclosed a material weakness in internal controls that "management has identified," noting that the weakness related to the number of personnel with an appropriate level of knowledge and experience in the type of accounting the company's transactions involved. *Id.* ¶ 93.

4

During the relevant period, Mr. Dickinson and Mr. DiMatteo executed certifications based on the Sarbanes-Oxley Act certifying that "based on [their] knowledge," there were not misstatements or omissions in the various Form 10-Q filings. *Id.* ¶ 99.

The Complaint alleges that the conclusions reached in these earlier statements—that, apart from the specific deficiencies the company identified, Lottery.com's compliance efforts and internal controls were robust and sound—were false. A July 6, 2022, Form 8-K filed with the SEC disclosed the findings of an internal investigation that there had been "instances of non-compliance with state and federal laws concerning the state in which [lottery] tickets are procured," as well as "issues pertaining to the Company's internal accounting controls." *Id.* ¶ 146. That same filing disclosed that the Board had terminated Mr. Dickinson. *Id.* A week and a half later, another Form 8-K filed with the SEC announced that Mr. Clemenson had resigned from his role. *Id.* ¶ 148. The same filing disclosed that Lottery.com had overstated its "available unrestricted cash balance by approximately $30 million" and "improperly recognized revenue." *See id.* Later July disclosures included that DiMatteo was resigning and that the company lacked the financial resources to fund its operations and that there was doubt about the company's ability to continue as a going concern. *See id.* ¶¶ 148, 150, 152.

The Complaint alleges that Lottery.com's stock value fell significantly over the course of July 2022 while the disclosures of the accounting and compliance deficiencies were being disclosed. *See id.* ¶¶ 146–53.

### D.    Plaintiffs bring claims under the Securities Exchange Act.

Plaintiffs claim to have suffered damages because of false statements by Defendants. After the Court appointed lead plaintiffs under the Reform Act (ECF No. 39 at 8), those plaintiffs filed the operative Complaint (ECF No. 52) containing the allegations discussed above.

Plaintiffs bring claims under Sections 10(b) and 14(a) of the Exchange Act against all Defendants. *Id.* ¶¶ 170–74, 179–82. Plaintiffs also assert claims under Section 20(a) of the Exchange Act against the Individual Defendants. *Id.* ¶¶ 175–78, 183–88.

## III.    ARGUMENT

### A.    The Rules of Civil Procedure and the Reform Act require detailed allegations for a securities fraud claim to survive dismissal.

For the Complaint to proceed in the face of a Rule 12(b)(6) motion, it must satisfy both the plausibility requirements of Rule 8(a) and the heightened particularity requirements of Rule 9(b) and the Reform Act.

Under Rule 8(a), a plaintiff must plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Those "[f]actual allegations must be enough to raise a right to relief above the speculative level …." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and dismissal is required. *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

A complaint alleging securities fraud must also "satisfy the heightened pleading requirements of the [Reform Act] and Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud." *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)). First, Rule 9(b) requires complaints to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Second, the Reform Act requires Plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, … [to] state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Crucially, the Reform Act also requires Plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind." *Id.* § 78u-4(b)(2)(A).

To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, Plaintiffs must allege, among other things, "a material misrepresentation or omission by the defendant … [and] scienter." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014) (citation omitted).

Section 14(a) of the Exchange Act prohibits "solicitation … made by means of any proxy statement … containing any statement which … is false or misleading with respect to any material fact." *Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 397 (2d Cir. 2016), *as amended* (Apr. 29, 2016). Courts within this circuit have ruled that the Reform Act requires plaintiffs to "plead with particularity facts that give rise to a strong inference of negligence on the part of all Defendants." *Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ. 11074 (JSM), 2003 WL 21058251, at *4 (S.D.N.Y. May 9, 2003); *but see Fresno Cty. Employees' Retirement Ass'n v. Comscore, Inc.*, 268 F. Supp. 3d 526, 559 (S.D.N.Y. 2017). Plaintiffs who allege that a statement of opinion is materially misleading must allege "provable facts to demonstrate that the statement of opinion is both objectively and subjectively false." *Bond*, 2003 WL 21058251, at *5 (internal quotation marks omitted). In other words, plaintiffs must show that the individuals making the statement "did not actually hold the belief or opinion stated, *and* that the opinion stated was in fact incorrect." *Id.*

Last, to advance a claim under Section 20(a) of the Exchange Act, Plaintiffs must show "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI*, 493 F.3d at 108. "Most courts in this district have held that … culpable participation is a scienter requirement for which a plaintiff must allege some level of culpable participation at least approximating recklessness in the section 10(b) context in order to survive a motion to dismiss." *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 542 (S.D.N.Y. 2016) (quotation omitted).

**B.    Plaintiffs fail to meet the Reform Act's high standards for alleging scienter to support their Section 10(b) claim.**

Plaintiffs cobble together repetitive assertions about the termination or resignation of corporate officers and alleged violations of GAAP that courts have routinely held are not enough to show scienter. To survive a motion to dismiss, Plaintiffs must plead with particularity facts demonstrating a "strong inference" of scienter as to each defendant, which is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.*, 551 U.S. at 314. Those facts must show "(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198. "[C]ourts must consider both the inferences urged by the plaintiff and any competing inferences rationally drawn from all the facts alleged, taken collectively." *Id.*

Here, the Complaint satisfies neither of the standards for alleging scienter. Plaintiffs do not allege any motive or opportunity to commit fraud going beyond those shared by all corporate officers. Nor do they provide the details—specific instances of conflicting information, statements of confidential informants, etc.—showing that any statement was knowingly false or reckless. Thus, the opposing inference of nonfraudulent intent is far more compelling than Plaintiffs' theory of scienter. The Complaint should thus be dismissed.

**1.    Plaintiffs do not sufficiently allege motive and opportunity to commit fraud.**

In the Second Circuit, "[m]otive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). It is not enough to point to incentives possessed by nearly all corporate insiders, like "the desire to … sustain the appearance of corporate profitability or of the success of an investment [and] the desire to maintain a high stock price in order to increase executive compensation … or prolong the benefits of holding corporate office." *Id.* Yet that is precisely what Plaintiffs rely on to allege a motive to commit fraud here. The Complaint alleges that "the Individual Lottery Defendants received far more shares than they would have been

entitled to had the true value of Lottery been disclosed in connection with the Business Combination," that they received "lucrative pay and benefit packages" as a result of remaining employees, and stood to gain "earnout" payments depending on the company meeting certain share price targets. Compl. ¶ 140. In other words, the same compensation and other benefits that corporate executives around the country receive.

Nor do Plaintiffs allege that any Defendant—much less Clemenson or Dickinson—tried to sell shares during the relevant period. That too cuts against an inference of scienter. *See In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 383–84 (E.D.N.Y. 2003) (explaining that fact of CEO's not selling shares during the key period, despite being positioned to "reap profits from insider knowledge," weighed against an inference of scienter).

In sum, Plaintiffs have failed to allege that Clemenson and Dickinson had a motive and opportunity to defraud.

## 2. Plaintiffs have not alleged sufficient circumstantial evidence of knowledge or recklessness.

Plaintiffs similarly fail the alternative test for showing scienter. The Complaint lacks the hallmarks of knowing or reckless misrepresentations. To go forward, Plaintiffs must allege "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000). Plaintiffs' failure to identify information contrary to the content of Defendants' allegedly false statements is the main deficiency of their scienter allegations. Plaintiffs instead rely on a grab-bag of facts, none of them sufficient—individually or together— to show fraudulent intent. Those allegations include the same sort of conclusory claims that courts routinely rule are insufficient to support the strong inference of scienter that the Reform Act demands.

***Termination and resignation of senior officers.*** Plaintiffs allege that the termination or resignation of many senior Lottery.com officers in July 2022 suggests that the Individual Lottery Defendants "had knowledge of the conduct alleged … or acted recklessly in not knowing." Compl. ¶ 117. Plaintiffs pepper the Complaint with repeated references to the same facts. *See, e.g.*, Compl. ¶¶ 28, 68, 112, 134, 146 (noting that the board terminated Mr. Dickinson in July 2022); *id.* ¶¶ 29, 69, 113, 134, 148 (noting Mr. Clemenson's July 2022 resignation). But repeating these facts over and over does not strengthen the showing of scienter. *See, e.g.*, *Jun v. 500.com Ltd.*, CV 20-806 (GRB) (AKT), 2021 WL 4260644, at *2 (E.D.N.Y. Sept. 20, 2021) (ruling that defendant's resignation at the conclusion of internal investigation was not enough to show scienter); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011) ("resignations, without some indicia of highly unusual or suspicious circumstances, are insufficient to support the required strong circumstantial evidence of scienter"). "[T]hat a corporate executive would resign from a company under investigation" for accounting irregularities "hardly seems suspect"—there are many plausible explanations that do not involve knowledge of any scheme to defraud. *Jun*, 2021 WL 4260644, at *2. Indeed, terminations and resignations are to be expected in the face of failures and significant setbacks for a company. Mere mismanagement, however, is not fraud.

***Failures in internal controls and accounting errors.*** Plaintiffs claim that failing to comply with GAAP and maintain adequate internal controls "considering previous control issues and prior pledges to remedy these issues" strongly supports scienter. Compl. ¶ 129. However, despite spending more than a dozen paragraphs explaining the importance of internal controls and GAAP, Plaintiffs fail to connect the alleged failure to evidence that the failure was knowing or reckless. *See id.* ¶¶ 118–38. Merely alleging that "defendants knew (or were reckless in not knowing)" about failures in a company's internal financial and accounting systems is "insufficient to demonstrate conscious or reckless conduct." *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 316 (D.N.J. 2001). Such allegations present a circular proposition, assuming that statements about the strength of Lottery.com's internal accounting controls and compliance

efforts were known to be false when made. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 421 (S.D.N.Y. 2020) (explaining that allegations of accounting irregularities and GAAP violations cannot state a claim for securities fraud without evidence of fraudulent intent "*separate and apart*" from the accounting violations themselves (emphasis in original)). Without connecting the alleged violations to facts showing that the deficiencies were known at the time, Plaintiffs have done no more than show that Lottery.com failed.

      ***Signing SEC filings and Sarbanes-Oxley certifications.*** Beyond the circumstances of their departure from Lottery.com, the Complaint's allegations specific to Mr. Clemenson and Mr. Dickinson relate almost entirely to their signatures on various SEC filings and SOX certifications. *See, e.g.*, Compl. ¶¶ 91, 97, 99. Indeed, the only substantive allegations specific to Mr. Clemenson are that he signed an annual report submitted to the SEC in March 2022 and that he resigned from the company after its accounting failures were disclosed. *See* Compl. ¶¶ 91, 113. Those allegations are not enough to show scienter. *See In re Silvercorp Metals, Inc. Sec. Litig.*, 26 F. Supp. 3d 266, 277 (S.D.N.Y. 2014) (ruling that it is not enough, standing alone, to allege that a defendant signed SEC filings or had a duty to monitor those filings); *In re MBIA, Inc. Sec. Litig.*, 700 F. Supp. 2d 566, 589–90 (S.D.N.Y. 2010) (explaining that allegations that individual defendants signed "SEC disclosures and Sarbanes-Oxley certificates are insufficient to support a strong inference of recklessness in the absence of more particularized allegations").

      ***The significance of the overstated cash and revenue.*** Plaintiffs observe that the overstated cash and revenue at issue in the purportedly false representations constituted almost half of the company's 2021 revenue and was attributable largely to a single transaction. Compl. ¶¶ 108, 110. Based on evidence the Complaint fails to identify, Plaintiffs assert that the Individual Lottery Defendants "were certainly aware of the particulars of transactions that constituted almost half of the entire Company's cash and revenues." *Id.* ¶ 109. But though inaccurate financial reports "may have been caused by intentional fraud or recklessness, they could well be products of negligence or mismanagement." *In re BISYS Sec. Litig.*, 397 F. Supp.

2d 430, 447–48 (S.D.N.Y. 2005) (explaining that "the size of the restatement" alone does not create an inference of scienter).

Plaintiffs try to fill the gaps in their allegations through repeating variations on the same theme that significant failures must be the result of fraud. But if being in a position of senior leadership were enough to satisfy the Reform Act's standards, every claim against senior officers could proceed to discovery following disclosure of compliance, internal control, or accounting failures. The Complaint fails to allege a single legal opinion on compliance, piece of advice from an outside auditor or internal accounting professional, or other form of notice to any Defendant that conflicted with the allegedly false statement. We cannot know, for example, whether and when anyone advised Clemenson, Dickinson, or anyone else that the discretionary judgments involved in recognizing revenue were flawed.

These failures require dismissal. *See, e.g.*, *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010) ("Plaintiffs should, but do not, provide specific instances in which Defendants received information that was contrary to their public declarations."); *City of Brockton Ret. Sys. V. Shaw Group Inc.*, 540 F. Supp. 2d 464, 472–74 (S.D.N.Y. 2008) (determining that there was no inference of scienter where the plaintiffs failed to allege that individual defendants were provided with contradictory information). Many securities plaintiffs try to fill similar gaps with information gleaned from confidential sources, but even those efforts often fall short. *See, e.g.*, *Campo v. Sears Holdings Corp.,* 371 Fed. App'x. 212, 217 (2d Cir. 2010) (ruling that scienter was not alleged where a confidential witness "had no knowledge of whether [the individual defendants] actually accessed or reviewed the reports."); *In re Citigroup Inc. Sec. Litig.,* 753 F. Supp. 2d 206, 245 (S.D.N.Y. 2010) (holding "[f]atal to plaintiffs' claims[,]" a failure to allege that confidential witnesses presented information to individual defendants). Here, of course, Plaintiffs rely on no informants at all.

Comparing the allegations here to those in *In re BISYS* is telling. There, the court considered allegations based in part on the statements of three confidential informants (among

six informants proffered in the complaint) about accounting irregularities and improper revenue recognition. *See* 397 F. Supp. 2d at 442–43. The plaintiffs adequately alleged the CEO's scienter because he instructed other managers to accrue more money from insurance policy renewals because "we're a little short." *Id.* Those managers in turn ignored objections raised by internal finance department employees and overstated revenue in one instance by millions of dollars. *See id.* at 443. Because the CEO "knowingly directed BISYS employees to overstate revenues and to falsify commissions payable," the allegations were sufficient to infer scienter. *Id.*

But as for other individual defendants, the court dismissed the claims. The plaintiffs alleged that the individuals were motivated to "increase their own compensation and to increase the price of the Company's stock [so they] could sell their own shares at high prices." *Id.* at 444. They also alleged that the individuals had: (1) sold company shares for large profits during the Class Period; (2) resigned shortly before or at the same time as the company disclosed financial shortfalls, improper accounting, and financial restatements; (3) held leadership positions while the company violated GAAP and internal accounting policies; and (4) presided over the company when it inflated revenues by more than twenty percent. *Id.* at 444–48. Even together, these facts were not enough to proceed against the other individuals.

Here, the allegations are far closer to those that the court in *In re BISYS* ruled insufficient. And unlike in that case, the Complaint here alleges no insider trades and is void of similar investigative evidence. Without some specific alleged instances "in which Defendants received information that was contrary to their public declarations," the Complaint can go no further. *Plumbers & Steamfitters Local 773*, 694 F. Supp. 2d at 299.

\*     \*     \*

The Complaint falls short of the Reform Act's standards under either approach to alleging scienter. The Court should therefore dismiss the Complaint.

**C.    Plaintiffs have not adequately pleaded falsity to support their Section 10(b) claim.**

The same deficiencies that require dismissal for failure to plead scienter also require dismissing the Complaint for failing to adequately plead falsity. Since the Supreme Court's landmark decision in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 176, 186–89 (2015), courts have understood that statements of opinion are not actionably false unless the speaker did not hold the view she expressed, the "supporting fact[s] she supplied were untrue," or the speaker omits information which makes the statement misleading to a reasonable investor. The falsehoods Plaintiffs allege—that Defendants publicized management's opinions that Lottery.com's internal controls were sound, that its legal compliance efforts were shipshape, and that it had properly accounted for revenue—fall within *Omnicare*'s protections. Plaintiffs have failed to allege with particularity what information Clemenson or Dickinson possessed and what any Defendant either misstated or omitted to make these opinions actionably false.

Particularly instructive, *Omnicare* discussed a hypothetical statement by a company's CEO that "I *believe* (or I think) the TVs we manufacture have the highest resolution available on the market," explaining that such an opinion could not be false, even if the premise were mistaken, so long as the speaker believed it to be true:

> Just as she said, the CEO really did believe, when she made the statement, that her company's TVs had the sharpest picture around. And although a plaintiff could later prove that opinion erroneous, the words "I believe" themselves admitted that possibility, thus precluding liability for an untrue statement of fact. That remains the case if the CEO's opinion, as here, concerned legal compliance. If, for example, she said, "I believe our marketing practices are lawful," and actually did think that, she could not be liable for a false statement of fact—even if she afterward discovered a longtime violation of law. Once again, the statement would have been true, because all she expressed was a view, not a certainty, about legal compliance.

*Omnicare*, 575 U.S. at 183–84. Since *Omnicare*, the Second Circuit has applied this reasoning—which arose in the context of a claim for violating Section 11 of the Securities Act—to the falsity

analysis in claims (like Plaintiffs') under Section 10(b) of the Exchange Act. *See Tongue v. Sanofi*, 816 F.3d 199, 209–12 (2d Cir. 2016).

Here, Plaintiffs' claims turn on several bundles of purported false statements. According to Plaintiffs, Lottery.com's public statements about its compliance, financial results, and projections were false because Defendants misrepresented or failed to disclose that Lottery.com "(i) lacked adequate internal accounting controls, including controls over financial reporting of cash and revenue, (ii) the Company was improperly recognizing revenue and (iii) that as such, the Company's financial results were materially overstated." Compl. ¶¶ 84, 86, 88. The Complaint also alleges that the "Company was claiming it had cash that it did not have …." *E.g.*, *id.* ¶ 92. All these purportedly false statements are statements of opinion.

For example, the November 2021 quarterly Form 10-Q noted errors in historical financial statements and stated that the company's "certifying officers had concluded that, due solely to the material weakness identified," related to SEC guidance, certain financials needed to be restated, and Lottery.com's controls were not effective. *Id.* ¶¶ 87. Likewise, Lottery.com's April 1, 2022, Form 10-K filing, signed by Clemenson and Dickinson, among others, "reiterated the financial results released the prior day" in a Form 8-K reporting significant increases in revenue and cash from the prior year. *Id.* ¶ 91. That same April 1, 2022, Form 10-K also disclosed a material weakness in internal controls that "management has identified," noting that the weakness related to the number of personnel with an appropriate level of knowledge and experience in the type of accounting the company's transactions involved. *Id.* ¶ 93. And according to the Sarbanes-Oxley certifications that Plaintiffs identify, Dickinson certified that "based on my knowledge," there were not misstatements or omissions in the Form 10-Q. *Id.* ¶ 99.

The Complaint rests on the notion that these conclusions were false because July 2022 SEC filings disclosed the findings of an internal investigation that there had been more "issues pertaining to the Company's internal accounting controls" and that, based on a review of Lottery.com's revenue-recognition policies and other accounting controls, the company had

overstated its "available unrestricted cash balance by approximately $30 million" and "improperly recognized revenue." *See id.* ¶¶ 68–69. But those disclosures shed no light on whether management's earlier conclusions about the strength of the company's controls or their certifications, based on their knowledge, were false. Just as in *Omnicare*, statements of belief that one's company is following the law or has robust controls are not actionable without more detail than Plaintiffs offer. *See Omnicare*, 575 U.S. at 183–84.

The reasoning in *In re AmTrust Financial Services, Inc. Securities Litigation* is instructive. There, Judge Kaplan, applying *Omnicare*, rejected plaintiffs' claims that management's attestations in the company's Form 10-K and related Sarbanes-Oxley certifications involved actionably false representations about the sufficiency of internal controls. *AmTrust*, No. 17-CV-1545 (LAK), 2019 WL 4257110, at *24–25 (S.D.N.Y. Sept. 9, 2019). These statements, the court ruled, "concern the conclusions of management. Accordingly, they are statements of opinion and plaintiffs must do more than simply allege that the conclusions were wrong. They must allege adequately that [the attesting officers] reached a conclusion different from the one stated, or that defendants reached no conclusion at all." *Id.* at *25. Here, as in *AmTrust*, Plaintiffs have failed to allege anything beyond conclusory assertions that the Defendants' opinions were not sincerely held or in conflict with known facts. They identify no warnings by lawyers or accounting staff, no insider accounts from confidential informants, and no admissions by any Defendant that prior opinions were not sincerely held at the time they were issued. For the same reasons that Plaintiffs cannot prove scienter, they cannot prove falsity.

The analysis is the same for any suggestion that the Sarbanes-Oxley certifications constituted a guarantee by Dickinson or others that the underlying representations were correct. Plaintiffs in *AmTrust* advanced that argument. In response, Judge Kaplan did not mince words: "Plaintiffs are wrong. The SOX certifications contain an important qualification that the certifying officer's statements are true based on his or her knowledge. The attestation is a statement of opinion. Accordingly, plaintiffs must allege more than that the financial statements themselves were inaccurate. They must allege sufficiently that defendants knew that the financial

16

statements were inaccurate." *Id.* at \*24 (internal quotations, brackets, and footnotes omitted). So too here.

Finally, even as to the overstatement of revenue and cash, the recognition of revenue under GAAP calls for "the exercise of judgment" or a "subjective evaluation" about a particular transaction, then it too is a statement of opinion. *Id.* at \*14. "A particular datum—e.g., a particular reported dollar figure on a financial statement—is not necessarily false if the reported result could have been reached by an appropriate method given appropriate historical data and judgments." *Id.* at \*15.

Here, Lottery.com ultimately acknowledged that it had "overstated its available unrestricted cash balance by approximately $30 million" and "improperly recognized revenue in the same amount." Compl. ¶ 69. But "to establish that reported revenue and income figures … constituted *mis*statements of fact, plaintiffs must plead first that" a particular accounting principle "objectively was the *only* correct guidance to apply." *AmTrust*, 2019 WL 4257110, at \*16. They must also "plead that defendants did not apply that guidance and did not disclose either the particular guidance that they were applying, or that they had chosen not to apply the section that a reasonable investor would assume applied to the transactions." *Id.* The Complaint does neither, instead offering the conclusory assertion that "Defendants faked the collection of that money in order to create the illusion of revenues." Compl. ¶ 70. That failure falls short of the requirement to show that an expression of accounting judgment was, in reality, a false statement of fact.

The Complaint's failure to adequately allege falsity is fatal to its Section 10(b) claim.

### D.    Plaintiffs' Section 14(a) claim fails.

Plaintiffs' claim under Section 14(a) turns on allegedly false or misleading statements in the Proxy statement and prospectus for the Business Combination. *See* Compl. ¶¶ 77–82, 179–82. But the claim fails for two reasons.

First, Plaintiffs fail to articulate facts showing that the statements of opinion within the proxy statement are objectively and subjectively false. As discussed in Section III.C above, the statements in the Proxy statement concern the conclusions of management. *Cf. AmTrust*, 2019 WL 4257110, at *25. Thus, Plaintiffs must show that the individuals making the statement "did not actually hold the belief or opinion stated, *and* that the opinion stated was in fact incorrect." *Bond*, 2003 WL 21058251, at *5. The same analysis that dooms Plaintiffs' attempt to plead falsity in connection with their Section 10(b) claim does so here as well.

Second, Plaintiffs do not identify the roles allegedly played by Mr. Clemenson and Mr. Dickinson in this violation. Thus, the Complaint does not provide the required notice of the alleged conduct for which each is purportedly responsible. This failure violates Rule 8(a). The Supreme Court has explained that, without allegations made on a defendant-by-defendant basis, it is doubtful that a complaint can give "the notice required by Rule 8." *Twombly*, 550 U.S. at 564 n.10 ("[A] defendant seeking to respond to plaintiffs' conclusory allegations … would have little idea where to begin."); *see also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (dismissing complaint "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged" under pre-*Twombly* notice-pleading standard).

Here, neither the allegations supporting the Section 14(a) claim nor those it incorporates (Compl. ¶¶ 77–82, 179–82) mention Clemenson or Dickinson at all. The proxy statement was allegedly "signed by the Individual TDAC Defendants." *Id.* ¶ 77. The Complaint also identifies purportedly false statements underlying *the Individual TDAC Defendants*' reasons for approving the Business Combination. *Id.* ¶ 80. To be sure, in connection with Plaintiffs' second Section 20(a) claim, the Complaint alleges that "the Individual Lottery Defendants … reviewed and furnished information for inclusion in the Proxy Statement and Prospectus, and solicited the approval of the Business Combination." *Id.* ¶ 185. But it does not identify what information Clemenson and Dickinson furnished or the facts showing that a reasonable person would have

known any of those facts were false or misleading. This failure requires dismissal of the Section 14(a) claim.

### E.    The Section 20(a) claims cannot survive.

Plaintiffs' Section 20(a) "control person" liability claims—one for each of the two primary violations charged in the Complaint—should be dismissed. First, for the reasons explained above, there was no primary violation of either Section 10(b) or Section 14(a). Because a Section 20(a) must be premised on a primary violation, that failure dooms Plaintiffs' Section 20(a) claims. *In re Inv. Tech. Grp., Inc. Sec. Litig.*, No. 15-cv-6369, 2018 WL 1449206, at *7 (S.D.N.Y. Mar. 23, 2018). Second, Plaintiffs have failed to allege Clemenson's or Dickinson's scienter, or "culpable participation" in any violation. *Id.* Because "culpable participation [under Section 20(a)] is a scienter requirement for which a plaintiff must allege some level of culpable participation at least approximating recklessness," the same failure to scienter explained above requires dismissing the Section 20(a) claims. *In re Virtus*, 195 F. Supp. 3d at 543.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Clemenson and Mr. Dickinson respectfully ask the Court to dismiss Plaintiffs' Complaint.

Dated:  New York, New York
April 3, 2023

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: *s/Franklin Monsour Jr.*
Franklin Monsour Jr.
51 West 52nd Street
New York, NY 10019
Tel. 212-506-3512
fmonsour@orrick.com

Aaron Brecher (admitted *pro hac vice*)
401 Union Street
Suite 3300
Seattle, WA 98101
Tel. 206-839-4332

*Attorneys for Defendants*
*Matthew Clemenson and Ryan Dickinson*