UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE LOTTERY.COM, INC. SECURITIES LITIGATION | Case No. 1:22-cv-07111 (JLR)<br><br>**ORAL ARGUMENT REQUESTED** |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MATTHEW CLEMENSON AND RYAN DICKINSON'S MOTION TO DISMISS COMPLAINT BY <u>HAROLD HOFFMAN</u>

Franklin Monsour Jr
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
Tel. 212-506-3512
fmonsour@orrick.com

Aaron Brecher (*pro hac vice* pending)
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street
Suite 3300
Seattle, WA 98101
Tel. 206-839-4332
abrecher@orrick.com

*Attorneys for Defendants*
*Matthew Clemenson and Ryan Dickinson*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      PRELIMINARY STATEMENT ............................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................... 2

      A.   Lottery.com is a dynamic technology company offering lottery-related
products and information to its customers. ........................................................... 2

      B.   Lottery.com alerts investors to issues with its internal controls and
compliance. ........................................................................................................... 3

      C.   Hoffman presses claims under the Securities Exchange Act. .............................. 5

III.    ARGUMENT ............................................................................................................ 5

      A.   The Rules of Civil Procedure and the Reform Act require detailed
allegations for a securities fraud claim to survive dismissal. ............................... 5

      B.   Hoffman fails to meet the Reform Act's high standards for alleging
scienter. ................................................................................................................. 6

            1.   Hoffman does not allege any motive and opportunity to commit
fraud. ........................................................................................................ 7

            2.   Hoffman has not shown circumstantial evidence of knowledge or
recklessness. ............................................................................................. 8

      C.   Hoffman has not alleged facts to adequately plead falsity. ................................ 11

      D.   Hoffman fails to disentangle the respective roles played by each
defendant. ............................................................................................................ 14

      E.   The Section 20(a) claim cannot survive. ............................................................ 15

IV.     CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AmTrust Financial Services, Inc. Securities Litigation*,
No. 17-CV-1545 (LAK), 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)..................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................................5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)..........................................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................5, 14, 15

*Campo v. Sears Holdings Corp.*,
371 Fed. App'x. 212 (2d Cir. 2010)............................................................................................9

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014).........................................................................................................6

*In re Carter-Wallace, Inc., Sec. Litig.*,
220 F.3d 36 (2d Cir. 2000)..........................................................................................................8

*In re Citigroup Inc. Sec. Litig.*,
753 F. Supp. 2d 206 (S.D.N.Y. 2010).........................................................................................9

*City of Brockton Ret. Sys. v. Shaw Group Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008).........................................................................................9

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020).......................................................................................10

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009).........................................................................................................5

*In re Galena Biopharma, Inc., Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) .........................................................................................15

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
No. 15-cv-6369, 2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018)...............................................15

*In re Keyspan Corp. Sec. Litig.*,
383 F. Supp. 2d 358 (E.D.N.Y. 2003) .......................................................................................8

*Magluta v. Samples*,
256 F.3d 1282 (11th Cir. 2001) ................................................................................................14

*In re MBIA, Inc. Sec. Litig.*,
700 F. Supp. 2d 566 (S.D.N.Y. 2010).......................................................................................10

*Million v. Lottery.com, Inc. et al.*,
  Case No. 1:22-cv-07111-JLR (S.D.N.Y. 2022)......................................................................9

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000).................................................................................................7

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
  575 U.S. 176 (2015).....................................................................................................11, 13

*In re Party City Sec. Litig.*,
  147 F. Supp. 2d 282 (D.N.J. 2001) ....................................................................................10

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
  Commerce*,
  694 F. Supp. 2d 287 (S.D.N.Y. 2010)..................................................................................9

*In re Silvercorp Metals, Inc. Sec. Litig.*,
  26 F. Supp. 3d 266 (S.D.N.Y. 2014)...................................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..........................................................................................................5, 7

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016)...............................................................................................11

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
  195 F. Supp. 3d 528 (S.D.N.Y. 2016)..................................................................................6

**Statutes**

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ................................. *passim*

Securities Exchange Act § 10(b)........................................................................................... *passim*

Securities Exchange Act § 20(a)....................................................................................2, 5, 6, 15

**Other Authorities**

Fed. R. Civ. P. 8(a) .............................................................................................................5, 14

Fed. R. Civ. P. 9(b) ......................................................................................................5, 14, 15

Fed. R. Civ. P. 12(b)(6)..........................................................................................................2, 5

## I.   PRELIMINARY STATEMENT

This case involves the federal securities laws and their application to statements made by Lottery.com—a technology company providing access to lottery games and other services to consumers. Based on no more than Lottery.com's public statements that its legal compliance efforts and internal accounting controls related to revenue recognition had fallen short, Plaintiff Harold Hoffman accuses the company and several former officers and directors, including Defendants Matthew Clemenson and Ryan Dickinson, of lying to investors to pump up the price of Lottery.com's stock. But Hoffman's thin allegations—for instance, he attributes no specific conduct to Mr. Clemenson other than his resignation from the company—fail the tests set by the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4. The copycat allegations—lifted almost verbatim from the original (since amended) complaint in the class action consolidated with this case—therefore warrant dismissal.

First, Hoffman fails to allege any particular facts showing that Mr. Clemenson, the former Chief Revenue Officer, and Mr. Dickinson, the former Chief Financial Officer, issued statements with knowledge of, or recklessness to, their falsity. Alleging scienter is a high bar under the Reform Act, and Hoffman's abject failure to do so alone requires dismissal. Second, Hoffman has not alleged actionable false statements at all.  Instead, the purportedly misleading conclusions of management that Lottery.com's internal controls and compliance efforts were robust are exactly the type of opinions that the Supreme Court and other courts have ruled are not actionable. Without any particular allegations showing that those opinions were not sincerely held when offered, or that they turned on false statements of fact or material omissions, the Complaint may go no further. Third, the Complaint does not adequately distinguish the roles allegedly played by each defendant as the Federal Rules require. That failure deprives Clemenson and Dickinson of the notice of their alleged wrongdoing to which they are entitled.

Each of these three reasons independently warrants dismissing the claim for violating Section 10(b) of the Securities Exchange Act of 1934. With the primary violation under Section 10(b) being unsustainable, the related claim that the individual Defendants violated

Section 20(a) of the Exchange Act as controlling persons responsible for the Section 10(b) violation also fails.

Mr. Clemenson and Mr. Dickinson thus ask the Court to dismiss the Complaint against them.[1]

## II.    FACTUAL BACKGROUND

Given that Dickinson and Clemenson bring this motion under Rule 12(b)(6), this memorandum assumes the truth of all non-conclusory factual allegations in the Complaint. Hoffman's Complaint arises out of Lottery.com's public disclosure in 2022 concerning deficiencies related to internal controls and compliance with state and federal lottery regulations.

### A.    Lottery.com is a dynamic technology company offering lottery-related products and information to its customers.

Lottery.com, a publicly owned company whose common stock is traded on the Nasdaq exchange, is a Texas-based technology company providing access to lottery games to consumers in the U.S. and around the world. *See* ECF No. 1[2] ("Compl.") ¶¶ 2, 14. The company, which facilitates the purchase of lottery tickets through its proprietary app and websites, also generates revenue through selling credits to marketing partners that can be exchanged for promotional packages and through allowing other business partners to purchase lottery games for resale. *Id.* ¶ 24. Lottery.com also provides data—including winning lottery numbers and other results—to hundreds of publishers and media organizations. *Id.* ¶¶ 2, 24. These services allow users to play the lottery from their phone and participate in well-known state-sanctioned lottery games like Powerball and Mega Millions. *See id.* ¶ 25.

Lottery.com is the result of the combination of two predecessor companies: Trident Acquisitions Corp. ("TDAC") and AutoLotto, Inc. *Id.* ¶¶ 2–3, 23, 25. Following the combination, Mr. Dickinson served as the company's President, Treasurer and acting Chief

---

[1] Through this motion, Defendants Clemenson and Dickinson also adopt all relevant arguments for dismissal raised by their co-defendants.

[2] Unless otherwise noted, references to the electronic docket are to the docket in Case No. 1:22-cv-10764-JLR for Mr. Hoffman's individual case before it was consolidated under the related class action in Case No. 1:22-cv-7111-JLR.

Financial Officer. *Id.* ¶ 19. Mr. Clemenson served as Lottery.com's Chief Revenue Officer and on the board. *See id.* ¶ 20.

**B.      Lottery.com alerts investors to issues with its internal controls and compliance.**

According to Hoffman, the company and its senior leadership made several misstatements in their public SEC filings between November 2021 and May 2022. *See id.* ¶¶ 10, 42. First, Defendants purportedly misrepresented or failed to disclose that Lottery.com "lacked adequate internal accounting controls." *Id.* ¶ 44. Next, Hoffman alleges that Defendants misrepresented or failed to disclose that Lottery.com "lacked adequate internal controls over financial reporting pertaining to revenue recognition and the reporting of cash." *Id.* Last, Hoffman claims that Defendants misrepresented or failed to disclose that Lottery.com "was not in compliance with state and federal laws governing the sale of lottery tickets." *Id.*

In November 2021, Lottery.com filed its quarterly Form 10-Q with the SEC. *Id.* ¶ 31. This filing noted errors in historical financial statements "identified by management," and that the company's "certifying officers had concluded that, due solely to the material weakness identified" that led to restating certain financials, Lottery.com's controls were not effective. *Id.* ¶¶ 31–32. The certifying officers—Mr. Dickinson and Lottery.com CEO Anthony DiMatteo— "plan[ned] to enhance [Lottery.com's] processes to identify and appropriately apply applicable accounting requirements to better evaluate and understand the nuances of the complex accounting standards that apply to our financial statements." *Id.* ¶¶ 18, 33. In connection with the Form 10-Q from November 2021, Dickinson and DiMatteo executed certifications based on the Sarbanes-Oxley Act certifying that "based on [their] knowledge," there were not misstatements or omissions in the Form 10-Q. *Id.* ¶¶ 34, 35.

In March 2022, Lottery.com issued a press release, also attached to a Form 8-K filed with the SEC, reporting the company's strong financial results for the fourth quarter and full year 2021. *Id.* ¶ 36. The reported results included $68.5 million in revenue for 2021. *Id.* These statements reported cash for the fourth quarter of 2021 of $62.6 million.

In Lottery.com's April 2022 Form 10-K filing, the company reported the same financial metrics in its March press release and Form 8-K. *Id.* ¶ 37. The April filing also identified a "material weakness in internal control over financial reporting as of year-end 2021 and 2020." *Id.* This disclosure noted that the company had begun "measures to remediate" the issue, which related to a lack of personnel with appropriate experience in accounting for the types of complex transactions the company was engaged in. *Id.* Dickinson and DiMatteo executed similar Sarbanes-Oxley certifications for this filing as they had for the earlier Form 10-Q. *Id.* ¶ 39. In the quarterly Form 10-Q filed with the SEC on May 16, 2022, DiMatteo and Dickinson had concluded that Lottery.com's disclosure controls and procedures for internal control over financial reporting were not effective for the first quarter of 2022. *See id.* ¶ 41. DiMatteo and Dickinson executed similar Sarbanes-Oxley certifications for this filing as well. *Id.* ¶ 43. As for Mr. Clemenson, the Complaint alleges *only* that he served as Lottery.com's Chief Revenue Officer until his resignation in July 2022. *See id.* ¶¶ 6, 20, 47.

The Complaint alleges that the conclusions reached in these earlier statements—that, apart from the specific deficiencies the company identified, Lottery.com's compliance efforts and internal controls were robust and sound—were false. A July 6, 2022, Form 8-K filed with the SEC disclosed the findings of an internal investigation that there had been "instances of noncompliance with state and federal laws" governing lotteries and "issues pertaining to the Company's internal accounting controls." *Id.* ¶ 45. That same filing disclosed that the Board had terminated Mr. Dickinson. *Id.* A week and a half later, another Form 8-K filed with the SEC announced that Mr. Clemenson had resigned from his role. *Id.* ¶ 47. The same filing disclosed that Lottery.com had overstated its "available unrestricted cash balance by approximately $30 million" and "improperly recognized revenue." *See id.* ¶ 47. Later July disclosures included that DiMatteo was resigning and that the company lacked the financial resources to fund its operations and that there was doubt about the company's ability to continue as a going concern. *See id.* ¶¶ 49, 51.

The Complaint further alleges that Lottery.com's stock value fell significantly over the course of July 2022 while the disclosures of the accounting and compliance deficiencies were being disclosed. *See id.* ¶¶ 46, 48, 50, 52.

## C.      Hoffman presses claims under the Securities Exchange Act.

Hoffman purchased 20,000 shares of Lottery.com in November 2021 for $149,397. *Id.* ¶ 16. He claims to have suffered damages as a result of what he calls false statements by the Defendants. *Id.* As a result, he has brought claims under Section 10(b) of the Exchange Act against Lottery.com and the three individual Defendants. *Id.* ¶¶ 53–62. He also alleges a violation of Section 20(a) of the Exchange Act against the individual Defendants. *Id.* ¶¶ 63–68.

## III.    ARGUMENT

## A.      The Rules of Civil Procedure and the Reform Act require detailed allegations for a securities fraud claim to survive dismissal.

For Hoffman's Complaint to proceed in the face of a Rule 12(b)(6) motion, it must satisfy both the plausibility requirements of Rule 8(a) and the heightened particularity requirements of Rule 9(b) and the Reform Act.

Under Rule 8(a), a plaintiff must plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Those "[f]actual allegations must be enough to raise a right to relief above the speculative level …." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and dismissal is required. *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

A complaint alleging securities fraud must also "satisfy the heightened pleading requirements of the [Reform Act] and Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud." *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)). First, Rule 9(b) requires complaints to "(1) specify the

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Second, the Reform Act requires Hoffman to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, … [to] state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Crucially, the Reform Act also requires plaintiffs like Hoffman to "state with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind." *Id.* § 78u-4(b)(2)(A).[3]

To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, Hoffman must allege, among other things, "a material misrepresentation or omission by the defendant … [and] scienter." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014) (citation omitted).

To advance a claim under Section 20(a) of the Exchange Act, Hoffman must show "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI*, 493 F.3d at 108. "Most courts in this district have held that … culpable participation is a scienter requirement for which a plaintiff must allege some level of culpable participation at least approximating recklessness in the section 10(b) context in order to survive a motion to dismiss." *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 542 (S.D.N.Y. 2016) (quotation omitted).

**B.      Hoffman fails to meet the Reform Act's high standards for alleging scienter.**

The requirement to plead scienter under a Section 10(b) and Rule 10b-5 claim is no low bar. And it is a bar that Hoffman does not clear. To survive a motion to dismiss, Hoffman must

---

[3] The Reform Act's pleading standards apply to "any private action arising under" the Securities Exchange Act. 15 U.S.C. § 78u-4(b)(2)(A). Thus, Hoffman's individual Complaint must satisfy these stringent standards just as a putative class complaint must do so.

6

plead with particularity facts demonstrating a "strong inference" of scienter as to each defendant, which is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.*, 551 U.S. at 314. Those facts must show "(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198. "[C]ourts must consider both the inferences urged by the plaintiff and any competing inferences rationally drawn from all the facts alleged, taken collectively." *Id.*

Here, nothing in the Complaint satisfies either of the standards for alleging scienter. Hoffman does not allege any motive or opportunity to commit fraud or provide any details— specific instances of conflicting information, statements of confidential informants, etc.— suggesting that any Defendant's statement was knowingly false or reckless. As a result, the opposing inference of nonfraudulent intent is clear and far more compelling than Hoffman's threadbare theory of scienter. He alleges only statements based on management's conclusions that Lottery.com's controls were sound and that the company's compliance efforts were adequate, even if later events conflicted with those conclusions. Good-faith beliefs, even if erroneous, do not constitute fraud, and the circular logic of relying just on the alleged error conflates simple oversights and mismanagement with violations of the securities laws. Burdensome litigation based on precisely this conflation was what motivated Congress to enact the Reform Act to begin with. Hoffman's Complaint should thus be dismissed.

1. **Hoffman does not allege any motive and opportunity to commit fraud.**

In the Second Circuit, "[m]otive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). It is not enough to point to incentives possessed by nearly all corporate insiders, like "the desire to … sustain the appearance of corporate profitability or of the success of an investment [and] the desire to maintain a high stock price in order to increase executive compensation … or prolong the benefits of holding corporate office." *Id.*

7

The Court need not parse whether Hoffman has pleaded enough facts about motive to survive a dismissal motion: the Complaint alleges none. In fact, this glaring silence not only fails to support scienter, it strengthens the opposing inference. Hoffman nowhere alleges, for instance, that any Defendant—much less Clemenson or Dickinson—tried to sell shares during the relevant period. That too cuts against an inference of scienter. *See In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 383–84 (E.D.N.Y. 2003) (explaining that fact of CEO's not selling shares during the key period, despite being positioned to "reap profits from insider knowledge," weighed against an inference of scienter). Hoffman has thus failed to allege facts showing a motive and opportunity to commit fraud.

**2.      Hoffman has not shown circumstantial evidence of knowledge or recklessness.**

Nor does the Complaint allege any of the hallmarks of knowing or reckless misrepresentations. To go forward, Hoffman must allege "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000). Hoffman does not do so. To the contrary, the Complaint's barebones allegations are precisely the sort of conclusory claims that courts routinely rule as insufficient to support the strong inference of scienter that the Reform Act demands.

Hoffman alleges, for instance, that Lottery.com's senior leadership had "access to material information" by dint of their roles at the company, and thus "knew that the adverse facts [in the Complaint] had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading." Compl. ¶ 22; *see also id.* ¶ 58 (alleging that, "[a]s the senior managers and/or directors of Lottery.com, the Individual Defendants had knowledge of the details of Lottery.com's internal affairs").

But he offers nothing beyond these conclusory assertions to explain why the Court should infer scienter. If being in a position of senior leadership were enough to satisfy the Reform Act's

standards, every claim against senior officers could proceed to discovery following disclosure of compliance or internal control failures. Congress would not recognize its handiwork in such a pleading standard that allowed plaintiffs to escape the Reform Act's stringent requirements. The Complaint fails to allege a single legal opinion, piece of advice from an outside auditor or internal accounting professional, or other form of notice to any Defendant that conflicted with the allegedly false statement. We cannot know, for example, whether and when anyone advised Clemenson, Dickinson, or anyone else that the discretionary judgments involved in recognizing revenue were flawed. Nor does the Complaint tell us how Lottery.com's Chief Financial Officer or Chief Revenue Officer would have understood that statements about the company's compliance with the wide range of state lottery regulations were unsound.

These failures require dismissal. *See, e.g.*, *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010) ("Plaintiffs should, but do not, provide specific instances in which Defendants received information that was contrary to their public declarations."); *City of Brockton Ret. Sys. v. Shaw Group Inc.*, 540 F. Supp. 2d 464, 472–74 (S.D.N.Y. 2008) (determining that there was no inference of scienter where the plaintiffs failed to allege that individual defendants were provided with contradictory information). Many securities plaintiffs try to fill similar gaps with information gleaned from confidential sources, but even those efforts often fall short. *See, e.g.*, *Campo v. Sears Holdings Corp.*, 371 Fed. App'x. 212, 217 (2d Cir. 2010) (finding that scienter was not alleged where a confidential witness "had no knowledge of whether [the individual defendants] actually accessed or reviewed the reports."); *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 245 (S.D.N.Y. 2010) (holding "[f]atal to plaintiffs' claims[,]" a failure to allege that confidential witnesses presented information to individual defendants). Here, of course, Hoffman does not even identify any informants, instead alleging that the Complaint's allegations arise out of his "independent investigation."[4] Compl. at 1.

---

[4] As the Court knows, the operative allegations in the Complaint are lifted verbatim from the those in the original complaint in the consolidated putative class action: *Million v. Lottery.com, Inc. et al.*, Case No. 1:22-cv-07111-JLR.

9

And merely alleging that "defendants knew (or were reckless in not knowing)" about failures in a company's internal financial and accounting systems is "insufficient to demonstrate conscious or reckless conduct." *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 316 (D.N.J. 2001). With no allegations of what specific facts contrary to the representations were known to Defendants, Hoffman has done no more but repeat what the company disclosed—facts more consistent with mismanagement than fraud. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 421 (S.D.N.Y. 2020) (explaining that allegations of accounting irregularities cannot state a claim for securities fraud without evidence of fraudulent intent "*separate and apart*" from the accounting violations themselves (emphasis in original)).

Nor do the allegations that Mr. Dickinson certified the representations in Lottery.com's filings with the SEC show scienter.[5] *See, e.g.*, Compl. ¶¶ 34, 39, 43. It is not, standing alone, enough to allege that the officers signing SEC filings had access to and were required to monitor those filings. *See In re Silvercorp Metals, Inc. Sec. Litig.*, 26 F. Supp. 3d 266, 277 (S.D.N.Y. 2014); *In re MBIA, Inc. Sec. Litig.*, 700 F. Supp. 2d 566, 589–90 (S.D.N.Y. 2010) (explaining that allegations that individual defendants signed "SEC disclosures and Sarbanes-Oxley certificates are insufficient to support a strong inference of recklessness in the absence of more particularized allegations"). Because Hoffman offers nothing more, his Complaint fails.

Last, the Complaint alleges nothing about Mr. Clemenson's individual conduct or state of mind. It alleges only that he served as Lottery.com's Chief Revenue Officer until his resignation in July 2022. *See* Compl. ¶¶ 6, 20, 47. The lack of substantive allegations related to his state of mind and role in the alleged conduct requires dismissal.

At bottom, the Complaint falls short of the Reform Act's standards under either approach to alleging scienter. The Court should therefore dismiss Hoffman's Complaint.

---

Copying the allegations wholesale casts doubt on the robustness of Hoffman's purportedly independent investigation.

[5] As discussed below, the statements of opinion in those certifications are not actionably false.

**C.     Hoffman has not alleged facts to adequately plead falsity.**

The same failures that doom Hoffman's effort to plead scienter also underscore his impermissibly thin allegations of falsity. Since the Supreme Court's landmark decision in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 176, 186–89 (2015), courts have understood that statements of opinion are not actionably false unless the speaker did not hold the view she expressed, the "supporting fact she supplied were untrue," or the speaker omits information whose omission makes the statement misleading to a reasonable investor. The falsehoods Hoffman alleges—that Defendants publicized management's opinions that Lottery.com's internal controls were sound, that its legal compliance efforts were shipshape, and that it had properly accounted for revenue—fall within *Omnicare*'s protections. Because Hoffman has failed to allege with particularity any facts explaining what information Clemenson or Dickinson possessed and that any Defendant either misstated or omitted to make these opinions actionably false.

*Omnicare* discussed a hypothetical statement by a company's CEO that "I *believe* (or I think) the TVs we manufacture have the highest resolution available on the market," explaining that such an opinion could not be false, even if the premise were mistaken, so long as the speaker believed it to be true:

> Just as she said, the CEO really did believe, when she made the statement, that her company's TVs had the sharpest picture around. And although a plaintiff could later prove that opinion erroneous, the words "I believe" themselves admitted that possibility, thus precluding liability for an untrue statement of fact. That remains the case if the CEO's opinion, as here, concerned legal compliance. If, for example, she said, "I believe our marketing practices are lawful," and actually did think that, she could not be liable for a false statement of fact—even if she afterward discovered a longtime violation of law. Once again, the statement would have been true, because all she expressed was a view, not a certainty, about legal compliance.

*Omnicare*, 575 U.S. at 183–84. Since *Omnicare*, the Second Circuit has applied its reasoning—which arose in the context of a claim for violating Section 11 of the Securities Act—to the falsity analysis in claims (like Hoffman's) under Section 10(b) of the Exchange Act. *See Tongue v. Sanofi*, 816 F.3d 199, 209–12 (2d Cir. 2016).

Here, Hoffman's claims turn on three bundles of purported false statements. First, that Defendants misrepresented or failed to disclose that Lottery.com "lacked adequate internal accounting controls." Compl. ¶ 44. Second, that Defendants misrepresented or failed to disclose that Lottery.com "lacked adequate internal controls over financial reporting pertaining to revenue recognition and the reporting of cash." *Id.* And third, that Defendants misrepresented or failed to disclose that Lottery.com "was not in compliance with state and federal laws governing the sale of lottery tickets." *Id.* On the face of the Complaint itself, all three are statements of opinion.

To start, the November 2021 quarterly Form 10-Q noted errors in historical financial statements "identified by management," and that the company's "certifying officers had concluded that, due solely to the material weakness identified" that led to restating certain financials, Lottery.com's controls were not effective.[6] *Id.* ¶¶ 31–32. The certifying officers— including Mr. Dickinson—"plan[ned] to enhance [Lottery.com's] processes to identify and appropriately apply applicable accounting requirements to better evaluate and understand the nuances of the complex accounting standards that apply to our financial statements." *Id.* ¶ 33. According to the Sarbanes-Oxley certifications that Hoffman trumpets, Dickinson certified that "based on my knowledge," there were not misstatements or omissions in the Form 10-Q. *Id.* ¶ 34; *see also* ¶ 35 (alleging certification by Dickinson "to [his] knowledge"). The same holds true for the weakness in internal control over financial reporting management identified as of Lottery.com's April 1, 2022, Form 10-K filing. *See id.* ¶¶ 37–39. So too with the quarterly Form 10-Q filed on May 16, 2022, and the weakness in controls over financial reporting disclosed there. *See id.* ¶ 41. As before, the representation was about what Dickinson and another officer had "concluded" about the weakness and the remedial efforts. *Id.* ¶¶ 41, 43.[7]

The Complaint rests on the notion that these conclusions were false because the July 2022 SEC filings disclosed the findings of an internal investigation that there had been

---

[6] Paragraph 30 of the Complaint alleges statements in Form 8-K filing with the SEC that Lottery.com had approved a new outside auditor based on a weakness in internal controls identified by management stemming from the TDAC era before Clemenson and Dickinson led the combined entity. *See* Compl. ¶ 30.
[7] The Complaint does not attribute any specific statement—false or otherwise—to Mr. Clemenson.

12

"instances of noncompliance with state and federal laws" governing lotteries and "issues pertaining to the Company's internal accounting controls" and that, based on a review of Lottery.com's revenue-recognition policies and other accounting controls, the company had overstated its "available unrestricted cash balance by approximately $30 million" and "improperly recognized revenue." *See id.* ¶¶ 45, 47. But those disclosures shed no light on whether management's earlier conclusions about the strength of the company's controls or their certifications, based on their knowledge, were false. Just as in *Omnicare*, statements of belief that one's company is in compliance with the law or has robust controls are not actionable without more detail than what Hoffman offers. *See Omnicare*, 575 U.S. at 183–84.

The case of *In re AmTrust Financial Services, Inc. Securities Litigation* is instructive. There, Judge Kaplan applied *Omnicare* in rejecting plaintiffs' claims that management's attestations in the company's Form 10-K and related Sarbanes-Oxley certifications involved actionably false representations about the sufficiency of internal controls. *AmTrust*, No. 17-CV-1545 (LAK), 2019 WL 4257110, at *24–25 (S.D.N.Y. Sept. 9, 2019). These statements, the court ruled, "concern the conclusions of management. Accordingly, they are statements of opinion and plaintiffs must do more than simply allege that the conclusions were wrong. They must allege adequately that [the attesting officers] reached a conclusion different from the one stated, or that defendants reached no conclusion at all." *Id.* at *25. Here, as in *AmTrust*, Hoffman has failed to allege anything beyond conclusory assertions that the Defendants' opinions were not sincerely held or in conflict with known facts. For the same reasons that Hoffman cannot prove scienter, he cannot prove falsity.

The analysis is the same for any suggestion that the Sarbanes-Oxley certifications constituted a guarantee by Dickinson or others that the underlying representations were correct. Plaintiffs in *AmTrust* advanced that argument. In response, Judge Kaplan did not mince words: "Plaintiffs are wrong. The SOX certifications contain an important qualification that the certifying officer's statements are true based on his or her knowledge. The attestation is a statement of opinion. Accordingly, plaintiffs must allege more than that the financial statements

13

themselves were inaccurate. They must allege sufficiently that defendants knew that the financial statements were inaccurate." *Id.* at \*24 (internal quotations, brackets, and footnotes omitted). Hoffman has failed to do so here. Conclusory assertions are no substitute for the detailed pleadings required by Rule 9(b) and the Reform Act explaining what facts contrary to the public statements were known to any Defendant that could have rendered their opinions false.

## D.      Hoffman fails to disentangle the respective roles played by each defendant.

Hoffman's lumping Defendants together without adequately explaining the conduct attributable to each independently requires dismissal. Without that clarity, the Complaint does not provide notice of the alleged claims to the parties he charges with responsibility for wronging him. This is so even under the more liberal plausibility standard under Rule 8(a). The failure is even more concrete when measured against the stringent standards for pleading securities fraud under Rule 9(b) and the Reform Act.

The Supreme Court has explained that, without allegations made on a defendant-by-defendant basis, it is doubtful that a complaint can give "the notice required by Rule 8." *Twombly*, 550 U.S. at 564 n.10 ("[A] defendant seeking to respond to plaintiffs' conclusory allegations … would have little idea where to begin."). Indeed, even before the pleading standards brought about by *Twombly*, the Complaint would not likely have survived a motion to dismiss. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (dismissing complaint "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged").

Here, Hoffman alleges that "the Individual Defendants"—Clemenson, Dickinson, and DiMatteo—had the power to control the content of Lottery.com's SEC filings and access to non-public information, and that they "participated, directly and indirectly, in the conduct of Lottery.com's business affairs." *See* Compl. ¶¶ 22, 64. But he fails to allege who had what information, when they came by that information, or how. Nor does the Complaint tell what any defendant's participation "direct or indirect" in the company's affairs was or how it connected to

14

the allegedly actionable conduct. Yet all are charged with violating Section 20(a) of the Exchange Act. *See id.* ¶¶ 64–68. And all, along with the company itself, are accused of violating Section 10(b). *See id.* ¶¶ 53–62. Indeed, the Complaint alleges no specific conduct by Mr. Clemenson at all. This aggregation is impermissible.

Because Hoffman's allegations do not even meet the *Twombly* standard, they cannot satisfy the particularity requirements of Rule 9(b) and the Reform Act. *See, e.g.*, *In re Galena Biopharma, Inc., Sec. Litig.*, 117 F. Supp. 3d 1145, 1164 n.15 (D. Or. 2015) (dismissing "impermissible allegations attributing something to all Defendants as a single unit" under Rule 9(b)). This failure independently requires dismissal of the Complaint.

**E.      The Section 20(a) claim cannot survive.**

Hoffman's Section 20(a) "control person" liability claim should be dismissed for lack of "a primary violation of the securities laws" by Lottery.com or any other defendant. *In re Inv. Tech. Grp., Inc. Sec. Litig.*, No. 15-cv-6369, 2018 WL 1449206, at *7 (S.D.N.Y. Mar. 23, 2018). Because a Section 20(a) claim depends on such a primary violation, that failure is fatal. *See id.* Separately, Hoffman has failed to allege Clemenson's or Dickinson's scienter, or "culpable participation" in the asserted Section 20(a) violation. *Id.*

**IV.    CONCLUSION**

For the foregoing reasons, Mr. Clemenson and Mr. Dickinson respectfully ask the Court to dismiss Hoffman's Complaint.

15

Dated:  New York, New York
         April 3, 2023

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: *s/Franklin Monsour Jr.*
    Franklin Monsour Jr.
    51 West 52nd Street
    New York, NY 10019
    Tel. 212-506-3512
    fmonsour@orrick.com

    Aaron Brecher (*pro hac vice* pending)
    401 Union Street
    Suite 3300
    Seattle, WA 98101
    Tel. 206-839-4332

*Attorneys for Defendants*
*Matthew Clemenson and Ryan Dickinson*

16