**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE LOTTERY.COM, INC.
SECURITIES LITIGATION

Case No. 22 Civ. 07111 (JLR)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS**
**DIMATTEO, CLEMENSON, AND DICKINSON'S**
**MOTIONS TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 3

I.     The Individual Lottery Defendants' Positions With The Company And Incentives To Approve The TDAC Business Combination ............................................................ 3

II.    The Individual Lottery Defendants' Responsibility For The Company's Class Period Statements .................................................................................................. 5

III.   The Circumstances Of The Individual Defendants' Ignominious Departures From Lottery ...................................................................................................................... 5

ARGUMENT .......................................................................................................................... 7

I.     The Applicable Pleading Standards Disfavor The Motions ....................................... 7

II.    Plaintiffs' Allegations Establish A Strong Inference Of The Individual Lottery Defendants' Scienter ............................................................................................... 7

      A.    Motive And Opportunity ................................................................................ 7

      B.    Conscious Misbehavior And/Or Recklessness .......................................... 8

III.   Plaintiffs Have Sufficiently Alleged That Defendants Made False And/Or Misleading Statements To Investors ........................................................................... 11

IV.   The Individual Lottery Defendants' Arguments Regarding Section 14(a) Are Meritless .................................................................................................................. 12

V.    The AC Sufficiently Pleads Control Person Liability Under Section 20(a) Of The Exchange Act ............................................................................................................ 14

CONCLUSION ...................................................................................................................... 14

i

## TABLE OF AUTHORITIES

**Cases**

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
  741 F. Supp. 2d 511 (S.D.N.Y. 2010) ...................................................................................... 14

*Cohen v. Kitov Pharm. Holdings, Ltd.*,
  2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) ......................................................................... 10

*Desclafani v. Pave-Mark Corp.*,
  2008 WL 3914881 (S.D.N.Y. Aug. 22, 2008) ........................................................................... 4

*Donoghue v. Gad*,
  2022 WL 3156181 (S.D.N.Y. Aug. 8, 2022) ............................................................................. 4

*In re Gilat Satellite Networks, Ltd.*,
  2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005) ......................................................................... 10

*Hsu v. Puma Biotechnology, Inc.*,
  2017 WL 3205774 (C.D. Cal. July 25, 2017) ............................................................................ 8

*Kramer v. Time Warner, Inc.*,
  937 F.2d 767 (2d Cir. 1991) ...................................................................................................... 3

*Lemen v. Redwire Corp.*,
  2023 WL 2598402 (M.D. Fla. Mar. 22, 2023) .......................................................................... 8

*In re MicroStrategy, Inc. Sec. Litig.*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) ...................................................................................... 10

*In re Pattern Energy Grp. Inc. Sec. Litig.*,
  2021 WL 311257 (D. Del. Jan. 28, 2021),
  *report and recommendation adopted*, 2021 WL 765760 (D. Del. Feb. 26, 2021) ............. 12, 13

*Roth v. Armistice Cap., LLC*,
  2022 WL 912942 (S.D.N.Y. Mar. 29, 2022),
  *reconsideration denied*, 2022 WL 4063897 (S.D.N.Y. Sept. 2, 2022) ..................................... 4

*S.E.C. v. Egan*,
  994 F. Supp. 2d 558 (S.D.N.Y. 2014) ...................................................................................... 10

*S.E.C. v. Hurgin*,
  484 F. Supp. 3d 98 (S.D.N.Y. 2020) ........................................................................................ 13

*Set Capital LLC v. Credit Suisse Grp. AG*,
   996 F. 3d 64 (2d Cir. 2021).................................................................................. 8

*In re SLM Corp. Sec. Litig.*,
   740 F. Supp. 2d 542 (S.D.N.Y. 2010).................................................................. 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)......................................................................................... 3, 9

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   195 F. Supp. 3d 528 (S.D.N.Y. 2016)................................................................ 12

*In re Vivendi Universal, S.A. Sec. Litig.*,
   2004 WL 876050 (S.D.N.Y. Apr. 22, 2004)........................................................ 8

*Wietschner v. Monterey Pasta Co.*,
   294 F. Supp. 2d 1102 (N.D. Cal. 2003) ............................................................... 4

*Xu v. Gridsum Holding Inc.*,
   2022 WL 3908006 (S.D.N.Y. Aug. 29, 2022)................................................... 12

*Yannes v. SCWorx Corp.*,
   2021 WL 2555437 (S.D.N.Y. June 21, 2021) ................................................... 11

Lead Plaintiffs RTD Bros LLC, Todd Benn, Tom Benn, and Tomasz Rzedzian, and additional plaintiff Preston Million (collectively, "Plaintiffs"), by and through the undersigned attorneys, respectfully submit this memorandum of law in opposition to: (i) the joint motion to dismiss filed by Defendants Matthew Clemenson ("Clemenson") and Ryan Dickinson ("Dickinson") (ECF Nos. 91-92); and (ii) the individual motion to dismiss filed by Defendant Lawrence Anthony DiMatteo III ("DiMatteo," and together with Clemenson and Dickinson, the "Individual Lottery Defendants") (ECF Nos. 85-86).[1] Plaintiffs incorporate by reference, as if fully set forth herein, all arguments set forth in their contemporaneously filed Memorandum of Law in Opposition to Lottery.com, Inc.'s Motion to Dismiss the Amended Class Action Complaint.

## PRELIMINARY STATEMENT

The Individual Lottery Defendants' motions to dismiss largely mimic Defendant Lottery.com, Inc.'s ("Lottery" or the "Company") arguments in support of dismissal, and therefore fail for the same reasons set forth in Plaintiffs' brief in opposition to Lottery's motion. As such, Plaintiffs avoid retreading ground covered in opposition to Lottery's brief, but briefly address the Individual Lottery Defendants' unique arguments.[2]

---

[1] All references to the Memorandum of Law in Support of Defendants Matthew Clemenson and Ryan Dickinson's Motion to Dismiss Amended Class Complaint (ECF No. 92) appear herein as "Ind. Def. Br. at ____." All references to the Memorandum of Law in Support of Defendant Anthony DiMatteo's Motion to Dismiss Plaintiffs' Amended Class Action Complaint (ECF No. 86) appear herein as "DiMatteo Br. at __." All references to the AC (ECF No. 52) herein appear as "¶ __." All capitalized terms not defined herein shall have the meaning ascribed in the Memorandum of Law in Opposition to Lottery.com, Inc.'s Motion to Dismiss the Amended Class Action Complaint ("Opp. Br." or "Opposition Brief"). Unless otherwise noted, all emphasis is added, and internal case citations and quotations are omitted throughout.

[2] Defendant DiMatteo supports his motion to dismiss with a brief that is largely repetitive of the arguments advanced by Defendants Clemenson and Dickson in their joint motion to dismiss. *Compare* ECF. No. 86 *with* ECF No. 92. Accordingly, this opposition brief primarily addresses DiMatteo's arguments in the context of responding to Defendants Clemenson and Dickinson's joint motion to dismiss. However, all the reasons stated herein requiring the denial of Defendants Clemenson and Dickinson's joint motion apply with equal force to Defendant DiMatteo's motion.

Defendants DiMatteo, Dickinson, and Clemenson – who, respectively, were Lottery's Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO") and Treasurer, and Chief Commercial Officer ("CMO") and Chief Revenue Officer ("CRO") – primarily argue that they did not make the misleading statements at issue, but even if they had, they did not know that their statements were false. In other words, the Individual Lottery Defendants, despite being responsible for Lottery's finances on a daily basis, were just hapless victims of circumstance who did not know that the Company was reporting cash balances that overstated its actual cash on hand by approximately 100% and was misreporting revenues by a similarly massive amount. That argument strains credulity.

The Individual Lottery Defendants signed and/or certified Lottery's financial statements which contained the false and misleading cash and revenue statements, and which Lottery later admitted were untrustworthy and would have to be restated. So, the AC clearly ties each Individual Lottery Defendant to specific actionable misstatements. ¶¶ 31, 91, 104, 109. With respect to statements concerning cash balances, one does not need anything beyond common sense and basic math skills to know that you do not claim that your company has approximately $60 million in cash when the sum of the company's bank accounts is roughly $30 million. As such, it should go without saying that the corporate officers responsible for tracking Lottery's revenues, such as former CRO Clemenson, or for safeguarding the Company's cash, such as former CFO and treasurer Dickinson, were more than capable of grasping the difference between real and imaginary cash balances and revenues.

In this vein, the Individual Lottery Defendants would have this Court believe that their obvious and massive financial reporting errors were merely honest mistakes made while trying to comply with difficult or complex accounting principles. That is not this case, and the strongest

2

inference – by far – is that the Individual Lottery Defendants knowingly lied or were extremely reckless in making/approving Lottery's statements concerning its cash balance and revenues.

Accordingly, for these reasons and for the additional reasons set forth herein, the Court respectfully should deny the Individual Lottery Defendants' motions to dismiss in their entirety.

## STATEMENT OF FACTS

Plaintiffs respectfully incorporate, as if fully set forth herein, the Statement of Facts from their Opposition Brief, and provide the following additional facts pertinent to the Individual Lottery Defendants' motions to dismiss.

I.    **The Individual Lottery Defendants' Positions With The Company And Incentives To Approve The TDAC Business Combination**

Defendant DiMatteo co-founded AutoLotto, Inc. ("AutoLotto"), which conducted business as Lottery.com prior to the Business Combination. ¶ 27. DiMatteo served as an officer and director of the Company since 2015. *Id.* At the time TDAC acquired Lottery, DiMatteo was CEO and Chairman of the Board of Directors (the "Board") and held those positions until his resignation as CEO on July 22, 2022 and his resignation as director on September 8, 2022. ¶ 27. DiMatteo owned approximately 14% of Lottery's shares at the time of the business combination, of which he sold 375,000 prior to the full disclosure of Lottery's fraud.[3] Had the business combination not been

---

[3]   *See* Lottery.com Inc., Proxy Statement (Oct. 18, 2021) at 197, *available at*: https://ir.lottery.com/financials-filings/secfilings?field_nir_sec_date_filed_value=2021&items_p er_page=50#views-exposed-form-widget-sec-filings-table (the "Proxy"); *see also* Ex. 1 to Declaration of Amar Ali (ECF No. 78); Lottery.com Inc., Statement of Changes in Beneficial Ownership (Form 4) (Dec. 6, 2021), *available at*: https://ir.lottery.com/static-files/79fd12d3-5130-45c0-a329-9d4c77432a78.

Courts may consider documents incorporated into the complaint by reference and the matters of which a court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (in securities fraud action, judicial notice may be taken of contents of public disclosure documents required to be filed with SEC). Moreover, even documents that are "necessary to [p]laintiffs' allegations *even if not explicitly referenced in the [c]omplaint*" are likewise suitable for judicial

consummated, which resulted in Lottery being taken public, DiMatteo would not have had the opportunity to dispose of his shares in a liquid market.

Defendant Dickinson joined Lottery in 2018, and was Lottery's President, Treasurer, and CFO from October 2021 until Lottery's Board terminated him on July 1, 2022. ¶ 28.[4] He served as CFO from March 2022 through July 1, 2022. *Id*. According to the Company's 2022 Proxy Statement, Dickinson was to be awarded $35 million in restricted stock upon the completion of the business combination that would vest after an additional six months of employment.[5]

Defendant Clemenson was a co-founder of Lottery and served as its President from 2015 to 2019 and as its Chief Commercial Officer from 2019 until March 2022, at which time he became the Company's Chief Revenue Officer. Clemenson also served as a director from October 2021 until he resigned on July 11, 2022. ¶ 29. Clemenson, like DiMatteo, owned 14% of Lottery's shares and sold 375,000 shares prior to the full disclosure of Lottery's fraud.[6] And, as with DiMatteo, that sale in a liquid public market would not have been possible had TDAC not acquired the Company.

---

notice. *Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1109 (N.D. Cal. 2003). Plaintiffs respectfully request that the Court consider Lottery's SEC filings (also available on the Company's website), including Forms 4, Forms 8-K, and Proxy Statements. *See*, *e.g.*, *Donoghue v. Gad*, 2022 WL 3156181, at *4 (S.D.N.Y. Aug. 8, 2022) (taking judicial notice for Form 4); *Roth v. Armistice Cap., LLC*, 2022 WL 912942, at *2 n.2 (S.D.N.Y. Mar. 29, 2022), *reconsideration denied*, 2022 WL 4063897 (S.D.N.Y. Sept. 2, 2022) (taking judicial notice of Form 8-K); *Desclafani v. Pave-Mark Corp.*, 2008 WL 3914881, at *5 n.7 (S.D.N.Y. Aug. 22, 2008) (taking judicial notice of Proxy Statement).

[4] Dickinson served as acting CFO from October 2021 to March 2022, and CFO from March 2022 until July 2022. ¶ 28.

[5] *See* Lottery.com Inc., Proxy Statement (Schedule 14A) (Apr. 28, 2021) at 23-24, *available at*: https://ir.lottery.com/static-files/08f5e8c0-c5d4-41d1-8887-18f776cab3bf.

[6] *See* Proxy at 197; *see also* Lottery.com Inc., Statement of Changes in Beneficial Ownership (Form 4) (Dec. 6, 2021), *available at*: https://ir.lottery.com/static-files/8cb76371-bddb-48c5-bb15-e4381910fa92.

4

II.     **The Individual Lottery Defendants' Responsibility For The Company's Class Period Statements**

Because of their positions within the Company, the Individual Lottery Defendants each possessed the power and authority to control the contents of, *inter alia*, Lottery's SEC filings/reports and press releases. ¶ 31. The Individual Lottery Defendants—who each had access to material non-public information concerning the Company's finances and business operations—were provided with copies of the filing and press releases that Plaintiffs allege were false and misleading prior to or shortly after their issuance, and had the ability to prevent the dissemination of, or to correct, the false and misleading statements contained therein. *Id.*

During the Class Period, the Individual Lottery Defendants signed several of the Company's SEC filings. For example, all three Individual Lottery Defendants signed the Company's 2021 annual report on Form 10-K, and Dickinson signed the Company's Q1 2022 Form 10-Q. ¶¶ 91, 97. Moreover, Defendants DiMatteo and Dickinson signed certifications pursuant to the Sarbanes-Oxley Act of 2002, for each of Lottery's financial statements issued during the Class Period. ¶ 99.

III.    **The Circumstances Of The Individual Defendants' Ignominious Departures From Lottery**

As noted in Plaintiffs' Opposition Brief, in July 2022 the Company admitted that its financial statements for Q4 2021, full year 2021, and Q1 2022 were unreliable and would have to be restated because, *inter alia*, the Company had massively overstated both its cash on hand and its revenues by $30 million. As a result of these, and other, stunning admissions the Individual Lottery Defendants were terminated or resigned in quick succession. ¶¶ 111-17.

Specifically, on July 1, 2022, the Board terminated Dickinson the day after an independent investigation by outside counsel identified the $30 million overstatement in Lottery's available cash and revenues. ¶ 112. Notably, in a separate litigation, Lottery had admitted that "its available

5

unrestricted cash balance had been overstated by approximately $30 million by the actions of [Dickinson], which actions were undertaken without the knowledge of [Lottery's] Audit Committee." *Id.*[7] Shortly thereafter, Clemenson and DiMatteo resigned on July 15, 2022 and July 2022, respectively. ¶ 134.

Tellingly, two of Lottery's independent directors stated that the events leading to the Individual Lottery Defendants' departures could not be chalked up to mere incompetence or mismanagement, but were indicative of "potentially inappropriate activity."[8] Further still, those independent directors resigned due to the fact they were "consistently obstructed by opaque and contrived processes" in seeking to remedy the failures that led the Company to massively overstate its cash balance and revenues. *Id.*

Finally, the Individual Lottery Defendants' departures were punctuated by the resignation of Lottery's independent auditor, Armanino, on September 27, 2022, which Lottery disclosed in a Form 8-K, filed on October 6, 2022. Armanino explained that its decision stemmed from the fact that it was "unable to rely on the representations of management" due to "facts and circumstances" pertaining to management's resignations. ¶ 115. Although not made explicit, Armanino appeared to be referring to management's misconduct as revealed by the independent investigation by Lottery's outside counsel.

---

[7] Even after his termination, Dickinson's alleged misbehavior did not end. Specifically, Lottery Audit Committee Director Richard Kivel accused Dickinson and Clemenson of engaging in a plot to subvert the Board's control over the Company by cooperating with the then-current management and potential Lottery investors to, among other things, set up a competing company with Lottery assets without Board approval. *See* Lottery.com Inc., Current Report (Form 8-K) (Nov. 9, 2022), *available at*: https://ir.lottery.com/static-files/45a1ca9b-9f02-41fb-b26a-2952c6f7a4f4 (annexing resignation letter of Richard Kivel dated November 4, 2022).

[8] Lottery.com Inc., Current Report (Form 8-K) (Sept. 9, 2022), *available at*: https://ir.lottery.com/static-files/763fb1f5-208d-4a54-9b64-dba885f0ec20 (annexing resignation letters of Lisa Borders (Ex. 17.1) and William C. Thompson, Jr. (Ex. 17.3)).

# ARGUMENT

## I.       The Applicable Pleading Standards Disfavor The Motions

Plaintiffs respectfully incorporate by reference their discussion of the applicable pleading standards set forth in their Opposition Brief (Opp. Br. at Section III.A), including their discussion of the standards applicable to pleading falsity (*id.* at Section III.B.1) and scienter (*id.* at Section III.B.2).

## II.      Plaintiffs' Allegations Establish A Strong Inference Of The Individual Lottery Defendants' Scienter

A securities fraud plaintiff can plead a strong inference of scienter through allegations of (i) motive and opportunity or (ii) conscious misbehavior or recklessness, either of which is independently sufficient. *See* Opp. Br. at Section III.B.2. Here, Plaintiffs' allegations establish the Individual Lottery Defendants' scienter under both prongs.

### A.      Motive And Opportunity

According to the Individual Lottery Defendants, Plaintiffs' motive allegations are insufficient because they purportedly do not describe any "concrete benefits" that the Individual Lottery Defendants stood to gain from the fraud, and instead merely describe incentives possessed by nearly all corporate insiders. Ind. Def. Br. at 8-9. This is incorrect.

Defendant Dickinson was awarded $35 million in restricted stock, which was contingent on the business combination occurring and TDAC acquiring Lottery.[9] That stock grant dwarfed his non-contingent salary of $500,000 (which doubled in expectation of the merger). *Id.* Defendants DiMatteo and Clemenson, who both owned about 14% of Lottery at the time of the merger, each sold 375,000 shares shortly after the business combination was completed. *See* n.3,

---

[9] *See* Lottery.com Inc., Definitive Proxy Statement (Schedule 14A) (Apr. 28, 2022) at 23-24, *available at*: https://ir.lottery.com/static-files/e96a5128-c8e9-438a-a573-509be0e7644a.

7

5, *supra*. But for the completion of the combination of the business combination and Lottery being taken public, DiMatteo and Clemenson would not have been able to divest themselves of such a substantial number of shares in a liquid market.

Accordingly, Plaintiffs adequately allege that the Individual Lottery Defendants were motivated to deceive investors as to the true state of Lottery's affairs, because they stood to benefit personally from the consummation of the business transaction. *See* Opp. Br. at Section III.B.2.a (citing *Hsu v. Puma Biotechnology, Inc.*, 2017 WL 3205774, at *4 (C.D. Cal. July 25, 2017) (allegation that pending transaction would personally benefit defendants supported scienter); *see also Lemen v. Redwire Corp.*, 2023 WL 2598402, at *4 (M.D. Fla. Mar. 22, 2023) (same)).[10]

### B.    Conscious Misbehavior And/Or Recklessness

Plaintiffs have also pled scienter because the Individual Lottery Defendants "knew facts or had access to information suggesting that their public statements were not accurate." *Set Capital LLC v. Credit Suisse Grp. AG*, 996 F. 3d 64, 79 (2d Cir. 2021). Plaintiffs' arguments establishing the Individual Lottery Defendants' knowledge/access are detailed in their brief in opposition to Lottery's motion to dismiss and are adopted by reference as if fully set forth herein. Although the Individual Lottery Defendants' arguments are largely repetitive of Lottery's arguments, a few points merit specific discussion.

*First*, like Lottery, the Individual Lottery Defendants parse out each individual factor and argue that each in a vacuum is not sufficient to yield a strong inference of scienter. *See* Ind. Def.

---

[10] *See In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 557 (S.D.N.Y. 2010) (merger transcended "a generic corporate desire to negotiate favorable terms" and alleged a "concrete and personal benefit"); *In re Vivendi Universal, S.A. Sec. Litig.*, 2004 WL 876050, at *8 (S.D.N.Y. Apr. 22, 2004) ("the ability of Vivendi to maintain and expand its enterprise [is] an aim that is clearly distinguishable from the more general motives that have been held insufficient to support scienter.").

Br. at 10-12. But that approach is simply contrary to the Supreme Court's instruction that the scienter analysis is holistic. *See Tellabs*, 551 U.S. at 322-23, 326. Even if the Individual Lottery Defendants were correct that there is no one allegation that, standing alone, suffices, Plaintiffs' allegations taken collectively easily give rise to a strong inference of scienter. Those factors include, *inter alia*, the fact that: (i) the misleading information related directly to the Individual Lottery Defendants' official responsibilities; (ii) it is facially implausible that the CFO and CRO, at a minimum, were unaware of the fact that Lottery had massively overstated its cash and revenues; (iii) the fraud was massive and concerned basic and obvious accounting violations; (iv) the Individual Lottery Defendants were terminated/resigned in close proximity to the disclosure of the fraud; and (v) Lottery's independent accounting firm resigned because it could not trust management's representations. *See generally* Opp. Br. at Section III.B.2.b.

*Second*, the Individual Lottery Defendants brazenly argue that it is currently unknowable whether they were ever informed that Lottery's "discretionary judgments involved in recognizing revenue were flawed," because the AC does not identify "a single legal opinion on compliance, piece of advice from an outside auditor or internal accounting professional" alerting them to these flaws. Ind. Def. Br. 12. This is nonsense. The CEO, CFO, and CRO of a company do not need accounting experts to tell them that they cannot claim that their company has two dollars in the bank when it only has one. Nor do they need any specialized insight to know that a company cannot report revenues for a sale that was either entirely fictional or never consummated. While there are undoubtedly cases where the misstatements at issue involve esoteric and highly complex accounting principles, this is not that case. There is no "discretionary judgment" to be had in reporting the amount of cash a company has on hand. Rather, here, the Individual Lottery Defendants had a binary choice: correctly report that Lottery had a cash balance of approximately

9

$30 million or lie and claim that it had approximately $60 million.[11] The Individual Lottery Defendants chose the latter. Courts routinely find far less egregious conduct to constitute recklessness. *See Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 546 (S.D.N.Y. 2017) ("***This case is not about complex accounting judgments*** over which reasonable minds can differ.").[12]

*Finally*, the Individual Lottery Defendants' argument that their termination/resignations do not support scienter because Plaintiffs did not allege some indicia of highly unusual or suspicious circumstances, is similarly meritless. Defendant Dickinson was terminated in July 2022, *one day* after independent investigators revealed the massive and obvious financial reporting errors discussed above. Lottery itself has admitted in another lawsuit that "its available unrestricted cash balance had been overstated by approximately $30 million by the actions of [Dickinson] . . . ." ¶ 112. DiMatteo and Clemenson resigned the same month as Dickinson's termination, which was followed shortly thereafter by the resignation of Lottery's auditor because, in its words, it was unable to trust the representations of management. ¶¶ 115, 134, 150. Accordingly, the Individual

---

[11] As discussed in the Opposition Brief, Lottery was a small company with as few as seven full time employees. *See* Opp. Br. at Section III.B.2.b. As such, it is implausible Defendants DiMatteo and Clemenson—as Lottery's co-founders, CEO and CRO, and largest shareholders—were unaware of Lottery's true cash holdings and revenues at the time of their misstatements. *See id.* (citing *Cohen v. Kitov Pharm. Holdings, Ltd.*, 2018 WL 1406619, at *9 (S.D.N.Y. Mar. 20, 2018) ("position as CEO in a small organization" among other factors "give[s] rise to a plausible inference . . . .")).

[12] *S.E.C. v. Egan*, 994 F. Supp. 2d 558, 566 (S.D.N.Y. 2014) ("a complaint alleging that a defendant is responsible for revenue recognition policies during a time of large-scale, long-term GAAP violations sufficiently alleges circumstantial evidence of actual knowledge"); *In re Gilat Satellite Networks, Ltd.*, 2005 WL 2277476, at *20 (E.D.N.Y. Sept. 19, 2005) ("GAAP violations that involve the premature recognition of revenue have been said to suggest a conscious choice to recognize revenue in a manner improper, and may therefore support a stronger inference of scienter. This is because premature revenue recognition, unlike other types of GAAP violations, is less likely to be an inadvertent mistake."); *see also*, *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 637 (E.D. Va. 2000) ("***GAAP rules . . . violated in this case are not complex . . . .***").

Lottery Defendants' bid to equate their ignominious departures from Lottery to situations where a corporate officer's tenure ends due to poor stewardship or minor accounting irregularities rings hollow—especially in the context of the numerous other facts that bespeak fraudulent intent. *See* Opp. Br. at Section III.B.2.b (citing, *inter alia*, *Yannes v. SCWorx Corp.*, 2021 WL 2555437, at *6 (S.D.N.Y. June 21, 2021) ("the timing and circumstances of resignations . . . can add to a pleading of circumstantial evidence of fraud.")).

### III.      Plaintiffs Have Sufficiently Alleged That Defendants Made False And/Or Misleading Statements To Investors

As with their scienter arguments, the Individual Lottery Defendants' arguments regarding falsity are largely, if not entirely, repetitive of Lottery's arguments on this issue. Accordingly, Plaintiffs respectfully incorporate, as if fully set forth herein, their arguments establishing falsity in their brief in opposition to Lottery's motion to dismiss.

The Individual Lottery Defendants do, however, push the envelope a bit further than Lottery, arguing that Plaintiffs cannot allege the falsity of the Individual Lottery Defendants' statements concerning their cash balance and reported revenues because Plaintiffs have not pled that "a particular accounting principle objectively was the *only* correct guidance to apply." Ind. Def. Br. at 17 (emphasis in original). But this is not a case where Lottery and the Individual Lottery Defendants chose between competing, acceptable accounting methods, or pursued an erroneous accounting method in good faith. Simply put, there is no accounting principle that permits a company to claim that it has cash in hand *that does not exist*. *See generally* Opp. Br. at Section III.B.2.b.

Finally, to the extent the Individual Lottery Defendants claim that they were not "speakers," that assertion is clearly incorrect. For example, all three Individual Lottery Defendants signed the Company's 2021 annual report on Form 10-K and Dickinson signed the Company's Q1

11

2022 Form 10-Q. ¶¶ 91, 97. Moreover, Defendants DiMatteo and Dickinson signed certifications pursuant to the Sarbanes-Oxley Act of 2002, for each of Lottery's financial statements issued during the Class Period after the Business Combination. ¶ 99. *See Xu v. Gridsum Holding Inc.*, 2022 WL 3908006, at *5 (S.D.N.Y. Aug. 29, 2022) ("In the *post-Janus* world, an executive may be held accountable where the executive had ultimate authority over the company's statement; signed the company's statement; ratified and approved the company's statement; or where the statement is attributed to the executive."); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 541 (S.D.N.Y. 2016) ("What is more, courts consistently hold that signatories of misleading documents 'made' the statements in those documents, and so face liability under Rule 10b-5(b).").

## IV.   The Individual Lottery Defendants' Arguments Regarding Section 14(a) Are Meritless

Plaintiffs respectfully incorporate by reference, as if fully set forth herein, the arguments set forth in their brief in opposition to Lottery's motion to dismiss, explaining that Plaintiffs have pled an actionable Section 14(a) claim. The Individual Lottery Defendants non-repetitive arguments are also meritless and should be rejected.

The Individual Lottery Defendants suggest that they are not liable under Section 14(a) because the AC fails to identify what roles the Individual Lottery Defendants played in the issuance of the false or misleading Proxy. *See* Ind. Def. Br. at 18. This attempt to sidestep the statute is unavailing.

"To find liability under Section 14(a), courts require at least 'a substantial connection between the use of the person's name and the solicitation effort.'" *In re Pattern Energy Grp. Inc. Sec. Litig.*, 2021 WL 311257, at *17 n.13 (D. Del. Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 765760 (D. Del. Feb. 26, 2021). Such a connect exists "where the party that

12

will gain control through a transaction reviewed the proxy and allowed the use of his name, which carried the weight of his 'reputation as a businessman' and his 'plans for [the company].'" *Id.*

"In short, a Section 14(a) plaintiff must plead some facts plausibly suggesting that a defendant either itself participated in the solicitation effort or, at a minimum, 'put [its] reputation[ ] in issue' by supporting the proxy." *Id.*; *see also S.E.C. v. Hurgin*, 484 F. Supp. 3d 98, 117 (S.D.N.Y. 2020).

The Southern District of New York's opinion in *S.E.C. v. Hurgin* is instructive. That case involved a merger between Cambridge Capital Acquisitions Corporation ("Cambridge") and Ability, Inc. ("Ability"). The SEC brought a 14(a) claim arising from a proxy issued by Cambridge but named as a defendant the co-founder and chief technology officer ("CTO") of Ability, named Aurovsky. The Court refused to dismiss the claim against Aurovsky, explaining that:

> Aurovsky insists that he was barely involved in the merger, but the Commission pleads enough facts about his involvement to survive his motion to dismiss its negligence-based claims against him. It alleges that Aurovsky was a 50% owner of Ability, his consent was necessary for the merger to take place, and he became a co-controlling shareholder, CTO, and a board member of [the post-merger entity]. He signed the Merger Agreement, which included representations and warranties made by Ability and its shareholders . . . to Cambridge, which were required to be true and correct both at the time of agreement was entered into and at the closing date of the business combination.

*Id.* at 117-18. Just as in *Hurgin*, the Individual Lottery Defendants here provided information— representations regarding Lottery's finances, for instance—that were included in the Proxy and were required to be true and correct at the time they were issued. And they were given high-level positions in the Company following the Business Combination. They allowed their names to be used, they stood to gain—and did gain—control over the Company, and the Proxy carried their weight as businesspeople. They are thus liable under Section 14(a). *See Pattern Energy*, 2021 WL

13

311257, at *17 n.13. The purported failure of the AC to "identify the roles" they played is both inaccurate and irrelevant.

**V.      The AC Sufficiently Pleads Control Person Liability Under Section 20(a) Of The Exchange Act**

The Individual Lottery Defendants do not challenge that they are control persons—nor could they. Rather, they assert that a control person violation under Section 20(a) of the Exchange Act cannot attach to them because Plaintiffs have not pled a primary violation. Ind. Def. Br. at 19; DiMatteo Br. at 10. This is demonstrably false for all of the reasons set forth in this Opposition. As the AC adequately alleges a primary violation of both sections 10(b) and 14(a), the §20(a) claims must not be dismissed. *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 534 (S.D.N.Y. 2010).

## CONCLUSION

For the foregoing reasons, the motions to dismiss of Defendant DiMatteo (ECF No. 86) and Defendants Clemenson and Dickinson (ECF No. 92) should be denied in their entirety.

Dated: May 18, 2023                                By: /s/ *Casey E. Sadler*

**GLANCY PRONGAY & MURRAY LLP**
Casey E. Sadler (admitted *pro hac vice)*
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

*Counsel for Lead Plaintiffs RTD Bros LLC,*
*Todd Benn, Tom Benn, and Tomasz Rzedzian*
*and Lead Counsel for the Class*

**KIRBY McINERNEY LLP**
Andrew M. McNeela
Thomas W. Elrod
Ira M. Press
250 Park Avenue, Suite 820
New York, York 10177
Telephone: (212) 371-6600
Email: amcneela@kmllp.com
        telrod@kmllp.com
        ipress@kmllp.com

**BERGER MONTAGUE PC**
Sherrie R. Savett
Michael Dell'Angelo
Andrew D. Abramowitz
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: ssavett@bm.net
mdellangelo@bm.net
aabramowitz@bm.net

*Counsel for Additional Plaintiff*

15

## PROOF OF SERVICE

I hereby certify that on this 18th day of May 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Casey E. Sadler*
Casey E. Sadler