**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: LOTTERY.COM, INC. SECURITIES LITIGATION | Case No. 1:22-cv-07111 (JLR) |

**REPLY IN SUPPORT OF DEFENDANT LOTTERY.COM, INC.'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

Lars L. Berg
Texas State Bar No. 00787072
lars.berg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 878-3503
Facsimile: (817) 878-9280
*Admitted Pro Hac Vice*

Steven P. Benenson
New York State Bar No. 5378773
SPBenenson@pbnlaw.com
PORZIO, BROMBERG & NEWMAN, PC
1675 Broadway, Suite 1810
New York, New York 10019-3800
(212) 265-6888

ATTORNEYS FOR LOTTERY.COM, INC.

7380674

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................1

   A.   Plaintiffs have not identified the false statements with particularity. ...................1

   B.   The ACAC does not plead contemporaneous falsity. ..........................................2

   C.   Plaintiffs' scienter allegations fall far short of a "strong inference" of fraud.....................3

      1.   Motive and opportunity have not been sufficiently alleged....................................3

      2.   Conscious misbehavior and/or recklessness allegations fall short. ........................4

      3.   Fraud is not the more compelling inference. ...........................................7

   D.   Lottery.com's revenue forecasts and projections are not actionable. ................7

   E.   Plaintiffs have not pled a viable omissions theory..............................................8

   F.   The risk disclosures in the Proxy were more than adequate and not misleading. ...............9

   G.   Lottery.com's statements on legal compliance are not actionable. ...................10

7380674

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AES Corp. Sec. Litig.*,
825 F. Supp. 578 (S.D.N.Y. 1993) ............................................................................................9

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004)........................................................................................6

*In re BioScrip, Inc. Sec. Litig.*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015)..........................................................................................6

*In re BISYS Sec. Litig.*,
397 F. Supp. 3d 430 (S.D.N.Y. 2005)........................................................................................7

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
506 F. App'x 32 (2d Cir. 2012) .................................................................................................1

*Born v. Quad/Graphics, Inc.*,
521 F. Supp. 3d 469 (S.D.N.Y. 2021)........................................................................................1

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (2d Cir. 2004) ..........................................................................................4

*In re Bristol-Myers*,
No. 21-CV-8255 (JMF), 2023 WL 2308151 (S.D.N.Y. Mar. 1, 2023) ....................................6

*City of Brockton Ret. Sys. v. Avon Prod., Inc.*,
No. 11 Civ. 4665 (PGG), 2014 WL 4832321 (S.D.N.Y. 2014) ...............................................6

*City of Coral Springs Police Officers' Ret. Plan v. Fartech Ltd.*,
565 F. Supp. 3d 478 (S.D.N.Y. 2021).......................................................................................7

*City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*,
814 F. Supp. 2d 395 (S.D.N.Y. 2011).......................................................................................3

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Entertainment Inc.*,
477 F. Supp. 3d 123 (S.D.N.Y. 2020).......................................................................................5

*ECA, Loc. 134 IBEW Joint Penson Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009).................................................................................................4, 10

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
No. 20-CV-9992 (PAC), 2021 WL 4443258 (S.D.N.Y. 2021) ...............................................8

7380674

*In re Ferroglobe PLC Sec. Litig.*,
No. 1:19-CV-00629 (RA), 2020 WL 6585715 (S.D.N.Y. Nov. 10, 2020) ...............................5

*Fresno Cty. Emp. Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017)......................................................................................6

*Furlong Fund LLC v. VBI Vaccines, Inc.*,
No. 14-CV-9435 (SHS), 2016 WL 1181710 (S.D.N.Y. Mar. 25, 2016) ..................................8

*Hadar v. Concordia Yacht Builders, Inc.*,
No. 92 Civ. 3768 (RLC), 1997 WL 436464 (S.D.N.Y. Aug. 4, 1997)......................................8

*In re Hebron Technology Co. Ltd. Sec. Litig.*,
No. 20 Civ. 4420 (PAE), 2021 WL 4341500 (S.D.N.Y. Sept. 22, 2021)................................6

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016).......................................................................................................9

*Kusnier v. Virgin Galactic Holdings, Inc.*,
No. 21-CV-03070 (ARR), 2022 WL 16745512 (E.D.N.Y. Nov. 7, 2022)...............................1

*Lipow v. Net1 UEPS Techs., Inc.*,
131 F. Supp. 3d 144 (S.D.N.Y. 2015).................................................................................5, 6

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014).......................................................................................2

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
26 F. Supp. 3d 278 (S.D.N.Y. 2014)...................................................................................6, 7

*In re Marsh & Mclennan Cos., Inc. Sec. Litig.*,
501 F. Supp. 452 (S.D.N.Y. 2006) .........................................................................................5

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
135 U.S. 175 (2015)...............................................................................................................10

*Ressler v. Liz Claiborne, Inc.*,
75 F. Supp. 2d 43 (E.D.N.Y. 1998) .....................................................................................2, 3

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)................................................................................................4, 7

*S.E.C. v. Espuelas*,
908 F. Supp. 2d 402 (S.D.N.Y. 2012)......................................................................................2

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Phillip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996).......................................................................................................2

7380674

*Silvercorp Metals, Inc. Sec. Litig.*,
 26 F. Supp. 3d 266 (S.D.N.Y. 2014)....................................................................................3, 4

*In re SunEdison, Inc. Sec. Litig.*,
 300 F. Supp. 3d 444 (S.D.N.Y. 2018).......................................................................................8

*Van Dongen v. CNinsure Inc.*,
 951 F. Supp. 2d 457 (S.D.N.Y. 2013).......................................................................................3

*Wexner v. First Manhattan Co.*,
 902 F.2d 169 (2d Cir. 1990).....................................................................................................3

*Wyche v. Advanced Drainage Sys., Inc.*,
 2017 WL 971805 (S.D.N.Y. 2017)...........................................................................................2

iv

7380674

## I.  INTRODUCTION

To bolster the thin allegations in the Amended Class Action Complaint ("ACAC"), Plaintiffs attempt to lead the Court astray with misstatements of the facts and law. Plaintiffs' block quotes and purported "emphasis" do not identify the alleged false statements with particularity. There are no allegations establishing that Lottery.com's statements were false when made. Most importantly, no matter how nefariously Plaintiffs label Lottery.com's accounting errors, the ACAC does not establish a "strong inference" of scienter. The pleading standards under Rule 9(b) and the PSLRA are rightfully difficult for Plaintiffs to satisfy and favor dismissal of Plaintiffs' claims.

**A.**    **Plaintiffs have not identified the false statements with particularity.**

Ignoring the fact that the ACAC is replete with block quotations from Lottery.com's public statements spanning multiple paragraphs, Plaintiffs contend they have identified with particularity the false statements made the basis of their claims by adding "emphasis" in their block quotes and then "explaining" why the statements were false. Adding emphasis through bold or italicized text in a length quotation does not identify the false statements with particularity. *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 38 (2d Cir. 2012) ("block quotations with italicized text" failed to plead with particularity). Moreover, Plaintiff's purported "explanation" for why the alleged statements are false is nothing more than canned and conclusory allegations that were repeated after *each* purported block quote. Courts in the Second Circuit do not permit this practice. *Id.*; *see also Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 478 (S.D.N.Y. 2021) (rejecting practice of "selective" bolding in block quotations and "substantially similar paragraph" following each block quote that contained generalized, conclusory allegations for why statements were false).[1]

---

[1] The complaint in *Kusnier v. Virgin Galactic Holdings, Inc.*, on which Plaintiffs rely, did not contain boilerplate and conclusory allegations regarding falsity and is therefore readily distinguishable. No. 21-CV-03070 (ARR), 2022 WL 16745512, at *8 (E.D.N.Y. Nov. 7, 2022).

1

**B.**      **The ACAC does not plead contemporaneous falsity.**

Plaintiffs contend that that contemporaneous falsity was established *ipso facto* regarding Lottery.com's cash position and revenues simply because Lottery.com restated its financial statements. But a "statement believed to be true when made, but later shown to be false, is insufficient." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014). Thus, contemporaneous falsity must be distinguished from a non-actionable mistake. *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Phillip Morris Cos.*, 75 F.3d 801, 813 (2d Cir. 1996). Even Plaintiffs' cases make clear that restated financials are "not an admission of wrongdoing." *S.E.C. v. Espuelas*, 908 F. Supp. 2d 402, 410 (S.D.N.Y. 2012). Without concrete factual allegations establishing that "a defendant had possessed and ignored contrary facts or obvious red flags," the mere existence of restated financials is not actionable. *Wyche v. Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *16 (S.D.N.Y. 2017). Other than its speculative and unsupported allegation that Lottery.com "knew" that its revenue projection "was overstated," the ACAC does not allege Lottery.com had and ignored contrary facts. ACAC, ¶ 64.

Plaintiffs take a similar position as to the alleged contemporaneous falsity of Lottery.com's statements about its internal controls and compliance with laws, arguing that the Company conceded that its prior statements were false when made by later acknowledging "issues pertaining to the Company's internal accounting controls" and disclosing "prior instances of non-compliance." [Plaintiff's Opposition, ECF 95 at 10]. But Plaintiffs have identified no "specific contemporaneous data or information known to [Lottery.com] that was inconsistent with the representation in question." *Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 52 (E.D.N.Y. 1998). The "mere disclosure of adverse information shortly after a positive statement does not support a finding that the prior statement was false at the time it was made." *Id.* Moreover, although Plaintiffs argue they should be granted leeway because "the requirements of Rule 9(b) are relaxed as to

2

matters particularly within the opposing party's knowledge" (citing *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,* 398 F. Supp. 2d 244, 255 (S.D.N.Y. 2005)), this exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). Thus, without allegations of "specific facts supporting a strong inference of fraud," a complaint "will not satisfy even a relaxed pleading standard." *Id.*

Here, the ACAC contains no specific allegations about any contrary information known to Lottery.com when it made alleged misstatements about its internal controls and compliance with laws. Moreover, Lottery.com's subsequent admission of legal violations does not absolve Plaintiffs' duty to identify with specificity *what* laws were violated and *how* they were violated.

**C.      Plaintiffs' scienter allegations fall far short of a "strong inference" of fraud.**

**1.      Motive and opportunity have not been sufficiently alleged.**

Plaintiffs contend Defendants were motivated to lie to "artificially inflate" the Company's stock prior to its public offering. Opposition at 15. Plaintiffs' cases do not support this proposition. For example, in *Van Dongen v. CNinsure Inc.*, the executives *personally* sold stock and therefore *directly* benefitted from the public offering, a situation not present here. 951 F. Supp. 2d 457, 474–76 (S.D.N.Y. 2013). In *City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*, the court found motive through an IPO it concluded could "clearly be characterized as unusual insider trading activity during the class period," which Plaintiffs have not alleged here. 814 F. Supp. 2d 395, 421 (S.D.N.Y. 2011). And in *Silvercorp Metals, Inc. Sec. Litig*., the inference of scienter resulted not from motive but from "extensive allegations of circumstantial evidence of recklessness and misconduct." 26 F. Supp. 3d 266, 275 (S.D.N.Y. 2014). Indeed, the *Silvercorp.* court characterized the motive to lie based on a stock offering as speculation. *Id.* Significantly, the majority of the alleged misstatements upon which Plaintiffs rely occurred *after* the Business

3

Combination and IPO were completed. ACAC, ¶¶ 73–100. As a result, there is no temporal connection between the purported motive and alleged misstatements.

Citing to cases outside the Second Circuit, Plaintiffs also argue that Defendants stood to personally gain from the Business Combination and point specifically to alleged "earnout" awards that the Individual Defendants would allegedly receive upon completion of the Business Combination. Opposition at 16 (citing ACAC, ¶ 140). But the Second Circuit "has rejected the use of performance-based compensation as evidence of motive." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (2d Cir. 2004).

Most importantly, any inference of scienter based on motive is undermined because there is no allegation that Defendants engaged in unusual stock sales, which are generally required to establish motive. *ECA, Loc. 134 IBEW Joint Penson Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). The absence of such sales evidences that the Defendants "shared the pain" when the Company's stock collapsed. *Rombach v. Chang*, 355 F.3d 164, 177 (2d Cir. 2004). Plaintiffs do not refute these authorities.

### 2. Conscious misbehavior and/or recklessness allegations fall short.

Having failed to establish any motive whatsoever, the "strength of the circumstantial allegations" regarding conscious misbehavior and/or recklessness "must be correspondingly greater." *ECA*, 553 F.3d at 199. Plaintiffs do not allege a concrete and personal benefit to Lottery.com, any illegal behavior, or any failure to check information which the Company had a duty to monitor. Thus, Plaintiffs must establish scienter solely through their contention that Lottery.com knew or had access to information suggesting that its public statements were false.

Plaintiffs contend there is a strong inference of scienter because "Lottery admitted that its financial disclosures wrongfully included $30 million in cash holdings and revenues." Opposition, at 16. But Plaintiffs rely on cases in which the defendants admitted facts, that, according to

4

Plaintiffs "were previously known to them and that were contrary to their class period statements." *See id.* Here, there is no allegation in the ACAC that Lottery.com had "*specific* contradictory information . . . *at the same time* [it] made [the] misleading statements," as required in the Second Circuit. *In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 452, 484 (S.D.N.Y. 2006) (emphasis added). Indeed, Lottery.com's corrective disclosure resulted from an internal investigation conducted *after* the original disclosures. ACAC, ¶ 134. Courts in the Second Circuit have regularly rejected the "fraud by hindsight" allegations made by Plaintiffs here. *See, e.g.*, *In re Ferroglobe PLC Sec. Litig.*, No. 1:19-CV-00629 (RA), 2020 WL 6585715, at *6 (S.D.N.Y. Nov. 10, 2020).

Despite the lack of any allegation of specific contradictory information in Lottery.com's possession, Plaintiffs contend they can establish scienter through other ways. *First*, Plaintiffs contend that a corporate officer's access to contrary information can be inferred because it "beggars belief" that such officers would not have known that Lottery.com cash holdings and revenues were overstated. Opposition at 17. Plaintiffs are wrong.[2] "Plaintiff[s] must do more than allege that the Individual Defendants had or should have had knowledge of certain facts contrary to their public statements simply by virtue of their high-level positions." *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015). This is true even where, as here, Plaintiffs allege that the information goes "to the core" of the Defendants' business and the company is relatively small. *Id.*; *In re Hebron Technology Co. Ltd. Sec. Litig.*, No. 20 Civ. 4420 (PAE), 2021 WL 4341500, at *22 (S.D.N.Y. Sept. 22, 2021) (rejecting "small company" argument). "Courts in

---

[2] For example, in *City of Warren Police & Fire Ret. Sys. v. World Wrestling Entertainment Inc.*, on which Plaintiffs' rely, the defendant's knowledge of the termination of an "important contract" was not inferred. 477 F. Supp. 3d 123, 136 (S.D.N.Y. 2020). Rather, "a representative of WWE [] admitted that WWE itself negotiated . . . the early termination" and the admission "discusse[d] documentary evidence . . . indicating that a number of internal document[s] referenced the termination." Nothing of the sort exists in this case.

5

this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *City of Brockton Ret. Sys. v. Avon Prod., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at \*19 (S.D.N.Y. 2014).

*Second*, Plaintiffs argue that "improper revenue recognition" and the need to restate prior financial statements is "especially indicative of conscious misbehavior." Opposition at 18. Again, Plaintiffs are misguided. "[T]he publication of inaccurate financial results . . . that [are] restated . . . cannot support a strong inference of scienter sufficient to maintain a claim." *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 298 (S.D.N.Y. 2014).

*Third*, Plaintiffs improperly rely on the magnitude of the alleged fraud and the core operations theory. Plaintiffs cannot demonstrate scienter by pointing to the size of the alleged fraud or by noting "that an area of the business was vital to the company." *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 738 (S.D.N.Y. 2015) (rejecting argument that "Defendants *must have known* their statements to have been untrue due to the segment's significance and the size of the client"). It is also "far from clear that the core operations doctrine remains valid in light of the PSLRA." *In re Bristol-Myers*, No. 21-CV-8255 (JMF), 2023 WL 2308151, at \*6 (S.D.N.Y. Mar. 1, 2023). Plaintiffs refute none of these authorities. Instead, Plaintiffs cite to cases stating that the size of the purported fraud "may" be relevant to the scienter inquiry, but those cases involved accounting errors of much greater magnitude than at issue here.[3]

*Fourth*, Plaintiffs rely on the resignations of Lottery.com's executives and its auditor to support scienter. Opposition at 19. Scienter claims based on the resignation of executives "shortly

---

[3] *See, e.g.*, *Fresno Cty. Emp. Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 553 (S.D.N.Y. 2017) (inferring scienter when restatement wrote off 100% of an entire accounting category equivalent to $43 million in revenue); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489 (S.D.N.Y. 2004) (inferring scienter when restatement "transformed . . . a company with retained earnings of approximately $185 million to a company with an accumulated deficit of approximately $178 million").

6

before and/or coterminous" with disclosure of financial shortfalls are insufficient. *In re BISYS Sec. Litig.*, 397 F. Supp. 3d 430, 446–47 (S.D.N.Y. 2005). This is because "there are any number of reasons that an executive may resign, most of which are not related to fraud." *Id.* In the same vein, the Board of Directors' termination of Dickinson the day after Lottery.com's outside counsel identified the Company's revenue overstatement does not support scienter absent other allegations specifically connecting Dickinson's termination to the alleged fraud. Neither allegation sufficiently establishes scienter.

### 3.    Fraud is not the more compelling inference.

Even considered collectively, Plaintiffs' scienter allegations do not meet the PSLRA's high threshold. *In re BISYS*, plaintiffs failed to establish scienter despite allegations that defendants held executive-level positions at the company while it had inflated revenues by over 20%, sold company shares for a profit during the relevant period, and resigned when the company disclosed improper accounting and issued restated financials. *Id.* Here, there is no allegation that any Defendant sold shares for a profit while the Company's stock collapsed. Moreover, Lottery.com's made corrective disclosures and implemented remedial measures. Finally, Lottery.com made investors aware that it could not ensure that the Company complied with lottery laws and regulations and that it lacked adequate internal controls. These circumstances refute any inference of scienter. *Rombach*, 355 F.3d at 177; *Magnum Hunter*, 26 F. Supp. 3d at 297–98; *City of Coral Springs Police Officers' Ret. Plan v. Fartech Ltd.*, 565 F. Supp. 3d 478, 490 (S.D.N.Y. 2021).

### D.    Lottery.com's revenue forecasts and projections are not actionable.

Plaintiffs contend that certain of Lottery.com's statements are not forward looking because they were related to revenue results for a quarter that had already closed when the statement was issued. Plaintiffs' argument ignores the fact that these statements provided "preliminary" and "proforma" revenue results and identified "expected" results. A statement about what the speaker

7

7380674

"expects" is forward-looking. *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 466 (S.D.N.Y. 2018). And although Plaintiffs appear to claim that actionable statements of fact were embedded within Lottery.com's statement on November 15, 2021, no such factual assertion appears in that statement, and even if such facts were contained in the statement, there is no allegation that Lottery.com was aware that such facts were not true. Finally, as argued below, the cautionary language and risk disclosures in the Proxy were more than adequate and not misleading.

### E.      Plaintiffs have not pled a viable omissions theory.

Plaintiffs focus their omissions argument in connection with their Section 14(a) claims. The PSLRA's heightened pleading requirements "as to misleading statements and omissions apply to Section 14(a) claims sounding in negligence." *Furlong Fund LLC v. VBI Vaccines, Inc.*, No. 14-CV-9435 (SHS), 2016 WL 1181710, at *3 (S.D.N.Y. Mar. 25, 2016). Because Plaintiffs' 14(a) claims are premised on "fraudulent conduct," they are also subject to Rule 9(b)'s heightened pleading standard, even if the claims are purportedly based on negligence. *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, No. 20-CV-9992 (PAC), 2021 WL 4443258, at *8–9 (S.D.N.Y. 2021). Plaintiffs have not met these heightened pleading standards. Although Plaintiffs now claim that the ACAC's "principal allegations of falsity are based on a failure to disclose," Plaintiffs have not identified *what* "fact" Lottery.com should have specifically disclosed nor *when* Lottery.com learned of that "fact" such that it should have disclosed it. "No liability accrues for failing to disclose what one does not know." *Hadar v. Concordia Yacht Builders, Inc.*, No. 92 Civ. 3768 (RLC), 1997 WL 436464, at *5 (S.D.N.Y. Aug. 4, 1997).

Plaintiffs attempt to bolster their omissions theory by now claiming that the Company's failure to collect the reported $30 million sale and the Company's failure to comply with state and federal laws were "trends" that should have been disclosed under Item 303 of Regulation S-K. Opposition at 22–23. But Item 303 requires "actual knowledge of the relevant trend." *Ind. Pub.*

7380674

*Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95–96 (2d Cir. 2016). The ACAC contains no allegation of actual knowledge of these purported trends.

**F.**     **The risk disclosures in the Proxy were more than adequate and not misleading.**

In an effort to escape the Proxy's clear and specific cautionary language and risk disclosures, Plaintiffs contend that such language did not "precisely warn" that "Defendants would purposefully overstate Lottery's actual and projected revenues" and cash balances. Opposition at 23. Plaintiffs are incorrect both as to the law and the facts. *First*, when a company warns investors of potential risks, the company "need not predict the precise manner in which the risks will manifest themselves." *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 588 (S.D.N.Y. 1993). *Second*, there is no factual basis for any allegation that Lottery.com's purported misconduct was purposeful. *Third*, the Proxy contained more than adequate warnings related to the very risks that Plaintiffs fault for their alleged losses. The Proxy disclosed, for example, that the Company's "failure to maintain adequate financial, information technology and management processes and controls *has resulted in and could result in* material weaknesses which could lead to errors in our financial reporting . . . ." Thus, investors were made aware that the Company's failure to maintain proper financial controls had already resulted in material weaknesses and errors in financial reporting and that such errors could occur again. The Proxy also disclosed that the material weakness "remain[ed] unremediated." Finally, the Proxy disclosed that in light of the complex legal and regulatory framework to which lotteries are subject, the Company "cannot ensure" that its efforts to be in legal compliance "will prevent the violations of one or more laws."

Although Plaintiffs claim these risk disclosures and cautionary language were inadequate, Plaintiffs fail to specifically identify what more the Company needed to disclose or warn about. In addition, Plaintiffs' contention that the risk disclosures were misleading because "they presented as hypothetical risks that were already occurring" is plain wrong. Opposition at 25. The Proxy

9

7380674

expressly disclosed that the Company's failure to maintain financial controls *had already resulted in material weaknesses* and that such material weaknesses remained unremediated.

## G. Lottery.com's statements on legal compliance are not actionable.

Plaintiffs acknowledge that Lottery.com's opinion statements about legal compliance are actionable only if "the speaker did not hold the belief she professed" or "the supporting fact[s] she supplied were untrue." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 U.S. 175, 186 (2015). Plaintiffs also admit they have no evidence nor allegation to show Lottery.com did not believe it was in legal compliance when it made those statements or that any supporting fact with such statement was untrue. Instead, Plaintiffs claim that because Lottery.com purportedly concealed its wrongdoing, Plaintiffs' pleading burden should be relaxed. Not so. To assert a claim for an affirmative statement of opinion, Plaintiffs must satisfy *Omnicare*'s standards (which they have not). *Id.* Any claim based on Lottery.com's alleged failure to disclose its own wrongdoing fails because Plaintiffs cannot identify *what* fact should have been disclosed and *when* it should have been disclosed.

Moreover, Plaintiffs attempt to make actionable Lottery.com's puffery regarding its relationship with regulators by citing to case law addressing a company's statement that it was "in compliance with all applicable environmental laws." Opposition at 13 (citing to *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223 (S.D.N.Y. 2012)). In contrast, Lottery.com's statements that it maintains "close" and "effective relationships" with regulators are too general to be actionable. *ECA*, 553 F.3d at 206 (holding that statements about company's "highly disciplined" risk management practices were puffery).

For these reasons, Lottery.com respectfully requests that the claims against it be dismissed with prejudice for failure to state a claim and that Plaintiffs' request to amend be denied.

10

7380674

Respectfully submitted,


*/s/ Lars L. Berg*
Lars L. Berg
Texas State Bar No. 00787072
lars.berg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 878-3503
Facsimile: (817) 878-9280

*/s/ Steven P. Benenson*
Steven P. Benenson
New York State Bar No. 5378773
SPBenenson@pbnlaw.com
PORZIO, BROMBERG & NEWMAN, PC
1675 Broadway, Suite 1810
New York, New York 10019-3800
(212) 265-6888

ATTORNEYS FOR LOTTERY.COM, INC.

11

7380674

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of June, 2023, a true and correct copy of the foregoing document was transmitted to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

/s/ Steven P. Benenson
Steven P. Benenson

12

7380674