UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE LOTTERY.COM, INC. SECURITIES
LITIGATION

Case No. 1:22-cv-07111 (JLR)

**DEFENDANT KATHRYN LEVER'S MEMORANDUM OF LAW IN SUPPORT OF HER
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

CLARK SMITH VILLAZOR LLP
Jeffrey D. Rotenberg
Michael K. Sala
250 West 55th Street, 30th Floor
New York, New York 10019
(212) 582-4400 (Telephone)
(212) 377-0868 (Facsimile)

*Attorneys for Defendant Kathryn Lever*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................. 3

    A. The Parties ........................................................................................................... 3

    B. Relevant Facts and Allegations .......................................................................... 4

ARGUMENT ................................................................................................................... 6

    I.  PLAINTIFFS FAIL TO ALLEGE THAT MS. LEVER VIOLATED
        SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5
        PROMULGATED THEREUNDER ....................................................................... 7

        A. Plaintiffs' Have Not Alleged Ms. Lever Made Any Actionable False
            Statement ........................................................................................................ 7

            1. Plaintiffs Fail to Allege Falsity .......................................................... 7

            2. Plaintiffs Do Not Allege Ms. Lever Made Any Statement ................ 8

        B. Plaintiffs Fail to Allege Ms. Lever's Scienter ............................................ 10

            1. Plaintiffs Fail to Allege Ms. Lever's Motive to Commit Fraud ...... 11

            2. Plaintiffs Fail to Allege Ms. Lever's Conscious Misbehavior or
               Recklessness ................................................................................... 12

        C. The Holistic Analysis Mandates Dismissal for Failure to Allege
            Scienter ....................................................................................................... 16

    II. PLAINTIFFS FAIL TO ALLEGE THAT MS. LEVER VIOLATED
        SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14a-9 ................................ 17

    III. PLAINTIFFS FAIL TO ALLEGE CONTROL PERSON LIABILITY AS
        TO MS. LEVER UNDER SECTION 20(A) OF THE EXCHANGE ACT ................... 19

        A. Plaintiffs Fail to Plead a Primary Violation ............................................... 20

        B. Plaintiffs Fail to Allege that Ms. Lever is a Control Person ...................... 20

        C. Plaintiffs Fail to Allege Ms. Lever's Culpable Participation in Any
            Primary Violation ....................................................................................... 20

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

PAGE(S)

**<u>Cases</u>**

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995)................................................................................................. 12

*Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP*,
2018 WL 1627266 (S.D.N.Y. Mar. 30, 2018) .................................................................. 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................ 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)........................................................................................... 7, 19

*Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Oao*,
811 F. Supp. 2d 853 (S.D.N.Y. 2011)............................................................................. 14

*Behrendsen v. Yangtze River Port & Logistics Ltd.*,
2021 WL 2646353 (E.D.N.Y. June 28, 2021) .................................................................. 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................ 6

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
866 F. Supp. 2d 223 (S.D.N.Y. 2012)............................................................................. 19

*C.D.T.S No. 1 v. UBS AG*,
2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013) ........................................................... 10, 13

*Campo v. Sears Holdings Corp.*,
371 F. App'x 212 (2d Cir. 2010) .................................................................................... 12

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
957 F. Supp. 2d 277 (S.D.N.Y. 2013)............................................................................. 12

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012)............................................................................... 8

*City of Rockton Ret. Sys. v. Avon Prods., Inc.*,
2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014).................................................................. 14

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
928 F. Supp. 2d 705 (S.D.N.Y. 2013)............................................................................. 20

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
    323 F. Supp. 3d 393 (S.D.N.Y. 2018)..................................................................... 20

*DoubleLine Cap. LP v. Construtora Norberto Odebrecht, S.A.*,
    413 F. Supp. 3d 187 (S.D.N.Y. 2019)..................................................................... 21

*ECA v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)..................................................................................... 11

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*,
    551 F. Supp. 2d 210 (S.D.N.Y. 2008)..................................................................... 21

*Enrique Africa v. Jianpu Tech. Inc.*,
    2023 WL 5432282 (S.D.N.Y. Aug. 23, 2023).......................................................... 16

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
    2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021)................................................... 18, 19

*Floyd v. Liechtung*,
    2013 WL 1195114 (S.D.N.Y. March 25, 2013) ....................................................... 20

*Francisco v. Abengoa, S.A.*,
    481 F. Supp. 3d 179 (S.D.N.Y. 2020)..................................................................... 11

*Francisco v. Abengoa, S.A.*,
    559 F. Supp. 3d 286 (S.D.N.Y. 2021)................................................................ 13, 16

*Goplen v. 51JOB, Inc.*,
    453 F. Supp. 2d 759 (S.D.N.Y. 2006)..................................................................... 19

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021)......................................................... 14, 15, 20

*In re AT&T/DirecTV Now Sec. Litig.*,
    480 F. Supp. 3d 507 (S.D.N.Y. 2020)..................................................................... 14

*In re Banco Bradesco*,
    277 F. Supp. 3d 600 (S.D.N.Y. 2017)....................................................................... 8

*In re Citigroup Sec. Litig.*,
    2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) .................................................... 14, 16

*In re Cognizant Technology Solutions Corp. Sec. Litig.*,
    2020 WL 3026564 (D.N.J. June 5, 2020) ............................................................. 9, 10

*In re Columbia Pipeline, Inc.*,
    405 F. Supp. 3d 494 (S.D.N.Y. 2019)..................................................................... 19

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
  2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018) ........................................................ 14

*In re Forcefield Energy, Inc. Sec. Litig.*,
  2017 WL 1319802 (S.D.N.Y. Mar. 29, 2017) ........................................................ 21

*In re Garrett Motion Inc. Sec. Litig.*,
  2022 WL 976269 (S.D.N.Y. Mar. 31, 2022) ......................................................... 14

*In re Garrett Motion Inc. Sec. Litig.*,
  2023 WL 2744029 (S.D.N.Y. March 31, 2023) .......................................... 7, 12, 16

*In re JP Morgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005) .................................................................. 19

*In re Longtop Fin. Tech. Ltd. Sec. Litig.*,
  910 F. Supp. 2d 561 (S.D.N.Y. 2012).................................................................. 15

*In re Plug Power, Inc. Sec. Litig.*,
  2022 WL 4631892 (S.D.N.Y. Sept. 29, 2022)....................................................... 13

*In re Plug Power, Inc. Sec. Litig.*,
  2023 WL 5577276 (S.D.N.Y. Aug. 29, 2023) ....................................................... 15

*In re PXRE Grp., Ltd., Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y. 2009).................................................................. 12

*In re Veon LTD. Sec. Litig.*,
  2018 WL 4168958 (S.D.N.Y. March 25, 2013) ................................................ 20, 21

*In re Yukos Oil Co. Sec. Litig.*,
  2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ........................................................ 13

*Janbay v. Can. Solar Inc.*,
  2012 WL 1080306 (S.D.N.Y. Mar. 29, 2019) ........................................................ 12

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)............................................................................................ 2, 8, 9

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001).............................................................................. 11, 12

*Levy v. Gutierrez*,
  2017 WL 2191592 (D.N.H. May 4, 2017) ............................................................... 9

*Lipow v. Net1 UEPS Techs., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015).............................................................. 7, 14

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
    518 F. Supp. 3d 772 (S.D.N.Y. 2021)...................................................................... 15

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
    2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ......................................................... 11

*Nano Dimension Ltd. v. Murchinson Ltd.*,
    2023 WL 4422788 (S.D.N.Y. July 10, 2023) .......................................................... 18

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)........................................................................ 7, 11, 12

*Patel v. L-3 Commc'ns Holdings Inc.*,
    2016 WL 1629325 (S.D.N.Y. Apr. 21, 2016).................................................. 11, 21

*Plumbers & Pipefitters Local Union No. 630 Pension–Annuity Trust Fund v. Arbitron Inc.*,
    741 F. Supp. 2d 474 (S.D.N.Y. 2010).................................................................... 21

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)....................................................... 13, 14, 15

*Police and Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*,
    645 F. Supp. 2d, 210 (S.D.N.Y. 2009)................................................................... 19

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)........................................................................... 18, 20

*Ross v. Lloyds Banking Grp., PLC*,
    2012 WL 4891759 (S.D.N.Y. Oct. 16, 2012) ........................................................ 13

*Rotunno v. Wood*,
    2022 WL 14997930 (2d Cir. Oct. 27, 2022)..................................................... 10, 11

*S. Cherry St., LLC v. Hennessee Grp., LLC*,
    573 F.3d 98 (2d Cir. 2009)..................................................................................... 12

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996)..................................................................................... 11

*Schiro v. Csemex*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019).................................................................... 16

*SEC v. Yorkville Advisors, LLC*,
    305 F. Supp. 3d 486 (S.D.N.Y. 2018).................................................................... 21

*Set Cap. LLC v. Credit Suisse Grp. AG*,
    996 F.3d 64 (2d Cir. 2021)............................................................................... 13, 16

v

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014).................................................................. 18, 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...................................................................................... 7, 10, 16

*Van Dongen v. CNisure Inc.*,
    951 F. Supp. 2d 457 (S.D.N.Y. 2013)................................................................... 11

*Xu v. Gridsum Holding Inc.*,
    624 F. Supp. 3d 352 (S.D.N.Y. 2022).................................................................... 8

**<u>Statutes</u>**

15 U.S.C. § 78u-4(b)(2) ................................................................................................ 10

**<u>Rules</u>**

Fed. R. Civ. P. 9(b) ................................................................................................... 1, 7

Fed. R. Civ. P. 12(b)(6).................................................................................................. 6

Defendant Kathryn Lever ("Ms. Lever") respectfully submits this memorandum of law in support of her motion to dismiss the claims asserted against her in the Amended Class Action Complaint, ECF No. 52 (the "ACAC").

## PRELIMINARY STATEMENT

Plaintiffs' lengthy pleading does not begin to justify their wrongful decision to add Ms. Lever as a defendant in this lawsuit when they amended their complaint. The Court should dismiss the ACAC as against Ms. Lever with prejudice.

Ms. Lever joined AutoLotto, Inc. as its general counsel in late March 2021, four months into the proposed class period. In September 2022, with AutoLotto's successor Lottery.com Inc. ("Lottery" or the "Company") in turmoil, Ms. Lever elected to depart to pursue other professional opportunities which she readily secured. Ms. Lever departed months after her discovery and report of possible improprieties to the independent members of the Company's Board of Directors (the "Independent Directors") and her subsequent work with the Board of Director's Audit Committee (the "Audit Committee") and outside counsel to investigate and ultimately publicly disclose the issues uncovered.

The ACAC is fatally devoid of facts sufficient to allege elements of each of its claims against Ms. Lever as required by Rule 9(b) of the Federal Rules of Civil Procedures and the Private Securities Litigation Reform Act ("PSLRA"). Plaintiffs plead next to nothing concerning Ms. Lever personally, and absolutely nothing tying her to the ACAC's theory of fraud. There is hardly a particularized factual allegation concerning Ms. Lever throughout the entire ACAC.

First, to state their claim for violations of Section 10(b) and Rule 10b-5 against Ms. Lever, Plaintiffs must plead that Ms. Lever made material, false statements with scienter. (Count One.) The Company has already explained in its motion to dismiss why Plaintiffs have failed to plead an

actionable misstatement. Even so, Plaintiffs have not alleged that Ms. Lever *made* an alleged false statement to conceivably render her liable under the Supreme Court's decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). Plaintiffs do not plead facts to support the conclusion that Ms. Lever had ultimate authority over the statements they allege to be false, as they must. The Section 10(b) and Rule 10b-5 claim fails for this independent reason.

As to scienter, Plaintiffs' allegations against Ms. Lever are woefully lacking. Plaintiffs fail to allege an actionable motive for Ms. Lever to have engaged in the fraud charged. They likewise fail to plead facts sufficient to engender a plausible, compelling inference of Ms. Lever's conscious misbehavior or recklessness. Despite the heightened pleading burden and the requirement that Plaintiffs offer specific, individualized allegations, the ACAC virtually ignores Ms. Lever. Plaintiffs certainly fail to plead that Ms. Lever had knowledge of or anything to do with the fraud alleged in the ACAC. Grouping Ms. Lever with the three other members of senior management as the "Individual Lottery Defendants" only highlights the gross deficiencies in the false unsupported, conclusory claims made against her. To be sure, Ms. Lever is the person who made the report of possible misconduct to the Independent Directors. She supervised the resulting independent investigation for the Audit Committee. Her efforts and this investigation caused the quick termination or resignation of the three other members of senior management, being the other "Individual Lottery Defendants," and led to the Company's putative corrective disclosures. The only reasonable inference to draw from the record here is that Ms. Lever is a victim of any alleged fraud at the Company. Plaintiffs' failure to plead scienter mandates dismissal.

Second, because Plaintiffs' Exchange Act Section 14 and Rule 14-a9 claim (Count Three) "sounds in fraud," it is subject to the same heightened pleading requirements as the Section 10 and Rule 10b-5 claim. In addition to having to plead an actionable misstatement, which they fail to

do, Plaintiffs must plead Ms. Lever's scienter for purposes of this claim. As already explained, Plaintiffs do not and cannot plead her scienter.

Third, Plaintiffs do not plead control person liability against Ms. Lever under Section 20(a) of the Exchange Act (Counts Two and Four.) The ACAC's allegations of Ms. Lever's control person status and culpable participation, *i.e.*, her scienter, in any alleged primary violation by the Company are virtually non-existent. These claims also fail.

For these reasons, the Court should dismiss the ACAC as against Ms. Lever with prejudice.

## **BACKGROUND**

### A. The Parties

Plaintiffs allege they purchased the Company's securities during the proposed class period. (ACAC ¶ 1.) Defendant Kathryn Lever is the former Chief Legal Officer of AutoLotto, Inc. and of Lottery. She joined AutoLotto in April 2021 and assumed the role with Lottery upon its formation in November 2021. (*See id.* ¶ 30; Decl. of Jeffrey D. Rotenberg ("Rotenberg Decl."), Ex. 1.) Ms. Lever also served as Lottery's Chief Operating Officer from March 2022 until her departure in September 2022. (*See* ACAC ¶ 30; Rotenberg Decl., Ex. 1.) She is presently the general counsel of a billion-dollar gaming company, a director of a financial institution, a director of a fraud prevention and cybersecurity company, and has previously served as an adjunct law professor. Other defendants in this lawsuit include Lottery's co-founders and senior executives, who hired Ms. Lever—DiMatteo, Clemenson, and Dickinson. (ACAC ¶¶ 27-29.) The Company terminated these individuals or they resigned, all shortly after the internal investigation that Ms. Lever initiated uncovered the facts and circumstances upon which Plaintiffs premise the alleged wrongdoing described in the ACAC. (*See, e.g.*, *id.* ¶¶ 68-71.)

**B. Relevant Facts and Allegations**

Defendants DiMatteo, Clemenson, and Dickinson were AutoLotto's long-time executive management team.  DiMatteo was AutoLotto's co-founder, the CEO dating back to 2015 and Board Chair.  (*Id.* ¶ 27.)  Clemenson was also a co-founder and President from 2015 to 2019.  (*Id.* ¶ 29.)  During the relevant period, Clemenson was Chief Revenue Officer and a director.  (*Id.*)  Dickinson joined in June 2018 as Executive Vice President of Product, became President and Chief Operating Officer in October 2018, and later became Chief Financial Officer.  (*Id.* ¶ 28.)

On February 21, 2021, a special purpose acquisition corporation named Trident Acquisitions Corp. ("TDAC") entered into a Business Combination Agreement with a related, wholly owned subsidiary (the "Merger Sub," with TDAC, "Trident") and AutoLotto.  (Decl. of Amar Ali, ECF. No. 78, Ex. 1.)  The agreement provided that the Merger Sub would merge with and into AutoLotto, with AutoLotto, the surviving company, continuing to operate as a wholly owned subsidiary of TDAC.  (*Id.*)  AutoLotto would be renamed "Lottery.com" in connection with this merger transaction.  (*Id.*)

AutoLotto hired Ms. Lever in April 2021 as its Chief Legal Officer to help the company navigate its anticipated merger and transition into a public company.  (Rotenberg Decl., Ex. 1.)  When hired, Ms. Lever had "over 25 years of legal experience and over 20 years of demonstrated successes in the gaming industry, notably managing and integrating" multi-billion-dollar acquisitions and an initial public offering.  (*Id.*)  She became Lottery's Chief Legal Officer following the consummation of AutoLotto's merger with Trident.  (*See id.*)  In March 2022, Ms. Lever was named Lottery's Chief Operating Officer.  (*Id.*)

On July 6, 2022, the Company filed a Form 8-K disclosing its Board's Audit Committee's retention of outside counsel to conduct an internal investigation and that this investigation discovered "non-compliance with state and federal laws concerning the state in which tickets are

procured as well as order fulfillment," and "issues pertaining to the Company's internal accounting controls." (ACAC ¶ 146.) The Company also announced the termination of Dickinson, the President and CFO, and DiMatteo's resignation as Board Chair. (*Id.*) The Company further announced that Ms. Lever would now "report directly to the (new) Board co-chairs" and no longer to Defendant DiMatteo, the CEO. (*Id.*) On July 15, the Company followed-up with the announcement of Co-founder, Chief Revenue Officer, and former President Clemenson's immediate resignation, and additional investigatory findings. (Rotenberg Decl., Ex. 2; ACAC ¶ 148.)

Then, on July 22, the Company announced its auditors had provided notification that certain financial statements should no longer be relied upon. (ACAC ¶ 150.) The Company also announced that Defendant DiMatteo had resigned as CEO of the Company and related entities. (*Id.*) On July 29, the Company disclosed the Board's determination "that the Company does not currently have sufficient financial resources to fund its operations or pay certain existing obligations, including its payroll and related obligations," and that it would be furloughing employees in response (Ms. Lever stayed on). (*Id.* ¶ 152; *see e.g.*, Rotenberg Decl., Ex. 3.) It also disclosed "substantial doubt about the Company's ability to continue as a going concern." (ACAC ¶ 152.)

On August 16, the Company filed a Form 12b-25, a notification of late filing, for its Form 10-Q for the period ended June 30, 2022. (*Id.*) This filing summarized the Audit Committee's investigative activity and related findings to date, while adding new detail. (*See id.*) The Company disclosed that Mr. Lever initiated the Audit Committee's retention of counsel and internal investigation by providing certain information to the Audit Committee. (*Id.*) In other words, Ms. Lever was the person responsible for bringing matters of concern she had identified to the

Independent Directors' attention and triggering the internal investigation.  (*See id.*)  This explained why, as previously disclosed, the co-chairs of the Company's Board had made Ms. Lever their direct report (out from under the oversight and control of the three other members of the management team, being the co-defendants).  (*See* ACAC ¶ 146.)

In September 2022, amidst the turmoil at the Company and a raft of director resignations, Ms. Lever resigned; she then sought other professional opportunities which she readily obtained.  (*See* Rotenberg Decl., Ex. 4.)

On August 19, 2022, a class action complaint was filed against the Company and Defendants DiMatteo, Clemenson, and Dickinson.  (*See* ECF No. 1.)  On January 31, 2023, Plaintiffs filed the ACAC against the same defendants named in the original complaint and additional defendants, including Ms. Lever.  (*See generally* ACAC.)  The ACAC's individualized allegations as to Ms. Lever identify her positions at the Company (*id.* ¶ 30), say that she signed three Form 8-Ks that attached Company press releases and in one instance a slide presentation (*id.* ¶¶ 85, 89, 91, 95) and confirm that on July 6, 2022, the Company announced she would start reporting "directly to the Board co-chairs."  (*Id.* ¶ 146.)  That is all.  Otherwise, the ACAC group pleads Ms. Lever with other defendants.  (*See, e.g.*, *id.* ¶ 31.)[1]

## ARGUMENT

To survive this motion to dismiss under Rule 12(b)(6), Plaintiffs must have plead "enough facts to state a claim to relief" against Ms. Lever "that is plausible on its face."  *Bell Atl. Corp. v.*

---

[1] On April 3, 2023, Defendant Lottery.com Inc.'s Motion to Dismiss the Amended Class Action Complaint (ECF No. 76) ("Lottery's Motion"), Defendant Anthony DiMatteo's Motion to Dismiss Plaintiffs' Amended Class Action Complaint (ECF No. 85) ("DiMatteo's Motion") and Defendants Matthew Clemenson and Ryan Dickinson's Motion to Dismiss Amended Class Action Complaint (ECF No. 91) ("Clemenson-Dickinson's Motion") were filed.  Ms. Lever incorporates these motions and their supporting memoranda of law (ECF Nos. 77, 86, 92) as applicable.

*Twombly*, 550 U.S. 544, 570 (2007).  "That is, the facts must be sufficient to 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *In re Garrett Motion Inc. Sec. Litig.*, 2023 WL 2744029, at *8 (S.D.N.Y. March 31, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As always, "[a]llegations that are conclusory or unsupported by factual assertions are insufficient."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  Courts assume even well-pleaded allegations to be true only to the extent other allegations or documents incorporated by reference, including filings with the Securities and Exchange Commission and materials as to which the Court can take judicial notice, do not contradict them.  *See Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 158 (S.D.N.Y. 2015); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *ATSI Commc'ns*, 493 F.3d at 98.

Under the heightened pleading requirements made applicable to Plaintiffs' claims by Federal Rule of Civil Procedure 9(b) and the PSLRA, among other things, the ACAC must—but does not and cannot—specify alleged material misstatements or omissions, explain why they are false or misleading, and "state with particularity facts giving rise to a strong inference that" Ms. Lever personally "acted" with a fraudulent state of mind.  *Tellabs*, 551 U.S. at 321; *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000).

# I.    PLAINTIFFS FAIL TO ALLEGE THAT MS. LEVER VIOLATED SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 PROMULGATED THEREUNDER

## A.  Plaintiffs' Have Not Alleged Ms. Lever Made Any Actionable False Statement

### 1.  Plaintiffs Fail to Allege Falsity

Lottery's Motion explains that Plaintiffs fail to allege any actionable, material, false statement.  (Br. in Supp. of Lottery's Motion (ECF No. 77) (the "Lottery Br.") at 7-10.)  The Court should dismiss the ACAC on this ground.

### 2. Plaintiffs Do Not Allege Ms. Lever Made Any Statement

Even assuming the ACAC adequately alleges actionable misstatements, Plaintiffs do not plead facts showing that Ms. Lever was the *maker* of any such statement, as they must do to state a claim against her under Rule 10b-5. The Supreme Court has ruled that to be the "maker" of a statement for purposes of Rule 10b-5 liability, Ms. Lever must have been "the person . . . with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus*, 564 U.S. at 142. Plaintiffs "must allege facts showing, either directly or circumstantially, that [she] possessed ultimate authority over the statements at issue." *Xu v. Gridsum Holding Inc.*, 624 F. Supp. 3d 352, 365 (S.D.N.Y. 2022) (citing *In re Banco Bradesco*, 277 F. Supp. 3d 600, 641 (S.D.N.Y. 2017)); *see City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 374 (S.D.N.Y. 2012) ("conclusory pleading that each defendant had 'ultimate authority' over the statements is clearly insufficient to adequately plead [defendant] made these statements."); *Behrendsen v. Yangtze River Port & Logistics Ltd.*, 2021 WL 2646353, at *10 (E.D.N.Y. June 28, 2021) (allegations that individual defendants were "directly involved" in managing the company and disseminating the misleading statements were "conclusory and insufficient to establish the Individual Defendants' liability"). It is insufficient "for a defendant to have been involved in 'creating' the challenged statement by 'participating in the drafting of' the statement or by 'prepar[ing] or publish[ing] a statement on behalf of another.'" *Xu*, 624 F. Supp. 3d at 360 (quoting *Janus*, 564 U.S. at 144-46). Even "undeniable proof that an individual worked on a statement does not meet *Janus's* requirement that the individual have 'ultimate authority over the statement, including its content and whether and how to communicate it.'" *Id.* at 364 (quoting *Banco Badesco*, 277 F. Supp. 3d at 640 (quoting *Janus*, 564 U.S. at 142)).

The ACAC seeks to attribute to Ms. Lever alleged false statements contained in four documents issued by the Company—three Company press releases and a Company slide

presentation.  But Ms. Lever merely performed the ministerial acts of signing three of the Company's SEC Forms 8-K, which attached these four documents.  On the face of the ACAC, these acts are insufficient to make her the "maker" of any misstatements in these attached documents.  The Company issued these press releases and prepared the slide presentation in connection with its quarterly earnings.  They describe and discuss the Company's financial information, business plans, projections, and highlights.  The ACAC does not assert Ms. Lever had any finance or commercial function (she did not).  It does not explain what role she had in connection with any of these financial and investor-oriented documents (she had none).  These documents do not even refer to or mention Ms. Lever.  Each press release quotes the Company's Chief Executive Officer and refers the reader to the Company's investor relations professionals for any questions.

*Levy v. Gutierrez*, 2017 WL 2191592 (D.N.H. May 4, 2017) is on point and confirms Plaintiffs have failed to satisfy their burden here of pleading that Ms. Lever made false statements. In *Levy*, as here, the general counsel signed the company's Forms 8-K, "which incorporated by reference press releases that (allegedly) contained false and misleading statements." *Id*. at *12. The court there held that the general counsel was not the "maker" of statements in these press releases which "contain[ed] statements by other . . . officers, not [the general counsel] himself." *Id*. (citing *Janus*, 564 U.S. at 142-43).

Similarly, in *In re Cognizant Technology Solutions Corp. Sec. Litig.*, 2020 WL 3026564 (D.N.J. June 5, 2020), the general counsel was not "quoted" in the press releases attached to the Form 8-Ks he signed, the plaintiffs did not allege that his "name or contact information appeared on the press releases, or that [he] was responsible for reviewing or approving the press releases prior to their issuance." *Id.* at *15.  The court ruled that the issuer's general counsel was not the

9

maker of statements in "any of the financial earnings press releases attached to Cognizant's Forms 8-K." *Id.*

Likewise, Ms. Lever was not the "maker" of the statement relied on in the ACAC. Accordingly, she cannot be liable for their material falsity or omissions, and the Section 10 and Rule 10b-5 claim against her fail as a matter of law.

### B.  Plaintiffs Fail to Allege Ms. Lever's Scienter

Plaintiffs must also state with particularity facts giving rise to a "strong inference" of scienter—"a mental state embracing intent to deceive, manipulate, or defraud"—as to Mr. Lever individually.  *Tellabs*, 551 U.S. at 319 (citation omitted); *see* 15 U.S.C. § 78u-4(b)(2) (the complaint shall, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind"); *C.D.T.S No. 1 v. UBS AG*, 2013 WL 6576031, at *6 (S.D.N.Y. Dec. 13, 2013) ("scienter must be separately pled and individually supportable as to each defendant"), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015).  "To allege a strong inference of scienter, as required by the PSLRA," a plaintiff "must plead facts leading to 'an inference [that is] more than merely plausible or reasonable—it *must be cogent and at least as compelling as any opposing inference of nonfraudulent intent*."'  *Rotunno v. Wood*, 2022 WL 14997930, at *2 (2d Cir. Oct. 27, 2022) (emphasis and alteration in original, citation omitted); *see also Tellabs*, 551 U.S. at 314, 326.  Plaintiffs may establish this strong inference of scienter only by alleging particularized facts showing either:  (1) Ms. Lever had both "motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness"

on her part. *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009); *Rotunno*, 2022 WL 14997930, at *2.[2]  Plaintiffs do not come close on either front.

### 1. Plaintiffs Fail to Allege Ms. Lever's Motive to Commit Fraud

It is well-established that "[m]otives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud," specifically "the false statements and wrongful nondisclosures alleged." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).  Courts have repeatedly held that "the desire . . . to appear profitable and the desire to keep stock prices high to increase officer compensation do not suffice to establish a motive." *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 213 (S.D.N.Y. 2020) (citing *Van Dongen v. CNisure Inc.*, 951 F. Supp. 2d 457, 468 (S.D.N.Y. 2013) (citing *Novak*, 216 F.3d at 307)); *see, e.g.*, *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *24 (S.D.N.Y. Mar. 30, 2021) (allegations that defendants "were motivated to complete the merger to expand [company's] footprint" were "precisely the type of generalized motive shared by all profit-oriented businesses that courts in this Circuit have routinely rejected as insufficient to plead a strong inference of scienter").

Plaintiffs hardly try to establish Ms. Lever's motive.  Plaintiffs offer no indication, let alone particulars, of how Ms. Lever stood to obtain a concrete, personal benefit from the alleged fraud as required.  *See Patel v. L-3 Commc'ns Holdings Inc.*, 2016 WL 1629325, at *11 (S.D.N.Y. Apr. 21, 2016) ("Without more, the desire to maintain high credit and bond ratings, *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 814 (2d Cir. 1996),

---

[2] Negligence, even gross negligence, is not enough for scienter.  *See Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000) ("the scienter requirement can be satisfied by pleading either 'conscious recklessness'—i.e., a state of mind 'approximating actual intent, and not merely a heightened form of negligence'—or 'actual intent,'") (citations omitted).

to maintain a high stock price to increase executive compensation, *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995), or to preserve high credit ratings to maximize the marketability of a debt offering, *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 295 (S.D.N.Y. 2013), do not amount to a motive to commit securities fraud because they do not entail concrete, personal benefits—those desires are common to all corporate officers").

### 2. Plaintiffs Fail to Allege Ms. Lever's Conscious Misbehavior or Recklessness

In the absence of "motive" allegations, "the strength of the circumstantial allegations" of conscious misbehavior or recklessness required to plead scienter "must be correspondingly greater." *Campo v. Sears Holdings Corp.*, 371 F. App'x 212, 216 (2d Cir. 2010); *see In re Garrett Motion Inc. Sec. Litig.*, 2023 WL 2744029, at *10 (quoting *Kalnit*, 264 F.3d at 142 (internal quotation marks and citation omitted)). Plaintiffs must allege a degree of scienter "approaching a knowledgeable participation in the fraud or a deliberate and conscious disregard of facts" and "must detail specific contemporaneous data or information known to the defendants that was inconsistent with the representation in question." *Janbay v. Can. Solar Inc.*, 2012 WL 1080306, at *11 (S.D.N.Y. Mar. 29, 2019) (citation omitted); *accord S. Cherry St., LLC v. Hennessee Grp., LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (requiring "a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*") (emphasis in original, citation omitted). Plaintiffs do nothing of the sort.

First, "[w]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Novak*, 216 F.3d at 309; *see In re Garrett Motion Inc. Sec. Litig.*, 2023 WL 2744029, at *11 (quoting *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009), *aff'd sub nom. Condra v. PXRE Grp. Ltd.*, 357 F. App'x 393 (2d Cir. 2009)). Plaintiffs do not do so. The ACAC is devoid of well-plead

factual allegations demonstrating that Ms. Lever "knew facts or had access to information suggesting that [her] public statements were not accurate." *See Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 79 (2d Cir. 2021). "There are no specific factual allegations linking" Ms. Lever to the alleged fraud, "nor are there any allegations [of her] awareness of specific contradictory facts or information." *See In re Plug Power, Inc. Sec. Litig.*, 2022 WL 4631892, at *19 (S.D.N.Y. Sept. 29, 2022) (citing *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 320–21 (S.D.N.Y. 2021)); *see also Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010) ("broad reference to raw data" is not sufficient). The ACAC contains nothing from which one can reasonably infer *what* Ms. Lever personally knew (and when she knew it), that contradicted any of the Company's (let alone her own) public statements.

Second, it is fundamental that "scienter is not amenable to group pleading" and "must be separately pled and individually." *C.D.T.S.*, 2013 WL 6576031, at *6. Yet, Plaintiffs "fail to differentiate in any way between" Ms. Lever and others at the Company. *See In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024, at *20 (S.D.N.Y. Oct. 25, 2006). The ACAC's "generalized group pleading" is "insufficient as a matter of law." *Id.* at *20; *accord Ross v. Lloyds Banking Grp., PLC*, 2012 WL 4891759, at *10 (S.D.N.Y. Oct. 16, 2012) ("Scienter may not be alleged through group pleading."). As described above, the ACAC has nary an individualized allegation as to Ms. Lever.

Third, Plaintiffs rely on the generic allegation that "Defendants" by virtue of being members of management had knowledge of or recklessly disregarded facts demonstrating that the Company's disclosures were false and misleading. Plaintiffs cannot properly ask this Court to presume that Ms. Lever had knowledge of information that contradicted the Company's statements

13

solely by virtue of being a member of "management."  (*See, e.g.*, ACAC ¶ 31.)  Simply put, "accusations founded on nothing more than a defendant's corporate position are entitled to no weight."  *Plumbers*, 694 F. Supp. 2d at 300; *accord City of Rockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *19 (S.D.N.Y. Sept. 29, 2014) (same); *Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Oao*, 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011) (such allegations are "routinely rejected") (collecting cases).  Nonetheless, Plaintiffs build their theory on this improper presumption.  Regardless, there is certainly no indication in the ACAC of how Ms. Lever's position at the Company would involve her in financial accounting and related matters on which Plaintiffs premise their theory of fraud.

Fourth, Plaintiffs' reliance on the core operations doctrine similarly gets them nowhere. Courts have repeatedly "cast doubt on the continued viability of the doctrine, which pre-dates the PSLRA by several years."  *In re Garrett Motion Inc. Sec. Litig.*, 2022 WL 976269, at *15 (S.D.N.Y. Mar. 31, 2022) (quoting *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 533 (S.D.N.Y. 2020)).  Where courts do consider the doctrine, even as a theoretical exercise, it is clear that "[a]llegations regarding core operations . . . are not, on their own, sufficient to allege scienter." *Id.* (quoting *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 171 (S.D.N.Y. 2021) (collecting cases)); *see also In re Citigroup Sec. Litig.*, 2023 WL 2632258, at *22 (S.D.N.Y. Mar. 24, 2023) (quoting *Lipow*, 131 F.Supp. 3d at 174 ("core operations theory at most constitutes supplemental support for alleging scienter" and "cannot serve to independently establish scienter" or "bolster" an inference of scienter where Plaintiffs have not alleged an independently sufficient basis)); *see also In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *19 (S.D.N.Y. Mar. 30, 2018) ("allegations regarding core operations . . .  not independently sufficient to raise a strong inference of scienter") (quotations omitted)), *aff'd*, 764

F. App'x 127 (2d Cir. 2019); *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021) (Allegations that "executive team must have known that the company was facing 'inventory and supply chain issues' because . . . 'core business is the sale of goods and . . . main asset is . . . inventory' . . . does not do enough to demonstrate fraudulent intent" even if the core operations doctrine "remains good law").  Because Plaintiffs have no independent allegations of scienter as to Ms. Lever, even assuming the alleged fraud involved "core operations" and that doctrine remains at all viable, there is nothing for core operations allegations to conceivably "bolster" with respect to her scienter.

Fifth, general allegations regarding the supposed "magnitude of the fraud" do not support Ms. Lever's scienter.  Same as with the core operations doctrine, the size of an alleged fraud can only even theoretically be relevant when "presented in tandem with other circumstantial evidence to suggest scienter."  *In re Plug Power, Inc. Sec. Litig.*, 2023 WL 5577276, at *21 (S.D.N.Y. Aug. 29, 2023) (citation omitted); *see Aegean*, 529 F. Supp. 3d at 171 (citing *In re Longtop Fin. Tech. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 578 (S.D.N.Y. 2012) ("a fraud's large size, standing alone, is insufficient to show recklessness") and *Plumbers*, 694 F. Supp. 2d at 302 ("allegation concerning the magnitude of the write-downs is insufficient to plead scienter") (citation omitted)).  As discussed, the ACAC does not contain any other well-plead allegations of Ms. Lever's scienter. Moreover, the alleged fraud's "magnitude" implicates financial accounting, a function at the Company with which Ms. Lever, again, had no alleged involvement.

Finally, Ms. Lever's resignation in September 2023, is hardly suggestive of her scienter. She resigned two months after the Company first disclosed the findings of an independent investigation *she* initiated and *she* helped run after *she* brought concerns directly to the

Independent Directors, and the co-chairs of the Company's Board decided that she should report directly to them, including concerning the investigation.

In any event, "resignations of corporate executives are insufficient alone to establish an inference of scienter because there are any number of reasons that an executive might resign, most of which are not related to fraud." *Citigroup*, 2023 WL 2632258, at *22 (internal quotations and citations omitted). More is required, and, as detailed above, that more is entirely absent here: Plaintiffs have not "allege[d] independent evidence corroborating that the employee who resigned"—Ms. Lever—"held a culpable state of mind." *Schiro v. Csemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 303 (S.D.N.Y. 2019). The ACAC does not offer "a factual basis" to infer that Ms. Lever's "resignation was tied to [her] participation in or knowledge of the fraud" alleged. *Id.* at 303; *Francisco*, 559 F. Supp. 3d at 321 ("abrupt[]" resignation in midst of alleged fraud not probative of scienter); *see Schiro v. Cemex*, 396 F. Supp. 3d at 303 ("When corporate misconduct is disclosed, members of management resign for all sorts of reasons").

### C. The Holistic Analysis Mandates Dismissal for Failure to Allege Scienter

The Court's scienter inquiry concludes with a holistic analysis of the record and an assessment of the inferences the Court may draw therefrom. *See In re Garrett Motion Inc. Sec. Litig.,* 2023 WL 2744029*,* at *8-15 (concluding, following "holistic[]" review, that the scienter allegations were inadequate because the most cogent inference to be drawn was that company did not act with scienter when it "delayed releasing information") (quoting *Set Cap. LLC*, 996 F.3d at, 78). Without question, on the record here, no "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw." *Enrique Africa v. Jianpu Tech. Inc.*, 2023 WL 5432282, at *5 (S.D.N.Y. Aug. 23, 2023) (quoting *Tellabs*, 551 U.S. at 324).

Plaintiffs have not alleged any facts supporting an inference of Ms. Lever's scienter let alone what the law requires of them to satisfy their pleading burden. As detailed above, all they can muster are conclusory, group plead, boilerplate, and routinely rejected theories. These are obviously inadequate individually and collectively. Tellingly, in opposing Lottery's Motion, Plaintiffs say nothing about Ms. Lever's scienter outside a reference to her financial interest in the Company's success—a clear recognition and acknowledgment Plaintiffs are shooting in the dark.

Competing inferences overwhelm Plaintiffs' deficient scienter allegations. Ms. Lever uncovered possible wrongdoing and went above her superiors in management and reported it to the Independent Directors, precipitating an internal investigation and the removal and departure of her superiors. The co-chairs of the Company's Board even assigned Ms. Lever the task of coordinating the investigation with outside counsel and directed her to report straight through to them. And once this investigation was complete, and with the Company in turmoil, she left to pursue other more viable long-term opportunities. On the facts before the Court, the only truly plausible inference the Court can draw is that Ms. Lever had no knowledge of and nothing to do with the fraud alleged in the ACAC. Plaintiffs have not and cannot allege Ms. Lever's scienter. The Section 10(b) and Rule 10b-5 claim fails—and as explained below the other claims against Ms. Lever fail—for this independent reason.

## II.    PLAINTIFFS FAIL TO ALLEGE THAT MS. LEVER VIOLATED SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14a-9

The Court also should dismiss with prejudice as against Ms. Lever Plaintiffs' Section 14 and Rule 14a-9 claim in connection with the Company's proxy solicitation in November 2014. First, Plaintiffs have failed to allege an actionable false statement. Second, Plaintiffs have failed to allege scienter with respect to Ms. Lever.

Plaintiffs' assertion that they need not plead scienter because they premise this claim on a negligence theory is incorrect. The heightened pleading requirements of Rule 9(b) and the PSLRA "apply whenever a plaintiff alleges fraudulent conduct, regardless of whether fraudulent intent is an element of a claim." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 423 (S.D.N.Y. 2014) (citing *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)); *see also Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, 2021 WL 4443258, at 8 (S.D.N.Y. Sept. 27, 2021) (ruling that the Court must look at "the nature of the plaintiff's allegations, not the elements of the legal cause of action" when determining whether Rule 9(b)'s heightened pleading standard applies); *Nano Dimension Ltd. v. Murchinson Ltd.*, 2023 WL 4422788, at *5–6 (S.D.N.Y. July 10, 2023) (applying PSLRA and Rule 9(b) to Section 13(d) claim because claim "sounds in fraud" even though 'scienter' is not an element) (citing *Rombach*, 355 F.3d at 167).

The ACAC is all about fraud. The "wording" and "imputations" of Plaintiffs' allegations are those "classically associated with fraud." *Rombach*, 355 F.3d at 172. The premise of this lawsuit is that the Company defrauded investors. It is right there in the ACAC.

Plaintiffs' characterization of their claims and arguments in opposition to other defendants' motions to dismiss makes this even more clear. Plaintiffs open their opposition to Lottery's Motion with the statement that "[t]his is a straight-forward case of securities *fraud*" involving "massive and *obvious falsehoods*," and that "*Defendants' fraud* has left Lottery in shambles" causing harm to investors. (Pls.' Opp'n Br. to Lottery's Motion (ECF No. 95) at 1, 7 (emphasis added).) Building off the ACAC's allegations, Plaintiffs talk about "[t]he fraud" involving the Company's cash position, revenues, and financial statements. They say defendants "knowingly lied or were extremely reckless in making/approving Lottery's statements concerning its cash

balance and revenues," (Pls.' Opp'n Br. to DiMatteo's Motion and Clemenson-Dickinson's Motion (ECF No. 96) at 2-3) and highlight "the full disclosure of" the "fraud."  (*Id.* at 3-4.) Discussions of fraud permeate their papers.  (*See, e.g., id.* at 9, 11.)

Accordingly, Plaintiffs' Section 14 claim is "subject to heightened pleading requirements" of Rule 9(b) and the PLSRA "even if they disclaim reliance on a fraud theory.'"  *Enzo Biochem*, 2021 WL 4443258, at *8 (citing *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 239 (S.D.N.Y. 2012) (quoting *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005) (applying Rule 9(b) particularity requirements to Section 14(a) claims))); *see also Police and Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d, 210, 238 (S.D.N.Y. 2009) (finding that Section 14(a) claim grounded in fraud must satisfy Rule 9(b)); *In re Columbia Pipeline, Inc.*, 405 F. Supp. 3d 494, 506-07 (S.D.N.Y. 2019) (holding that Section 14(a) claims are subject the heightened pleading requirements of Rule 9(b) and the PSLRA when "grounded in alleged fraudulent conduct").  Plaintiffs must plead Ms. Lever's scienter for this claim.  As explained above, Plaintiffs do not do so.  The Section 14(a) and Rule 14-a9 claim therefore fails.[3]

## III.    PLAINTIFFS FAIL TO ALLEGE CONTROL PERSON LIABILITY AS TO MS. LEVER UNDER SECTION 20(A) OF THE EXCHANGE ACT

To establish a prima facie case of control person liability, a plaintiff must show each of: "(1) a primary violation by the controlled person" (*i.e.*, the Company), (2) "control of the primary violator [the Company] by the defendant" (Ms. Lever), and "(3) that the defendant [Ms. Lever] was, in some meaningful sense, a culpable participant in the controlled person's [the Company's] fraud."  *ATSI Commc'ns*, 493 F.3d at 108 (citation omitted).  Here, Plaintiffs fail across the

---

[3] The ACAC also does not allege facts giving rise to a plausible inference of Ms. Lever's negligence.  The ACAC does not explain how, even if statements in the proxy were false, Ms. Lever could or should have determined their truth, and that any failure to do so was unreasonable.

board—they do not allege any of these three required elements of the Section 20(a) control person claim, and the Court should dismiss this claim accordingly. *See, e.g.*, *Rombach*, 355 F.3d at 177-78 (2d Cir. 2004); *Goplen v. 51JOB, Inc.*, 453 F. Supp. 2d 759, 775 (S.D.N.Y. 2006).

### A. Plaintiffs Fail to Plead a Primary Violation

Lottery's Motion shows that Plaintiffs have not alleged a primary violation by the Company. (*See generally* Lottery Br.)

### B. Plaintiffs Fail to Allege that Ms. Lever is a Control Person

The ACAC also insufficiently alleges that Ms. Lever controlled the Company for purposes of any alleged misstatements or omissions, as required for Section 20(a) liability. *See Aegean*, 529 F. Supp. 3d at 150 (requiring "actual control over the transaction[s] in question") (quoting *Floyd v. Liechtung*, 2013 WL 1195114, at *6 (S.D.N.Y. March 25, 2013)); *see also DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 460 (S.D.N.Y. 2018) (requiring allegations "that the defendant exercised actual control over the matters at issue") (citation omitted). Certainly, Ms. Lever's corporate titles—which is all Plaintiffs go on here—cannot establish her "control" to sustain this claim. *See Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, 2018 WL 1627266, at *19-20 (S.D.N.Y. Mar. 30, 2018), corrected, 2018 WL 11472420 (S.D.N.Y. Apr. 27, 2018) (allegations of control person liability against the company's CEO and board chair insufficient); *see also City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 720-21 (S.D.N.Y. 2013) (citation omitted) ("Neither director status nor membership on an audit committee, standing alone, is sufficient to demonstrate actual control").

### C. Plaintiffs Fail to Allege Ms. Lever's Culpable Participation in Any Primary Violation

The prevailing view is that Plaintiffs must plead scienter for this claim as well. *See In re Veon LTD. Sec. Litig.*, 2018 WL 4168958, at *21-22 (quoting *Special Situations*, 33 F. Supp. 3d at 438) ("majority of courts in this District hold that since 'culpable participation' is an element of

a Section 20(a) claim, it 'must be pleaded with the same particularity as scienter'"); *see also DoubleLine Cap. LP v. Construtora Norberto Odebrecht, S.A.*, 413 F. Supp. 3d 187, 220 (S.D.N.Y. 2019) ("[t]he heightened pleading standards of the PSLRA . . . apply with respect to the third-prong of a Section 20(a)"); *SEC v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 511 (S.D.N.Y. 2018) (quoting *Plumbers & Pipefitters Local Union No. 630 Pension–Annuity Trust Fund v. Arbitron Inc.*, 741 F. Supp. 2d 474, 492 (S.D.N.Y. 2010) (citing *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 231 (S.D.N.Y. 2008) ("[a]mong the district courts in this Circuit, the weight of well-reasoned authority requires the plaintiff to prove 'some level of culpable participation at least approximating recklessness in the Section 10(b) context'"); *In re Forcefield Energy, Inc. Sec. Litig.*, 2017 WL 1319802, at *16 (S.D.N.Y. Mar. 29, 2017) ("most judges in the District" have held that "a plaintiff must plead culpable participation with scienter"); *Patel*, 2016 WL 1629325, at *17 ("'culpable participation' must be pleaded with the same particularity as scienter").

As explained above, "Plaintiffs have failed to plead scienter" as to Ms. Lever, and "[a]ccordingly," Plaintiffs have failed to allege that she was a "culpable participant" in the Company's alleged fraud. *Veon*, 2018 WL 4168958 at *22. Plaintiffs do not plead facts sufficient to show "in any way" that Ms. Lever "knew, w[as] reckless in not knowing, or w[as] in any way connected to . . . fraud taking place in" the Company "with respect to" the matters alleged as they must to establish Ms. Lever's culpable participation in any fraud. *Patel*, 2016 WL 1629325, at *17. For each of these reasons, the Court should dismiss the control person liability claim.

## <u>CONCLUSION</u>

The Court should dismiss the ACAC's claims against Ms. Lever with prejudice.

Dated:  September 15, 2023

                                         *s/ Jeffrey D. Rotenberg*

                                         CLARK SMITH VILLAZOR LLP
                                         Jeffrey D. Rotenberg
                                         Michael K. Sala
                                         250 West 55th Street, 30th Floor
                                         New York, New York 10019
                                         TEL: (212) 582-4400
                                         FAX: (212) 377-0868
                                         jeffrey.rotenberg@csvllp.com
                                         michael.sala@csvllp.com

                                         *Attorneys for Defendant Kathryn Lever*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 15th day of September, 2023, a true and correct copy of the foregoing document was transmitted to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

_s/ Jeffrey D. Rotenberg_
Jeffrey D. Rotenberg