**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE LOTTERY.COM, INC.
SECURITIES LITIGATION

Case No. 22 Civ. 07111 (JLR)

**PLAINTIFFS' OPPOSITION TO DEFENDANT KATHRYN LEVER'S**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 3

    I.       Lever's Ever-Expanding Position With Lottery And Incentives To Approve The Business Combination ............................................................................................ 3

    II.      Lever's Responsibility For The Company's Class Period Statements ........................ 4

ARGUMENT .......................................................................................................................... 4

    I.       The Applicable Pleading Standards Disfavor Lever's Motion .................................... 4

    II.      Plaintiffs Have Sufficiently Alleged That Lever Made False And/Or Misleading Statements Under Section 10(b) And Rule 10b-5 .......................................................... 5

          A.      Plaintiffs Have Sufficiently Alleged Falsity .............................................. 5

          B.      Plaintiffs Have Sufficiently Alleged That Lever Was A "Maker" Of The False And/Or Misleading Statements Attached And Expressly Incorporated Into Lottery's Post-Business Combination Forms 8-K .................................... 5

    III.    Plaintiffs Have Sufficiently Alleged A Strong Inference Of Lever's Scienter ........... 10

          A.      Lever's Motive ........................................................................................... 10

          B.      Lever's Conscious Misbehavior And/Or Recklessness ........................................ 11

    IV.    Plaintiffs Have Sufficiently Alleged A Section 14(a) Claim Against Lever .............. 12

    V.     Plaintiffs Have Sufficiently Alleged Lever's Control Person Liability Under Section 20(a) ........................................................................................................................ 15

CONCLUSION ..................................................................................................................... 15

## TABLE OF AUTHORITIES

CASES

*Acticon AG v. China North East Petroleum Holdings Ltd.*,
   692 F.3d 34 (2d Cir. 2012)...................................................................................... 8

*Beck v. Dobrowski*,
   559 F.3d 680 (7th Cir. 2009) ................................................................................. 14

*Brown v. Brewer*,
   2010 WL 2472182 (C.D. Cal. June 17, 2010) ........................................................ 14

*City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*,
   814 F. Supp. 2d 395 (S.D.N.Y. 2011)....................................................................... 8

*Elkind v. Liggett & Myers, Inc.*,
   635 F.2d 156 (2d Cir. 1980)...................................................................................... 8

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
   2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021)................................................... 13, 14

*Fresno Cnty. Emps.' Ret. Ass'n v. Comscore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017)..................................................................... 14

*Hsu v. Puma Biotechnology, Inc.*,
   2017 WL 3205774 (C.D. Cal. July 25, 2017) ......................................................... 10

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
   741 F. Supp. 2d 511 (S.D.N.Y. 2010)..................................................................... 15

*In re Cognizant Technology Solutions Corp. Sec. Litig.*,
   2020 WL 3026564 (D.N.J. June 5, 2020) ................................................................. 7

*In re Fannie Mae 2008 Sec. Litig.*,
   891 F. Supp. 2d 458 (S.D.N.Y. 2012)....................................................................... 7

*In re SLM Corp. Sec. Litig.*,
   740 F. Supp. 2d 542 (S.D.N.Y. 2010)..................................................................... 10

*In re Smith Barney Transfer Agent Litig.*,
   884 F. Supp. 2d 152 (S.D.N.Y. 2012)....................................................................... 7

*In re Stillwater Capital Partners Inc. Litig.*,
   858 F. Supp. 2d 277 (S.D.N.Y. 2012)....................................................................... 7

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   195 F. Supp. 3d 528 (S.D.N.Y. 2016)..................................................................... 7

*In re Vivendi Universal, S.A. Sec. Litig.*,
   2004 WL 876050 (S.D.N.Y. Apr. 22, 2004)........................................................... 11

*Janus Capital Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011).................................................................................... 6, 8, 9

*Katz v. Pels*,
   774 F. Supp. 121 (S.D.N.Y. 1991) ....................................................................... 14

*Lemen v. Redwire Corp.*,
   2023 WL 2598402 (M.D. Fla. Mar. 22, 2023) ...................................................... 10

*Levy v. Gutierrez*,
   2017 WL 2191592 (D.N.H. May 4, 2017)................................................................ 7

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)................................................................................... 8

*Set Cap. LLC v. Credit Suisse Grp. AG*,
   996 F. 3d 64 (2d Cir. 2021).................................................................................. 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 322 (2007)............................................................................................. 11

*Wilson v. Great Am. Indus., Inc.*,
   855 F.2d 987 (2d Cir. 1988)................................................................................. 14

*Yannes v. SCWorx Corp.*,
   2021 WL 2555437 (S.D.N.Y. June 21, 2021) ....................................................... 12

Lead Plaintiffs RTD Bros LLC, Todd Benn, Tom Benn, and Tomasz Rzedzian, and additional plaintiff Preston Million (collectively, "Plaintiffs"), by and through the undersigned attorneys, respectfully submit this Memorandum of Law in Opposition to the Motion to Dismiss the Amended Class Action Complaint filed by Defendant Kathryn Lever ("Lever") (ECF Nos. 111-112).[1]

## PRELIMINARY STATEMENT

Lever's motion to dismiss largely mimics the arguments of Defendant Lottery.com, Inc. ("Lottery" or the "Company") in support of dismissal, and therefore fails for the same reasons set forth in Plaintiffs' brief in opposition to Lottery's motion.  Accordingly, Plaintiffs avoid retreading ground already covered in opposition to Lottery's brief and only respond to Lever's "unique" arguments.[2]

Lever – who was Lottery's Chief Legal Officer, Chief Operating Officer, and Secretary – primarily argues that she did not make any of the misleading statements at issue, but even if she had, she did not know that her statements were false.  In other words, Lever contends that—despite being responsible for Lottery's legal, compliance, and regulatory affairs—she was not reckless in

---

[1] All references to Lever's motion to dismiss appear herein as "Lever Br. at __."  All references to the Amended Class Action Complaint ("AC") (ECF No. 52) herein appear as "¶ __."  All references to "Ex. __." are to the "Declaration of Casey E. Sadler in Support of Plaintiffs' Memoranda of Law in Opposition to Defendants Kathryn Lever's and Vadim Komissarov's Motions to Dismiss," which is being filed contemporaneously herewith.  Unless otherwise noted, all emphasis is added, and internal case citations and quotations are omitted throughout.

[2] On April 3, 2023, Defendant Lottery.com, Inc. and Individual Defendants Anthony DiMatteo, Matthew Clemenson, and Ryan Dickinson filed motions to dismiss the AC, respectively (ECF Nos. 75-76 (Lottery), 85-86 (DiMatteo), and 91-92 (Clemenson-Dickinson)).  Those motions have been fully briefed.

Plaintiffs incorporate by reference, as if fully set forth herein, all arguments set forth in their previously filed memoranda of law in opposition to the motions to dismiss the AC filed by Defendant Lottery.com (ECF No. 95) and Individual Defendants Anthony DiMatteo, Matthew Clemenson, and Ryan Dickinson (ECF No. 96) as applicable.

not knowing that (i) the Company was not complying with state and federal laws concerning the state in which lottery tickets are procured as well as order fulfillment, or (ii) that the Company overstated its actual cash on hand by approximately 100% and was misreporting revenues by a similarly massive amount.  While Lever may not have been Lottery's CEO or CFO, as CLO and Secretary, she was nonetheless deeply involved in the Company's daily affairs, such that it is simply implausible that she was unaware of the particulars of the Company's single largest transaction or the fact that the Company only possessed $30 million in cash when it falsely claimed to possess double that amount.  Indeed, it should go without saying that the corporate officer responsible for "leading the charge on legal, compliance, risk management, and regulatory requirements," was more than capable of grasping the difference between compliance and non-compliance, potential risk and materialized risk, and real and imaginary cash balances and revenues.

Furthermore, Lever is responsible for the false statements at issue regarding those matters. Lever signed Lottery's Forms 8-K which contained the false and misleading cash and revenue statements, and which Lottery later admitted were untrustworthy and would have to be restated. As such, she made the statements that Plaintiffs have sufficiently allege are false.

At bottom, Lever would have this Court believe that the obvious and massive financial reporting errors were merely honest mistakes made while trying to comply with difficult or complex accounting principles. That is not this case, and the strongest inference – by far – is that Lever (and the other Individual Lottery Defendants) knowingly lied or were extremely reckless in making and/or approving Lottery's statements concerning its cash balance and revenues.

Accordingly, for these reasons and for the additional reasons set forth herein, the Court should deny Lever's motion to dismiss in its entirety.

**STATEMENT OF FACTS**

Plaintiffs respectfully incorporate, as if fully set forth herein, the Statement of Facts from their previously filed briefs in opposition to the three motions to dismiss filed by Lottery, DiMatteo, Clemenson, and Dickinson, respectively (ECF Nos. 95-96), and provide the following additional facts relevant and in response to Lever's motion.

## I.    Lever's Ever-Expanding Position With Lottery And Incentives To Approve The Business Combination

Lever was Lottery's first Chief Legal Officer and remained in that position from her hire in late-March 2021 until her departure in September 2022.[3]  She also served as the Company's Secretary throughout her tenure.[4]  Upon completion of the Business Combination in October 2021, Lever officially became an "officer" of the newly minted Company (*id*. at 199; ¶ 30) and received a grant of equity in the form of restricted stock which she had never received previously.[5]  And just a few months later, effective March 10, 2022, Lever was appointed as Lottery's Chief Operating Officer, on top of her preexisting executive and managerial positions.[6]  From March to September 2022, there was no other individual with more functions or responsibilities in the management and operation of the Company than Lever.[7]

---

[3] *See* Ex. 7, Lottery.com Inc., Current Report (Form 8-K) (September 9, 2022) (hereinafter the "September 9, 2022 Form 8-K").

[4] *See* Ex. 8, Trident Acquisition Corp., Proxy Statement and Prospectus, at 200 (October 18, 2021) (hereinafter the "Proxy"); *see also* Ex. 9, Lottery.com Inc., Current Report (Form 8-K), at 1-2 (March 14, 2022) (hereinafter the "March 14, 2022 Form 8-K").

[5] *See* Ex. 10, Lottery.com Inc., Definitive Proxy Statement (Schedule 14A), at 23-24 (Apr. 28, 2022) (hereinafter the "April 28, 2022 Proxy").

[6] Ex. 9, March 14, 2022 Form 8-K at 1-2.

[7] *See Id*.; *see also* Ex. 8, Proxy at 200.

## II.     Lever's Responsibility For The Company's Class Period Statements

Because of her position within the Company, Lever "possessed the power and authority to control the contents of Lottery's reports to the SEC, press releases, and presentations to securities analysts and investors, money and portfolio managers, and institutional investors, *i.e.,* the market." ¶ 31.  This power and authority were real—that is, throughout the Class Period, beginning in April 2021 and continuing through August 2022, Lever signed all the Company's Forms 8-K.  ¶¶ 71, 74, 85, 89, 91, 95, 113.   Lever had access to material non-public information concerning the Company's finances and business operations, was provided with copies of the filings and press releases prior to or shortly after their issuance, and had the ability to prevent the dissemination of, or to correct, the statements contained therein.  ¶ 31.

## ARGUMENT

## I.     The Applicable Pleading Standards Disfavor Lever's Motion

Plaintiffs respectfully incorporate by reference their discussion of the pleading standards for alleging falsity and scienter in connection with their Section 10(b) and Rule 10b-5 claim, and for alleging negligence in connection with their Section 14(a) and Rule 14a-9 claim, set forth in their brief in opposition to Lottery's motion to dismiss (Lottery Opp. Br. (ECF No. 95) at Section III.A (Rule 12(b)(6)), Section III.B.1 (falsity), Section III.B.2 (scienter), and Section III.C (negligence)).[8]

---

[8] Plaintiffs provide additional discussion of the pleading and legal standards applicable to their Section 14(a) and Rule 14a-9 claim herein at Section III, below, in response to Lever's arguments on this claim.

4

II.    **Plaintiffs Have Sufficiently Alleged That Lever Made False And/Or Misleading Statements Under Section 10(b) And Rule 10b-5**

A.    **Plaintiffs Have Sufficiently Alleged Falsity**

As Lever's motion regarding falsity of the challenged Class Period statements refers only to the arguments raised in Lottery's motion on this issue and does not raise any new arguments that Plaintiffs have not already addressed in their brief in opposition to Lottery's motion (Lever Br. (ECF No. 111) at 7), Plaintiffs again respectfully refer the Court to that opposition brief and incorporate herein their arguments establishing the sufficiency of the falsity allegations.  Lottery Opp. Br. (ECF No. 95) at Section III.B.1(a)-(e).

B.    **Plaintiffs Have Sufficiently Alleged That Lever Was A "Maker" Of The False And/Or Misleading Statements Attached And Expressly Incorporated Into Lottery's Post-Business Combination Forms 8-K**

The false and misleading statements at issue concern Lottery's cash and revenue positions shortly before and after the Business Combination.  The statements were largely made in concert with the Company's quarterly reporting of its financial results in press releases issued on November 15, 2021, March 31, 2022, and May 16, 2022.  ¶¶ 85, 89, 91, 95.  On these same dates, Lottery also filed Forms 8-K, attaching as exhibits these press releases, and with respect to the November filing, an additional investor slide presentation, expressly incorporating their contents by reference, and including an embedded hyperlink to the exhibits.  ¶¶ 85, 91, 95.[9]

Also on November 15, 2021, Lottery filed a second Form 8-K, this time attaching as exhibits a document entitled, "Management's Discussion and Analysis of Financial Condition and Results of Operations of AutoLotto, Inc." (¶ 89), as well as AutoLotto's unaudited financial

---

[9]  *See* Ex. 11, Lottery.com Inc., Current Report (Form 8-K) (November 15, 2021) (hereinafter the "November 15, 2021 Form 8-K"); *see also* Ex. 13, Lottery.com Inc., Current Report (Form 8-K) (March 31, 2022) and Ex. 14, Lottery.com Inc., Current Report (Form 8-K) (May 16, 2022).

statements for the period ending September 30, 2021.  ¶ 65.[10]  These documents were likewise expressly incorporated by reference and accessible through an embedded hyperlink.  *Id*.  Lever signed all four Forms 8-K and authorized their respective filings with the SEC.  ¶¶ 31, 85, 89, 91, 95.

Lever does not dispute her sign-off authority; rather, *she concedes it*.  Lever Br. at 9.  Nor does she dispute what was stated in, or what statements were incorporated into, Lottery's SEC filings.  *Id*.  Instead, she disputes and diminishes her role and function at Lottery, to contend that she cannot be held liable under Rule 10b-5 as the "maker" of any challenged statement because she did not have "ultimate authority" over any such statement under the Supreme Court's holding in *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) ("*Janus*").  *Id*. at 8-10.  As discussed below, her attempt to avoid *Janus* and its progeny misses the mark, runs contrary to settled case law, and ignores the AC's well-pled allegations.

In *Janus*, the Supreme Court held that, for liability to attach under Rule 10b-5, a defendant must have "made" the misstatement.  *Id.* at 141.  The Court then set out the following rule for determining whether a defendant is the "maker of a statement": "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  *Id*. at 142.  In the "ordinary case," the Court noted, the maker is the one to whom the statement is attributed.  *Id*. at 142-43.  The Court explained that "attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it was attributed."  *Id*.

"In the post-*Janus* world, an executive may be held accountable where the executive had ultimate authority over the company's statement; signed the company's statement; ratified and

---

[10] *See* Ex. 12, Lottery.com Inc., Amended Current Report (Form 8-K/A) (November 15, 2021).

approved the company's statement; *or* where the statement is attributed to the executive." *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 473 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013) (finding that "a question of fact exists as to whether Dallavecchia had ultimate authority over the misstatements, or ratified and approved the misstatements" at issue where a chief risk office, *inter alia*, participated in drafting relevant disclosures, reviewed draft filings and sub-certified (and thus approved) SEC filings).  In fact, "courts consistently hold that signatories of misleading documents 'made' the statements in those documents, and so face liability under Rule 10b-5(b)." *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 164 (S.D.N.Y. 2012); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 541 (S.D.N.Y. 2016) (same). As the *Smith Barney* court explained:

> By signing the SEC filings at issue here, [the defendant] attested to their accuracy . . . . He did not merely 'prepare[ ] or publish[ ] a statement on behalf of another.' . . . . Accordingly, [the defendant] 'made' misleading statements to the public in violation of section 10(b) and Rule 10b-5(b).

884 F. Supp. 2d at 164; *see*, *e.g.*, *In re Stillwater Capital Partners Inc. Litig.*, 858 F. Supp. 2d 277, 287-88 (S.D.N.Y. 2012) (corporate officer who signed public filings could be liable as "maker" of filings' false statements).[11]  As such, Lever made the statements she signed.

Additionally, to the extent Lever wants to shift blame for the false press release statements onto her co-Individual Lottery Defendants, as she suggests (Lever Br. at 9 (the "documents do not

---

[11] Lever ignores the controlling authority on the issue, and instead relies principally on two out of circuit cases – *Levy* and *Cognizant* – as a final attempt to foreclose her liability as a "maker" of the Form 8-K statements.  Lever Br. at 9 (citing *Levy v. Gutierrez*, 2017 WL 2191592 (D.N.H. May 4, 2017) and *In re Cognizant Technology Solutions Corp. Sec. Litig.*, 2020 WL 3026564 (D.N.J. June 5, 2020)).  These cases run afoul of the long-established post-*Janus* precedent in this District and Circuit as established, *supra*.  Moreover, *Cognizant* is factually distinguishable because there were no allegations the defendant was responsible for reviewing or approving the press releases prior to their issuance.  *Cognizant*, 2020 WL 3026564, at *15.  Here, the AC precisely alleges just that – Lever's control over press releases "prior to or shortly after their issuance." ¶ 31.

7

even refer to or mention Ms. Lever" . . . rather "[e]ach press release quotes the Company's Chief Executive Officer . . .")), she is no less at fault based on her "implied representation that the information" conveyed "is true or at least in accordance with the [her] views."  *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 163 (2d Cir. 1980), *superseded by statute on other grounds as stated in Acticon AG v. China North East Petroleum Holdings Ltd.*, 692 F.3d 34, 38-40 (2d Cir. 2012); *see also Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000) (defendants liable for false statements in analyst reports they subsequently endorsed).  After all, Plaintiffs allege Lever was "provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected."  ¶ 31.  And the record is devoid of any facts, let alone a suggestion, that she exercised this right and made any corrections.

Finally, while explicit attribution can be a strong indication of *Janus's* "ultimate authority," it also can be found if implicit in surrounding circumstances, or, in other words, evidenced by various indicia of control.  *See City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 418 (S.D.N.Y. 2011) (quoting *Janus*, 564 U.S. at 142-43).  Here, Lever was Lottery's first CLO and remained in that position from her hire in late-March 2021 until her departure in September 2022.[12]  She also served as the Company's Secretary throughout her tenure.[13]  At the time of the Business Combination in October 2021, Lever officially became an "officer" of Lottery (*id*. at 199; ¶ 30), and just a few months later she was appointed as the Company's COO.[14]  Thus, from March to September 2022, there was no other individual at Lottery

---

[12] *See* Ex. 7, September 9, 2022 Form 8-K.

[13] *See* Ex. 8, Proxy at 200; *see also* Ex. 9, March 14, 2022 Form 8-K at 1-2.

[14] *Id*.

with more functions or responsibilities in the management and operation of the Company than Lever.

Since the very beginning, Lever was specifically tasked with "navigat[ing] Lottery's expansion as a public company and lead[ing] the charge on legal, compliance, risk management, and regulatory requirements."[15]  Her managerial responsibilities only grew over time, and in early March 2022, she added "human resources," "investor relations," and "project management."[16]  Lever also shared management team duties with her co-Individual Lottery Defendants, which included "develop[ing] and implement[ing] internal controls necessary to ensure that [Lottery] maintains adequate books and records," and "establish[ing] and maintain[ing] adequate internal control over financial reporting," as examples.  ¶¶ 119, 124.  Lever "possessed the power and authority to control the contents of Lottery's reports to the SEC, press releases, and presentations to securities analysts and investors, money and portfolio managers, and institutional investors, *i.e.,* the market."  ¶ 31.  Throughout the Class Period, Lever routinely signed and authorized the Company's Forms 8-K filings.  ¶¶ 71, 74, 85, 89, 91, 95, 113.

These facts more than sufficiently demonstrate that Lever had ultimate authority over each Form 8-K as a whole, not merely the contents on the cover page.  Lever's authority is thus "implicit from surrounding circumstances" alleged in the AC.  *Janu*s, 564 U.S. at 142.  In other words, with all factual allegations assumed to be true and all reasonable inferences drawn in Plaintiffs' favor, the allegations at this stage meet Section 10(b)'s heightened pleading requirements, and to plead that Lever was a "maker" of the false and misleading Form 8-K statements within the meaning of

---

[15] *See* Ex. 8, Proxy at 200; *see also* Ex. 9, March 14, 2022 Form 8-K at 1-2.

[16] *See* Ex. 9, March 14, 2022 Form 8-K at 1-2.

Section 10(b) under *Janus*.  At the very least, Lever raises questions of fact that cannot be resolved by her motion.

## III.    Plaintiffs Have Sufficiently Alleged A Strong Inference Of Lever's Scienter

A strong inference of scienter can be plead through (i) motive and opportunity or (ii) conscious misbehavior or recklessness, either of which is independently sufficient.  *See* Lottery Opp. Br. at Section III.B.2.  Here, Plaintiffs' allegations establish Lever's scienter under both prongs.

### A.    Lever's Motive

Lever argues that Plaintiffs' motive allegations are insufficient because they purportedly do not describe any "concrete benefits" that she stood to gain from the fraud, and instead merely describe incentives possessed by nearly all corporate insiders.  Lever Br. at 11-12.  This is incorrect.

Lever was awarded $7 million in restricted stock, which was contingent on the completion of the Business Combination.[17]  The stock grant dwarfed her non-contingent salary of $318,750 (which increased more than 63% in expectation of the merger).  *Id*.; *see also* ¶ 140.

Accordingly, Plaintiffs adequately allege that Lever was motivated to deceive investors as to the true state of Lottery's affairs, because she stood to benefit personally from the consummation of the Business Combination.  *See* Lottery Opp. Br. at Section III.B.2.a (citing *Hsu v. Puma Biotechnology, Inc.*, 2017 WL 3205774, at *4 (C.D. Cal. July 25, 2017) (allegation that pending transaction would personally benefit defendants supported scienter); *see also Lemen v. Redwire Corp.*, 2023 WL 2598402, at *4 (M.D. Fla. Mar. 22, 2023) (same)).[18]

---

[17] *See* Ex. 10, April 28, 2022 Proxy at 23-24.

[18] *See In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 557 (S.D.N.Y. 2010) (merger transcended "a generic corporate desire to negotiate favorable terms" and alleged a "concrete and personal

### B.     Lever's Conscious Misbehavior And/Or Recklessness

Plaintiffs have also pled scienter because Lever "knew facts or had access to information suggesting that their public statements were not accurate."  *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F. 3d 64, 79 (2d Cir. 2021).  Plaintiffs' arguments establishing Lever's knowledge/access are detailed in their brief in opposition to Lottery's motion to dismiss and are adopted by reference as if fully set forth herein.  Although Lever's arguments are largely repetitive of Lottery's arguments, a few points merit specific discussion.

*First*, Lever's supposed "uncover[ing] [of] possible wrongdoing" by "precipitating an internal investigation and the removal and departure of her superiors" does not negate an inference of scienter at the time the statements were made.  The lack of any authority in Lever's Motion on this point underscores Plaintiffs' claim.  In fact, if he had such concerns, she should never have signed or allowed the statements to be issued.

*Second*, like her co-Defendants Lottery, Clemenson, Dickinson, and DiMatteo, Lever atomizes Plaintiffs' scienter allegations and argues that each fact, considered in a vacuum, is insufficient to yield a strong inference of scienter.  *See* Lottery Br. at 13-17; Ind. Def. Br. at 10-12.  But that approach is simply contrary to the Supreme Court's instruction that the scienter analysis is holistic.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 322-23, 326 (2007).

Thus, even if Lever were correct that there is no single allegation that, standing alone, suffices, Plaintiffs' allegations taken collectively easily give rise to a strong inference of scienter. Those allegations include, *inter alia*, the fact that: (i) the misrepresentations related directly to

---

benefit"); *In re Vivendi Universal, S.A. Sec. Litig.*, 2004 WL 876050, at *8 (S.D.N.Y. Apr. 22, 2004) ("the ability of Vivendi to maintain and expand its enterprise [is] an aim that is clearly distinguishable from the more general motives that have been held insufficient to support scienter.").

Lever's official responsibilities; (ii) it is facially implausible that the CLO and COO, at a minimum, were unaware of the fact that Lottery was in non-compliance with state and federal lottery law and had also massively overstated its cash and revenues; (iii) the fraud was massive and concerned basic and obvious accounting violations; (iv) the Individual Lottery Defendants were terminated/resigned in close proximity to the disclosure of the fraud; and (v) Lottery's independent accounting firm resigned because it could not trust management's representations. *See generally* Lottery Opp. Br. at Section III.B.2.b.

*Third*, Lever's argument that her resignation does not support scienter because Plaintiffs did not allege that her departure was accompanied by highly unusual or suspicious circumstances, is similarly meritless. Lever resigned in September 2022 following the departure of three other members of senior management, ultimately leading to the Company's corrective disclosures.[19] When viewed in context with the departures of the other Individual Lottery Defendants, Lever's departure was highly suspicious. As such, her departure supports a finding of scienter. *See Yannes v. SCWorx Corp.*, 2021 WL 2555437, at *6 (S.D.N.Y. June 21, 2021) ("the timing and circumstances of resignations . . . can add a pleading of circumstantial evidence of fraud.")); *see also* Lottery Opp. Br. at Section III.B.2.b.

## IV.    Plaintiffs Have Sufficiently Alleged A Section 14(a) Claim Against Lever

Plaintiffs bring their Section 14(a) claim on behalf of all former TDAC shareholders who held TDAC common stock as of October 28, 2021—the record date of the Business Combination,

---

[19] Defendant Dickinson was terminated in July 2022, *one day* after independent investigators revealed the massive and obvious financial reporting errors discussed above. Lottery itself has admitted in another lawsuit that "its available unrestricted cash balance had been overstated by approximately $30 million by the actions of [Dickinson] . . . ." ¶ 112. DiMatteo and Clemenson resigned the same month as Dickinson's termination, which was followed shortly thereafter by the resignation of Lottery's auditor because, in its words, it was unable to trust the representations of management. ¶¶ 115, 134, 150.

and who were eligible to vote on the merger at TDAC's special meeting on October 28, 2021. ¶ 1. Plaintiffs allege that the October 18, 2021 Proxy, through which Defendants, including Lever, solicited approval of the Business Combination, was false and misleading because it ***negligently*** included materially misleading statements and omissions about Lottery's business in two primary categories. ¶¶ 77-82. Lever insists she cannot be held liable under Section 14(a) because Plaintiffs have not alleged an actionable misstatement or her scienter. Lever Br. at 17.[20] Both arguments fail.

In arguing that Plaintiffs have not pled any actionable misstatements, Lever adopts the arguments set out in Lottery's motion to dismiss (*id.*), which also challenged *only* the misstatement element of Plaintiffs' Section 14(a) claim. Plaintiffs therefore respectfully incorporate by reference herein the arguments set forth in their brief in opposition to Lottery's motion on this subject, explaining that they have sufficiently pled an actionable Section 14(a) claim against all Defendants. *See* Lottery Opp. Br. at 21-25.

Unable to attack the sufficiency of the allegations under the applicable negligence and corresponding Rule 8(a) pleadings standards, Lever argues that Plaintiffs' Section 14(a) claim sounds in fraud and, thus, Rule 9(b) and the PLSRA's heightened pleading standards, including Section 78u-4(b)(2)'s state of mind requirement, must apply to this claim. *See* Lever Br. at 18-19. Lever's claim ignores the applicable pleading requirements under the FRCP and PSLRA, the AC's allegations, and the very authority she urges this Court to follow.

"It is well established in this circuit that scienter is not a required element of a Section 14(a) claim." *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, 2021 WL 4443258, at *8 (S.D.N.Y.

---

[20] Plaintiffs point out for the Court that Lever's reference to a "November 2014" proxy solicitation (Lever Br. at 17) appears to be a clerical error, and Plaintiffs submit that there is no such proxy at issue in this case.

Sept. 27, 2021).   Regardless of whether a Section 14(a) claim is alleged under a theory of negligence or fraud, Section 78u-4(b)(2) does not apply.  *Id*.  In other words, "a proxy solicitation that contains a misleading misrepresentation or omission violates the section even if the issuer believed in perfect good faith that there was nothing misleading in the proxy materials."  *Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009) (Posner, J.).

Pinning her hopes on Rule 9(b) and the PSLRA's heightened standards, Lever fails to even argue, let alone mention, that if Rule 8(a) applies (as her co-Defendants concede), Plaintiffs have not met their pleading burden.  Thus, any challenge to the sufficiency of Plaintiffs' negligence allegations have been waived.

Still, Plaintiffs have alleged Lever's negligence.  As the CLO of Lottery with the power and authority to control the contents of its SEC's filings, including the Proxy, Lever was in a position to know, and should have known, merely by carrying out of her job duties and exercising due diligence in connection therewith, that Lottery was not in fact in compliance with state and federal lottery laws and regulations; contrary to her representations in the Proxy.  Her failure to identify and correct the Proxy's glaring inaccuracies and omissions is sufficient to plead negligence.  *See Katz v. Pels*, 774 F. Supp. 121, 126 (S.D.N.Y. 1991) (citing *Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 994 (2d Cir. 1988)) (for Section 14(a) liability, "it is sufficient to show that the corporate officers and directors . . . negligently failed to adhere to the rules requiring full disclosure"); *Brown v. Brewer*, 2010 WL 2472182, at *24 (C.D. Cal. June 17, 2010) (director's "failure to notice material omissions" in proxy materials sufficient to establish negligence); *see also Fresno Cnty. Emps.' Ret. Ass'n v. Comscore, Inc.*, 268 F. Supp. 3d 526, 563 (S.D.N.Y. 2017) (noting the "low bar for pleading negligence in the Section 14(a) context").

14

**V.      Plaintiffs Have Sufficiently Alleged Lever's Control Person Liability Under Section 20(a)**

To plead control person liability under Section 20(a), Plaintiffs must allege a primary violation, control of the company, and culpable participation.  *See In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 534 (S.D.N.Y. 2010).  Lever was a controlling person within the meaning of Section 20(a), not simply by virtue of her job titles, but rather, because of her authority and job responsibilities as the acting CLO and COO of Lottery.  *See* Argument, II.B., *supra*.  And, as explained above, the AC also plausibly establishes that Lever was a culpable participant on the conduct at issue herein.  Drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs have sufficiently alleged Lever's control and that they have plausibly alleged facts to support their 20(a) claim against her.

### CONCLUSION

For the foregoing reasons, Lever's motion to dismiss the AC (ECF Nos. 111-112) should be denied in its entirety.  The controlling authority is overwhelming that Lever was the "maker" of the post-Business Combination false and misleading statements contained within the Forms 8-K she signed for purposes of Section 10(b) and Rule 10b-5 liability, she participated in the solicitation of the Proxy for purposes of Section 14(a) liability, and she was a controlling person of Lottery for purposes of Section 20(a) liability.  Her motion should be denied.

15

Dated: October 30, 2023

By: */s/ Casey E. Sadler*

**GLANCY PRONGAY & MURRAY LLP**
Casey E. Sadler (admitted *pro hac vice)*
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

*Counsel for Lead Plaintiffs RTD Bros LLC,
Todd Benn, Tom Benn, and Tomasz Rzedzian
and Lead Counsel for the Class*

**KIRBY McINERNEY LLP**
Andrew M. McNeela
Thomas W. Elrod
Ira M. Press
250 Park Avenue, Suite 820
New York, York 10177
Telephone: (212) 371-6600
Email: amcneela@kmllp.com
          telrod@kmllp.com
          ipress@kmllp.com

**BERGER MONTAGUE PC**
Sherrie R. Savett
Michael Dell'Angelo
Andrew D. Abramowitz
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: ssavett@bm.net
mdellangelo@bm.net
aabramowitz@bm.net

*Counsel for Additional Plaintiff*

16

## PROOF OF SERVICE

I hereby certify that on this 30th day of October, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Casey E. Sadler*
Casey E. Sadler

17