**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE LOTTERY.COM, INC. SECURITIES LITIGATION | Case No. 22 Civ. 07111 (JLR) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT VADIM KOMISSAROV'S**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................ 1

STATEMENT OF FACTS ............................................................................................................... 2

    I.    Background On Mr. Komissarov And TDAC ................................................................. 3

    II.    Mr. Komissarov's Role In The Business Combination .................................................. 4

    III.    Mr. Komissarov's Responsibility For Statements Issued Prior To The Business Combination .................................................................................................................... 5

    IV.    Procedural History .......................................................................................................... 7

ARGUMENT ................................................................................................................................... 8

    I.    Applicable Legal Standards ............................................................................................ 8

    II.    The AC States A Claim Against Mr. Komissarov Under Section 14(a) Of The Exchange Act ................................................................................................................ 10

        A.    The AC Sufficiently Alleges Mr. Komissarov's Negligence ..................... 11

        B.    The AC's Allegations Are Also Sufficient To Plead Scienter ................... 12

        C.    Mr. Komissarov Is Responsible For The Misrepresentations And Omissions In The Proxy Materials ............................................................ 14

            1.    *Janus* Does Not Apply To Section 14(a) Claims .......................... 14

            2.    Even If *Janus* Applies, Mr. Komissarov Was The "Maker" Of The Alleged Misstatements And Omissions ....................................... 16

        D.    The Revenue-Related Misrepresentations And Omissions Are Actionable ................................................................................................... 17

        E.    The Compliance-Related Misrepresentations And Omissions Are Actionable ................................................................................................... 19

    III.    The AC States A Claim Against Mr. Komissarov Under Section 20(a) Of The Exchange Act ................................................................................................................ 22

    IV.    Dismissal Is Not Warranted Under Rule 4(m) ............................................................ 22

CONCLUSION .............................................................................................................................. 24

## TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 8

*Baum v. Harman Int'l Indus., Inc.*,
408 F. Supp. 3d 70 (D. Conn. 2019) .............................................................................. 19

*Baum v. Harman Int'l Indus., Inc.*,
575 F. Supp. 3d 289 (D. Conn. 2021) .............................................................................. 9

*Beck v. Dobrowski*,
559 F.3d 680 (7th Cir. 2009) ............................................................................................ 9

*Bond v. Clover Health Invs., Corp.*,
587 F. Supp. 3d 641 (M.D. Tenn. 2022) ........................................................................ 13

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
866 F. Supp. 2d 223 (S.D.N.Y. 2012) ............................................................................ 20

*Brown v. Brewer*,
2010 WL 2472182 (C.D. Cal. June 17, 2010) ............................................................... 12

*Christine Asia Co. Ltd. v. Ma*,
718 F. App'x 20 (2d Cir. 2017) ....................................................................................... 8

*City of Providence v. Aeropostale, Inc.*,
2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) ............................................................... 19

*Fresno County Emp.'s' Ret. Assoc. v. Comscore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017) ....................................................................... 9, 12

*Gas Nat. Inc. v. Osborne*,
624 F. App'x 944 (6th Cir. 2015) .............................................................................10, 11

*Glover v. City of New York*,
2007 WL 9723344 (E.D.N.Y. Feb. 2, 2007) ................................................................. 23

*Henderson v. United States*,
517 U.S. 654 (1996) ....................................................................................................... 23

*Hill on Behalf of Republic First Bancorp Inc. v. Cohen*,
40 F.4th 101 (3d Cir. 2022) .............................................................................................11

*Ho v. Duoyuan Glob. Water, Inc.*,
    887 F. Supp. 2d 547 (S.D.N.Y. 2012) ........................................................................... 8

*HsingChing Hsu v Puma Biotech., Inc.*,
    2017 WL 3205774 (C.D. Cal. July 25, 2017) .......................................................... 14

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
    741 F. Supp. 2d 511 (S.D.N.Y. 2010) ..................................................................... 22

*In re Ambac Financial Grp., Inc. Secs. Litig.*,
    693 F. Supp. 2d 241 (S.D.N.Y. 2010) ..................................................................... 19

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
    757 F. Supp. 2d 260 (S.D.N.Y. 2010) ......................................................... 9, 15, 17

*In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011)...................................................................... 19

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013) ..................................................................... 21

*In re Gentiva Sec. Litig.*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) ..................................................................... 19

*In re Initial Pub. Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) ..................................................................... 22

*In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*,
    850 F. Supp. 1105 (S.D.N.Y. 1993) ........................................................................ 19

*In re Mindbody, Inc. Sec. Litig.*,
    489 F. Supp. 3d 188 (S.D.N.Y. 2020) ..................................................................... 15

*In re Oxford Health Plans Sec. Litig.*,
    187 F.R.D. 133 (S.D.N.Y. 1999) ............................................................................. 19

*In re Salix Pharm., Ltd.*,
    2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)........................................................... 19

*In Re Stable Rd. Acquisition Corp.*,
    2022 WL 2762213 (C.D. Cal. July 13, 2022) .................................................... 13, 14

*In re Tronox, Inc. Sec. Litig.*,
    2010 WL 2835545 (S.D.N.Y. June 28, 2010) ......................................................... 22

*In re Van der Moolen Holding N.V. Sec. Litig.*,
  405 F. Supp. 2d 388 (S.D.N.Y. 2005) ............................................................................... 21

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
  195 F. Supp. 3d 528 (S.D.N.Y. 2016) ............................................................................... 22

*In re XL Fleet Corp. Sec. Litig.*,
  2022 WL 493629 (S.D.N.Y. Feb. 17, 2022) ..................................................................... 13

*Iowa Public Emp.'s' Ret. Sys. v. MF Global, Ltd.*,
  620 F.3d 137 (2d Cir. 2010) ............................................................................................. 21

*Janus Capital Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) ........................................................................................................... 2

*Jones v. Westchester Cty.*,
  182 F. Supp. 3d 134 (S.D.N.Y. 2016) ............................................................................... 24

*Katz v. Pels*,
  774 F. Supp. 121 (S.D.N.Y. 1991) .................................................................................... 12

*Lemen v. Redwire Corp.*,
  2023 WL 2598402 (M.D. Fla. Mar. 22, 2023) .................................................................. 13

*Lichtenberg v. Besicorp Grp. Inc.*,
  43 F. Supp. 2d 376 (S.D.N.Y. 1999) ................................................................................. 17

*Long Island Lighting Co. v. Barbash*,
  779 F.2d 793 (2d Cir. 1985) ............................................................................................. 10

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) .............................................................................................................. 8

*McIntosh v. Katapult Holdings, Inc.*,
  2023 WL 5049044 (S.D.N.Y. Aug. 8, 2023) ..................................................................... 15

*McKibben v. Credit Lyonnais*,
  1999 WL 604883 (S.D.N.Y. Aug. 9, 1999) ....................................................................... 23

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ............................................................................................. 13

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) .......................................................................................................... 20

iv

*Patriot Exploration, LLC v. SandRidge Energy, Inc.*,
  951 F. Supp. 2d 331 (D. Conn. 2013) ................................................................. 18

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006) ................................................................. 22

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
  2016 WL 5818590 (S.D.N.Y. Oct. 5, 2016) ......................................................... 21

*Realty Invs. Tax Exempt Fund Ltd. P'ship v. Dominium Tax Exempt Fund L.L.P.*,
  944 F. Supp. 250 (S.D.N.Y. 1996) ....................................................................... 10

*Sauer v. Town of Cornwall*,
  2021 WL 4066848 (S.D.N.Y. Sept. 7, 2021) ....................................................... 24

*Sec. & Exch. Comm'n v. Hurgin*,
  484 F. Supp. 3d 98 (S.D.N.Y. 2020) ................................................................. 9, 15

*Sec. & Exch. Comm'n v. Lek Sec. Corp.*,
  276 F. Supp. 3d 49 (S.D.N.Y. 2017) ..................................................................... 22

*Strasburger v. Blackburne & Sons Realty Cap. Corp.*,
  2020 WL 6128223 (C.D. Cal. June 25, 2020) ..................................................... 13

*Tomney v. Int'l Ctr. for the Disabled*,
  2003 WL 1990532 (S.D.N.Y. Apr. 29, 2003) ....................................................... 23

*Universal Am. Corp. v. Partners Healthcare Solutions Holdings, LP*,
  176 F. Supp. 3d 387 (D. Del. 2016) ..................................................................... 14

*Vides v. Amelio*,
  265 F. Supp. 2d 273 (S.D.N.Y. 2003) ..................................................................... 9

*Wilson v. Great Am. Indus., Inc.*,
  855 F.2d 987 (2d Cir. 1988) ............................................................................. 9, 12

*Xu v. Gridsum Holding Inc.*,
  624 F. Supp. 3d 352 (S.D.N.Y. 2022) ................................................................... 16

*Zapata v. City of New York*,
  502 F.3d 192 (2d Cir. 2007) ................................................................................. 23

RULES

Fed. R. Civ. P. 4 ................................................................................................................ 24

Fed. R. Civ. P. 4(m) ................................................................................................... 22, 23

Fed. R. Civ. P. 8(a)(2) ........................................................................................................ 9

REGULATIONS

17 C.F.R. § 240.14a–1(l)(1)(iii) ...................................................................................... 10

17 C.F.R. § 240.14a-9(a) .................................................................................................. 10

Lead Plaintiffs RTD Bros LLC, Todd Benn, Tom Benn, and Tomasz Rzedzian, and additional plaintiff Preston Million (collectively, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to Defendant Vadim Komissarov's Motion to Dismiss Plaintiffs' Amended Complaint. *See* ECF Nos. 115-117. Plaintiffs incorporate by reference, as if fully set forth herein, all arguments set forth in their Memorandum of Law in Opposition to Lottery.com, Inc.'s Motion to Dismiss the Amended Class Action Complaint (the "Lottery Opposition Brief"). *See* ECF No. 95.

**PRELIMINARY STATEMENT**

Plaintiffs allege clear and straightforward violations of Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") by Mr. Komissarov, who served as the Chief Executive Officer ("CEO") and director of Trident Acquisitions Corp. ("TDAC" or the "Company") until October 29, 2021, when TDAC consummated its business combination with AutoLotto Inc., d/b/a Lottery.com, Inc. ("Lottery") (the "Business Combination").

Mr. Komissarov was heavily involved in TDAC's decision to combine with Lottery, and he was highly motivated to complete the transaction at all costs, knowing that his personal financial interest in TDAC was dependent on it. Following three extensions to TDAC's deadline to consummate a business combination and faced with dwindling funds with which to effectuate such a deal, Mr. Komissarov introduced TDAC's management to Lottery as a potential target for acquisition. Thereafter, Mr. Komissarov received Lottery's historical and projected financial information, as well as information necessary to perform regulatory due diligence on Lottery, he met with Lottery's senior management on numerous occasions, and he ultimately signed the Business Combination Agreement with Lottery on TDAC's behalf. Mr. Komissarov also enthusiastically solicited proxies urging TDAC shareholders to vote in favor of the Business Combination, and he did so via SEC filings that contained false and misleading information about

1

Lottery's revenue projections and results, as well as its supposed compliance with applicable laws and regulations.

In his motion, Mr. Komissarov attempts to avoid liability for the false and misleading statements in TDAC's October 18, 2021 proxy statement (the "Proxy Statement") by arguing that he is not the "maker" of those statements under *Janus Capital Grp., Inc. v. First Derivative Traders,* 564 U.S. 135 (2011), and even if he was, he did not make them with scienter. These arguments must be rejected. Mr. Komissarov's signature appeared in the Proxy Statement, and as TDAC's director and CEO, he had the power and authority to control the contents of that document and he reviewed it prior to issuance. Moreover, Mr. Komissarov's substantial involvement in conducting due diligence on Lottery combined with his personal, financial motivations for completing the Business Combination, fully supports a finding of conscious misbehavior or recklessness.

In any event, Mr. Komissarov's arguments are irrelevant for purposes of Plaintiffs' Section 14(a) claim. To plead Section 14(a) liability, a plaintiff need only allege that the defendant "solicited or permitted his or her name to be used in the allegedly unlawful proxy" – a showing that Plaintiffs have clearly made here. Moreover, despite acknowledging that Section 14(a) only requires a showing of negligence, Mr. Komissarov does not even attempt to contest the adequacy of Plaintiffs' negligence allegations.

For these reasons, and the additional reasons set forth herein, Mr. Komissarov's motion to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

Plaintiffs respectfully incorporate, as if fully set forth herein, the Statement of Facts from the Lottery Opposition Brief. *See* ECF No. 95 at 2-7. Plaintiffs provide the following additional facts pertinent to Mr. Komissarov's Motion to Dismiss.

2

## I.    Background On Mr. Komissarov And TDAC

TDAC was a blank check, special purpose acquisition company ("SPAC") formed on March 17, 2016 for the sole purpose of entering into a merger, asset acquisition, stock purchase, or other similar business combination. *See* ¶ 46.[1] Mr. Komissarov served as TDAC's director and CEO at all relevant times prior to TDAC's consummation of its Business Combination with Lottery on October 29, 2021. *See* ¶¶ 34, 62. He also served as TDAC's Chief Financial Officer until November 20, 2020. *See* ¶ 34.

Prior to TDAC's initial public offering ("IPO"), Mr. Komissarov, along with the other Individual TDAC Defendants,[2] acquired a significant financial interest in TDAC through the acquisition of 5,031,250 shares (valued at over $85 million at the Class Period high) and 1,150,000 private units (valued at $17.825 million in TDAC's Proxy Statement) for nominal consideration. *See* ¶¶ 55, 139. They also contributed over $3.4 million in cash to the Company. *See* ¶ 139.

On June 1, 2018, TDAC consummated its IPO, which resulted in total gross proceeds of $201,250,000. *See* ¶ 48. As of June 5, 2018, TDAC had deposited a total of $205,275,000 in net proceeds from the IPO and a private placement consummated simultaneously therewith into a trust account established for purposes of funding a business combination. *See id.* The IPO prospectus indicated that TDAC "intend[ed] to focus [its] efforts on seeking a business combination with an oil and gas or other natural resources compan[y] in Eastern Europe." ¶ 49.

---

[1] References herein to "¶ __" are to the Amended Class Action Complaint for Violations of the Federal Securities Laws (the "AC") filed on January 31, 2023. *See* ECF No. 52. References herein to the "Komissarov Br." are to Defendant Vadim Komissarov's Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Amended Complaint. *See* ECF No. 116. All references to "Sadler Decl., Ex. __" are to the "Declaration of Casey E. Sadler in Support of Plaintiffs' Memoranda of Law in Opposition to Defendants Kathryn Lever's and Vadim Komissarov's Motions to Dismiss," which is being filed contemporaneously herewith.

[2] The "Individual TDAC Defendants" are Vadim Komissarov, Marat Rosenberg, Thomas Gallagher, Gennadii Butkevych, and Ilya Ponomarev. *See* ¶¶ 33-37.

3

Pursuant to its certificate of incorporation, TDAC had until December 1, 2019 to effectuate a business combination. *See* ¶ 53. If TDAC failed to do so, it would be required to cease operations, redeem all outstanding public shares, and liquidate and dissolve the Company. *See id*. The Company's failure to consummate a business combination would also have rendered Mr. Komissarov's shares and private units worthless, and his cash contributions to TDAC would have been forfeited in their entirety. *See* ¶¶ 55, 139.

As the December 1, 2019 deadline approached, TDAC had not yet entered into a business combination. *See* ¶ 56. Consequently, TDAC and Mr. Komissarov sought not one, but three extensions of the deadline and each time, a portion of shareholders opted to redeem their shares. *See id*. Specifically, in connection with the first extension, $137,130,484 was removed from TDAC's trust account. *See id*. Following the second extension, TDAC's trust account was left with a balance of $68,219,114.98, and following the third extension, which extended the deadline to December 1, 2020, TDAC's trust account was left with only $62,286,780 with which to effectuate a business combination. *See id*.

## II.    Mr. Komissarov's Role In The Business Combination

On November 7, 2020, less than one month before the thrice-extended deadline was set to expire, Mr. Komissarov's former partner, Vagan Kazaryan, contacted Mr. Komissarov about a potential target for TDAC, Lottery. *See* Decl. of Jay K. Musoff ("Musoff Decl.") Ex. 4 at 83, ECF No. 117-4. Lottery – an online platform for playing state-sanctioned lottery games – was not involved in the Eastern European oil and gas industry. *See* ¶ 59. Nevertheless, realizing that time and money were running short, Mr. Komissarov agreed to an introduction with Individual Lottery

Defendant,[3] Tony DiMatteo, on November 8, 2020. *See* Musoff Decl. Ex. 4 at 83. The following day, Mr. DiMatteo sent information about Lottery to Mr. Komissarov and TDAC, including historical and projected financial information. *See id*.

Following a call on November 10, 2020 with Lottery's Mr. DiMatteo and Mr. Clemenson, Mr. Komissarov sent Lottery a draft letter of intent ("LOI"). *See id*. On November 13, 2020, Mr. Komissarov and other members of TDAC management had another call with Mr. DiMatteo and Mr. Clemenson, during which they discussed Lottery's current business and its "financial projections for the 2021-2025 period and underlying assumptions." *Id.* at 84 (emphasis added).

Thereafter, on November 17-18, 2020, Mr. Komissarov, along with Mr. Ponomarev and Mr. Rosenberg, met with Lottery's Mr. DiMatteo, Mr. Clemenson, and Mr. Dickinson, to further discuss Lottery's business model and financial results and to finalize the terms of the LOI. *See id.* at 85. The next day, TDAC publicly announced that it had signed a LOI to combine with Lottery. *See* ¶ 58.

Thereafter, Mr. Komissarov and TDAC allegedly conducted further financial, operational, and regulatory due diligence on Lottery. *See* ¶ 106; Musoff Decl. Ex. 4 at 85. On February 21, 2021, TDAC and Lottery executed the Business Combination Agreement, which Mr. Komissarov signed on TDAC's behalf. *See* Musoff Decl. Ex. 4 at 86, Annex A-61. The Business Combination was ultimately completed on October 29, 2021. *See* ¶¶ 60 n.6, 61.

### III.    Mr. Komissarov's Responsibility For Statements Issued Prior To The Business Combination

As discussed above, TDAC issued a press release announcing its LOI with Lottery on November 19, 2020. ¶ 74. The press release was filed with the SEC on November 23, 2020 on a

---

[3] The Individual Lottery Defendants are Lawrence Anthony "Tony" DiMatteo III, Ryan Dickinson, Matthew Clemenson, and Kathryn Lever. *See* ¶ 27-30.

Form 8-K signed by Mr. Komissarov. *Id*. In that press release, TDAC and Mr. Komissarov stressed that Lottery "*work[ed] closely with state regulators* to advance the lottery industry, providing increased revenues and better regulatory capabilities, while capturing untapped market share." ¶ 75 (emphasis added). TDAC and Mr. Komissarov made similar statements in February 8, 2021, February 22, 2021, April 5, 2021, and June 9, 2021 press releases – all of which were filed with the SEC on Form 8-Ks signed by Mr. Komissarov. ¶ 75.[4] Those statements were all materially misleading because they omitted to disclose that Lottery was not in compliance with "state and federal laws concerning the state in which tickets are procured as well as order fulfillment." ¶ 63.

On October 18, 2021, TDAC filed its Proxy Statement with the SEC on Form 424B3. *See* ¶ 77. The Proxy Statement referenced Mr. Komissarov's name on no fewer than 42 occasions and indicated that the Board of Directors (including Mr. Komissarov) was "soliciting proxies" (Musoff Decl. Ex. 4 at 67), and "unanimously recommend[ing] that TDAC stockholders vote 'FOR'" the combination with Lottery. *Id.* at p. 5 of 480; *see also id.* at vii ("The Board is soliciting your proxy to vote for the Business Combination."). Included within the Proxy Statement was TDAC's Business Combination Agreement with Lottery, signed by Mr. Komissarov. *See id.* at Annex A-61.

Among other things, the Proxy Statement falsely represented that Lottery was "in compliance" with the laws of all U.S. jurisdictions in which it was doing business (¶ 78), while again omitting to disclose that Lottery was *not in compliance* "with state and federal laws concerning the state in which tickets are procured as well as order fulfillment." ¶ 63. The Proxy Statement also falsely represented that Lottery was "anticipated to generate more than US$70 million in revenue" for fiscal year 2021, while simultaneously omitting to disclose that this

---

[4] *See also* Sadler Decl., Exs. 1-3 (February 22, 2021, April 5, 2021, and June 9, 2021 press releases and Form 8-Ks).

projection incorporated a *fictious* $30 million sale of affiliate marketing credits that had allegedly occurred during Q3 2021 (*i.e.,* the quarter ending September 30, 2021). *See* ¶ 80, 65.

Several days later, on October 21, 2021, TDAC filed a press release with the SEC pursuant to Rule 14a-12 (the "Press Release"), which named Mr. Komissarov as TDAC's contact person with respect to the information provided therein. *See* Sadler Decl., Ex. 4 at 1, 3; ¶ 83. The Press Release indicated that TDAC and "its directors and officers," including Mr. Komissarov, were "participants in the solicitation of proxies of [TDAC's] stockholders in connection with the proposed business combination." Sadler Decl., Ex. 4 at 3. The Press Release falsely represented that Lottery's preliminary revenue results for Q3 2021 were between $22 million and $24 million, while again omitting to disclose that these results were based entirely on the imaginary sale of marketing credits discussed above. *See* ¶ 83, 65.

## IV.    Procedural History

On August 19, 2022 Plaintiffs commenced this putative class action against Lottery and Messrs. DiMatteo, Clemenson, and Dickinson, alleging that they made material misrepresentations and omissions in connection with the Business Combination in violation of the Exchange Act. *See generally* ECF No. 1. On October 11, 2022, a related class action was filed in the Western District of Texas against Lottery, certain of the Individual Lottery Defendants, and the Individual TDAC Defendants, including Mr. Komissarov. *See McDonald v. Lottery.com, Inc.*, No. 22 Civ. 01025 (W.D. Tex.). Like the instant action, the *McDonald* action alleged that the defendants, including Mr. Komissarov, made material misrepresentations and omissions in connection with the Business Combination in violation of the Exchange Act. *See* Complaint, *McDonald v. Lottery.com, Inc*., No. 22 Civ. 01025 (W.D. Tex.), ECF No. 1. Mr. Komissarov was timely served with the summons and complaint in the *McDonald* action on November 1, 2022. *See* Sadler Decl., Ex. 6 (Nov. 1, 2022 Aff. of Service).

On January 31, 2023, Plaintiffs filed the AC in the instant action, which, in relevant part, added Exchange Act claims against the Individual TDAC Defendants, including Mr. Komissarov. Following an unsuccessful attempt at service, Plaintiffs served Mr. Komissarov with the AC on July 4, 2023. *See* ECF No. 103 (July 4, 2023 Aff. of Service). At the time service was effectuated, Mr. Komissarov did not challenge the timeliness or adequacy of service.

On September 20, 2023, Mr. Komissarov filed the instant motion to dismiss, arguing that the AC fails to state a claim against him under Rule 12(b)(6) and, in the alternative, that service was untimely under Rule 4(m). As discussed herein, those arguments must be rejected.

**ARGUMENT**

## I.   Applicable Legal Standards

Rule 12(b)(6) requires courts to accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Christine Asia Co. Ltd. v. Ma*, 718 F. App'x 20, 23 (2d Cir. 2017). The complaint need only "contain sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court's task in ruling on a Rule 12(b)(6) motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 561 (S.D.N.Y. 2012).

To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, a plaintiff must allege: (i) a material misrepresentation or omission; (ii) scienter; (iii) a connection with the purpose or sale of a security; (iv) reliance; (v) economic loss; and (vi) loss causation. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).

To state a claim under Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder, a plaintiff must allege that: (i) "the proxy materials contain a false or misleading statement of a material fact or omit to state a material fact necessary in order to make the statement

8

made not false or misleading"; (ii) the misstatement or omission was the result of "knowing, reckless or negligent conduct"; and (iii) "the proxy solicitation was an essential link in effecting the proposed corporate action." *Vides v. Amelio*, 265 F. Supp. 2d 273, 276 (S.D.N.Y. 2003).

For Section 14(a) liability, a plaintiff "need not establish scienter, and must plead only that [the defendant] was negligent in connection with the merger." *Sec. & Exch. Comm'n v. Hurgin*, 484 F. Supp. 3d 98, 116 (S.D.N.Y. 2020) (citing *Wilson v. Great Am. Indus.*, Inc., 855 F.2d 987, 995 (2d Cir. 1988)); *see Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009) ("Section 14(a) requires … at worst negligence."). Thus, a misleading proxy solicitation "violates the section even if the issuer *believed in perfect good faith* that there was nothing misleading in the proxy materials." *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 321 (S.D.N.Y. 2010) (emphasis added).

Section 14(a) claims are subject to Rule 8(a)'s liberal pleading standard, requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2); *see Fresno County Emp.'s' Ret. Assoc. v. Comscore, Inc.*, 268 F. Supp. 3d 526, 558 (S.D.N.Y. 2017); *In re Bank of Am. Corp.*, 757 F. Supp. 2d at 303 n.9. And "because negligence is not a state of mind; it is a failure, whether conscious or even unavoidable …, to come up to the specified standard of care," the PSLRA's "elevated pleading standard does not apply to Section 14(a) claims that sound in negligence." *Fresno County Emp.'s' Ret. Assoc.,* 268 F. Supp. 3d at 559 (citing *Beck,* 559 F.3d at 682); *see Baum v. Harman Int'l Indus., Inc.*, 575 F. Supp. 3d 289, 301 (D. Conn. 2021) ("Negligence is not a state of mind, so plaintiff need not state with particularity facts giving rise to a strong inference that the [defendant] acted with the required state of mind."); *In re Bank of Am. Corp.,* 757 F. Supp. 2d at 321 (same).

## II.    The AC States A Claim Against Mr. Komissarov Under Section 14(a) Of The Exchange Act

The AC alleges that Mr. Komissarov, TDAC's director and CEO, solicited approval of the Business Combination via TDAC's October 18, 2021 Proxy Statement and October 21, 2021 Press Release (together, the "Proxy Materials"), which negligently contained materially misleading statements and omissions about Lottery's business, including its projected and actual revenues, and its compliance with applicable laws and regulations. *See* ¶¶ 77-84. These allegations are more than sufficient to establish Section 14(a) liability at the pleading stage.

In regards to the October 21, 2021 Press Release, Section 14(a) liability is not limited to representations and omissions in the proxy statement itself. Liability attaches to any "solicitation" whether "made by means of a[] proxy statement, form of proxy, notice of meeting *or other communication*, *written* or oral." 17 C.F.R. § 240.14a-9(a) (emphasis added). Rule 14a-1 defines "solicitation" to include, *inter alia*, "[t]he furnishing of a ... communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy." 17 C.F.R. § 240.14a–1(l)(1)(iii). This rule is declarative of long-established Second Circuit law, which holds that "solicitation" comprehends not only direct requests to furnish proxies, but also "communications which may indirectly accomplish such a result or constitute a step in a chain of communications designed ultimately to accomplish such a result." *Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 796 (2d Cir. 1985); *Cap. Realty Invs. Tax Exempt Fund Ltd. P'ship v. Dominium Tax Exempt Fund L.L.P.*, 944 F. Supp. 250, 254 (S.D.N.Y. 1996) (same). Whether a communication constitutes such "a step in the chain" depends upon "whether the challenged communication, seen in the totality of circumstances, is reasonably calculated to influence a shareholder's decision to provide, revoke, or withhold a proxy." *Gas Nat. Inc. v. Osborne*, 624 F. App'x 944, 951 (6th Cir. 2015). In evaluating the totality of the circumstances,

10

courts look to (i) "the contents of the communication," (ii) "the conditions under which the communication is distributed," including whether there "will be a request for a shareholders' vote on a matter," and (iii) the "timing of the communication," including how far "removed the statement is from an act of shareholder suffrage. *Id* at 951. Here, the Press Release discussed the Business Combination and the upcoming shareholder vote thereon, it furnished further positive news about the target company, Lottery, and it was issued on October 21, 2021, mere days before the shareholder vote. *See* Sadler Decl., Ex. 4. As such, it constitutes a solicitation. *See Hill on Behalf of Republic First Bancorp Inc. v. Cohen*, 40 F.4th 101, 112 (3d Cir. 2022) (accepting allegations that "press releases were proxy solicitations, [because] the contents and timing of the announcements can at least plausibly be characterized as meant to sway shareholders to vote against the [] Directors who were standing for re-election").

### A.     The AC Sufficiently Alleges Mr. Komissarov's Negligence

Although Mr. Komissarov acknowledges that negligence is sufficient to establish Section 14(a) liability, he nowhere challenges the AC's negligence allegations, arguing only that Plaintiffs have failed to adequately allege that he acted with scienter. *See* Komissarov Br. at 11-12, 19-21. Any challenge to the sufficiency of the AC's negligence allegations has therefore been waived.

In any event, Plaintiffs have adequately alleged negligence. Indeed, Mr. Komissarov – TDAC's director and CEO – was TDAC's signatory to the Business Combination Agreement, and it was Mr. Komissarov's former partner that first introduced Mr. Komissarov and TDAC to Lottery as a potential target. *See* Musoff Decl. Ex. 4 at 83, Annex A-61. Mr. Komissarov (i) was actively involved in TDAC's due diligence process, which included operational, financial, and regulatory due diligence, (ii) participated in multiple calls and meetings with Lottery's management, and (iii) was in receipt of Lottery's historical and projected financial information. *See id.* at 83-85; ¶ 106. He also had the power and authority to control the contents of TDAC's SEC filings, including the

11

Proxy Statement and Press Release, and reviewed those documents prior to issuance. *See* ¶ 38.

Accordingly, Mr. Komissarov was in a position to know, and *should have known*, through the exercise of due diligence, that (i) the revenue projections and results in the Proxy Materials were comprised of tens of millions of dollars of sales *that never actually occurred*, and (ii) Lottery was not, in fact, in compliance with all applicable laws and regulations. His failure to identify and correct the Proxy Materials' glaring inaccuracies and omissions is sufficient to plead negligence. *See Katz v. Pels*, 774 F. Supp. 121, 126 (S.D.N.Y. 1991) (citing *Wilson*, 855 F.2d at 994) (for Section 14(a) liability, "it is sufficient to show that the corporate officers and directors … negligently failed to adhere to the rules requiring full disclosure"); *Brown v. Brewer*, 2010 WL 2472182, at *24 (C.D. Cal. June 17, 2010) (director's "failure to notice material omissions" in proxy materials sufficient to establish negligence); *see also Fresno Cnty. Emp.'s' Ret. Ass'n*, 268 F. Supp. 3d at 563 (noting the "low bar for pleading negligence in the Section 14(a) context").

Moreover, Mr. Komissarov had every incentive *not* to exercise adequate care in conducting due diligence on Lottery. Mr. Komissarov held a significant financial interest in TDAC – an interest that would be rendered worthless if TDAC did not complete a business combination. *See* ¶¶ 55, 107, 139. Moreover, at the time TDAC signed its LOI with Lottery, it had been attempting to acquire a target company for *two and a half years* and had sought *three extensions* of its deadline for doing so. *See* ¶¶ 56-58. With each extension and corresponding redemption by shareholders, Mr. Komissarov saw both his own financial interest, and the amount of money available to fund an acquisition, shrink precipitously. *See id*. He therefore had every incentive to act with haste, and to complete the Business Combination at all costs. This is more than sufficient to plead negligence.

**B.      The AC's Allegations Are Also Sufficient To Plead Scienter**

Although Plaintiffs need not allege scienter for purposes of their Section 14(a) claim, scienter is required to plead a violation of Section 10(b).  "An egregious refusal to see the obvious,

or to investigate the doubtful, may in some cases give rise to an inference of . . . recklessness." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). SPACs and their executives routinely perform substantial due diligence into key legal and other issues affecting their merger target companies. *In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629, at *6 (S.D.N.Y. Feb. 17, 2022) ("[A]llegations that [SPAC] directors . . . were substantially involved in conducting due diligence into [target company] . . . supports a finding of conscious misbehavior or recklessness."); *Bond v. Clover Health Invs., Corp.*, 587 F. Supp. 3d 641, 677 (M.D. Tenn. 2022) ("Any suggestion that SPAC investors going into a deal like this would not make substantial inquiries into AKS compliance would be implausible, to say the least.").

As such, failing to perform any meaningful investigation regarding (i) an extremely large outlier transaction that accounted for (a) *nearly all* of Lottery's Q3 2021 revenues, and (b) *almost half* of Lottery's projected $70 million revenues, and/or (ii) whether Lottery was, in fact, in compliance with all applicable laws and regulations, constitutes deliberate recklessness. *See Strasburger v. Blackburne & Sons Realty Cap. Corp.*, 2020 WL 6128223, at *5 (C.D. Cal. June 25, 2020) ("[B]y failing to conduct any meaningful due diligence regarding the borrowers— [defendant]'s actions departed extremely from the standard of ordinary care that a reasonably diligent broker in its position should have observed."); *In Re Stable Rd. Acquisition Corp.*, 2022 WL 2762213, at *11 (C.D. Cal. July 13, 2022) ("Defendants were deliberately reckless in failing to disclose Stable Road Corp.'s limited due diligence…").

Courts have also held that personal financial motives, such as those allegedly held by Mr. Komissarov here, *see* Argument, II.A., *supra*, are sufficient to plead scienter for purposes of Section 10(b). *See, e.g.*, *Lemen v. Redwire Corp.*, 2023 WL 2598402, at *4 (M.D. Fla. Mar. 22, 2023) (scienter adequately pled where "neither [defendant] wanted the … merger to fail" because

13

they "both stood to make a lot of money if the deal went through"); *Universal Am. Corp. v. Partners Healthcare Solutions Holdings, LP*, 176 F. Supp. 3d 387, 396 (D. Del. 2016) (scienter adequately pled where defendants had "powerful motives to conceal the truth about APS's business," because doing so would enable them "to exchange their illiquid and worthless APS shares for valuable, publicly traded shares of Universal" and to "increase their personal compensation by as much as 40 percent"); *HsingChing Hsu v Puma Biotech., Inc.*, 2017 WL 3205774, at *4 (C.D. Cal. July 25, 2017) (scienter adequately pled where defendants "actively sought to have Puma acquired" because a sale would have triggered a "change of control provision" that would have allowed the individual defendants "to immediately sell over 6 million shares of their stock" and to collect accelerated equity awards "in excess of $27 million"). At a minimum, that Mr. Komissarov had a financial and business incentive to complete the merger is a factor that supports "a 'strong' inference of scienter-based deliberate recklessness or wilful [sic] blindness." *In re Stable Rd.*, 2022 WL 2762213 at *11.

### C. Mr. Komissarov Is Responsible For The Misrepresentations And Omissions In The Proxy Materials[5]

Mr. Komissarov argues that, under *Janus,* neither he nor TDAC were the "makers" of the revenue projections or compliance-related representations in the Proxy Statement. *See* Komissarov Br. at 15, 17-19.[6] Not only is this incorrect, but it is irrelevant for purposes of Section 14(a).

#### 1. *Janus* Does Not Apply To Section 14(a) Claims

Unlike with Section 10(b), a plaintiff alleging a violation of Section 14(a) and Rule 14a-9

---

[5] Plaintiffs concede that Mr. Komissarov is not responsible for statements made *after* the Business Combination was effectuated on October 29, 2021. *See* Komissarov Br. at 4, 13.

[6] Mr. Komissarov does not argue that he was not the "maker" of the revenue representations in the Press Release. As such, that argument has been waived and, in any event, would be unavailing for the reasons discussed herein.

is not required to allege that the defendant "personally prepared the proxy materials" or "personally made or disseminated the allegedly misleading statements." *Hurgin*, 484 F. Supp. 3d at 116-17. Rather, a plaintiff need only allege that the defendant "solicited or permitted his or her name to be used in the allegedly unlawful proxy," *McIntosh v. Katapult Holdings, Inc*., 2023 WL 5049044, at *13 (S.D.N.Y. Aug. 8, 2023) (citing *In re Bank of Am. Corp*., 757 F. Supp. 2d at 288) (allegation that defendant "permitted his name to be used in the Prospectus" sufficient for Section 14(a)); *see also In re Mindbody, Inc. Sec. Litig*., 489 F. Supp. 3d 188, 218 (S.D.N.Y. 2020) ("Although Defendant Liaw argues that he did not personally make any false statements, Liaw, as a member of the board of directors, solicited a proxy via a statement containing misleading statements or omissions, putting him squarely within the ambit of Section 14(a).").

Here, Mr. Komissarov's name appeared within the Proxy Statement on no fewer than 42 occasions (*see* Musoff Decl. Ex. 4), he was listed as TDAC's contact person in the Press Release (*see* Sadler Decl., Ex. 4 at 3), and he was a member of TDAC's Board of Directors (¶ 34), which, according to the Proxy Statement, was "soliciting proxies" (Musoff Decl. Ex. 4 at 67), and "unanimously recommend[ing] that TDAC stockholders vote 'FOR'" the combination with Lottery. *Id*. at p. 5 of 480; *see also id.* at vii ("The Board is soliciting your proxy to vote for the Business Combination."); *id.* at ix (it is the "recommendation of the Board to approve the Business Combination Agreement"); Sadler Decl., Ex. 4 at 3 (Press Release) (noting that TDAC's "directors and officers may be deemed participants in the solicitation of proxies of [TDAC's] stockholders in connection with the proposed business combination"). This is more than sufficient to demonstrate Mr. Komissarov's involvement in TDAC's proxy solicitations and thus, his liability for the statements and omissions in the Proxy Materials. *See In re Bank of Am. Corp*., 757 F. Supp. 2d at 293 (where proxy stated: "This Proxy is Solicited on Behalf of the Board of Directors," it

15

was sufficient to establish board members' liability under Section 14(a)).

### 2.    Even If *Janus* Applies, Mr. Komissarov Was The "Maker" Of The Alleged Misstatements And Omissions

In any event, Mr. Komissarov was also the "maker" of the revenue and compliance-related representations in the Proxy Materials. An executive is the "maker" of a statement where he or she had "ultimate authority over the company's statement; signed the company's statement; ratified and approved the company's statement; or where the statement is attributed to the executive." *Xu v. Gridsum Holding Inc.*, 624 F. Supp. 3d 352, 359 (S.D.N.Y. 2022). Here, Plaintiffs sufficiently allege that Mr. Komissarov's signature appeared in the Proxy Statement, that he was named as TDAC's contact person with respect to the Press Release, and that as TDAC's director and CEO, he had the power and authority to control the contents of those documents and that he reviewed them prior to issuance. *See* ¶¶ 34, 38, 77; Sadler Decl., Ex. 4 at 3 (Press Release).[7]

Notably, Mr. Komissarov does not attempt to disclaim responsibility for the contents of the Proxy Statement as a whole. Instead, he claims that he was not the "maker" of the Proxy Statement's revenue projections, specifically, because the Proxy Statement disclosed that "[n]either [TDAC's] management nor any of its respective representatives has made or makes any representations to any person regarding the ultimate performance of Lottery.com *relative to the Projections*." Komissarov Br. at 17 (citing Musoff Decl. Ex. 4 at 88) (emphasis added). At most, this indicates that TDAC's management was not guaranteeing that Lottery's ultimate performance would *match* the projections. It does not indicate that they were not the "makers" of the projection

---

[7] The AC also sufficiently alleges that Mr. Komissarov, as signatory to TDAC's Form 8-Ks, was the "maker" of the compliance-related statements in the November 2020 and February, April, and June 2021 press releases attached thereto. *See* ¶¶ 74-75; Sadler Decl., Exs. 1-3. Mr. Komissarov does not argue to the contrary. *See* Komissarov Br. at 14-15.

representations.[8]

The same is true with respect to the Proxy Statement's compliance-related representations. That Lottery warranted to TDAC – in the parties' separate Business Combination Agreement – that Lottery was in compliance with applicable laws and regulations, *see* Komissarov Br. at 15, does not absolve Mr. Komissarov of responsibility for making false statements about Lottery's compliance in TDAC's own public filing.[9]

### D.        The Revenue-Related Misrepresentations And Omissions Are Actionable

Mr. Komissarov also argues that the Proxy Statement's revenue projections are not actionable because (i) the AC fails to allege that Mr. Komissarov knew the projections were materially inaccurate at the time they were made, and (ii) the projections were forward-looking statements, coupled with risk disclosures and cautionary language, and thus, protected by the

---

[8] Mr. Komissarov also argues that even if the projections could be attributed to him, Plaintiffs did not reasonably rely on them. *See* Komissarov Br. at 18 n.5. However, reliance on an alleged misleading statement or omission is not a required element of a Section 14(a) claim. *See Lichtenberg v. Besicorp Grp. Inc.*, 43 F. Supp. 2d 376, 389 (S.D.N.Y. 1999) (plaintiffs need not show that they "relied specifically on the misrepresentations in voting in favor of the merger"). Instead, Plaintiffs need only show "that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *In re Bank of Am. Corp.*, 757 F. Supp. 2d at 291 (citing *Mills v. Electric Auto-Lite Co.,*396 U.S. (1970) at 385). And where, as here, the transaction "could have been consummated only with ... shareholder approval," the proxy solicitation is deemed an "essential link" in the transaction's consummation. *Id.* at 292 n.3; *see* Musoff Decl. Ex. 4 at p.6 of 480 ("Pursuant to TDAC's Current Charter and the Business Combination Agreement, TDAC is required to obtain stockholder approval of the Business Combination with Lottery.com. Consequently, the Business Combination Proposal must be approved for any such transaction to be completed.").

[9] Notably, while certain sections of the Proxy Statement contained an explicit disclaimer that "References in this section to 'we', 'our', 'us' and the 'Company' generally *refer to Lottery.com*" (Musoff Decl. Ex. 4 at 199) (emphasis added), that disclaimer is notably absent from the sections containing the alleged misleading representations and omissions, thus further establishing that those sections are attributable to Mr. Komissarov and TDAC, not to Lottery. *See, e.g., id.* at 17, 33, 36, 37, 90.

17

PSLRA's safe harbor. *See* Komissarov Br. at 18-19.[10] Those arguments must be rejected.

As discussed at Argument, I., *supra*, Plaintiffs are not required to allege that Mr. Komissarov had actual knowledge of falsity for purposes of Section 14(a). That Mr. Komissarov was negligent suffices. Moreover, to the extent Mr. Komissarov argues that the AC fails to allege contemporaneous falsity – *i.e.,* that the revenue projections were false *at the time they were published* – that is simply incorrect.

The crux of Plaintiffs' claim is that Lottery fabricated a $30 million sale during the third quarter ending September 30, 2021 (*see* ¶¶ 5, 10, 69-70), and that this sale accounted for (i) *nearly all* of Lottery's Q3 2021 revenues (reported by TDAC in the Press Release), and (ii) *almost half* of Lottery's projected $70 million revenues for FY2021 (reported by TDAC in the Proxy Statement). *See* ¶¶ 65-66, 80-81, 83-84, 89, 108. Thus, the Proxy Statement's projections and the Press Release's revenue results were clearly artificially inflated when those documents were published on October 18, 2021 and October 21, 2021, respectively.

For the same reason, the revenue-related statements are not forward-looking. The statement in the Press Release concerned preliminary revenue results for Q3 2021, a quarter that had *already closed* when the statement was made. And the Proxy Statement's projections were based substantially on the fictitious $30 million transaction that purportedly occurred *before* September 30, 2021. The non-occurrence of that transaction is a historical fact that was objectively verifiable as of October 18, 2021. As such, the projections that embedded that fact are not protected by the safe harbor. *See Patriot Exploration, LLC v. SandRidge Energy, Inc.*, 951 F. Supp. 2d 331, 365 (D. Conn. 2013) (safe harbor inapplicable where projections are based on data defendants "should

---

[10] Again, Mr. Komissarov does not make these arguments with respect to the Press Release's revenue statements. As such, those arguments have been waived and, in any event, would be unavailing for the reasons discussed herein.

18

have known" was misleading); *In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*, 850 F. Supp. 1105, 1141 (S.D.N.Y. 1993) (projection of future income "will be false when made if it is based on current facts which are falsely misrepresented in order to support the projection").

In any event, the AC's principal allegations of falsity are based on Mr. Komissarov's failure to disclose the non-occurrence of the $30 million transaction. As such, Mr. Komissarov cannot avail himself of the PSLRA's safe harbor or the bespeaks caution doctrine because they "do[] not protect material omissions." *In re Salix Pharm., Ltd.,* 2016 WL 1629341, at *9 (S.D.N.Y. Apr. 22, 2016); *see also Baum v. Harman Int'l Indus., Inc.*, 408 F. Supp. 3d 70, 83 (D. Conn. 2019). This is true "regardless of whether the statements thereby rendered misleading were forward-looking." *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at *12 (S.D.N.Y. Mar. 25, 2013); *see In re Oxford Health Plans Sec. Litig.*, 187 F.R.D. 133, 141 (S.D.N.Y. 1999).[11]

### E.      The Compliance-Related Misrepresentations And Omissions Are Actionable

Mr. Komissarov also argues that the Proxy Statement's compliance-related representations are not actionable because (i) they are opinions, and (ii) there is no evidence of contemporaneous falsity. *See* Komissarov Br. at 15-17.[12] These arguments must also be rejected.

---

[11] Even assuming *arguendo* that the revenue-related statements were forward-looking and that their falsity was not premised on a material omission, they would still be actionable for the reasons discussed in the Lottery Opposition Brief, which Plaintiffs incorporate herein by reference. *See* ECF No. 95 at 14, 23-25.

[12] Mr. Komissarov does not appear to challenge the materiality of the compliance-related representations in the Proxy Statement. *See* Komissarov Br. at 14-15 (arguing only that *pre*-Proxy representations that Lottery "work[ed] closely with state regulators" are immaterial puffery). But even if he had, that argument would be misplaced. Courts routinely find statements regarding a company's compliance with applicable laws, requirements, and/or regulations to be material. *See, e.g., In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.,* 763 F. Supp. 2d 423, 459 (S.D.N.Y. 2011) (statement that defendant was "in compliance with CSE regulatory capital requirements" was material); *In re Ambac Financial Grp., Inc. Secs. Litig.,* 693 F. Supp. 2d 241, 277 (S.D.N.Y. 2010) (finding a material misstatement when defendant claimed to be in "compliance with current Ambac Assurance underwriting standards" when it was not); *In re*

19

*First*, the AC alleges that the Proxy Statement warned: "Our business model and the conduct of our operations may have to vary in each U.S. jurisdiction where we do business to address the unique features of applicable law *to ensure we **remain** in compliance* with that jurisdiction's laws." ¶ 78 (emphasis added). Contrary to Mr. Komissarov's contentions, *see* Komissarov Br. at 5, this statement *affirmatively represented* to TDAC shareholders that Lottery was *currently in compliance* with the laws of all U.S. jurisdictions in which it operated. This is not an opinion statement but a statement of present fact. As such, it is actionable.[13]

*Second*, the Proxy Statement included additional representations and warnings about *potential* compliance risks that could occur *in the future*, while simultaneously failing to disclose that Lottery was *already* not in compliance with "state and federal laws concerning the state in which tickets are procured as well as order fulfillment." ¶¶ 63, 79. The Proxy Statement's failure to disclose Lottery's noncompliance rendered the purported risk warnings materially misleading.

---

*Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 369 (E.D.N.Y. 2013) ("[T]he statement that the company was in compliance with Medicare standards and regulations is alleged to be an untrue statement of material fact, and thus sufficient for pleading purposes."); *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 240-41 (S.D.N.Y. 2012) (statement that defendant was "in compliance with all applicable environmental laws," when it was not, was material). Moreover, any challenge to the materiality of the pre-Proxy Statement compliance representations must be rejected for the same reasons discussed in the Lottery Opposition Brief. *See* ECF No. 95 at 12-13.

[13] Mr. Komissarov ignores this misrepresentation in his motion. Instead, he focuses on the Proxy Statement's separate assertion that "we believe" that Lottery is in compliance with applicable laws and regulatory requirements. *See* Komissarov Br. at 5, 15-16; *see e.g.*, Musoff Decl. Ex. 4 at 34. However, the Section 14(a) allegations *are not premised on this statement*. *See* ¶¶ 77-82. In any event, while arguably an opinion, this statement is still actionable because the Proxy Statement failed to disclose that Mr. Komissarov and TDAC did not have a reasonable basis for touting this so-called belief. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189 (2015) (opinion actionable where defendant "omits material facts about [his or her] inquiry into or knowledge concerning [the] statement of opinion"). As the Supreme Court recognized in *Omnicare*, "very often [] the expression of an opinion may carry with it an implied assertion, not only that the speaker knows no facts which would preclude such an opinion, *but that he does know facts which justify it*." *Id.* at 191 (emphasis added).

20

*See In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 400 (S.D.N.Y. 2005) (warnings of possible legal consequences that could occur if company's employees violated NYSE rules actionable because they failed to disclose that employees were already violating those rules); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) (warning that factors "may" negatively affect revenue actionable where factors had already negatively affected revenue).

 *Third*, Plaintiffs adequately allege that the Proxy Statement's compliance-related representations were false at the time they were made. Indeed, the AC alleges that Defendants disclosed, only two quarters later, *past* material violations of applicable laws. *See* ¶¶ 9, 63. Given the close temporal proximity of this disclosure, it is reasonable to infer that those past violations were ongoing at the time the Proxy Statement was issued. Any contrary conclusion at the pleading stage would improperly "fai[l] to draw a reasonable inference in the plaintiffs' favor." *Iowa Public Emp.'s' Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 143 n.13 (2d Cir. 2010) (the problem's existence "in February 2008 may support an inference that it was present [when the Prospectus was issued] six months earlier," which is "sufficient to raise [plaintiffs'] right to relief above the speculative level"); *Pirnik v. Fiat Chrysler Automobiles, N.V.*, 2016 WL 5818590, at *5 (S.D.N.Y. Oct. 5, 2016) (allegation that defendant, "only months" after representing it was "substantially in compliance with the relevant global regulatory requirements, … admitted to widespread noncompliance with those requirements" was sufficient to establish, at the pleading stage, that defendant was not in compliance at the time the representation was made).[14]

---

[14] Any argument that the AC fails to allege contemporaneous falsity with respect to the pre-Proxy Statement compliance representations must be rejected for the reasons discussed in the Lottery Opposition Brief. *See* ECF No. 95 at 10.

21

### III. The AC States A Claim Against Mr. Komissarov Under Section 20(a) Of The Exchange Act

Mr. Komissarov does not challenge that he is a control person – nor could he. Rather, he simply asserts that he is not liable under Section 20(a) because Plaintiffs have not pled a primary violation of the Exchange Act. *See* Komissarov Br. at 21. This is false for all the reasons set forth above. Because the AC adequately alleges a primary violation, it adequately alleges a violation of Section 20(a) as well. *See In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 534 (S.D.N.Y. 2010).

While, as Mr. Komissarov points out, some courts have held that "culpable participation at least approximating recklessness" is required to establish Section 20(a) liability "in the section 10(b) context" (Komissarov Br. at 12 (quoting *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 542 (S.D.N.Y. 2016)))[15], that is irrelevant here, since Plaintiffs have sufficiently alleged control person liability premised on an underlying violation of Section 14(a).  In any event, as discussed at Argument, II.B., *supra*, the AC also sufficient alleges Mr. Komissarov's recklessness/scienter and thus, his culpable participation in the Section 10(b) context as well.

### IV. Dismissal Is Not Warranted Under Rule 4(m)

Where a plaintiff fails to timely serve the defendant with a copy of the summons and complaint under Rule 4(m), the court has discretion to either "dismiss the action without prejudice … or order that service be made within a specified time." Fed. R. Civ. P. 4(m). As both the Supreme Court and the Second Circuit have recognized, "courts have discretion to grant extensions" under

---

[15] Many courts in this District hold otherwise. *See In re Tronox, Inc. Sec. Litig.*, 2010 WL 2835545, at *15 (S.D.N.Y. June 28, 2010) ("[S]cienter is not an essential element of a Section 20(a) claim"); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 396 (S.D.N.Y. 2003) (same); *Sec. & Exch. Comm'n v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 63 (S.D.N.Y. 2017) (same); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 191 (S.D.N.Y. 2006) (same).

Rule 4(m) "*even in the absence of good cause.*" *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007) (emphasis added); *Henderson v. United States*, 517 U.S. 654, 658 n.5 (1996) (Rule 4(m) "permits a district court to enlarge the time for service even if there is no good cause shown" for the delay).[16] Instead, courts may consider other factors, such as "prejudice to the defendant, actual notice of a lawsuit, and eventual service," *Glover v. City of New York*, 2007 WL 9723344, at *3 (E.D.N.Y. Feb. 2, 2007), and they should do so in light of the Second Circuit's "clearly expressed preference that litigation disputes be resolved on the merits." *Tomney v. Int'l Ctr. for the Disabled*, 2003 WL 1990532, at *6 (S.D.N.Y. Apr. 29, 2003). Here, these factors all weigh in favor of excusing Plaintiffs' two-month delay in service.

*First*, Mr. Komissarov has "not even attempt[ed] to identify any actual harm to [his] ability to defend the suit as a consequence of the delay in service." *Tomney*, 2003 WL 1990532, at *6; *see* Komissarov Br. at 22.

*Second*, Mr. Komissarov had prior notice that he could be subject to Exchange Act liability in connection with the Business Combination. Indeed, only three months before the AC was filed in the instant action, Mr. Komissarov was timely served with a summons and complaint in *McDonald v. Lottery.com, Inc.*, No. 22 Civ. 01025 (W.D. Tex.) (*see* Sadler Decl., Ex. 5) (Nov. 1, 2022 Affidavit of Service), which alleged Exchange Act claims against Mr. Komissarov arising out of the same factual circumstances. *See* Sadler Decl., Ex. 6 (McDonald Complaint). Moreover, service in the instant action, while technically outside Rule 4(m)'s 90-day service period, was effectuated prior to the expiration of any applicable limitations period, and clearly gave Mr. Komissarov "sufficient notice to engage in motion practice," including the instant motion to

---

[16] Mr. Komissarov's reliance on the unpublished decision in *McKibben v. Credit Lyonnais*, 1999 WL 604883 (S.D.N.Y. Aug. 9, 1999), which predates the Second Circuit's decision in *Zapata*, is therefore unavailing.

dismiss. *Sauer v. Town of Cornwall*, 2021 WL 4066848, at *5 (S.D.N.Y. Sept. 7, 2021). "Courts in this Circuit have been reluctant to dismiss … for insufficient service where the fundamental purpose of Rule 4 has been so clearly satisfied." *Id.*; *see also Jones v. Westchester Cty.*, 182 F. Supp. 3d 134, 145-46 (S.D.N.Y. 2016) (collecting cases).

## CONCLUSION

For the foregoing reasons, Mr. Komissarov's motion to dismiss should be denied.

Dated: October 30, 2023

By: /s/ *Casey E. Sadler*

**GLANCY PRONGAY & MURRAY LLP**
Casey E. Sadler (admitted *pro hac vice)*
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

*Counsel for Lead Plaintiffs RTD Bros LLC, Todd Benn, Tom Benn, and Tomasz Rzedzian and Lead Counsel for the Class*

**KIRBY McINERNEY LLP**
Andrew M. McNeela
Thomas W. Elrod
Ira M. Press
250 Park Avenue, Suite 820
New York, York 10177
Telephone: (212) 371-6600
Email: amcneela@kmllp.com
        telrod@kmllp.com
        ipress@kmllp.com

24

**BERGER MONTAGUE PC**
Sherrie R. Savett
Michael Dell'Angelo
Andrew D. Abramowitz
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: ssavett@bm.net
mdellangelo@bm.net
aabramowitz@bm.net

*Counsel for Additional Plaintiff*

25

**PROOF OF SERVICE**

I hereby certify that on this 30th day of October, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Casey E. Sadler*
Casey E. Sadler
