UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LOTTERY.COM, INC. SECURITIES LITIGATION | Case No. 1:22-cv-07111 (JLR) |

**DEFENDANT KATHRYN LEVER'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

CLARK SMITH VILLAZOR LLP
Jeffrey D. Rotenberg
Michael K. Sala
250 West 55th Street, 30th Floor
New York, New York 10019
(212) 377-0850 (Telephone)
(212) 377-0868 (Facsimile)

*Attorneys for Defendant Kathryn Lever*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................................... 1

ARGUMENT .................................................................................................................................... 2

    I. PLAINTIFFS' SECTION 10(B) AND RULE 10B-5 CLAIMS FAIL ................................. 2

    A. Plaintiffs Have Not Alleged that Ms. Lever Made Any Actionable False
       Statement .................................................................................................................... 2

    B. The Opposition Confirms the ACAC Fails to Adequately Plead Ms.
       Lever's Scienter ......................................................................................................... 4

    1. Plaintiffs' Motive Theory is Factually and Legally Deficient ............................... 5

    2. Plaintiffs Fail to Allege Ms. Lever's Conscious Misbehavior or
       Recklessness ........................................................................................................... 6

    3. The Only Inferences to be Drawn Negate Ms. Lever's Scienter ........................... 8

    II. PLAINTIFFS SECTION 14(A) ALLEGATIONS ARE DEFICIENT ............................ 9

    III. PLAINTIFFS' SECTION 20(A) CLAIM SHOULD BE DISMISSED ......................... 10

CONCLUSION ............................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bisel v. Acasti Pharma, Inc.*,
   2022 WL 4538173 (S.D.N.Y. Sept. 28, 2022)........................................................................ 9

*Caiafa v. Sea Containers Ltd.*,
   331 Fed. App'x 14 (2d Cir. 2009) ........................................................................................ 9

*Chembio Diagnostics, Inc. Sec. Litig.*,
   616 F.Supp. 3d 192 (E.D.N.Y, 2022) ................................................................................... 9

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
   701 F. Supp. 2d 506 (S.D.N.Y. 2010).................................................................................. 10

*City of Brockton Ret. Sys. v. Avon Prod., Inc.*,
   2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014)....................................................................... 9

*City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*,
   814 F. Supp. 2d (S.D.N.Y. 2011) ........................................................................................ 4

*Denny v. Canaan Inc.*,
   2023 WL 2647855 (S.D.N.Y. Mar. 27, 2023) ....................................................................... 7

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)................................................................................................. 4

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
   2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021)....................................................................... 9

*Furlong Fund LLC v. VBI Vaccines, Inc.*,
   2016 WL 1181710 (S.D.N.Y. Mar. 25, 2016) ...................................................................... 10

*Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*,
   41 F. 4th 71 (2d Cir. 2022) .................................................................................................. 4

*Hsu v. Puma Biotech., Inc.*,
   2017 WL 3205774 (C.D. Cal. July 25, 2017)........................................................................ 5

*In re Adient plc Sec. Litig.*,
   2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020).......................................................................... 5

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
   2020 WL 3026564 (D.N.J. June 5, 2020)........................................................................... 2, 3

ii

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
   2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) .................................................................. 8

*In re Ferroglobe PLC Sec. Litig.*,
   2020 WL 6585715 (S.D.N.Y. Nov. 10, 2020) ................................................................. 7

*In re Garrett Motion Inc. Sec. Litig.*,
   2023 WL 2744029 (S.D.N.Y. Mar. 31, 2023) ................................................................. 7

*In re Meta Materials Inc. Sec. Litig.*,
   2023 WL 6385563 (E.D.N.Y. Sept. 29, 2023) ........................................................... 9, 10

*In re PXRE Grp., Ltd. Sec. Litig.*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009) ........................................................................... 5

*In re Renewable Energy Grp. Sec. Litig.*,
   2022 WL 14206678 (2d Cir. Oct. 25, 2022) ................................................................. 7

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) ........................................................................................ 5

*Lemen v. Redwire Corp.*,
   2023 WL 2598402 (M.D. Fla. Mar. 22, 2023) .............................................................. 5

*Levy v. Gutierrez*,
   2017 WL 2191592 (D.N.H. May 4, 2017) ................................................................. 2, 3

*Lipow v. Net1 UEPS Tech., Inc.*,
   131 F. Supp. 3d 144 (S.D.N.Y. 2015) ........................................................................... 6

*Nandkumar v. AstraZeneca PLC*,
   2023 WL 3477164 (2d Cir. May 16, 2023) .................................................................. 6

*Salim v. Mobile Telesystems PJSC*,
   2022 WL 966903 (2d Cir. Mar. 31, 2022) ................................................................. 8, 9

*Schiro v. Csemex, S.A.B. de C.V.*,
   396 F. Supp. 3d 283 (S.D.N.Y. 2019) ........................................................................... 7

*Slayton v. Am. Exp. Co.*,
   604 F.3d 758 (2d Cir. 2010) ........................................................................................ 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .................................................................................................... 4

*Xu v. Gridsum Holding Inc.*,
   624 F. Supp. 3d 352 (S.D.N.Y. 2022) ........................................................................... 3

iii

*Yannes v. SCWorx Corp.*,
  2021 WL 2555437 (S.D.N.Y. June 21, 2021) ............................................................................ 8

**<u>Regulations</u>**

17 C.F.R. § 230.144(d)(1)(i) .............................................................................................. 6

**PRELIMINARY STATEMENT**

Plaintiffs' arguments in opposition confirm that the ACAC is devoid of facts sufficient to allege each of the ACAC's claims against Ms. Lever under Rule 9(b) of the Federal Rules of Civil Procedures and the PSLRA.[1]  Ms. Lever truly is an afterthought here for Plaintiffs.  The Court should dismiss her from this lawsuit with prejudice.

Plaintiffs misconstrue Supreme Court precedent in a futile attempt to show an actionable misstatement attributable to Ms. Lever.  Neither her signing SEC 8-Ks attaching documents allegedly containing misstatements regarding the Company's financials, nor assertions about her roles at the Company sufficiently show that she had ultimate authority over statements alleged to be false.  Plaintiffs' conclusory and non-plead assertions are inadequate and improper.

Plaintiffs' scienter allegations remain woefully deficient despite Plaintiffs' efforts to improperly supplement them through unpled assertions in the Opposition.  Plaintiffs are pressing a motive theory—desire for greater compensation—contrary to Second Circuit law.  Even so, Plaintiffs mischaracterize the unpled disclosures about Ms. Lever's compensation upon which they wrongly rely.  These disclosures show that Ms. Lever's restricted stock award aligned her interests with the Company's long-term success and are inconsistent with any nefarious motive.

Plaintiffs fare equally poorly when it comes to pleading Ms. Lever's conscious misbehavior or recklessness.  Plaintiffs cannot escape the ACAC's reliance on the group pleading of Ms. Lever's scienter with that of other defendants up the Lottery management chain (including the CEO, CFO, and founders) who hired Ms. Lever, to whom she reported, and who resigned or were terminated in response to an internal investigation Ms. Lever precipitated and oversaw for the Board.  Plaintiffs rely on arguments made concerning these other defendants that do not mention,

---

[1] Defined terms have the meaning ascribed to them in Ms. Lever's opening brief.  (ECF No. 112, the "Opening Brief" or "Br.")

have nothing to do with, and, in instances, favorably distinguish Mr. Lever.  The rote theories of scienter they parrot (by reference to the opposition to Lottery's motion to dismiss ("Lottery Opp.")) do not advance their cause.  The ACAC offers no basis for any inference of Ms. Lever's scienter, let alone a cogent one as compelling as the opposing inferences of her non-fraudulent intent.

The Opposition leaves no doubt that the Section 14(a) claim sounds in fraud, and Plaintiffs fail to satisfy the applicable pleading standard, or truly even a lesser standard.

Plaintiffs' response on the control person liability claim is to just recite the elements of the cause of action.  That, of course, cannot save the ACAC's inadequate allegations.

The Court should dismiss Ms. Lever from this Action with prejudice.

## ARGUMENT

### I.    PLAINTIFFS' SECTION 10(B) AND RULE 10B-5 CLAIMS FAIL

### A.  Plaintiffs Have Not Alleged that Ms. Lever Made Any Actionable False Statement

Plaintiffs have failed to proffer well-plead facts with the particularity required to establish that Ms. Lever was the "maker" of any alleged misstatements in the Company's disclosures.[2]  (*See* Br. at 8-10.)  As explained, Ms. Lever's ministerial act of signing SEC 8-K cover pages attaching press releases that allegedly contained actionable misstatements—which is the core of Plaintiffs' argument—is insufficient.  (*Id.*)  To be sure, the Company also issued these press releases through its website, and their contents appeared in other SEC filings with which Ms. Lever had no alleged role whatsoever.  That the Company was disseminating the information through other channels reinforces that Ms. Lever lacked any control, let alone "ultimate authority," over their contents.

Plaintiffs' protestations notwithstanding (Opp. at 7 n.11), *Levy v. Gutierrez*, 2017 WL 2191592 (D.N.H. May 4, 2017) and *In re Cognizant Technology Solutions Corp. Sec. Litig.*, 2020

---

[2] Ms. Lever refers to her co-defendants' motion to dismiss briefs explaining why Plaintiffs have failed to allege any actionable, material false or misleading statement.  (*See* Opp. at 7.).

2

WL 3026564 (D.N.J. June 5, 2020) are directly on point.  (Br. at 9.)  They do not even attempt to distinguish *Levy*, which is exactly Ms. Lever's case.  2017 WL 2191592, at \*12 (dismissing claims against general counsel who signed 8-Ks attaching documents containing alleged misstatements).

Plaintiffs concede that in *Cognizant* the court appropriately dismissed the Chief Legal Officer as there "were no allegations [he] was responsible for reviewing or approving the press releases prior to their issuance."  (Opp. at 7 n.11.)  Plaintiffs should look in the mirror, because the ACAC also lacks well-plead allegations of this nature with respect to Ms. Lever and the challenged statements.  *Cognizant*, 2020 WL 3026564, at \*15.  The Court should dismiss Plaintiffs' claims for the reasons articulated in *Levy* and *Cognizant*.

The cases cited by Plaintiffs do not suggest a different outcome.  (*See* Opp. at 6-7.)  None saw liability predicated on signing 8-K cover pages attaching other Company documents that allegedly contained false statements.  Rather, the courts there relied on particularized allegations of the defendants' ultimate authority over alleged misstatements themselves.  In contrast, the ACAC does not contain well-plead factual allegations of Ms. Lever's role in the preparation, review, or approval of the attachments to the 8-Ks that she signed, that her role related to the subject matter of those attachments, or that she signed or discussed those attachments themselves, let alone any "of the key SEC filings" cited in the ACAC, including the Company's Proxy in connection with the Business Combination.  (*See also* Br. at 8-9.)[3]

Plaintiffs desperately purport to describe Ms. Lever's roles to show "indicia of control" over varied alleged misstatements.  (Opp. at 8-10.)  But Plaintiffs do not begin to offer particularized allegations of Ms. Lever's control, let alone of a nexus between her control and any misstatement, as required.  Plaintiffs do not plead facts demonstrating that Ms. Lever had the

---

[3] Plaintiffs' contention that the Opening Brief did not cite cases from this Circuit is wrong.  (*See* Br. at 8 (citing *Xu v. Gridsum Holding Inc.*, 624 F. Supp. 3d 352, 365 (S.D.N.Y. 2022)).)

3

responsibilities asserted in the Opposition.  They rely on ACAC paragraphs that *do not mention* Ms. Lever.  Plaintiffs also improperly cite to unpled contents of SEC filings that still do not mention Ms. Lever.[4]  (*See* Opp. at 8-10.)  The ACAC does not and cannot allege that Ms. Lever *made* any alleged misstatement under controlling Supreme Court precedent.  (Br. at 8-10.)[5]

### B.  The Opposition Confirms the ACAC Fails to Adequately Plead Ms. Lever's Scienter

Plaintiffs Section 10(b) and Rule 10b-5 claims independently fail because Plaintiffs have not alleged Ms. Lever's fraudulent intent.  The Opposition focuses on inadequate, unpled motive allegations and impermissibly group pleads conscious misbehavior and recklessness.  (Opp. at 10-12.)  Plaintiffs substantially rely on incorporating arguments from the Lottery Opposition (*id.*), but the *only* mention of Ms. Lever in that entire brief is the statement that she and another defendant "stood to receive millions" from the Business Combination.  (Lottery Opp. at 16.)  The ACAC itself offers nary an individualized and particularized factual allegation concerning Ms. Lever.  The ACAC certainly does not plead facts that can engender "strong inference[s]" of Ms. Lever's fraudulent intent that collectively are "at least as compelling as any opposing inference[s] of nonfraudulent intent."  *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)).  The Opposition cannot change or overcome that reality.[6]

---

[4] *See Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F. 4th 71, 80 (2d Cir. 2022) ("party may not amend pleadings through a brief") (internal citation omitted).

[5] *City of Roseville Emps.' Ret. Sys. v. EnergySolutions*, Inc., 814 F. Supp. 2d 398 (S.D.N.Y. 2011), gets Plaintiffs nowhere.  The court found that a corporation could be the maker of another entity's statements where it "was the sole owner of outstanding stock" of and "wholly owned" the other entity and "unquestionably had control over the stock being sold pursuant to the Registration Statement." *Id.* at 417-18.  The specific allegations of complete control in *Roseville* are readily distinguishable from the general assertions concerning Ms. Lever's corporate responsibilities.

[6] Other defendants explained months ago why the cases Plaintiffs relied upon for scienter were presented in an incomplete and misleading fashion and are readily distinguishable.  Yet, Plaintiffs here regurgitate these cases and related arguments with no new explanation or defense.  They also

**1. Plaintiffs' Motive Theory is Factually and Legally Deficient**

Plaintiffs argue that they have adequately pleaded motive because Ms. Lever's compensation included restricted stock contingent on the completion of the Business Combination. (Opp. at 10.)  This is not a cognizable motive.  *See Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001); *see also In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 532 (S.D.N.Y. 2009) (alleged motive to raise corporate funds to prevent stock or revenue drops fails) (collecting cases), *aff'd sub. nom. Condra v. PXRE Grp. Ltd.*, 357 F. App'x 393 (2d Cir. 2009); *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at \*26 (S.D.N.Y. Apr. 2, 2020) ("stock incentive awards given to certain . . . executives in connection with" company's "spinoff" not suggestive of motive).  The ACAC does not attempt to particularize how this compensation worked or why this compensation motivated Ms. Lever to engage in fraud.  (*See* Br. at 11-12.)  Rather, all the ACAC offers are insufficient, conclusory allegations concerning multiple defendants' salaries and stock awards and declares that they incentivized everyone's fraud.  (*See* ACAC ¶ 140.)[7]

The "facts" Plaintiffs improperly introduced in the Opposition to supplement the ACAC's deficient motive allegations only exacerbate their theory.  Plaintiffs identify "$7 million in restricted stock, which was contingent on the completion of the Business Combination" as Ms. Lever's motive.  (Opp. at 10.)  Plaintiffs take this unpled figure from one of Lottery's disclosures.  (Sadler Decl., Ex. 10, ECF No. 120-10.)  According to that disclosure, Ms. Lever received 468,335 restricted shares in connection with the Business Combination with an "aggregate grant date fair value" of approximately $7 million.  (*Id*. at 23-24.)

---

hardly attempt to address the many other cases Ms. Lever relied on containing far more particularized allegations than the ACAC and that still resulted in dismissals.  (*See* Br. at 10-14.)

[7] Ignoring the cases Ms. Lever cited (Br. at 11-12), Plaintiffs look to out-of-circuit cases (Opp. at 10) that miss the mark.  *See, e.g.*, *Hsu v. Puma Biotech., Inc.*, 2017 WL 3205774, at \*4 (C.D. Cal. July 25, 2017) ("stock sales and performance-based compensation" with other well-plead scienter allegations); *Lemen v. Redwire Corp.*, 2023 WL 2598402, at \*4 (M.D. Fla. Mar. 22, 2023) (same).

But this "$7 million" figure Plaintiffs tout is meaningless.  Ms. Lever certainly did not receive $7 million of stock upon approval of the Business Combination as Plaintiffs suggest. Rather, her restricted stock was subject to time vesting over a four-year period that would not begin until October 28, 2022, and performance vesting beginning April 29, 2022, and continuing at later intervals based on stock price targets.  (*Id.*)  The performance stock that did vest before Ms. Lever resigned was subject to the SEC's six-month holding requirement applicable to restricted stock grants. 17 C.F.R. § 230.144(d)(1)(i).  Ms. Lever could not sell any shares before October 29, 2022.

Far from articulating motive to engage in fraud, the most (and only) plausible inference to draw from Ms. Lever's restricted stock compensation is that it motivated her to ensure the success and financial wellbeing of Lottery.  *See Lipow v. Net1 UEPS Tech., Inc.*, 131 F. Supp. 3d 144, 160-61 (S.D.N.Y. 2015) (allegations about restricted share grants "counsels against finding motive," where, like here, defendants retained shares).  The restricted stock's terms aligned Ms. Lever's interests with the Company's shareholders and render Plaintiffs' motive implausible. Against this backdrop, the nefarious gloss Plaintiffs attempt to read onto her motivations is nonsensical, made worse by Ms. Lever bringing possible wrongdoing to the Independent Directors *before* she could sell any stock, and giving up nearly all the restricted stock when she resigned.[8]

**2. Plaintiffs Fail to Allege Ms. Lever's Conscious Misbehavior or Recklessness**

The Opposition highlights Plaintiffs' failure to plead particularized allegations of Ms. Lever's conscious misbehavior or recklessness, "a state of mind approximating actual intent." *Nandkumar v. AstraZeneca PLC*, 2023 WL 3477164, at *3 (2d Cir. May 16, 2023).  Ms. Lever explained, "scienter is not amenable to group pleading" and "must be separately pled and individually." (*See* Br. at 13.)  Yet, Plaintiffs double-down on this tact by relying substantially

---

[8] Plaintiffs' motive theory based on stock awards related to approval of the Business Combination cannot suggest fraudulent intent with respect to any alleged misstatements after that time.

6

on the Lottery Opposition's discussion, which makes no mention of Ms. Lever.[9]  Consistent with

the ACAC (¶ 109), the Lottery Opposition focuses on defendants (here and in other cases) in

roles Ms. Lever did not have at Lottery.  (*See* Lottery Opp. at 17-18.)

The few boilerplate theories Plaintiffs advance that purport to focus on Ms. Lever cannot

salvage their claim.  The specious argument that it is "implausible" Ms. Lever did not know about

the alleged fraud because of her position and the fraud's magnitude (*see* Opp. at 11-12) falls flat

for reasons Ms. Lever has explained.  (*See* Br. at 13-15); *Denny v. Canaan Inc.*, 2023 WL 2647855,

at *13 (S.D.N.Y. Mar. 27, 2023) (despite possible "intuitive appeal to the idea that Defendants

must have known" revenue data based on their positions "[s]uch allegations are insufficient to

plead scienter.") (citing *In re Renewable Energy Grp. Sec. Litig.*, 2022 WL 14206678, at *3 (2d

Cir. Oct. 25, 2022)); *In re Ferroglobe PLC Sec. Litig.*, 2020 WL 6585715, at *10-11 (S.D.N.Y.

Nov. 10, 2020) (finding "too speculative" the allegation that "by virtue of their position as" CEO

and CFO, defendants "must have known the true facts" about a significant shift in "financial

performance").  Plaintiffs simply fail to plead particularized facts concerning what Ms. Lever knew

or had access to that contradicted the Company's public statements, and the circumstances around

any knowledge or access, as they must.  (*See* Br. at 12-13); *In re Garrett Motion Inc. Sec. Litig.*,

2023 WL 2744029, at *11 (S.D.N.Y. Mar. 31, 2023).

Ms. Lever also explained why management departures are not suggestive of Ms. Lever's

scienter.  (*See* Br. at 15-16.)  Plaintiffs still cannot point to "independent evidence corroborating

that" Ms. Lever "held a culpable state of mind," as is necessary to make these departures

conceivably probative.  *Schiro v. Csemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 303 (S.D.N.Y.

---

[9] Plaintiffs had incentive in the Lottery Opposition to show Ms. Lever's scienter.  That they made no effort is telling.  Also telling is Plaintiffs singling out of defendants who they say certainly would have known about the fraud, but not Ms. Lever.  (*See* Lottery Opp. at 16-17.)

2019).[10]  That others left after Lottery disclosed the investigation initiated by Ms. Lever has no

bearing on *her* scienter, nor does her decision to leave months later or the auditor's resignation.[11]

### 3. The Only Inferences to be Drawn Negate Ms. Lever's Scienter

Plaintiffs cannot distract from the absence of well-plead scienter allegations by falsely

accusing Ms. Lever of eliding the necessary holistic assessment of any such allegations and

opposing inferences and non-culpable explanations.  (Opp. 11-12.)  Plaintiffs' unavoidable issue

here is the utter lack of particularized allegations of Ms. Lever's fraudulent intent for the Court to

consider.  The directive to assess the record collectively "does not permit Plaintiff to combine

inadequate allegations of motive with inadequate allegations of recklessness . . . to demonstrate

scienter. . . . After all, zero plus zero . . . cannot equal one." *In re Diebold Nixdorf, Inc., Sec. Litig.*,

2021 WL 1226627, at *15 (S.D.N.Y. Mar. 30, 2021) (internal quotations and citations omitted).

While the ACAC lacks allegations sufficient to engender any cogent inference of Ms.

Lever's scienter, the record is replete with facts negating her scienter.  For one, Ms. Lever's

restricted stock award aligned her with the Company's long-time financial success, as explained

above.  In addition, contrary to Plaintiffs' suggestion, scienter allegations against an individual

defendant are obviously "contradicted" by disclosures of "potential liability" by that individual.

*Salim v. Mobile Telesystems PJSC*, 2022 WL 966903, at *2 (2d Cir. Mar. 31, 2022).  Ms. Lever

made a report, and the Board designated her to spearhead the resulting investigation.  The

investigation produced the disclosures that are the basis for this lawsuit.  (Br. at 15-17.)  These

facts "support the more reasonable inference" that Ms. Lever "did not seek to conceal the

company's potential liability" and confirm that any "theory of scienter is . . . not nearly as

---

[10] Plaintiffs' sole case is not to the contrary.  *Yannes v. SCWorx Corp.*, 2021 WL 2555437, at *6
(S.D.N.Y. June 21, 2021) (timing and circumstances of resignations "not themselves sufficient").
[11] Plaintiffs' other scienter arguments fail for reasons left unrebutted.  (*See* Br. at 12-16.)

compelling as opposing inferences of nonfraudulent intent." *Salim*, 2022 WL 966903, at *2; *see Slayton v. Am. Exp. Co.*, 604 F.3d 758, 776-77 (2d Cir. 2010) (finding that "ordering an investigation" upon learning of a potential issue is "prudent course of action that weakens rather than strengthens an inference of scienter"); *City of Brockton Ret. Sys. v. Avon Prod., Inc.*, 2014 WL 4832321, at *33 (S.D.N.Y. Sept. 29, 2014) (initiating "an internal investigation" when the company "disclosed . . . potential . . . violations supports an inference that Defendants had not been aware of inadequacies" and negates fraudulent intent).

## II.     PLAINTIFFS SECTION 14(A) ALLEGATIONS ARE DEFICIENT

Because the Section 14(a) claim sounds in fraud, Plaintiffs must satisfy Rule 9(b), in addition to the PSLRA,[12] and plead scienter. *See Caiafa v. Sea Containers Ltd.*, 331 Fed. App'x 14, at *16 (2d Cir. 2009) (dismissing Section 11 claim because it was "premised on allegations of fraud" and did "not state with sufficient particularity the fraud alleged"); *In re Meta Materials Inc. Sec. Litig.*, 2023 WL 6385563, at *9, *22 (E.D.N.Y. Sept. 29, 2023) (dismissing Section 14(a) claim for failure to "meet the . . . standard for pleading scienter"); *Bisel v. Acasti Pharma, Inc.*, 2022 WL 4538173, at *6 (S.D.N.Y. Sept. 28, 2022) (plaintiffs must satisfy PSLRA standards for fraud where "Section 14(a) claims [are] grounded in fraudulent conduct" including by "specify[ing] the statements that . . . were fraudulent [and] explain[ing] why the statements were fraudulent"). Plaintiffs do not come close to satisfying their burden. (*See, e.g.*, Br. at 17-19; *supra* at 4-9.)[13]

---

[12] Even the primary case Plaintiffs rely on requires particularized pleading where a complaint "pleads allegations that are anchored in fraud." (*See* Opp. at 13-14 (citing *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, 2021 WL 4443258, at *9 (S.D.N.Y. Sept. 27, 2021)).)

[13] Where, as here, "the only allegations supporting falsity are . . . allegations relating to fraudulent intent, the fraud claims are substantially intertwined" with the Section 14 claim, and must be plead accordingly, notwithstanding any effort to "disclaim" fraud "and insert the classic language of negligence pleading." *Chembio Diagnostics, Inc. Sec. Litig.*, 616 F.Supp. 3d 192, 203-4 (E.D.N.Y.

To be sure, the ACAC does not contain sufficient *factual* allegations about Ms. Lever under any pleading standard. *See Furlong Fund LLC v. VBI Vaccines, Inc.*, 2016 WL 1181710, at *3 (S.D.N.Y. Mar. 25, 2016) (applying PSLRA to Section 14(a) "claims sounding in negligence").[14] Plaintiffs do not plead facts concerning Ms. Lever's role vis-à-vis the Proxy. Moreover, Plaintiffs' allegations concerning compliance related disclosures in the Proxy, which they seek to tag on Ms. Lever, are insufficient and more generally representative of the flaws in the ACAC. The ACAC features a lengthy block quote from the Proxy on regulatory compliance. (ACAC ¶ 78.) Plaintiffs then assert that "these statements" are actionable because eight months later the Company disclosed undated and unspecified instances of non-compliance with "laws concerning the state in which tickets are procured as well as order fulfillment." (*Id.* ¶ 79.) But Plaintiffs, fatally, do not plead facts suggesting how these disclosures "indicat[e]" any factual statement in the Proxy was false or "misleading" when made, or how its opinion statements otherwise are actionable.[15]

## III.    PLAINTIFFS' SECTION 20(A) CLAIM SHOULD BE DISMISSED

The Opposition says nothing substantive regarding the sufficiency of the Section 20(a) allegations and this claim should be dismissed for reasons previously given. (*See, e.g.*, Br. 19-21.)

## <u>CONCLUSION</u>

The Court should dismiss the ACAC's claims against Ms. Lever with prejudice.

---

2022) (internal quotations and citations omitted); *see Meta*, 2023 WL 6385563, at *8-10 (Section 14(a) claims subject to same standard as Section 10(b) claims where "overarching theory is that the merger was secured through fraudulent means"); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 513 (S.D.N.Y. 2010) ("cannot simultaneously allege that [d]efendants were seeking to perpetrate a massive fraud . . . and contend that any omissions from the registration statement were the result of something other than fraud").

[14] Plaintiffs' assertion that Ms. Lever conceded the sufficiency of any negligence allegations with respect to the Section 14 claim is wrong. (Br. at 19 n.3.)

[15] Lottery explained in detail why these and other statements in the Proxy are not actionable. (*See* Lottery Br. at 8-10, 22-24; Lottery Reply Br. (ECF No. 98), at 10.)

Dated:  November 29, 2023

_/s/ Jeffrey D. Rotenberg_
CLARK SMITH VILLAZOR LLP
Jeffrey D. Rotenberg
Michael K. Sala
250 West 55th Street, 30th Floor
New York, New York 10019
TEL: (212) 377-0850
FAX: (212) 377-0868
jeffrey.rotenberg@csvllp.com
michael.sala@csvllp.com

*Attorneys for Defendant Kathryn Lever*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of November, 2023, a true and correct copy of the

foregoing document was transmitted to all counsel of record who are deemed to have consented to

electronic service via the Court's CM/ECF system.


                                                  *s/ Jeffrey D. Rotenberg*
                                                  Jeffrey D. Rotenberg