**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LOTTERY.COM, INC. SECURITIES LITIGATION | Case No. 1:22-cv-07111 (JLR) *ORAL ARGUMENT REQUESTED* |

**MEMORANDUM IN SUPPORT OF DEFENDANT ANTHONY DIMATTEO'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**

SCHERTLER ONORATO MEAD & SEARS LLP

Tara N. Tighe (*pro hac vice*)
Danny C. Onorato (*pro hac vice*)
Schertler Onorato Mead & Sears LLP
555 13th Street, N.W. | Suite 500 West
Washington, DC 20004
ttighe@schertlerlaw.com
donorato@schertlerlaw.com
Phone: (202) 628-4199
Fax: (202) 628-4177

*Counsel for Defendant Anthony DiMatteo*

**TABLE OF CONTENTS**

INTRODUCTION …………………………………………………………………………….. 1

LEGAL ARGUMENT …………………………………………………………………….. 2

    A.  To state a claim for securities fraud, a plaintiff must plead specific facts and detailed allegations to show that the defendant acted with the requisite state of mind to defraud or deceive  …........................................................................................................................ 2

    B.  Plaintiffs fail to meet the demanding burden for alleging scienter ………………………. 6

        i.  Plaintiffs do not sufficiently allege that Mr. DiMatteo had the motive and opportunity to defraud or deceive ……………………………………………………………… 7

        ii.  Plaintiffs have also failed to allege sufficient evidence of conscious misbehavior or recklessness ………………………………………………………………………..… 9

    C.  Because Plaintiffs failed to adequately allege a securities fraud violation, they cannot hold Mr. DiMatteo individually liable as a controlling officer of Lottery.com ……..…. 13

CONCLUSION ……………………………………………………………………………..... 14

i

## TABLE OF AUTHORITIES

**Cases**

*Acito v. IMCERA Grp., Inc.*, 47 F.3d 47 (2d Cir. 1995) …………………………………………… 8

*Anschutz Corp.* v. *Merrill Lynch & Co.*, 690 F.3d 98 (2d Cir. 2012) ……………………………. 6

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co., 28 F.4th 343 (2d Cir. 2022)* …… 6, 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) …………………………………………………...… 3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ……………...… 3, 6, 13-14

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) …………………………………………...… 4

*Bd. of Trustees of City of Ft. Lauderdale Gen. Employees' Ret. Sys. v. Mechel OAO*, 811 F.Supp.2d 853, 873 (S.D.N.Y.2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 Fed.Appx. 353 (2d Cir.2012) …………………………………………………………………………………... 10

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) …………………………………………...… 3

*City of Brockton Retirement Sys. v. Avon Prod., Inc.*, 2014 WL 4832321 (S.D.N.Y.2014) …..… 10

*Cohen v. Kitov Pharms. Holdings, Ltd.*, 2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) ………… 9

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) ………………………………………………………………………………… 5, 6, 7

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297 (2d Cir. 2015) ..… 14

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476 (S.D.N.Y. 2012) …… 12

*Gallop v. Cheney*, 642 F.3d 364 (2d Cir. 2011) …………………………………………...… 3

*Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573 (S.D.N.Y. 2011) ………………………………… 6, 10

*In re DraftKings Inc. Sec. Litig.*, 2023 WL 145591 (S.D.N.Y. Jan. 10, 2023) ……….....… 3, 4, 5, 6

*In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347 (2d Cir. 2010) ……………………… 5

*In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510 (S.D.N.Y. 2009) ……………………. 5-6

ii

*In re Skechers USA, Inc. Securities Litigation*, 444 F. Supp. 3d 498 (S.D.N.Y 2020) ……….. 9-10

*In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13-cv-08846 (LGS), 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ……………………………………………………………...… 12

*In re Wachovia Equity Securities Litigation*, 753 F. Supp. 2d 326, 366 (S.D.N.Y. 2011) ……… 12

*Jun v. 500.com Ltd.*, 2021 WL 4260644 (E.D.N.Y. Sept. 20, 2021) ……………………………. 10

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) …………………………………………………... 5

*Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp., PLC*, 902 F. Supp. 2d 329, 343 (S.D.N.Y. 2012), aff'd sub nom. *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383 (2d Cir. 2015) …………………………………………………….... 11

*Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144 (S.D.N.Y. 2015) ………………………. 10

*Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 162 (D. Conn. 2007) ……………………………... 11

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ……………………………...… 4

*Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010) ……………………………………….. 14

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) …………………………………………... 2, 6

*Resnik v. Swartz*, 303 F.3d 147 (2d Cir. 2002) ………………………………………………... 4

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) …………………………………………... 4

*S. Cherry St., LLC v. Hennessee Grp.*, 573 F.3d 98 (2d Cir. 2009) ……………………………… 5

*S.E.C. v. Gruss*, 859 F. Supp. 2d 653 (S.D.N.Y. 2012) …………………………………..… 3

*Slayton v. Am. Exp. Co.*, 604 F.3d 758 (2d Cir. 2010) ………………………………………….. 2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd,* 551 U.S. 308 (2007) …………………………… 3, 5, 7

**Statutes**

15 U.S.C. § 78u-4 …………………………………………………………...… 2, 5

15 U.S.C. § 78j(b) ……………………………………………………………….. 4

iii

17 C.F.R. § 240.10b-5 ……………………………………………………………………… 4

**Rules**

Fed. R. Civ. P. 9 ……………………………………………………………………… 2, 6

Fed. R. Civ. P. 12 ……………………………………………………………...… 2

**INTRODUCTION**

Plaintiffs rely on a heavily filtered retrospective narrative and ask the Court to assume, through the distorted lens of hindsight, that Lottery.com and certain officers and directors, including Defendant Anthony DiMatteo, must have intentionally or recklessly concealed and misrepresented the true condition of Lottery.com in order to artificially inflate the value of the company. After Lottery.com combined with Trident Acquisitions Corporation (TDAC) in late October 2021, Lottery conducted an internal investigation and then made a series of public disclosures to clarify its legal and financial condition. Plaintiffs have compiled the information that has come to light in the years following the investigation and now allege that, looking back, Defendants must have known the true condition of Lottery.com and must have acted deceitfully.

Because Plaintiffs are alleging securities fraud, they face a demanding burden to articulate specific and particularized facts to demonstrate that Mr. DiMatteo acted with the requisite state of mind to defraud or deceive. To adequately plead state of mind or scienter in a securities fraud claim, Plaintiffs must demonstrate with particularity that Defendants had a concrete motive or consciously or recklessly ignored the truth. Under either theory, Plaintiffs must show that Defendants had contemporaneous access to specific information that made the relevant statement false at the time it was made.

This Court dismissed Plaintiffs' First Amended Class Action Complaint (ECF 52) and warned Plaintiffs that they had "failed to plead sufficient facts to give rise to a strong inference of scienter for any Defendant."[1] Plaintiffs have failed to cure this fundamental defect in their Third Amended Complaint. The foundation of Plaintiffs' Third Amended Class Action Complaint is a March 4, 2024 Bloomberg article that weaves together various pieces of information that were

---

[1] February 6, 2024 Opinion and Order, ECF 131 at 74.

uncovered after Lottery began to investigate its finances and compliance. The article does not demonstrate that Mr. DiMatteo had any specific and concrete incentive to misrepresent the truth. Similarly, the article does not show that Mr. DiMatteo was contemporaneously aware of any specific information that made any of Lottery's statements false. Moreover, the Bloomberg article is not evidence. Each purported fact in the article would need to be independently verified and proven through admissible evidence.

A corporate official "need not be clairvoyant" and a plaintiff cannot "plead fraud by hindsight." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000); *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 776 (2d Cir. 2010). However, that is exactly what Plaintiffs try to do in their Third Amended Complaint. By Plaintiffs' own admission, the true condition of Lottery.com did not come to light until *long after* Mr. DiMatteo left Lottery.[2] Despite amending their complaint, Plaintiffs still fail to plead specific and particularized facts to show that Mr. DiMatteo acted with the requisite state of mind. Accordingly, Plaintiffs have not pled a plausible securities fraud claim.

For the reasons detailed below, Defendant Anthony DiMatteo asks the Court to dismiss Plaintiffs' Third Amended Class Action Complaint (ECF 153) against him pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4.[3]

## LEGAL ARGUMENT

**A. To state a claim for securities fraud, a plaintiff must plead specific facts and detailed allegations to show that the defendant acted with the requisite state of mind to defraud or deceive.**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint

---

[2] Third Amended Class Action Complaint, ECF 153 at ¶¶ 83 and 108.

[3] Defendant DiMatteo hereby adopts and incorporates by reference the motions filed by the other Defendants in this action to dismiss Plaintiffs' Third Amended Class Action Complaint.

2

must contain sufficient factual support to state a plausible cause of action *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is only plausible if the plaintiff pleads enough facts to allow the Court to **reasonably** infer that the defendant is liable for the alleged misconduct. *Id*. So, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Speculation and unsupported facts cannot bolster an otherwise deficient claim. *Id*. Courts have no obligation to entertain speculation and conjecture. *Gallop v. Cheney*, 642 F.3d 364, 368–69 (2d Cir. 2011). Instead, a plaintiff bears the burden to plead enough facts to elevate his purported right to relief beyond the speculative level and "nudge" his claims "across the line from conceivable to plausible." *S.E.C. v. Gruss*, 859 F. Supp. 2d 653, 660 (S.D.N.Y. 2012) (citing *Twombly*, 550 U.S. at 570)).

A plaintiff alleging securities fraud faces "heightened pleading requirements" that require his complaint to be specific and particularized, not just plausible. *In re DraftKings Inc. Sec. Litig.*, No. 21 CIV. 5739 (PAE), 2023 WL 145591, at *14-15 (S.D.N.Y. Jan. 10, 2023) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007); *Tellabs, Inc. v. Makor Issues & Rights, Ltd,* 551 U.S. 308 (2007)). Specifically, a securities fraud complaint must satisfy both the Private Securities Litigation Reform Act and Federal Rule of Civil Procedure 9(b).

Congress enacted the PSLRA as "a check against litigation." *Tellabs,* 551 U.S. at 313. Any private securities fraud complaint must meet the "[e]xacting pleading requirements" of  the PSLRA. *See In re DraftKings Inc.*, 2023 WL 145591 at *15 (citations omitted); *ATSI*, 493 F.3d at 99 (citations omitted). First, the plaintiff must plead with particularity the facts constituting the alleged securities fraud violation. *Tellabs*, 551 U.S. at 313. Section 10(b) of the Securities

3

Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security" any "manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission [(SEC)] may prescribe." *In re DraftKings Inc.*, 2023 WL 145591 at *15 (citing 15 U.S.C. § 78j(b)). SEC Rule 10b-5 makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." *Id.* (citing 17 C.F.R. § 240.10b-5). To state a claim and avoid dismissal under Section 10(b) and Rule 10b-5, a complaint must plead with particularity facts sufficient to show "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Id.* (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011)). Where the plaintiff alleges that the defendant made fraudulent or deceitful statements in connection with the purchase or sale of securities, he "must do more than say that the [purportedly untrue] statements […] were false and misleading," he must "demonstrate with particularity why and how that is so." *Id.* (citing *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)).

Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information." *In re DraftKings Inc.*, 2023 WL 145591 at *15 (citations omitted). A company is not required to disclose information merely because it may be relevant or interesting to reasonable investors. *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002). "Silence, absent a duty to disclose, is not misleading." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). A duty to disclose arises under federal securities laws ***only*** when the information is subject to an "affirmative legal disclosure obligation" or when necessary "to prevent existing disclosures from being

4

misleading." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360-66 (2d Cir. 2010).

Moreover, a plaintiff must plead particularized facts giving rise to a ***strong inference*** that the defendant acted with the required state of mind or scienter to deceive, manipulate, or defraud. *In re DraftKings Inc.*, 2023 WL 145591 at *15; *Tellabs*, 551 U.S. at 313-14 (both cases citing 15 U.S.C § 78u-4(b)(2)). A plaintiff must plead with particularity "facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).

The inference of scienter must be more than plausible, it must be strong enough that a reasonable person would deem it cogent and ***at least as compelling*** as any opposing inference. *In re DraftKings Inc.*, 2023 WL 145591 at *15; *Tellabs*, 551 U.S. at 313-14. The Court must consider plausible opposing inferences. *Id*. Where, as here, a "plausible, nonculpable" explanation is more likely than fraud, the plaintiff has failed to establish scienter. *Id*.

To plead motive, the Second Circuit requires particularized allegations of a "concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). Where motive is not apparent, a plaintiff must plead scienter by identifying "circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142 (2d Cir. 2001). At a minimum, the requisite state of mind is "conscious recklessness." *S. Cherry St., LLC v. Hennessee Grp.*, 573 F.3d 98, 109 (2d Cir. 2009).

Under either standard, plaintiff must set forth detailed allegations that specific contradictory information was available to the defendants at the time they made their purportedly misleading statements or omissions. *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 536

5

(S.D.N.Y. 2009). The plaintiff "'must specifically identify the reports or statements that are contradictory to the statements made,' or must 'provide specific instances in which Defendants received information that was contrary to their public declarations.'" *See Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 588 (S.D.N.Y. 2011); *Novak v. Kasaks*, 216 F.3d 300, 308-9 (2d Cir. 2000) ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information.").

Further, a complaint alleging securities fraud must meet the heightened requirements for fraud claims defined in Federal Rule of Civil Procedure 9(b), which mandates that a party alleging fraud must "state with particularity the circumstances constituting fraud." *See In re DraftKings Inc.*, 2023 WL 145591 at *14 (citing *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009)). Conclusory allegations and unsupported factual assertions are insufficient. *Id.* (citing *ATSI*, 493 F.3d at 99).

This constraint "serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits." *ATSI*, 493 F.3d at 99 (citation omitted). Rule 9(b) requires Plaintiffs to specify the time, place, and contents of each misrepresentation, and "explain why the statements were fraudulent." *Anschutz Corp.* v. *Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012).

## B. Plaintiffs fail to meet the demanding burden for alleging scienter.

To state a plausible securities fraud cause of action, a complaint must either (1) allege that the defendant had the motive and opportunity to commit fraud, or (2) present strong circumstantial evidence of conscious misbehavior or recklessness. *Arkansas Pub. Emps. Ret. Sys. (APERS) v. Bristol-Myers Squibb Co., 28 F.4th 343, 355 (2d Cir. 2022)*; *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).

6

The proper inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323. The inference of scienter must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations." *Id*. at 324. A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*.

Where, as here, a plaintiff alleging securities fraud fails to plead sufficient particularized facts to establish that the defendant had the motive and opportunity to defraud, they must plead with particularity enough facts to establish that the defendant engaged in conscious misbehavior or recklessness. However, that circumstantial evidence must be correspondingly greater and show highly unreasonable behavior or that which evinces an extreme departure from the standards of ordinary care." *APERS*, 28 F.4th at 355 (quotation marks and citation omitted).

Despite being granted leave to file a Third Amended Complaint, Plaintiffs have again failed to adequately allege that Mr. DiMatteo had the requisite scienter to defraud or deceive.

i. **Plaintiffs do not sufficiently allege that Mr. DiMatteo had the motive and opportunity to defraud or deceive.**

As this Court warned the Plaintiffs when it dismissed their First Amended Complaint, in order to raise a strong inference of scienter through motive and opportunity to defraud, Plaintiffs must allege that the Defendants "benefitted in some concrete and personal way from the purported fraud." *ECA*, 553 F.3d at 198 (quotation marks and citation omitted). Further, "motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry." *Id.* Without more, "executive compensation dependent upon stock

7

value does not give rise to a strong inference of scienter." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995). If scienter could be pleaded on that basis alone, "virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions. Incentive compensation can hardly be the basis on which an allegation of fraud is predicated." *Id.* (brackets, quotation marks, and citation omitted). Additionally, as this Court already warned the Plaintiffs, a corporate executive's motivation to keep the stock price high while selling his own shares at a profit is not enough to establish an inference of bad faith or scienter without some specific facts to show that the sale was otherwise unusual.[4]

This Court dismissed Plaintiffs' First Amended Complaint, at least in part, because it found that Plaintiffs allegations about Defendants motive, compensation, and stock sales were insufficient to show that Defendants had the motive and opportunity to defraud.[5] Specifically, the Court agreed with Defendants that Plaintiffs had "not adequately alleged that any Defendant had sufficient *motive* to commit fraud."[6] Plaintiffs failed to cure this deficiency in their Third Amended Complaint.

First, Plaintiffs allege that, as an executive of Lottery.com, Mr. DiMatteo had a financial incentive to consummate the business combination and take Lattery.com public:

> The Lottery Defendants received far more shares than they would have been entitled to had the true value of Lottery been disclosed in connection with the Business Combination. Moreover, these executives received lucrative pay and benefit packages to the extent they remained employees of Lottery following the Business Combination.[7]

Second, Plaintiffs allege that Mr. DiMatteo sold some of his shares after the business combination, but they fail to allege how the sale was sufficiently unusual to support a finding that

---

[4] February 6, 2024 Opinion and Order, ECF 131 at 64-65 (citing APERS, 28 F.4th at 355).
[5] *Id.* at 60-66.
[6] *Id.* at 61.
[7] Third Amended Class Action Complaint, ECF 153 at ¶ 71.

Mr. DiMatteo had a motive to defraud:

> DiMatteo owned approximately 14% of Lottery at the time of the Business Combination and sold 375,000 Purchase Right shares for between $6.35 and $6.87 per share on December 2, 2021, to receive proceeds of between approximately $2,381,250 and $2,576,250 shortly after the Business Combination was completed.[8]

This Court warned Plaintiffs that it is not enough to point to incentives possessed by nearly all corporate insiders. The Court also warned Plaintiffs that their allegation that Defendants sold their shares at a profit is not enough to create an inference of bad faith or scienter without specific facts to show that the sales were otherwise unusual. Plaintiffs failed to address these deficiencies in their Third Amended Complaint. Based on the foregoing, Plaintiffs have again failed to allege that Mr. DiMatteo  had a motive and opportunity to defraud.

**ii. Plaintiffs have also failed to allege sufficient evidence of conscious misbehavior or recklessness.**

Even when considered holistically, Plaintiffs fail to present specific and particularized facts to show that Mr. DiMatteo acted with conscious or reckless disregard for the truth.

*a. Mr. DiMatteo's Position as Lottery's CEO.*

As this Court already warned Plaintiffs, simply alleging that Defendants had leadership roles at Lottery and that the actionable statements or omissions concerned Lottery's core operations is insufficient to establish scienter.[9] Nonetheless, Plaintiffs again speculate that Mr. DiMatteo must have known and concealed information about Lottery.com because he was its CEO. However, being an executive is not independently sufficient to establish that Mr. DiMatteo concealed information about the company. *See Cohen v. Kitov Pharms. Holdings, Ltd.*, 2018 WL 1406619, at *1 (S.D.N.Y. Mar. 20, 2018); *In re Skechers USA, Inc. Securities Litigation*, 444 F.

---

[8] Third Amended Class Action Complaint, ECF 153 at ¶ 72.
[9] February 6, 2024 Opinion and Order, ECF 131 at 68.

Supp. 3d 498 at 507, 528 (S.D.N.Y 2020) (scienter insufficiently alleged when plaintiffs relied solely on the CEO, COO, and CFO's "high-level positions within the [c]ompany" and the fact that "the underlying subject of the alleged fraud . . . [wa]s so fundamental to the [c]ompany's operations that the [CEO, COO, and CFO's] knowledge about it should virtually b[e] presumed"); *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015) ("[T]o establish an inference of scienter, Plaintiff must do more than allege that the Individual Defendants had or should have had knowledge of certain facts contrary to their public statements simply by virtue of their high-level positions. Courts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." (citing *City of Brockton Retirement Sys. v. Avon Prod., Inc.*, No. 11 Civ. 4665(PGG) 2014 WL 4832321, at *19 (S.D.N.Y.2014); *Bd. of Trustees of City of Ft. Lauderdale Gen. Employees' Ret. Sys. v. Mechel OAO*, 811 F.Supp.2d 853, 873 (S.D.N.Y.2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 Fed.Appx. 353 (2d Cir.2012) (Summary Order)).

> b.   *Mr. DiMatteo's resignation.*

Without some specific evidence of unusual or suspicious circumstances, the fact that an executive resigns during or after an investigation is not enough to support a securities fraud claim. *See, e.g.*, *Jun v. 500.com Ltd.*, CV 20-806 (GRB) (AKT), 2021 WL 4260644, at *2 (E.D.N.Y. Sept. 20, 2021) (ruling that defendant's resignation at the conclusion of internal investigation was not enough to show scienter); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011) ("resignations, without some indicia of highly unusual or suspicious circumstances, are insufficient to support the required strong circumstantial evidence of scienter"). "[T]hat a corporate executive would resign from a company under investigation" for accounting irregularities "hardly seems suspect"—there are many plausible explanations that do not involve knowledge of any scheme to

10

defraud. *Jun*, 2021 WL 4260644, at *2.

Indeed, without some evidence of specific misconduct, terminations and resignations "are at least as consistent with punishing those at the helm for their poor judgment and leadership" as with their "relating to concocting a scheme to defraud shareholders." *Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp., PLC*, 902 F. Supp. 2d 329, 343 (S.D.N.Y. 2012), *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383 (2d Cir. 2015); *see, e.g., Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 162 (D. Conn. 2007) ("Plaintiffs have alleged and the [New York Insurance Department] found various management problems, accounting deficiencies, and lack of organization. In the absence of facts connecting [executives of the company] to the alleged fraud, it is more likely that they were terminated and resigned as a result of company mismanagement, not securities fraud."), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) (summary order).

c.  *Lottery's finances.*

Plaintiffs allege that the Defendants must have known that Lottery had misstated its finances.[10] However, Plaintiffs do not offer any facts to show that Mr. DiMatteo had contemporaneous access to information that would have made Lottery's statements about its finances false at the time the statements were made. By Plaintiffs' own admission, the truth about Lottery's finances did not become apparent until after Mr. DiMatteo had left the company:

> ***Long after all of the Individual Lottery Defendants were no longer with the Company***, Lottery finally admitted that the entire $30 million transaction was a sham. As the Company explained in its Annual Report with the SEC on Form 10-K/A filed on May 10, 2023, "***During 2022, the Company discovered*** that the service credits it had sold to the customer were non-transferable and that the Company had pledged its own cash accounts to secure a line of credit in the amount of $30,000,000 utilized by the customer to provide the Company with payment towards the purchase of the service credits."[11]

---

[10] Third Amended Class Action Complaint, ECF 153 at ¶ 88 and n.13.
[11] Third Amended Class Action Complaint, ECF 153 at ¶¶ 10, 83, 108 (emphasis added).

11

To the extent Plaintiffs allege that Defendants must have known the financial statements were incorrect because of the degree to which Lottery had to restate its financials, the magnitude of a restatement, without more, cannot create a strong inference of scienter. *In re Wachovia Equity Securities Litigation*, 753 F. Supp. 2d 326, 366 (S.D.N.Y. 2011) (citation omitted); *accord Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 493 (S.D.N.Y. 2012); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 447 (S.D.N.Y. 2005); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13-cv-08846 (LGS), 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014). Indeed, as this Court has already warned Plaintiffs, the magnitude of a restatement and the centrality of a revenue category to a company's core operations are insufficient even when combined with the timing and circumstances of the terminations/resignations of Lottery's executives and the withdrawal of the independent auditor.

> d.  *Lottery's legal and regulatory compliance.*

Plaintiffs allege that Lottery misrepresented its compliance with gaming and lottery laws. Specifically, Plaintiffs allege that Lottery printed out of state lottery tickets in Texas and overstated its ability to use geofencing parameters to govern online lottery ticket sales. However, Plaintiffs do not articulate any facts to show that Mr. DiMatteo had contemporaneous access to specific information that made any of Lottery's statements about its legal and regulatory compliance false. In fact, Plaintiffs acknowledge that Lottery's internal investigation, which occurred after the business combination, revealed the legal and regulatory noncompliance.[12]

To the extent Plaintiffs allege that someone observed during a June 2022 board meeting that Lottery was "breaking the law," that statement would have been made after the internal investigation began and offers no detail to show that Mr. DiMatteo or any of the other Lottery

---

[12] Third Amended Class Action Complaint, ECF 153 at ¶ 131.

executives were aware of specific information that made any of Lottery's statements about its legal and regulatory compliance false at the time the statements were made.

     e.   *Pressure to complete the business combination.*

Plaintiffs allege that Mr. DiMatteo recently stated that the Trident executives acted as "the grownups in the room" and exerted pressure to complete the business combination transaction.[13] However, this Court already concluded that the statements Lottery made about its regulatory compliance before the business acquisition were generic puffery not materially false statements.[14] The Court also concluded that the financial projections contained in the proxy statements and pre-merger press releases were forward looking statements accompanied by sufficient cautionary language that no reasonable investor could have found the statements materially misleading.[15] State differently, the statements Lottery made in support of the business combination cannot support a securities fraud claim. Mr. DiMatteo's statement also does not show that he had contemporaneous information that made any statements Lottery made false at the time the statements were made.

Based on the foregoing, even when considered wholistically, Plaintiffs fail to articulate the specific and particularized facts to create the strong inference that Mr. DiMatteo acted with the requisite state of mind to defraud or deceive.

## C. Because Plaintiffs failed to adequately allege a securities fraud violation, they cannot hold Mr. DiMatteo individually liable as a controlling officer of Lottery.com.

Plaintiffs also ask this Court to hold Mr. DiMatteo personally liable pursuant to Section 20(a) of the Securities Exchange Act, which requires Plaintiffs to show that Lottery.com committed a securities fraud violation, that Mr. DiMatteo controlled Lottery.com, and that Mr.

---

[13] Third Amended Class Action Complaint, ECF 153 at ¶ 134.
[14] February 6, 2024 Opinion and Order, ECF 131 at 31-34.
[15] *Id.* at 34-40.

DiMatteo meaningfully and culpably participated in the underlying fraud. *See ATSI*, 493 F.3d at 108 (citations omitted). As this Court warned Plaintiffs when it dismissed the First Amended Complaint, Section 20(a) provides that "individual executives, as 'controlling persons' of a company, are secondarily liable for their company's violations of the Exchange Act."[16] Liability under Section 20(a) is "derivative of liability under some other provision of the Exchange Act."[17]

As described above, Plaintiffs have not pled sufficient facts to allege a cause of action for securities fraud against Mr. DiMatteo. Plaintiffs have not established that Mr. DiMatteo's compensation, his position within the company, his resignation, or the amount of the eventual restatement show that he acted with the requisite state of mind to defraud or deceive. Instead, Plaintiffs rely on hindsight and ask the Court to speculate that Mr. DiMatteo must have known and concealed the true state of the company. But Plaintiffs fail to prove that allegation with specific and particularized facts to show that Mr. DiMatteo had contemporaneous access to information that made any of Lottery's statements false at the time they were made. Therefore, Plaintiffs have not adequately pled the requisite underlying fraud. Accordingly, Plaintiffs have failed to plead sufficient facts to hold Mr. DiMatteo individually liable as a controlling officer of Lottery.com.

## CONCLUSION

Despite amending their complaint, Plaintiffs have again failed to allege a plausible securities fraud claim against Defendant Anthony DiMatteo. Specifically, Plaintiffs have failed to allege facts sufficient to show that Mr. DiMatteo acted with the requisite state of mind to defraud or deceive. Accordingly, Mr. DiMatteo respectfully moves the Court to dismiss the Third Amended Class Action Complaint (ECF No. 153) against him with prejudice.

---

[16] *Id*. at 75 (citing *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015)).
[17] *Id*. at 75-76 (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 253 n.2 (2010)).

14

Dated: July 12, 2024      Respectfully Submitted,

           /s/ *Tara N. Tighe*
           Tara N. Tighe (*pro hac vice*)
           Danny C. Onorato (*pro hac vice*)
           Schertler Onorato Mead & Sears LLP
           555 13th Street, N.W. | Suite 500 West
           Washington, DC 20004
           ttighe@schertlerlaw.com
           donorato@schertlerlaw.com
           Phone: (202) 628-4199
           Fax: (202) 628-4177

           *Counsel for Defendant Anthony DiMatteo*

15

## CERTIFICATE OF SERVICE

I, the undersigned, certify as follows:

I am not a party to the above case, and I am over 18 years old.

On July 12, 2024, I filed the foregoing document with the Clerk of this Court using the Court's CM/ECF electronic filing system, which will serve automatic electronic notice of this filing to all counsel of record in this case.

I affirm under penalty of perjury that the foregoing is true and correct.


/s/ *Tara N. Tighe*
Tara N. Tighe

16