**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LOTTERY.COM, INC. SECURITIES LITIGATION | Case No. 1:22-cv-07111 (JLR) |
| | ***ORAL ARGUMENT REQUESTED*** |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANT ANTHONY DIMATTEO'S MOTION
TO DISMISS PLAINTIFF HAROLD HOFFMAN'S SECOND AMENDED COMPLAINT</u>**

SCHERTLER ONORATO MEAD & SEARS LLP

Tara N. Tighe (*pro hac vice*)
Danny C. Onorato (*pro hac vice*)
Schertler Onorato Mead & Sears LLP
555 13th Street, N.W. | Suite 500 West
Washington, DC 20004
ttighe@schertlerlaw.com
donorato@schertlerlaw.com
Phone: (202) 628-4199
Fax: (202) 628-4177

*Counsel for Defendant Anthony DiMatteo*

**TABLE OF CONTENTS**

INTRODUCTION ……………………………………………………………………….. 1

LEGAL ARGUMENT ………………………………………………………………….. 2

    A.  To state a claim for securities fraud, a plaintiff must plead specific facts and detailed allegations to show that the defendant acted with the requisite state of mind to defraud or deceive  …................................................................................................................ 2

    B.  Mr. Hoffman fails to adequately allege scienter ……………………………………. 6

        i.  Mr. DiMatteo does not sufficiently allege that Mr. DiMatteo had the motive and opportunity to defraud or deceive ………………………………………………… 7

        ii.  Mr. Hoffman also fails to allege sufficient evidence of conscious misbehavior or recklessness ……………………………………………………………………..… 9

    C.  Because Mr. Hoffman failed to adequately allege a securities fraud violation, he cannot hold Mr. DiMatteo individually liable as a controlling officer of Lottery.com ……..… 14

CONCLUSION ……………………………………………………………………….... 14

i

**TABLE OF AUTHORITIES**

**Cases**

*Acito v. IMCERA Grp., Inc.*, 47 F.3d 47 (2d Cir. 1995) ………………………………………… 8

*Anschutz Corp.* v. *Merrill Lynch & Co.*, 690 F.3d 98 (2d Cir. 2012) ……………………………. 6

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co., 28 F.4th 343 (2d Cir. 2022) …… 6, 7*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) …………………………………………………...… 3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ……………...… 3, 6, 13-14

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) …………………………………………...… 4

*Bd. of Trustees of City of Ft. Lauderdale Gen. Employees' Ret. Sys. v. Mechel OAO*, 811 F.Supp.2d 853, 873 (S.D.N.Y.2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 Fed.Appx. 353 (2d Cir.2012) …………………………………………………………………………... 10

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) …………………………………………...… 3

*City of Brockton Retirement Sys. v. Avon Prod., Inc.*, 2014 WL 4832321 (S.D.N.Y.2014) …..… 10

*Cohen v. Kitov Pharms. Holdings, Ltd.*, 2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) ………… 9

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) …………………………………………………………………………… 5, 6, 7

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297 (2d Cir. 2015) .… 14

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476 (S.D.N.Y. 2012) …… 12

*Gallop v. Cheney*, 642 F.3d 364 (2d Cir. 2011) …………………………………………...… 3

*Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573 (S.D.N.Y. 2011) ………………………………… 6, 10

*In re DraftKings Inc. Sec. Litig.*, 2023 WL 145591 (S.D.N.Y. Jan. 10, 2023) ………...… 3, 4, 5, 6

*In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347 (2d Cir. 2010) ……………………… 5

*In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510 (S.D.N.Y. 2009) …………………….. 5-6

*In re Skechers USA, Inc. Securities Litigation*, 444 F. Supp. 3d 498 (S.D.N.Y 2020) ……….. 9-10

*In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13-cv-08846 (LGS), 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ……………………………………………………………………...… 12

*In re Wachovia Equity Securities Litigation*, 753 F. Supp. 2d 326, 366 (S.D.N.Y. 2011) ……… 12

*Jun v. 500.com Ltd.*, 2021 WL 4260644 (E.D.N.Y. Sept. 20, 2021) ……………………………. 10

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) …………………………………………………... 5

*Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp., PLC*, 902 F. Supp. 2d 329, 343 (S.D.N.Y. 2012), aff'd sub nom. *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383 (2d Cir. 2015) …………………………………………………….... 11

*Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144 (S.D.N.Y. 2015) ………………………. 10

*Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 162 (D. Conn. 2007) ……………………………... 11

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ………………………………...… 4

*Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010) …………………………………….. 14

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) …………………………………………………... 2, 6

*Resnik v. Swartz*, 303 F.3d 147 (2d Cir. 2002) ………………………………………………... 4

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ……………………………………………….. 4

*S. Cherry St., LLC v. Hennessee Grp.*, 573 F.3d 98 (2d Cir. 2009) ………………………………… 5

*S.E.C. v. Gruss*, 859 F. Supp. 2d 653 (S.D.N.Y. 2012) …………………………………………...… 3

*Slayton v. Am. Exp. Co.*, 604 F.3d 758 (2d Cir. 2010) ………………………………………….. 2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd,* 551 U.S. 308 (2007) …………………………. 3, 5, 7

**Statutes**

15 U.S.C. § 78u-4 …………………………………………………………………...… 2, 5

15 U.S.C. § 78j(b) ……………………………………………………………………….. 4

iii

17 C.F.R. § 240.10b-5 ………………………………………………………………………… 4

**Rules**

Fed. R. Civ. P. 9 ……………………………………………………………………………… 2, 6

Fed. R. Civ. P. 12 …………………………………………………………………...… 2

## INTRODUCTION

Plaintiff Harold Hoffman parrots the Class Action Plaintiffs' Third Amended Complaint in an effort to state a plausible securities fraud claim against the Defendants. Much of Mr. Hoffman's Second Amended Complaint quotes verbatim from the Third Amended Class Action Complaint. However, just like the Class Action Plaintiffs, Mr. Hoffman relies on hindsight to support his theory that Lottery.com and certain of its officers and directors, including Defendant Anthony DiMatteo, must have intentionally or recklessly concealed and misrepresented the true condition of Lottery.com in order to artificially inflate the value of the company. Lottery combined with Trident Acquisitions Corporation (TDAC) in late October 2021 and then publicly clarified its legal and financial condition following an internal investigation. Having pieced together various information that has become known since the investigation began, Mr. Hoffman alleges that looking back, Defendants must have known the true condition of Lottery.com and must have acted deceitfully.

Because Mr. Hoffman is alleging securities fraud, he is required to articulate specific and particularized facts to demonstrate that Mr. DiMatteo acted with the requisite state of mind to defraud or deceive. This means he must demonstrate with particularity that Mr. DiMatteo had a concrete motive or consciously or recklessly ignored the truth. Either way, Mr. Hoffman must show that Mr. DiMatteo had contemporaneous access to specific information that made the relevant statement false when it was made.

This Court dismissed Mr. Hoffman's original Complaint and warned him that he had "failed to plead sufficient facts to give rise to a strong inference of scienter for any Defendant."[1] Nonetheless, Mr. Hoffman has not cured this deficiency in his Second Amended Complaint.

---

[1] February 6, 2024 Opinion and Order, ECF 131 at 74.

Instead, Mr. Hoffman relies on March 4, 2024 Bloomberg article that weaves together various pieces of information that were uncovered after Lottery began to investigate its finances and compliance. The article does not demonstrate that Mr. DiMatteo had any specific and concrete incentive to misrepresent the truth. Similarly, the article does not show that Mr. DiMatteo was contemporaneously aware of any specific information that made any of Lottery's statements false. Moreover, the Bloomberg article is not evidence. Each purported fact in the article would need to be verified and proven through admissible evidence.

A corporate official "need not be clairvoyant" and a plaintiff cannot "plead fraud by hindsight." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000); *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 776 (2d Cir. 2010). However, Mr. Hoffman relies on hindsight to support his claims. By Mr. Hoffman's own admission, the true condition of Lottery.com did not become known until *long after* Mr. DiMatteo left Lottery.[2] Despite amending his complaint, Mr. Hoffman still fails to plead specific and particularized facts to show that Mr. DiMatteo acted with the requisite state of mind and therefore fails to plead a plausible securities fraud claim.

Defendant Anthony DiMatteo asks the Court to dismiss Mr. Hoffman's Second Amended Complaint (ECF 154) against him pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4.[3]

## LEGAL ARGUMENT

**A. To state a claim for securities fraud, a plaintiff must plead specific facts and detailed allegations to show that the defendant acted with the requisite state of mind to defraud or deceive.**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint

---

[2] Hoffman Second Amended Complaint, ECF 154 at ¶¶ 10, 79, and 108.
[3] Defendant DiMatteo hereby adopts and incorporates by reference the motions filed by the other Defendants in this action to dismiss Mr. Hoffman's Second Amended Complaint.

must contain sufficient factual support to state a plausible cause of action *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is only plausible if the plaintiff pleads enough facts to allow the Court to **reasonably** infer that the defendant is liable for the alleged misconduct. *Id*. So, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Speculation and unsupported facts cannot bolster an otherwise deficient claim. *Id*. Courts have no obligation to entertain speculation and conjecture. *Gallop v. Cheney*, 642 F.3d 364, 368–69 (2d Cir. 2011). Instead, a plaintiff bears the burden to plead enough facts to elevate his purported right to relief beyond the speculative level and "nudge" his claims "across the line from conceivable to plausible." *S.E.C. v. Gruss*, 859 F. Supp. 2d 653, 660 (S.D.N.Y. 2012) (citing *Twombly*, 550 U.S. at 570)).

A plaintiff alleging securities fraud faces "heightened pleading requirements" that require his complaint to be specific and particularized, not just plausible. *In re DraftKings Inc. Sec. Litig.*, No. 21 CIV. 5739 (PAE), 2023 WL 145591, at *14-15 (S.D.N.Y. Jan. 10, 2023) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007); *Tellabs, Inc. v. Makor Issues & Rights, Ltd,* 551 U.S. 308 (2007)). Specifically, a securities fraud complaint must satisfy both the Private Securities Litigation Reform Act and Federal Rule of Civil Procedure 9(b).

Congress enacted the PSLRA as "a check against litigation." *Tellabs,* 551 U.S. at 313. Any private securities fraud complaint must meet the "[e]xacting pleading requirements" of the PSLRA. *See In re DraftKings Inc.*, 2023 WL 145591 at *15 (citations omitted); *ATSI*, 493 F.3d at 99 (citations omitted). First, the plaintiff must plead with particularity the facts constituting the alleged securities fraud violation. *Tellabs*, 551 U.S. at 313. Section 10(b) of the Securities

3

Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security" any "manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission [(SEC)] may prescribe." *In re DraftKings Inc.*, 2023 WL 145591 at *15 (citing 15 U.S.C. § 78j(b)). SEC Rule 10b-5 makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." *Id*. (citing 17 C.F.R. § 240.10b-5). To state a claim and avoid dismissal under Section 10(b) and Rule 10b-5, a complaint must plead with particularity facts sufficient to show "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Id*. (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011)). Where the plaintiff alleges that the defendant made fraudulent or deceitful statements in connection with the purchase or sale of securities, he "must do more than say that the [purportedly untrue] statements […] were false and misleading," he must "demonstrate with particularity why and how that is so." *Id*. (citing *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)).

Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information." *In re DraftKings Inc.*, 2023 WL 145591 at *15 (citations omitted). A company is not required to disclose information merely because it may be relevant or interesting to reasonable investors. *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002). "Silence, absent a duty to disclose, is not misleading." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). A duty to disclose arises under federal securities laws *only* when the information is subject to an "affirmative legal disclosure obligation" or when necessary "to prevent existing disclosures from being

4

misleading." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360-66 (2d Cir. 2010).

Moreover, a plaintiff must plead particularized facts giving rise to a ***strong inference*** that the defendant acted with the required state of mind or scienter to deceive, manipulate, or defraud. *In re DraftKings Inc.*, 2023 WL 145591 at *15; *Tellabs*, 551 U.S. at 313-14 (both cases citing 15 U.S.C § 78u-4(b)(2)). A plaintiff must plead with particularity "facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).

The inference of scienter must be more than plausible, it must be strong enough that a reasonable person would deem it cogent and ***at least as compelling*** as any opposing inference. *In re DraftKings Inc.*, 2023 WL 145591 at *15; *Tellabs*, 551 U.S. at 313-14. The Court must consider plausible opposing inferences. *Id*. Where, as here, a "plausible, nonculpable" explanation is more likely than fraud, the plaintiff has failed to establish scienter. *Id*.

To plead motive, the Second Circuit requires particularized allegations of a "concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). Where motive is not apparent, a plaintiff must plead scienter by identifying "circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142 (2d Cir. 2001). At a minimum, the requisite state of mind is "conscious recklessness." *S. Cherry St., LLC v. Hennessee Grp.*, 573 F.3d 98, 109 (2d Cir. 2009).

Under either standard, plaintiff must set forth detailed allegations that specific contradictory information was available to the defendants at the time they made their purportedly misleading statements or omissions. *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 536

5

(S.D.N.Y. 2009). The plaintiff "'must specifically identify the reports or statements that are contradictory to the statements made,' or must 'provide specific instances in which Defendants received information that was contrary to their public declarations.'" *See Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 588 (S.D.N.Y. 2011); *Novak v. Kasaks*, 216 F.3d 300, 308-9 (2d Cir. 2000) ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information.").

Further, a complaint alleging securities fraud must meet the heightened requirements for fraud claims defined in Federal Rule of Civil Procedure 9(b), which mandates that a party alleging fraud must "state with particularity the circumstances constituting fraud." *See In re DraftKings Inc.*, 2023 WL 145591 at \*14 (citing *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009)). Conclusory allegations and unsupported factual assertions are insufficient. *Id.* (citing *ATSI*, 493 F.3d at 99).

This constraint "serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits." *ATSI*, 493 F.3d at 99 (citation omitted). Rule 9(b) requires a plaintiff to specify the time, place, and contents of each misrepresentation, and "explain why the statements were fraudulent." *Anschutz Corp.* v. *Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012).

## B.  Mr. Hoffman fails to adequately allege scienter.

To state a plausible securities fraud cause of action, a complaint must either (1) allege that the defendant had the motive and opportunity to commit fraud, or (2) present strong circumstantial evidence of conscious misbehavior or recklessness. *Arkansas Pub. Emps. Ret. Sys. (APERS) v. Bristol-Myers Squibb Co., 28 F.4th 343, 355 (2d Cir. 2022)*; *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).

The proper inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323. The inference of scienter must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations." *Id*. at 324. A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*.

Where, as here, a plaintiff alleging securities fraud fails to plead sufficient particularized facts to establish that the defendant had the motive and opportunity to defraud, they must plead with particularity enough facts to establish that the defendant engaged in conscious misbehavior or recklessness. However, that circumstantial evidence must be correspondingly greater and show highly unreasonable behavior or that which evinces an extreme departure from the standards of ordinary care." *APERS*, 28 F.4th at 355 (quotation marks and citation omitted).

Despite being granted leave to amend his complaint, Mr. Hoffman has again failed to adequately allege that Mr. DiMatteo had the requisite scienter to defraud or deceive.

### i.  Mr. DiMatteo does not sufficiently allege that Mr. DiMatteo had the motive and opportunity to defraud or deceive.

As this Court warned Mr. Hoffman when it dismissed his original Complaint, in order to raise a strong inference of scienter through motive and opportunity to defraud, he must allege that the Defendants "benefitted in some concrete and personal way from the purported fraud." *ECA*, 553 F.3d at 198 (quotation marks and citation omitted). Further, "motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry." *Id.* Without more,  "executive compensation dependent upon stock value does not give

7

rise to a strong inference of scienter." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995).

If scienter could be pleaded on that basis alone, "virtually every company in the United States that

experiences a downturn in stock price could be forced to defend securities fraud actions. Incentive

compensation can hardly be the basis on which an allegation of fraud is predicated." *Id*. (brackets,

quotation marks, and citation omitted). Additionally, as this Court already warned Mr. Hoffman,

a corporate executive's motivation to keep the stock price high while selling his own shares at a

profit is not enough to establish an inference of bad faith or scienter without some specific facts to

show that the sale was otherwise unusual.[4]

This Court dismissed Mr. Hoffman's original Complaint, at least in part, because it found

that his allegations about Defendants motive, compensation, and stock sales were insufficient to

show that Defendants had the motive and opportunity to defraud.[5] Specifically, the Court agreed

with Defendants that Mr. Hoffman had "not adequately alleged that any Defendant had sufficient

*motive* to commit fraud."[6] Mr. Hoffman has not cured this deficiency in his Second Amended

Complaint.

First, Mr. Hoffman alleges, quoting verbatim from the Third Amended Class Action

Complaint, that as an executive of Lottery.com, Mr. DiMatteo had a financial incentive to

consummate the business combination and take Lattery.com public:

> The Lottery Defendants received far more shares than they would have been
> entitled to had the true value of Lottery been disclosed in connection with the
> Business Combination. Moreover, these executives received lucrative pay and
> benefit packages to the extent they remained employees of Lottery following the
> Business Combination.[7]

Second, Mr. Hoffman alleges, again quoting verbatim from the Third Amended Class

---

[4] February 6, 2024 Opinion and Order, ECF 131 at 64-65 (citing APERS, 28 F.4th at 355).
[5] *Id*. at 60-66.
[6] *Id*. at 61.
[7] Hoffman Second Amended Complaint, ECF 154 at ¶ 67.

Action Complaint, that Mr. DiMatteo sold some shares after the business combination, but they fail to allege how the sale was sufficiently unusual to support a finding that Mr. DiMatteo had a motive to defraud:

> DiMatteo owned approximately 14% of Lottery at the time of the Business Combination and sold 375,000 Purchase Right shares for between $6.35 and $6.87 per share on December 2, 2021, to receive proceeds of between approximately $2,381,250 and $2,576,250 shortly after the Business Combination was completed.[8]

This Court warned Mr. Hoffman that it is not enough to point to incentives possessed by nearly all corporate insiders. The Court also warned Mr. Hoffman that his allegation that Defendants sold their shares at a profit is not enough to create an inference of bad faith or scienter without specific facts to show that the sales were otherwise unusual. Mr. Hoffman failed to address these deficiencies in his Second Amended Complaint. Based on the foregoing, Mr. Hoffman has again failed to allege that Mr. DiMatteo had a motive and opportunity to defraud.

### ii. Mr. Hoffman has also failed to allege sufficient evidence of conscious misbehavior or recklessness.

Even when considered holistically, Mr. Hoffman fails to present specific and particularized facts to show that Mr. DiMatteo acted with conscious or reckless disregard for the truth.

#### a. Mr. DiMatteo's Position as Lottery's CEO.

As this Court already warned Mr. Hoffman, simply alleging that Defendants had leadership roles at Lottery and that the actionable statements or omissions concerned Lottery's core operations is insufficient to establish scienter.[9] Nonetheless, Mr. Hoffman again speculates that Mr. DiMatteo must have known and concealed information about Lottery.com because he was its CEO. However, being an executive is not independently sufficient to establish that Mr. DiMatteo

---

[8] *Id*. at ¶ 68.
[9] February 6, 2024 Opinion and Order, ECF 131 at 68.

concealed information about the company. *See Cohen v. Kitov Pharms. Holdings, Ltd.*, 2018 WL 1406619, at \*1 (S.D.N.Y. Mar. 20, 2018); *In re Skechers USA, Inc. Securities Litigation*, 444 F. Supp. 3d 498 at 507, 528 (S.D.N.Y 2020) (scienter insufficiently alleged when plaintiffs relied solely on the CEO, COO, and CFO's "high-level positions within the [c]ompany" and the fact that "the underlying subject of the alleged fraud . . . [wa]s so fundamental to the [c]ompany's operations that the [CEO, COO, and CFO's] knowledge about it should virtually b[e] presumed"); *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015) ("[T]o establish an inference of scienter, Plaintiff must do more than allege that the Individual Defendants had or should have had knowledge of certain facts contrary to their public statements simply by virtue of their high-level positions. Courts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." (citing *City of Brockton Retirement Sys. v. Avon Prod., Inc.*, No. 11 Civ. 4665(PGG) 2014 WL 4832321, at \*19 (S.D.N.Y.2014); *Bd. of Trustees of City of Ft. Lauderdale Gen. Employees' Ret. Sys. v. Mechel OAO*, 811 F.Supp.2d 853, 873 (S.D.N.Y.2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 Fed.Appx. 353 (2d Cir.2012) (Summary Order)).

    b. *Mr. DiMatteo's resignation.*

Without some specific evidence of unusual or suspicious circumstances, the fact that an executive resigns during or after an investigation is not enough to support a securities fraud claim. *See, e.g.*, *Jun v. 500.com Ltd.*, CV 20-806 (GRB) (AKT), 2021 WL 4260644, at \*2 (E.D.N.Y. Sept. 20, 2021) (ruling that defendant's resignation at the conclusion of internal investigation was not enough to show scienter); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011) ("resignations, without some indicia of highly unusual or suspicious circumstances, are insufficient to support the required strong circumstantial evidence of scienter"). "[T]hat a corporate executive

10

would resign from a company under investigation" for accounting irregularities "hardly seems suspect"—there are many plausible explanations that do not involve knowledge of any scheme to defraud. *Jun*, 2021 WL 4260644, at *2.

Indeed, without some evidence of specific misconduct, terminations and resignations "are at least as consistent with punishing those at the helm for their poor judgment and leadership" as with their "relating to concocting a scheme to defraud shareholders." *Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp., PLC*, 902 F. Supp. 2d 329, 343 (S.D.N.Y. 2012), *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383 (2d Cir. 2015); *see, e.g., Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 162 (D. Conn. 2007) ("Plaintiffs have alleged and the [New York Insurance Department] found various management problems, accounting deficiencies, and lack of organization. In the absence of facts connecting [executives of the company] to the alleged fraud, it is more likely that they were terminated and resigned as a result of company mismanagement, not securities fraud."), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) (summary order).

### c. Lottery's finances.

Mr. Hoffman alleges that the Defendants must have known that Lottery had misstated its finances.[10] However, he does not offer any facts to show that Mr. DiMatteo had contemporaneous access to information that would have made Lottery's statements about its finances false at the time the statements were made. By Mr. Hoffman's own admission, the truth about Lottery's finances did not become apparent until after Mr. DiMatteo had left the company:

> ***Long after all of the Individual Lottery Defendants were no longer with the Company***, Lottery finally admitted that the entire $30 million transaction was a sham. As the Company explained in its Annual Report with the SEC on Form 10-K/A filed on May 10, 2023, "***During 2022, the Company discovered*** that the service credits it had sold to the customer were non-transferable and that the

---

[10] Hoffman Second Amended Complaint, ECF 154 at ¶ 88 and n. 12.

Company had pledged its own cash accounts to secure a line of credit in the amount of $30,000,000 utilized by the customer to provide the Company with payment towards the purchase of the service credits."[11]

To the extent Mr. Hoffman alleges that Defendants must have known the financial statements were incorrect because of the degree to which Lottery had to restate its financials, the magnitude of a restatement, without more, cannot create a strong inference of scienter. *In re Wachovia Equity Securities Litigation*, 753 F. Supp. 2d 326, 366 (S.D.N.Y. 2011) (citation omitted); *accord Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 493 (S.D.N.Y. 2012); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 447 (S.D.N.Y. 2005); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13-cv-08846 (LGS), 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014). Indeed, as this Court has already warned Mr. Hoffman, the magnitude of a restatement and the centrality of a revenue category to a company's core operations are insufficient even when combined with the timing and circumstances of the terminations/resignations of Lottery's executives and the withdrawal of the independent auditor.

 d. *Lottery's legal and regulatory compliance.*

Mr. Hoffman alleges that Lottery misrepresented its compliance with gaming and lottery laws. Specifically, Mr. Hoffman alleges that Lottery printed out of state lottery tickets in Texas and overstated its ability to use geofencing parameters to govern online lottery ticket sales. However, he does not articulate any facts to show that Mr. DiMatteo had contemporaneous access to specific information that made any of Lottery's statements about its legal and regulatory compliance false. In fact, again quoting verbatim from the Third Amended Class Action Complaint, Mr. Hoffman acknowledge that Lottery's internal investigation, which occurred after the business combination, revealed the legal and regulatory noncompliance.[12]

---

[11] Hoffman Second Amended Complaint, ECF 154 at ¶¶ 10, 79, and 108 (emphasis added).
[12] *Id*. at ¶ 131.

To the extent Mr. Hoffman alleges that someone observed during a June 2022 board meeting that Lottery was "breaking the law," that statement would have been made after the internal investigation began and offers no detail to show that Mr. DiMatteo or any of the other Lottery executives were aware of specific information that made any of Lottery's statements about its legal and regulatory compliance false at the time the statements were made.

  *e. Pressure to complete the business combination.*

Mr. Hoffman allege that Mr. DiMatteo recently stated that the Trident executives acted as "the grownups in the room" and exerted pressure to complete the business combination transaction.[13] However, this Court already concluded that the statements Lottery made about its regulatory compliance before the business acquisition were generic puffery not materially false statements.[14] The Court also concluded that the financial projections contained in the proxy statements and pre-merger press releases were forward looking statements accompanied by sufficient cautionary language that no reasonable investor could have found the statements materially misleading.[15] State differently, the statements Lottery made in support of the business combination cannot support a securities fraud claim. Mr. DiMatteo's statement also does not show that he had contemporaneous information that made any statements Lottery made false at the time the statements were made.

Based on the foregoing, even when considered wholistically, Mr. Hoffman fail to articulate the specific and particularized facts to create the strong inference that Mr. DiMatteo acted with the requisite state of mind to defraud or deceive.

---

[13] *Id*. at ¶ 134.
[14] February 6, 2024 Opinion and Order, ECF 131 at 31-34.
[15] *Id*. at 34-40.

**C. Because Mr. Hoffman failed to adequately allege a securities fraud violation, he cannot hold Mr. DiMatteo individually liable as a controlling officer of Lottery.com.**

Mr. Hoffman also ask this Court to hold Mr. DiMatteo personally liable pursuant to Section 20(a) of the Securities Exchange Act, which requires a plaintiff to show that Lottery.com committed a securities fraud violation, that Mr. DiMatteo controlled Lottery.com, and that Mr. DiMatteo meaningfully and culpably participated in the underlying fraud. *See ATSI*, 493 F.3d at 108 (citations omitted). As this Court warned Mr. Hoffman, Section 20(a) provides that "individual executives, as 'controlling persons' of a company, are secondarily liable for their company's violations of the Exchange Act."[16] Liability under Section 20(a) is "derivative of liability under some other provision of the Exchange Act."[17]

As described above, Mr. Hoffman has not pled sufficient facts to allege a cause of action for securities fraud against Mr. DiMatteo. He has not established that Mr. DiMatteo's compensation, his position within the company, his resignation, or the amount of the eventual restatement show that he acted with the requisite state of mind to defraud or deceive. Instead, he relies on hindsight and asks the Court to speculate that Mr. DiMatteo must have known and concealed the true state of the company. But he fails to prove that allegation with specific and particularized facts to show that Mr. DiMatteo had contemporaneous access to information that made any of Lottery's statements false at the time they were made. Therefore, Mr. Hoffman has not adequately pled the requisite underlying fraud. Accordingly, Hoffman has failed to plead sufficient facts to hold Mr. DiMatteo individually liable as a controlling officer of Lottery.com.

## CONCLUSION

Despite amending his complaint, Mr. Hoffman has again failed to allege a plausible

---

[16] *Id*. at 75 (citing *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015)).
[17] *Id*. at 75-76 (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 253 n.2 (2010)).

securities fraud claim against Defendant Anthony DiMatteo. Specifically, Mr. Hoffman has failed to allege facts sufficient to show that Mr. DiMatteo acted with the requisite state of mind to defraud or deceive. Accordingly, Mr. DiMatteo respectfully moves the Court to dismiss Mr. Hoffman's Second Amended Complaint (ECF No. 154) against him with prejudice.

Dated: July 12, 2024

Respectfully Submitted,

/s/ *Tara N. Tighe*
Tara N. Tighe (*pro hac vice*)
Danny C. Onorato (*pro hac vice*)
Schertler Onorato Mead & Sears LLP
555 13th Street, N.W. | Suite 500 West
Washington, DC 20004
ttighe@schertlerlaw.com
donorato@schertlerlaw.com
Phone: (202) 628-4199
Fax: (202) 628-4177

*Counsel for Defendant Anthony DiMatteo*

15

## CERTIFICATE OF SERVICE

I, the undersigned, certify as follows:

I am not a party to the above case, and I am over 18 years old.

On July 12, 2024, I filed the foregoing document with the Clerk of this Court using the Court's CM/ECF electronic filing system, which will serve automatic electronic notice of this filing to all counsel of record in this case.

I affirm under penalty of perjury that the foregoing is true and correct.


/s/ *Tara N. Tighe*
Tara N. Tighe