Jay K. Musoff (jmusoff@loeb.com)
John Piskora (jpiskora@loeb.com)
Alex Inman (ainman@loeb.com)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
*Attorneys for Defendant Vadim Komissarov*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
                                                                          :   Case No. 1:22-cv-07111-JLR
IN RE LOTTERY.COM, INC. SECURITIES                    :
LITIGATION                                                        :
                                                                          :   **ORAL ARGUMENT REQUESTED**
----------------------------------------------------------X


**DEFENDANT VADIM KOMISSAROV'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................. iii

PRELIMINARY STATEMENT .......................................................................................................... 1

STATEMENT OF FACTS .................................................................................................................. 4

A.     The Parties and the Background to the Litigation ................................................................. 4

B.     The Court's Prior Dismissal Order ........................................................................................ 4

    1.     The Court Squarely Held That the Proxy Statements Concerning Lottery's Regulatory Compliance Were Non-Actionable Puffery .......................... 5

    2.     The Court Squarely Held That the Proxy Statements Concerning Lottery's Revenue Projections Were Forward Looking and Non-Actionable Under the Bespeaks Caution Doctrine .................................................. 6

    3.     The Separate Claims Against Lottery Arising From Its Post-Merger Revenue Statements ................................................................................................. 6

C.     Plaintiffs' TAC Fails To State a Section 14(a) Proxy Claim Against Mr. Komissarov ............................................................................................................................ 7

    1.     The Repeated Allegations Concerning Lottery's Regulatory Compliance ......................................................................................................... 7

    2.     The Allegations Concerning Lottery's Revenue Recognition ................................. 9

ARGUMENT ...................................................................................................................................... 12

I.     APPLICABLE LEGAL STANDARDS ................................................................................. 12

II.     PLAINTIFFS' SECTION (14) CLAIM SHOULD BE DISMISSED AS AGAINST MR. KOMISSAROV WITH PREJUDICE ......................................................... 14

    A.     Plaintiffs Have Failed to Allege Any Material Misrepresentation by Trident or Mr. Komissarov to Support Any Claim ................................................... 14

        1.     Lottery's Post-Business Combination Statements Cannot Form the Basis of Any Claim as Against Mr. Komissarov ................................. 14

        2.     Trident/Komissarov Made No Material Misrepresentation in the Proxy as to Lottery's "Compliance" With State and Federal Law ................................................................................................................. 15

        3.     Trident/Komissarov Made No Material Misrepresentation in the Proxy as to Lottery's Revenues or Projections ........................................ 16

    B.     Plaintiffs Have Failed to Allege *Scienter* ................................................................. 20

    C.     Plaintiffs' Section 20 Claims Should Similarly Be Dismissed ............................. 23

CONCLUSION .................................................................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ...............................................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................12

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)..........................................................................................13, 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................12

*In re Bemis Co. Secs. Litig.*,
512 F. Supp. 3d 518 (S.D.N.Y. 2021).................................................................................18

*Bond Opportunity Fund v. Unilab Corp.*,
87 F. App'x 772 (2d Cir. 2004) ..........................................................................................19

*Bond Opportunity Fund v. Unilab Corp.*,
No. 99 Civ. 11074, 2003 U.S. Dist. LEXIS 7838, 2003 WL 2105825
(S.D.N.Y. May 9, 2003), *aff'd,* 87 F. App'x 772 (2d Cir. 2004) ...........................................21

*Champions League, Inc. v. Woodard*,
224 F. Supp. 3d 317 (S.D.N.Y. 2016)................................................................................19

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
No. 11 Civ. 4665, 2014 U.S. Dist. LEXIS 137387, 2014 WL 4832321
(S.D.N.Y. Sept. 28, 2014)...................................................................................................15

*In re Columbia Pipeline, Inc.*,
405 F. Supp. 3d 494 (S.D.N.Y. 2019).................................................................................12

*DCML LLC v. Danka Bus. Sys. PLC*,
No. 08 Civ. 5829, 2008 U.S. Dist. LEXIS 97210, 2008 WL 5069528
(S.D.N.Y. Nov. 26, 2008) ............................................................................................. 12-13

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
639 F. App'x 664 (2d Cir. 2016) ...................................................................................14, 16

*Janus Capital Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)......................................................................................................14, 15

*In re JP Morgan Chase Sec. Litig.*,
363 F. Supp. 2d 595 (S.D.N.Y. 2005)..................................................................................13, 23

*In re Lottery.com, Inc. Sec. Litig.*,
No. 1:22-cv-07111, 2024 U.S. Dist. LEXIS 20645, 2024 WL 454298
(S.D.N.Y. Feb. 6, 2024) ......................................................................................................12, 13

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014),
*aff'd*, 604 F. App'x 62 (2d Cir. 2015)........................................................................................18

*In re NTL Inc. Sec. Litig.*,
347 F. Supp. 2d 15 (S.D.N.Y 2004)............................................................................................19

*In re Renewable Energy Grp. Sec. Litig.*,
No. 22-335, 2022 U.S. App. LEXIS 29629, 2022 WL 14206678
(2d Cir. Oct. 25, 2022) ........................................................................................................ 20-21

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996) ...................................................................................................15, 18

*SEC v. Rio Tinto PLC*,
41 F.4th 47 (2d Cir. 2022) ....................................................................................................14, 15

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
195 F. Supp. 3d 528 (S.D.N.Y. 2016).........................................................................................13

*Zappia v. Myovant Scis. Ltd.*,
No. 23-CV-8097, 2023 U.S. Dist. LEXIS 230494, 2023 WL 8945267
(S.D.N.Y. Dec. 28, 2023)..............................................................................................................21

**Statutes**

15 U.S.C. § 78a et seq. ..................................................................................................... *passim*

15 U.S.C. § 78u-5(c) .....................................................................................................................19

15 U.S.C. § 78u-4 ............................................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................................1, 13

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 12

Defendant Vadim Komissarov respectfully submits this memorandum of law in support of his motion to dismiss Plaintiffs' Third Amended Class Action Complaint (the "TAC"), pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995, for failure to state a claim as against him.

## PRELIMINARY STATEMENT

On October 29, 2021, Lottery.com, Inc. ("Lottery") completed a business combination with Trident Acquisitions Corp. ("Trident"). Plaintiffs, a putative class of shareholders, initially commenced this securities class action alleging that certain of Lottery's post-business combination disclosures were allegedly false or misleading. On January 31, 2023, Plaintiffs filed an Amended Complaint which attempted to allege Section 10(b), 14(a), and 20(a) claims against Mr. Komissarov, a former officer and director of Trident, arising from certain disclosures made by Trident *prior to the business combination*, including in the October 18, 2021 proxy statement (the "Proxy").

By Decision and Order dated February 6, 2024 ([Dkt. No. 131], the "Dismissal Order"), the Court dismissed Plaintiffs' claims in the entirety (with leave to replead). More specifically, and as is relevant here, the Court held that: (1) the statements in the Proxy concerning Lottery's legal compliance were non-actionable puffery; and (2) the separate statements in the Proxy concerning Lottery's financial projections were non-actionable and protected under bespeaks-caution doctrine because the projections were accompanied by specific cautionary language.

Now, Plaintiffs have filed a Third Amended Complaint again asserting Section 14(a) and 20(a) claims against Mr. Komissarov arising from purported Proxy misstatements. But Plaintiffs have failed to cure the deficiencies in their prior pleading, and the claims against Mr. Komissarov

fail for the following independent reasons:

*First*, Plaintiffs have failed to allege any actionable misrepresentation or material omission made in the Proxy by Trident or Mr. Komissarov.  While Plaintiffs again attempt to allege that Trident or Mr. Komissarov purportedly made misrepresentations concerning Lottery's legal compliance, the Court has already held that such statements constitute non-actionable puffery. Although Plaintiffs allege that Lottery and certain of its officers (the "Lottery Defendants") allegedly knew that the company was operating in violation of law, those new allegations are insufficient to resurrect Plaintiffs' "legal compliance" claim, as the Court has already held.  *See* Dismissal Order at 31-32 ("Plaintiffs' claim that these statements were knowingly and verifiably false when made does not cure their generality, which is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment.") (*quoting City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,* 752 F.3d 173, 183 (2d Cir. 2014)).

Next, Plaintiffs wrongly attempt to manufacture a Proxy misrepresentation in light of later events – specifically, Lottery's post-merger disclosures of $30 million in alleged "sham" revenues beginning on November 15, 2021.  But the Proxy only disclosed Lottery's financial statements and revenues through June 30, 2021, and Plaintiffs' TAC fails to allege any misstatement as to Lottery's revenues as stated in the Proxy.  Not to be deterred, Plaintiffs allege that the Proxy misrepresented how Lottery's revenues would be recognized in the future.  Not so.  The Proxy disclosed that Lottery had adopted "ASC 606" in 2018 and applied it to the financial statements included in the Proxy.  As to *future* financial statements, Lottery only stated that it was "in the process of assessing the impact of these new [ASC 606] standards[.]"

Finally, Plaintiffs again attempt to claim that the Lottery projections that were included in the Proxy (and the Trident Board's reasoning for recommending the approval of the merger which

were based, in part, upon Lottery's stated projections) were misleading because the projections purportedly included the $30 million in "sham" revenues. But these attempted claims fail because: (1) the Court has already held that the forward-looking projections were non-actionable and protected by the bespeaks-caution doctrine; and (2) Plaintiffs' complaint is devoid of any allegation that the Trident Board stated false reasons for its approval of the proposed business combination.

*Second*, and setting aside that no misrepresentation was made, Plaintiffs have failed to allege any facts to even suggest that Mr. Komissarov acted negligently such to support a Section 14(a) claim. Not only is Plaintiffs' TAC devoid of any allegation that Mr. Komissarov (or even Trident) actually knew of Lottery's alleged non-compliance with law or its later-reported "sham" revenues, but Lottery represented and warranted to Trident that it operated in material compliance with law and that its statement in the Proxy (including financial statements and disclosures concerning its business) were true and accurate. Not only was Trident legally obligated to include such statements by Lottery in the Proxy (and such statements were attributed to and made by Lottery), but Trident (and Mr. Komissarov) were entitled to rely upon Lottery's documented representations and warranties in doing so. Because that nonculpable explanation is far more likely than the Plaintiffs' conclusory allegation of purported "negligence," there is no scienter and the claims against Mr. Komissarov should be dismissed.

*Third,* Plaintiffs' Section 20(a) "control person" claims against Mr. Komissarov cannot survive because Plaintiffs have not adequately alleged a primary claim.

For each of these independent reasons, Plaintiffs' claims against Mr. Komissarov in their TAC should be dismissed with prejudice.

## STATEMENT OF FACTS[1]

### A. The Parties and the Background to the Litigation

On October 29, 2021, Trident Acquisitions Corp. ("Trident") completed a business combination with AutoLotto, Inc. ("AutoLotto," d/b/a Lottery.com), with the combined business being renamed Lottery.com, Inc. ("Lottery"). Ex. 1 (TAC) at ¶¶ 63, 65.

As is relevant here, Plaintiffs include a putative class of former shareholders of Trident (specifically, those that held Trident common stock as of October 13, 2023 and were eligible to vote on the proposed business combination at Trident's October 28, 2023 special meeting pursuant to an October 18, 2023 proxy statement (Ex. 2 (Proxy)). *See* Ex. 1 (TAC) at ¶¶ 1, 146.

Defendant Vadim Komissarov served as an officer and director of Trident only until the October 29, 2023 business combination. *See* Ex. 1 (TAC) at ¶ 41. While Plaintiffs' amended allegations principally concern the post-merger operations and public disclosures of Lottery, none of those allegations concern Mr. Komissarov because he was never an officer or director of Lottery. Rather, and as Plaintiffs' allegations admit, Mr. Komissarov only served as an officer of Trident prior to the business combination and held no position at Lottery following the merger. *See* Ex. 1 (TAC) at ¶ 41 (alleging that Mr. Komissarov was "CEO and a director of [Trident] … prior to the Business Combination"). As such, Lottery's public disclosures following the October 29, 2023 business combination cannot be attributed to Mr. Komissarov.

### B. The Court's Prior Dismissal Order

By Decision and Order dated February 6, 2024 ([Dkt. No. 131], the "Dismissal Order"), this Court dismissed Plaintiffs' previously-asserted claims against Mr. Komissarov pursuant to

---

[1] The exhibits referenced herein are attached to the accompanying Declaration of John Piskora, dated July 12, 2024 ("Piskora Decl.").

Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). *See* Dismissal Order at 74-76 ("[T]he Court holds that the Proxy contains no material misstatements or omissions under Section 14(a) and Rule 14a-9.").[2]

### 1.    The Court Squarely Held That the Proxy Statements Concerning Lottery's Regulatory Compliance Were Non-Actionable Puffery

More specifically, the Court previously considered whether Plaintiffs had sufficiently alleged a Section 14(a) claim arising from "[t]he Proxy's discussion of [Lottery's] regulatory compliance and potential compliance risks." *See* Dismissal Order at 8, 30 ("Plaintiffs contend that the statements regarding Lottery's work with state regulators in … the Proxy constituted material misstatements or omissions because, 'in fact, [Lottery] was not complying with state and federal laws concerning the state in which tickets are procured as well as order fulfillment.'").  The Court specifically held that "[t]he pre-merger statements regarding regulatory compliance – contained in the … Proxy [and elsewhere] – were non-actionable puffery." *See* Dismissal Order at 31-32 ("The challenged pre-merger regulatory-compliance statements are akin to other statements about regulatory compliance and integrity that courts have deemed non-actionable puffery.") (*citing cases*).

The Court further held that the statements about Lottery's regulatory compliance were not material, but were "too general to cause a reasonable investor to rely upon them," and that "Plaintiffs' claim that these statements were knowingly and verifiably false when made does not cure their generality, which is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment." *See* Dismissal Order at 31-32 (*quoting City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,* 752 F.3d 173, 183 (2d Cir. 2014)).

---

[2]   The Court similarly dismissed Plaintiffs' previously-asserted Section 10-b claim as against Mr. Komissarov (*see* Dismissal Order at 24-74), and Plaintiffs have abandoned the claim.

**2.      The Court Squarely Held That the Proxy Statements Concerning Lottery's Revenue Projections Were Forward Looking and Non-Actionable Under the Bespeaks Caution Doctrine**

Separately, the Court previously considered whether Plaintiffs had sufficiently alleged a Section 14(a) claim arising from "the Proxy's financial projections for the 2021 fiscal year." *See* Dismissal Order at 30. The Court held that such revenue projections were forward-looking and "protected by the bespeaks-caution doctrine" because the projections "were accompanied by sufficient cautionary language." *See id.* at 35-36. Specifically, the Court held: "In short, the Proxy addressed the very risk that Plaintiffs allege it failed to disclose: that Lottery 'lacked adequate internal accounting controls, including controls over financial reporting of cash and revenue,' and that the Proxy's statements regarding revenue and cash could therefore be inaccurate." *Id.* at 36.

**3.      The Separate Claims Against Lottery Arising From Its Post-Merger Revenue Statements**

Separate and apart from Plaintiffs' Proxy-related claims, the Court considered the allegations underlying Plaintiffs' Section 10(b) claims against the Lottery Defendants arising from certain of Lottery's post-merger revenue statements. *See* Dismissal Order at 40 (considering the "Post-Merger Financial-Performance-Related Statements"). In particular, the Court considered whether certain of Lottery's post-merger public disclosures "were materially false or misleading because they accounted for Lottery's purported sale of $30 million in affiliate-marketing credits – a sale that, Plaintiffs allege, never happened." *See id.*

Although the Court held "that Plaintiffs have plausibly alleged that each of [Lottery's] post-merger financial-performance-related statements was "false [or misleading] at the time it was made" (*see id.* at 45), the Court ultimately dismissed the claim as against the Lottery Defendants on the grounds that Plaintiffs failed to adequately allege the Lottery Defendants' fraudulent *scienter*. *See id.* at 74.

Of course, such allegations of *post-merger* revenue misstatements were wholly irrelevant to Mr. Komissarov, both because Plaintiffs did not (and could not) allege that any such revenue misstatement was contained in the Proxy, and because "[t]he Class Plaintiffs 'concede that Mr. Komissarov is not responsible for statements made *after* the [merger] was effectuated on October 29, 2021.'" *See id.* at 40.

## C.     Plaintiffs' TAC Fails To State a Section 14(a) Proxy Claim Against Mr. Komissarov[3]

Apparently undeterred by the Court's prior dismissal of Plaintiffs' Proxy claims, Plaintiffs' TAC again attempts to assert a Section 14(a) claim against Mr. Komissarov (*see* Ex. 1 (TAC) at ¶¶ 213-216), but fails to address or overcome any of the Plaintiffs' prior pleading failures.

### 1.     The Repeated Allegations Concerning Lottery's Regulatory Compliance

Plaintiffs' TAC again attempts to allege that the Proxy's statements concerning Lottery's regulatory compliance were somehow materially misleading.  *See* Ex. 1 (TAC) at ¶¶ 129, 152 (alleging that the Proxy disclosed Lottery's "belief" that the company was in compliance with relevant laws and further disclosing the risks of associated with a regulatory or governmental investigation or proceeding).  As above, the Court has already held that such statements constitute non-actionable puffery.  *See* Dismissal Order at 31-32.

Now, Plaintiffs attempt to allege that such puffery is purportedly actionable because Lottery and certain of its officers – *not* Mr. Komissarov – allegedly knew that Lottery was not

---

[3]  The majority of Plaintiffs' TAC attempts to allege Section 10(b) claims against Lottery and/or the "Individual Lottery Defendants" separate and apart from the Section 14(a) Proxy claims. Plaintiffs' "First Claim," alleging violations of Section 10(b) of the Exchange Act, is only alleged against the "Lottery Defendants," not Mr. Komissarov.  *See* Ex. 1 (TAC) at ¶¶ 204-208; *see also id.* at ¶ 39 ("Defendants DiMatteo, Dickinson and Clemenson are referred to herein as the 'Individual Lottery Defendants.'") and ¶ 40 ("Lottery and the Individual Lottery Defendants are referred to collectively as 'Lottery Defendants.'").  Plaintiffs' "Second Claim," alleging violations of Section 20(a) of the Exchange Act, is only alleged against the "Lottery Defendants," not Mr. Komissarov.  *See id.* (TAC) at ¶¶ 209-212.

operating in accordance with law given that: (1) users of Lottery's web-based system could allegedly (and apparently wrongfully) "skirt any jurisdictional requirement for ticket purchases" (*see* Ex.1 (TAC) at ¶¶ 15, 142, 169); and (2) Lottery allegedly fulfilled ticket purchases for numerous states via its "back-up hub in Texas" (*see id.,* (TAC) at ¶¶ 139-141, 150-151). *See id.*, (TAC) at ¶ 143 (alleging that: "The Lottery Defendants, as the Company's senior management members, were clearly aware of these hundreds of thousands of repeated legal violations."). These new allegations cannot support a claim as against Mr. Komissarov for two independent reasons.

*First*, and as the Court already held in the Dismissal Order: "Plaintiffs' claim that these statements were knowingly and verifiably false when made does not cure their generality, which is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment." *See* Dismissal Order at 31-32 (*quoting UBS AG,* 752 F.3d at 183).

*Second*, and independently, Plaintiffs' TAC is devoid of any allegation that Mr. Komissarov knew of any such noncompliance. *See generally* Ex. 1 (TAC). To the contrary, the alleged misrepresentations are contained in that part of the Proxy authored by Lottery and entitled the "Business of Lottery.com." *See* Ex. 2 (Proxy Statement) at 132-150. Lottery made express representations and warranties to Trident that its disclosures in the Proxy were true and accurate, that there were no pending governmental investigations or governmental proceedings pending as against Lottery, and that Lottery was in material compliance with all applicable laws. *See* Ex. 2 (Proxy Statement) at 74 ("In the Business Combination Agreement, Lottery.com makes certain customary representations and warranties … relating to, among other things: … (xiii) compliance with Laws, including those relating to foreign corrupt practices and money laundering […]"); Ex. 2 (Business Combination Agreement attached to Proxy Statement) at A-24, A-31, A-33:

> As an inducement to Trident and Merger Sub to enter into this Agreement and consummate the transactions contemplated by this Agreement, except as set forth

in the Company Disclosure Letter (subject to Section 8.13), **the Company [Lottery] hereby represents and warrants to Trident** and the Merger Sub as follows: […]

Section 3.18 Compliance with Laws; Permits.

(a) Except [for tax and other matters not relevant here] **each Target Company is and, since the Lookback Date has been, in material compliance with all Laws applicable to the conduct of the business of the Target Companies** and, since the Lookback Date, no uncured written notices have been received by any Target Company from any Governmental Entity or any other Person alleging a material violation of any such Laws.

(emphasis added); *id.* at A-31 and § 3.12 ("The information supplied in writing by the Company [Lottery] … for inclusion in the Registration Statement (including the Proxy Statement) … shall not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements therein, in light of the circumstances in which they are made, not misleading[.]").[4]

## 2.    The Allegations Concerning Lottery's Revenue Recognition

Given that the Court previously held that Lottery's post-merger revenue disclosures were materially false or misleading, Plaintiffs' TAC attempts to make much of the alleged $30 million "sham" transaction arising from Lottery's September 2021 contract for the sale of LotteryLink Credits (*i.e.*, a form of service credit or affiliate-marketing credit). *See* Ex. 1 (TAC) at ¶¶ 8-9, 75, 103, 135-137; *see also* Dismissal Order at 40. But Plaintiffs do not allege that the Proxy reported any of these "sham" revenues. *See generally* Ex. 1 (TAC).[5] Nor could Plaintiffs ever do so, as

---

[4] Notably, Lottery made similar statements concerning its compliance with law following the business combination, as Plaintiffs' TAC admits. *See* Ex. 1 (TAC) at ¶ 129; *see also* Dismissal Order at 29-30.

[5] Plaintiffs allege that the alleged "sham" revenues of $30 million were not disclosed by Lottery until after the business combination, on November 15, 2021. *See* Ex. 1 (TAC) at ¶¶ 78, 100.

the Proxy only contains Lottery's historical financial information for the six-month period ending June 30, 2021. *See* Ex. 2 (Proxy) at 10, 156, 158, 182, F-51 to F-52.[6]

Instead, Plaintiffs now attempt to allege that the Proxy purportedly misrepresented how Lottery would recognize revenues *in the future*. *See* Ex. 1 (TAC) at ¶ 147. More specifically, Plaintiffs allege that the Proxy purportedly stated that Lottery would recognize future revenues (*i.e.*, any revenues post-dating June 30, 2021) pursuant to "ASC 606." *Id.* But the Proxy only states that Lottery "adopted" the ASC 606 revenue recognition standard effective January 1, 2018. *See* Ex. 2 (Proxy) at 163 ("The Company [Lottery] adopted these standards effective on January 1, 2018, and management concluded the adoption of this standard did not result in any financial statement impacts or changes to revenue recognition policies or processes as revenue is primarily derived from arrangements in which the transfer of control coincides with the fulfillment of performance obligations."). Plaintiffs do not allege that that statement was false, nor do Plaintiffs allege that that there was any material misstatement of revenue by Lottery in the Proxy, whether

---

[6] Plaintiffs' TAC contains various allegations concerning events and disclosures made by Lottery after the business combination, including that Lottery made misrepresentations as to its cash balance, revenues, and/or internal controls. These allegations cannot support any claim against Mr. Komissarov because (1) they were not made in the Proxy Statement; and (2) they were allegedly made by Lottery *after* the October 29, 2021 business combination and at a time when Mr. Komissarov was neither an officer or director of Lottery. *See* Dismissal Order at 40 ("The Class Plaintiffs 'concede that Mr. Komissarov is not responsible for statements made *after* the [merger] was effectuated on October 29, 2021.'"); *see also* Ex. 1 (TAC) at ¶ 78 (referring to an exhibit to a November 15, 2021 Lottery Form 8-K); at ¶ 79 (referring to Lottery's April 1, 2022 Annual Report); at ¶ 80 (concerning Lottery's May 16, 2022 Form 10-Q); at ¶ 89 (alleging Lottery's failure to disclose a $30 million loan in its April 1, 2022 Annual Report); at ¶ 90 (alleging Lottery's improper recognition of $5 million in revenue for the fourth quarter of 2021); at ¶ 122 (referring to Lottery's November 15, 2021 Form 10-Q disclosure of material weaknesses in internal controls); at ¶ 124 (referring to disclosures of material weaknesses in Lottery's April 1, 2022 Annual Report); at ¶ 125 (referring to disclosures of material weaknesses in Lottery's May 16, 2022 Form 10-Q); at ¶ 129 (referring to statements related to legal compliance in Lottery's April 1, 2022 Annual Report) concerning a July 22, 2022 disclosure announcing that certain post-business combination financial disclosures should no longer be relied upon.

10

pursuant to ASC 606 or otherwise (*see generally* Ex. 1, (TAC).[7]  Lottery's reported financials, as stated in the Proxy, were historical, and the disclosure thereof was stated in the past tense.  *See* Ex. 2 (Proxy) at 163 ("Our financial statements were prepared in conformity with U.S. GAAP.").  As to its reporting of future revenues, Lottery only stated that:  "We [Lottery] are in the process of assessing the impact of these new [ASC 606] standards on future consolidated financial statements."  *See id*.

Moreover, and critical to the attempted claim as against Mr. Komissarov, the events concerning the alleged "sham" contract and Lottery's reporting of "fake" revenues resulting therefrom post-date the Proxy (and the June 30, 2021 cut-off date applicable to the financial information set forth therein), as well as the October 29, 2021 business combination.  As Plaintiffs' TAC admits, revenues related to that "sham" transaction were not reported until November 15, 2021; the customer did not offer a check to Lottery for payment under the "sham" contract until December 30, 2021 (which Lottery allegedly did not cash); and Lottery's affiliate did not secure an unreported $30 million loan to facilitate the customer's payment until January 4, 2022.  *See* Ex. 1 (TAC) at ¶¶ 76 & n.9, 78, 100, 103 (alleging that: "The July 15, 2022 disclosure of a $30 million cash overstatement represents an admission that the $30 million 'sale' of LotteryLink Credits previously announced on November 15, 2021, was entirely fabricated, and that [the Lottery] Defendants faked the collection of that money to create the illusion of revenues."), ¶¶ 135, 137; *see also* Dismissal Order at 12-13 (referencing Lottery's November 15, 2021 Form 8-K/A).

---

[7]  In any event, and as the Court previously recognized, the Proxy disclosed that Lottery's reported revenues could be inaccurate: "the Proxy addressed the very risk that Plaintiffs allege it failed to disclose: that Lottery 'lacked adequate internal accounting controls, including controls over financial reporting of cash and revenue,' and that the Proxy's statements regarding revenue and cash could therefore be inaccurate."  *See* Dismissal Order at 36.

**ARGUMENT**

## I.    APPLICABLE LEGAL STANDARDS

While the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the Plaintiffs' favor in deciding a motion to dismiss pursuant Rule 12(b)(6), the Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and dismissal is required) (citation and internal quotation marks omitted); *see also In re Lottery.com, Inc. Sec. Litig.*, No. 1:22-cv-07111, 2024 U.S. Dist. LEXIS 20645, at *32 (S.D.N.Y. Feb. 6, 2024).

To state a claim under Section 14(a) of the Exchange Act (prohibiting solicitation via a proxy statement "containing any statement which … is false or misleading with respect to any material fact"), Plaintiffs are required to plead, among other things, that the Defendant made a materially false or misleading statement of objective fact in a proxy statement, and did so negligently, recklessly, or intentionally. *See, e.g., In re Columbia Pipeline, Inc.*, 405 F. Supp. 3d 494, 506 (S.D.N.Y. 2019) (*citing Dekalb Cnty. Pension Fund v. Transocean Ltd.,* 36 F. Supp. 3d 279, 283 (S.D.N.Y. 2014)*, aff'd,* 817 F.3d 393 (2d Cir. 2016)).

The heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA") apply to Section 14 claims. *See, e.g., DCML LLC v. Danka Bus. Sys. PLC*, No. 08

12

Civ. 5829, 2008 U.S. Dist. LEXIS 97210, at *4-5 (S.D.N.Y. Nov. 26, 2008); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005). As the Court noted in its prior Dismissal Order:

> The PSLRA requires that with respect to falsity — that is, the "material misrepresentation or omission" element of a securities-fraud claim — "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The PSLRA also requires the complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," that is, *scienter*. *Id*. § 78u-4(b)(2).

*In re Lottery.com*, 2024 U.S. Dist. LEXIS 20645 at *36-37; *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (FRCP Rule 9(b) requires complaints to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent").

Finally, to state a claim under Section 20(a) of the Exchange Act, Plaintiffs must adequately allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud," (*ATSI*, 493 F.3d at 108), and that the alleged controlling person acted recklessly or intentionally. *See, e.g., In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 542 (S.D.N.Y. 2016).

Plaintiffs here have failed to adequately allege any actionable claim against Mr. Komissarov, and Plaintiffs' TAC should be dismissed as against him with prejudice for each of the following independent reasons.

II.    **PLAINTIFFS' SECTION (14) CLAIM SHOULD BE DISMISSED AS AGAINST MR. KOMISSAROV WITH PREJUDICE**

A.    **Plaintiffs Have Failed to Allege Any Material Misrepresentation by Trident or Mr. Komissarov to Support Any Claim**

1.    **Lottery's Post-Business Combination Statements Cannot Form the Basis of Any Claim as Against Mr. Komissarov**

Plaintiffs' TAC, at its core, alleges that certain *post-business combination* statements (*i.e.*, post October 29, 2021) by Lottery were allegedly false or misleading.  *See* Ex. 1 (TAC) at ¶¶ 78-80, 89-90, 122, 124-125, 129; *see also* Dismissal Order at 40, 45.  Plaintiffs admit, however, that Mr. Komissarov only served as an officer and director of Trident until the closing of the business combination and fail to allege that Mr. Komissarov had any role as an officer or director of Lottery after the business combination or that Mr. Komissarov was in any way responsible for Lottery's post-merger statements.  *See* Ex 1 (TAC) at ¶ 41.

As Mr. Komissarov was not the "maker" of the post-business combination statements by Lottery, none of those statements can form the basis of any claim against Mr. Komissarov.  *See, e.g., Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 138 (2011) ("We conclude that [defendant] cannot be held liable because it did not make the statements in the prospectuses."); *SEC v. Rio Tinto PLC*, 41 F.4th 47, 49 (2d Cir. 2022) ("[O]nly the 'maker' of a misstatement, i.e., the person with ultimate authority over the statement, can have primary liability under Rule 10b-5(b)."); *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664, 669 (2d Cir. 2016) (affirming dismissal of claims, holding that plaintiff failed to establish the necessary control to establish that defendant was the "maker" of a statement).

14

**2.      Trident/Komissarov Made No Material Misrepresentation in the Proxy as to Lottery's "Compliance" With State and Federal Law**

Plaintiffs' TAC again attempts to allege that the Proxy purportedly misrepresented Lottery's compliance with State and Federal law.  *See* Ex. 1 (TAC) at ¶ 152 (quoting Lottery's statements in the Proxy that: "**we [Lottery] believe that we are currently in compliance in all material respects with all applicable laws and regulatory requirements**").[8]  But this Court has already specifically held that "[t]he pre-merger statements regarding regulatory compliance – contained in the … Proxy [and elsewhere] – were non-actionable puffery."  *See* Dismissal Order at 31-32 (*citing City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183, 185 (2d Cir. 2014) ("The challenged pre-merger regulatory-compliance statements are akin to other statements about regulatory compliance and integrity that courts have deemed non-actionable puffery.") ("[G]eneral statements about … compliance with ethical norms are inactionable 'puffery', meaning that they are 'too general to cause a reasonable investor to rely upon them.'") (citation omitted); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir. 1996); *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 101 (2d Cir. 2023) ("[T]he duty to disclose more [information] is triggered only when that which *is* disclosed is sufficiently specific to evoke a reasonable investor's reliance.")); *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG), 20142014 U.S. Dist. LEXIS 137387, at *42 (S.D.N.Y. Sept. 28, 2014) ("[S]tatements of puffery or mere generalizations are not material misstatements.") (citation omitted) (collecting cases).

---

[8] The alleged statements concerning Lottery's compliance with applicable laws and/or use of geo-fencing technology are set forth in Lottery's discussion of its business.  Neither Trident or Mr. Komissarov were the "maker" of any such statement.  *See Janus Capital*, 564 U.S. at 138 ("We conclude that [defendant] cannot be held liable because it did not make the statements in the prospectuses."); *Rio Tinto PLC*, 41 F.4th at 49 ("[O]nly the 'maker' of a misstatement, *i.e.*, the person with ultimate authority over the statement, can have primary liability under Rule 10b-

Undeterred by the Court's prior holding, Plaintiffs reallege the claim and assert that the Lottery Defendants – *not* Mr. Komissarov – purportedly knew that Lottery was operating illegally. *See, e.g.,* Ex. 1 (TAC) at ¶ 143 (alleging that: "The Lottery Defendants, as the Company's senior management members, were clearly aware of these hundreds of thousands of repeated legal violations."). But Plaintiffs' attempt to revive its claim based upon the Lottery Defendants' "actual knowledge" fails as a matter of law. As this Court has already held: "Plaintiffs' claim that these statements were knowingly and verifiably false when made does not cure their generality, which is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment." *See* Dismissal Order at 31-32 (*quoting UBS AG,* 752 F.3d at 183).

Separately, Plaintiffs cite a *Bloomberg* article and attempt to claim that Lottery's statements in the Proxy that it used geo-fencing technology for legal compliance purposes was purportedly false. *See, e.g.,* Ex. 1 (TAC) at ¶¶ 2, 3, 15, 150. But Lottery did use geo-fencing technology, as Plaintiffs' TAC and the *Bloomberg* article concede – any instance of legal non-compliance was caused by users that wrongfully "skirted" Lottery's then-existing geo-fencing technology. *See id.* (TAC) at ¶¶ 15, 142, 169. Thus, Lottery made no actionable misrepresentation concerning the existence of its geo-fencing technology in the Proxy.

### 3. Trident/Komissarov Made No Material Misrepresentation in the Proxy as to Lottery's Revenues or Projections

Separately, Plaintiffs' TAC complains that, beginning on November 15, 2021 (*i.e.*, *after* the business combination), Lottery began recognizing and reporting $30 million in "sham" revenues arising from a contract to sell LotteryLink Credits to a customer. Indeed, in the Dismissal

---

5(b)."); *Gavin/Solmonese LLC*, 639 F. App'x at 669 (affirming dismissal of claims, holding that plaintiff failed to establish the necessary control to establish that defendant was the "maker" of a statement). Rather, and as discussed further below, Lottery represented and warranted to Trident that Lottery's statements in the Proxy were true and accurate.

Order, the Court concluded that each disclosure of such revenue in Lottery's "Post-Merger Financial-Performance-Related Statements" was "false [or misleading] at the time it was made" by Lottery. *See* Dismissal Order at 45 (citation omitted).

But Plaintiffs cannot convert these later-occurring revenue misstatements by Lottery into a Proxy claim as against Mr. Komissarov. As an initial matter, the Proxy only includes Lottery's revenues through June 30, 2021 – *i.e.*, well before the alleged "sham" contract and Lottery's reporting of allegedly "fake" revenues. *See* Ex. 2 (Proxy) at 10, 156, 158, 181-182, F-51 to F-52. Indeed, Plaintiffs do not allege in the TAC that *any* "sham" revenues were disclosed in the Proxy (*see generally* Ex. 1 (TAC)), but rather admit that Lottery's reporting of allegedly "fake" revenues did not begin until November 15, 2021 – *after* the business combination. *See* Ex. 1 (TAC) at ¶ 135; *see also* Dismissal Order at 40.

In an attempt to generate a Proxy claim where none exists, Plaintiffs instead allege (falsely) that Lottery stated in the Proxy that it would recognize future revenues (*i.e.*, any revenues post-dating June 30, 2021) pursuant to ASC 606. But the Proxy only states that Lottery "adopted" the ASC 606 revenue recognition standard effective January 1, 2018. *See* Ex. 2 (Proxy) at 163 ("The Company [Lottery] adopted these standards effective on January 1, 2018 …."). Plaintiffs do not allege that that statement was false. As to future financial disclosures, Lottery only stated that it was "in the process of assessing the impact of these new [ASC 606] standards on future consolidated financial statements." *See id*.

While Plaintiffs may have adequately alleged that Lottery made materially misleading disclosures concerning its revenues following the business combination, Plaintiffs cannot manufacture a Section 14 claim by merely alleging that stated accounting policies were not followed in later financial reports. That attempted claim fails for the lack of contemporaneous

17

falsity.  *See* Dismissal Order at 41-42 ("The Court accepts the general principle that, for an affirmative misrepresentation of fact to be actionable, the factual assertion must have been false when made.") (*citing Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S,* 11 F.4th 90, 103 (2d Cir. 2021); *Philip Morris Cos.*, 75 F.3d at 812); *see also In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) (a "statement believed to be true when made, but later shown to be false, is insufficient."), *aff'd*, 604 F. App'x 62 (2d Cir. 2015).  Here, Lottery did not report the $30 million in allegedly "fake" revenue until November 15, 2021 – and Plaintiffs' TAC fails to plausibly allege that such revenue was "recognized" earlier as an accounting matter.  To the contrary, it was not until Lottery's November 15, 2021 reporting of its unaudited financial statements for the period ending September 30, 2021 that Lottery disclosed the $30 million in revenues, which Lottery further stated had been recognized in accordance with ASC 606).  *See* Ex. 3 (Lottery's 11/15/2021 Form 8-K) at Exhibit 99.2 (Unaudited Financial Statements) at 2, 8.

Further, and critical as to any purported claim as against Mr. Komissarov, the "sham" nature of the transaction followed Lottery's receipt of the customer's check for payment on December 29, 2021 (which went uncashed), as well as Lottery's affiliate obtaining a $30 million loan on January 4, 2022 to fund the customer's payment.  All of these events occurred *after* the business combination.  Accordingly, nothing in the Proxy was contemporaneously false.

Finally, in light of the alleged $30 million "sham transaction," Plaintiffs attempt to repeat their prior allegations that the Proxy contained false statements concerning Lottery's revenue projections.[9]  But this attempted claim fails because, as the Court has already held, Lottery's

---

[9]  Plaintiffs separately attempt to allege that the Trident's Board's stated reasons for approving the business combination were purportedly false and misleading.  *See* Ex. 1 (TAC) at ¶ 148.  But Plaintiffs do not allege that Trident's Board did not consider the stated reasons.  *See generally id.*; *In re Bemis Co. Secs. Litig.*, 512 F. Supp. 3d 518 (S.D.N.Y. 2021). Nor could they, as Trident's Board disclosed that its approval was based upon, among other things, Lottery's

revenue projections in the Proxy were forward-looking and "protected by the bespeaks-caution doctrine" because the projections "were accompanied by sufficient cautionary language." *See* Dismissal Order at 35-36 (holding that: "In short, the Proxy addressed the very risk that Plaintiffs allege it failed to disclose: that Lottery 'lacked adequate internal accounting controls, including controls over financial reporting of cash and revenue,' and that the Proxy's statements regarding revenue and cash could therefore be inaccurate."); *see also Bond Opportunity Fund v. Unilab Corp.,* 87 F. App'x 772, 774 (2d Cir. 2004) (affirming dismissal of Section14(a) claims based upon projections); *Champions League, Inc. v. Woodard*, 224 F. Supp. 3d 317, 324 (S.D.N.Y. 2016) (dismissing securities fraud claims, holding that alleged misrepresentations were "projections that the Second Circuit has found cannot give rise to a securities fraud claim") (citation omitted); *In re NTL Inc. Sec. Litig.,* 347 F. Supp. 2d 15, 26-27 (S.D.N.Y 2004) (dismissing securities fraud claim based upon revenue projections, holding that the company's failure to meet these projections "is nothing more than an effort to allege fraud by hindsight," and that "[w]e have not yet come to the point that a lack of clairvoyance constitutes fraud"); *see also* 15 U.S.C. § 78u-5(c) (providing that there is no liability for a forward-looking statement if it is identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement).

Separately and independently, Plaintiffs' "projections" claim fails as against Mr. Komissarov because neither Trident nor Mr. Komissarov were the "makers" of such financial

---

financial disclosures and projections were, as the law requires, included in the Proxy. *See* Ex. 2 (Proxy) at 8 ("In reaching its decision with respect to the Business Combination and the transactions contemplated thereby, the Board reviewed various industry and financial data and the materials provided by *Lottery.com*."). Thus, at best, Plaintiffs only complain that the financial materials that Lottery provided to the Trident Board, and which the Board considered in approving the business combination, contained allegedly false statements by Lottery. Such events are not actionable misrepresentations by Trident or its Board.

projections, which were not then-existing "fact" in any event, as express disclosed in the Proxy

Statement:

> **"Neither [Trident's] management nor any of its respective representatives has made or makes any representations to any person regarding the ultimate performance of Lottery.com relative to the Projections. The Projections are not fact.** The Projections are not a guarantee of actual future performance."

*See* Ex. 2 (Proxy Statement) at 88 (emphasis added).  Rather, the Proxy disclosed that Lottery had

provided Trident with its financial information, and that Lottery represented and warranted to

Trident that such financial information was materially accurate.  The Amended Complaint does

not (and cannot) allege that any of these disclosures were false in any way.  *See* Ex. 2 (Proxy

Statement) at 87-89; *id.* (Business Combination Agreement attached to Proxy Statement) at A-24,

A-26 (evidencing Lottery's representations and warranties to Trident regarding the accuracy of

Lottery's financial projections).

Because Plaintiffs do not allege any misrepresentation in the Proxy by Trident or Mr.

Komissarov regarding Lottery's revenues or projections, and because Trident and Mr. Komissarov

were not the "makers" of any such financial projections, the claims against Mr. Komissarov should

be dismissed.  *See* Dismissal Order at 75 ("To state a claim under Section 14(a) of the Securities

Exchange Act of 1934, and Rule 14a-9 promulgated thereunder, a shareholder must, at the very

least, identify a materially misleading misrepresentation or omission in the proxy materials.")

(citation omitted) (*citing cases*).

### B.    Plaintiffs Have Failed to Allege *Scienter*[10]

By dropping their previously-asserted Section 10(b) securities fraud claim against Mr.

Komissarov, Plaintiffs implicitly acknowledge, as they must, that Mr. Komissarov did not

---

[10]  *See In re Renewable Energy Grp. Sec. Litig.*, No. 22-335, 2022 U.S. App. LEXIS 29629, at *8 (2d Cir. Oct. 25, 2022) ("generalized allegations predicated on what the Defendants must

intentionally (or even recklessly) commit a purported securities fraud. But, in attempting to state a Section 14 Proxy claim against Mr. Komissarov, Plaintiffs' TAC does nothing more than make a wholly-conclusory allegation that Mr. Komissarov was purportedly "negligent." *See* Ex. 1 (TAC) at ¶ 215 (conclusory allegation that "The Defendants named herein violated Section 14(a) of the Exchange Act and Rule 14a-9 thereunder in that these Defendants solicited proxies from Plaintiffs and other members of the Class by means of a Proxy Statement that through Defendants' negligence contained statements which, at the time and in light of the circumstances under which they were made, were false and misleading with respect to material facts, and omitted to state material facts necessary to make the statements therein not false or misleading."). Such a conclusory allegation fails to adequately allege negligence to support a claim as against Mr. Komissarov under Section 14. *See Zappia v. Myovant Scis. Ltd.*, No. 23-CV-8097, 2023 U.S. Dist. LEXIS 230494, at *6 (S.D.N.Y. Dec. 28, 2023).

"[U]nder the standards imposed by the PSLRA, Plaintiffs must plead with particularity facts that give rise to a strong inference of negligence on the part of all Defendants." *Bond Opportunity Fund v. Unilab Corp.,* No. 99 Civ. 11074, 2003 U.S. Dist. LEXIS 7838, at *413-14 (S.D.N.Y. May 9, 2003) (dismissing Section 14(a) claim)*, aff'd,* 87 F. App'x 772 (2d Cir. 2004). Here, Plaintiffs have failed to plead any such particularized facts.

To the contrary, Plaintiffs' TAC admits that Mr. Komissarov was never an officer or director of Lottery, and thus not a "corporate insider" of Lottery. As such, he could have no knowledge of Lottery's alleged $30 million "sham" contract or the revenues resulting therefrom, nor any knowledge concerning Lottery's ongoing legal compliance. And, as to these matters,

---

have known '[b]y virtue of their responsibilities and activities as a senior officer,' are precisely the kind of conclusory allegations that fail to satisfy the PSLRA's heightened pleading standard") (internal citation omitted).

Plaintiffs' TAC fails to allege *any* actual knowledge by Mr. Komissarov. *See generally* Ex. 1 (TAC).

Instead, the Proxy and Business Combination Agreement attached thereto makes clear that the alleged misrepresentations in the Proxy were contained in sections of the Proxy authored by Lottery. Not only did Lottery represent and warrant to Trident and Mr. Komissarov that Lottery operated in material compliance with all applicable laws, but Lottery also contractually agreed that the information it provided for inclusion in the Proxy would be true and accurate. *See* Ex. 2 (Proxy) at Ex. 2 (Business Combination Agreement attached to Proxy Statement) at A-24, A-31, A-33; *id.* at A-31 and § 3.12 ("The information supplied in writing by the Company [Lottery] … for inclusion in the Registration Statement (including the Proxy Statement) … shall not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements therein, in light of the circumstances in which they are made, not misleading[.]"). Plaintiffs' TAC simply provides no factual basis from which to conclude that Trident (or Mr. Komissarov) should have known that Lottery's statements, which were represented to Trident to be true and accurate, were in any way misleading.

Moreover, while Plaintiffs allege that Trident undertook due diligence of Lottery in advance of the business combination (*see* Ex. 1 (TAC) at ¶ 42), the Proxy specifically cautioned shareholders of the risk that Trident's due diligence may not have uncovered all material issues. *See* Ex. 2 (Proxy) at 54 ("Even though TDAC conducted a due diligence investigation of Lottery.com, it cannot be sure that this diligence uncovered all material issues that may be present inside Lottery.com or its business, or that it would be possible to uncover all material issues through a customary amount of due diligence, or that factors outside of Lottery.com and its business and outside of its control will not later arise.").

22

Because Plaintiffs have failed to plead facts establishing a strong inference that Mr. Komissarov acted negligently in making any alleged misrepresentation or omission, Plaintiffs' Section 14(a) claim should be dismissed as against Mr. Komissarov. *See In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005) (dismissing Section 14(a) claim for failure to adequately allege scienter/negligence).

### C.    Plaintiffs' Section 20 Claims Should Similarly Be Dismissed

Plaintiffs' Section 20(a) "control person" liability claim against Mr. Komissarov should be dismissed with prejudice because, as explained *supra*, Trident did not commit a primary violation of Section 14(a). *See ATSI*, 493 F.3d at 108 (affirming dismissal of Section 20 claims, holding that "[plaintiff] fails to allege any primary violation; thus, it cannot establish control person liability"); *see also* Dismissal Order at 75-76.

23

## CONCLUSION

For each and all of the foregoing reasons, Defendant Vadim Komissarov respectfully requests that the Court enter an Order dismissing Plaintiffs' Third Amended Class Action Complaint, and each cause of action alleged against him therein, with prejudice.

Dated: July 12, 2024

LOEB & LOEB LLP

By: ___/s/ *Jay K. Musoff*_____
    Jay K. Musoff (jmusoff@loeb.com)
    John Piskora (jpiskora@loeb.com)
    Alex Inman (ainman@loeb.com)
    345 Park Avenue
    New York, NY  10154
    212-407-4000

*Attorneys for Defendant Vadim Komissarov*

**<u>Certificate of Compliance with the Hon. Jennifer L. Rochon's Individual Rules 3(C)</u>**

I hereby certify that the number of words in the foregoing Memorandum of Law in Support of Defendant Vadim Komissarov's Motion to Dismiss Plaintiffs' Third Amended Complaint, according to the word count on the word processing program utilized, inclusive of point headings and footnotes, and exclusive of the caption, table of contents, table of authorities, signature block and this certificate of compliance, is 7,309.

Dated: New York, New York
        July 12, 2024

                         */s/ Jay K. Musoff*
                         JAY K. MUSOFF