Jay K. Musoff (jmusoff@loeb.com)
John Piskora (jpiskora@loeb.com)
Alex Inman (ainman@loeb.com)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
*Attorneys for Defendant Vadim Komissarov*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
                                    :   Case No. 1:22-cv-07111-JLR

IN RE LOTTERY.COM, INC. SECURITIES   :
LITIGATION                                         :

                                    :   **ORAL ARGUMENT REQUESTED**
----------------------------------------------------------X

**DEFENDANT VADIM KOMISSAROV'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF HOFFMAN'S SECOND AMENDED COMPLAINT**

.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...................................................................................................4

A.    The Parties, the Background of the Action, and Plaintiff's
      Insufficient Service of Process...............................................................................4

B.    The Court's Prior Dismissal Order ..........................................................................5

C.    Mr. Hoffman Has Failed To State A Claim Against Mr. Komissarov ...............................8

      1.    The Repeated Allegations Concerning Lottery's Regulatory
            Compliance .................................................................................................8

      2.    The Allegations Concerning Lottery's Revenue Recognition ...............................8

ARGUMENT ......................................................................................................................14

I.    MR. HOFFMAN'S CLAIM AGAINST MR. KOMISSAROV SHOULD BE
      DISMISSED FOR LACK OF PERSONAL JURISDICTION AND
      INSUFFICIENT SERVICE OF PROCESS.........................................................14

II.   MR. HOFFMAN HAS FAILED TO STATE A CLAIM AGAINST MR.
      KOMISSAROV UNDER SECTION 20(a)..........................................................15

      A.    APPLICABLE LEGAL STANDARDS ................................................................15

      B.    MR. HOFFMAN'S SECTION 20(a) CLAIM FAILS BECAUSE HE
            HAS FAILED TO ALLEGE THAT MR. KOMISSAROV ACTED
            RECKLESSLY OR INTENTIONALLY ..............................................................17

      B.    MR. HOFFMAN'S SECTION 20(a) CLAIM FAILS BECAUSE HE
            HAS FAILED TO ALLEGE AN UNDERLYING SECTION 10(b)
            CLAIM AGAINST TRIDENT ....................................................................19

            1.    Trident Did Not Make Any Material Misrepresentation in the
                  Proxy as to Lottery's "Compliance" With State and Federal
                  Law ...........................................................................................19

            2.    Trident Did Not Make Any Material Misrepresentation in the
                  Proxy as to Lottery's Revenues or Projections .........................................21

            3.    Mr. Hoffman Fails to Allege Trident's Fraudulent *Scienter*......................25

CONCLUSION...................................................................................................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alstom SA,*
 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ....................................................................17

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.,*
 77 F.4th 74 (2d Cir. 2023) .....................................................................................20

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009)................................................................................................15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
 493 F.3d 87 (2d Cir. 2007)..........................................................................16, 17, 18

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007)................................................................................................15

*In re Bemis Co. Secs. Litig.,*
 512 F. Supp. 3d 518 (S.D.N.Y. 2021)....................................................................23

*Bond Opportunity Fund v. Unilab Corp.,*
 No. 99 Civ. 11074, 2003 U.S. Dist. LEXIS 7838, 2003 WL 2105825
 (S.D.N.Y. May 9, 2003), *aff'd,* 87 F. App'x 772 (2d Cir. 2004) ............................24

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC,*
 750 F.3d 227 (2d Cir. 2014)....................................................................................16

*Champions League, Inc. v. Woodard,*
 224 F. Supp. 3d 317 (S.D.N.Y. 2016).....................................................................24

*City of Brockton Ret. Sys. v. Avon Prods., Inc.,*
 No. 11 Civ. 4665, 2014 U.S. Dist. LEXIS 137387, 2014 WL 4832321
 (S.D.N.Y. Sept. 28, 2014)........................................................................................20

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.,*
 540 F. Supp. 2d 464 (S.D.N.Y. 2008)................................................................19, 26

*Duan v. U.S. Citizenship & Immigr. Servs.,*
 No. 22-CV-1538, 2022 U.S. Dist. LEXIS 121696, 2022 WL 2526896
 (E.D.N.Y. July 6, 2022) ..........................................................................................14

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.,*
 553 F.3d 187 (2d Cir. 2009)....................................................................................16

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
    639 F. App'x 664 (2d Cir. 2016) ....................................................................................20

*Gibson v. Mount Vernon Montefiore Hosp. Exec. Dir.*, No. 22-CV-4213 (KMK),
    2024 U.S. Dist. LEXIS 50608, 2024 WL 1217528
    (S.D.N.Y. Mar. 19, 2024) ...............................................................................................14

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)........................................................................................................20

*In re Keyspan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ....................................................................... 25-26

*In re Lottery.com, Inc. Sec. Litig.*,
    No. 1:22-cv-07111, 2024 U.S. Dist. LEXIS 20645, 2024 WL 454298
    (S.D.N.Y. Feb. 6, 2024) .......................................................................................14, 15, 16

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014),
    *aff'd*, 604 F. App'x 62 (2d Cir. 2015).............................................................................23

*In re NTL Inc. Sec. Litig.*,
    347 F. Supp. 2d 15 (S.D.N.Y 2004).................................................................................24

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Com.*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)..............................................................................26

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996) ........................................................................................20, 23

*In re Sanofi-Aventis Sec. Litig.*,
    774 F. Supp. 2d 549 (S.D.N.Y. 2011) ..............................................................................18

*SEC v. Rio Tinto PLC*,
    41 F.4th 47 (2d Cir. 2022) ...............................................................................................20

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019)...............................................................................................16

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014)................................................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...........................................................................................16, 19, 26

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
    195 F. Supp. 3d 528 (S.D.N.Y. 2016).........................................................................16, 17

**Statutes**

15 U.S.C. § 78u-5(c) ..............................................................................................................24

15 U.S.C. §78u-4 *et seq.* ................................................................................................ 16-17

**Rules**

Fed. R. Civ. P. 4 .............................................................................................................. 2, 14-15

Fed. R. Civ. P. 9 ..................................................................................................................1, 16

Fed. R. Civ. P. 12 ................................................................................................................1, 14

Defendant Vadim Komissarov respectfully submits this memorandum of law in support of his motion to dismiss Plaintiff Harold M. Hoffman's Second Amended Complaint ("SAC"): (i) pursuant to Federal Rules of Civil Procedure 12(b)(2) and (5) for lack of personal jurisdiction and insufficient service of process; and (ii) pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995, for failure to state a claim as against Mr. Komissarov.

## PRELIMINARY STATEMENT

On October 29, 2021, Lottery.com, Inc. ("Lottery") completed a business combination with Trident Acquisitions Corp. ("Trident").  Plaintiff Harold Hoffman, who was never a Trident shareholder and later purchased Lottery's publicly-traded stock after the business combination, initially commenced this action alleging that certain of Lottery's post-business combination disclosures were allegedly false or misleading.  That action did not name Mr. Komissarov as a defendant.  On June 18, 2024, after the Court dismissed the claims asserted by Mr. Hoffman, Mr. Hoffman filed his SAC which for the first time attempted to allege a Section 20(a) claim against Mr. Komissarov, a former officer and director of Trident, arising from certain statements in the October 18, 2021 proxy statement (the "Proxy") that preceded the business combination.

By Decision and Order dated February 6, 2024 ([Dkt. No. 131], the "Dismissal Order"), the Court dismissed the claims asserted by Mr. Hoffman and the separate Class Plaintiffs in the entirety (with leave to replead).  More specifically, and as is relevant here, the Court held that: (1) the statements in the Proxy concerning Lottery's legal compliance were non-actionable puffery; and (2) the separate statements in the Proxy concerning Lottery's financial projections were non-actionable and protected under bespeaks-caution doctrine because the projections were accompanied by specific cautionary language.

Now, Mr. Hoffman attempts to allege a control person liability claim against Mr. Komissarov arising from purported Proxy misstatements. But Mr. Hoffman's SAC is equally deficient as his prior pleading, and the claim against Mr. Komissarov must be dismissed for each of the following independent reasons:

*First*, Mr. Hoffman has failed to properly serve Mr. Komissarov. Following the issuance of a supplemental summons, Mr. Hoffman personally attempted to serve process by delivering the Summons and SAC to the mailroom of the building where undersigned counsel maintain their offices. Such attempted service was defective for a number of reasons, including that Federal Rule of Civil Procedure 4(c) precludes a party litigant from serving process.

*Second*, Mr. Hoffman has failed to plead with particularity that Mr. Komissarov acted culpably (*i.e.*, intentionally or recklessly) such to support a Section 20(a) claim. To the contrary, Mr. Hoffman's SAC is devoid of any allegation that Mr. Komissarov had any actual knowledge of the falsity of any alleged misstatement in the Proxy, and only alleges a purported failure to reasonable investigate. Such a conclusory allegation of purported negligence is insufficient.

*Third*, Mr. Hoffman has failed to plead with particularity any primary securities fraud violation by Trident. While Mr. Hoffman again attempts to allege that Trident purportedly made misrepresentations concerning Lottery's legal compliance, the Court has already held that such statements constitute non-actionable puffery. Although Mr. Hoffman now alleges that Lottery and certain of its officers (the "Lottery Defendants") allegedly knew that the company was operating in violation of law, those new allegations are insufficient to resurrect Plaintiffs' "legal compliance" claim, as the Court has already held. *See* Dismissal Order at 31-32 ("Plaintiffs' claim that these statements were knowingly and verifiably false when made does not cure their generality, which is what prevents them from rising to the level of materiality required to form the basis for assessing

2

a potential investment.") (*quoting City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,* 752 F.3d 173, 183 (2d Cir. 2014)).

Next, Mr. Hoffman wrongly attempts to manufacture a Proxy misrepresentation in light of later events – specifically, Lottery's post-merger disclosure of $30 million in alleged "sham" revenues beginning on November 15, 2021. But the Proxy only disclosed Lottery's financial statements and revenues through June 30, 2021, and the SAC fails to allege any misstatement as to Lottery's revenues as stated in the Proxy. Not to be deterred, Mr. Hoffman alleges that the Proxy misrepresented how Lottery's revenues would be recognized in the future. Not so. The Proxy disclosed that Lottery had adopted "ASC 606" in 2018 and applied it to the financial statements included in the Proxy. As to *future* financial statements, Lottery only stated that it was "in the process of assessing the impact of these new [ASC 606] standards[.]"

Finally, Mr. Hoffman again attempts to claim that the Lottery projections that were included in the Proxy (and the Trident Board's reasoning for recommending the approval of the merger which were based, in part, upon Lottery's stated projections) were misleading because the projections purportedly included the $30 million in "sham" revenues. But these attempted claims fail because: (1) the Court has already held that the forward-looking projections were non-actionable and protected by the bespeaks-caution doctrine; and (2) the SAC is devoid of any allegation that the Trident Board stated false reasons for its approval of the proposed business combination.

*Fourth*, and setting aside that no fraudulent misrepresentation was made by Trident, Mr. Hoffman has failed to allege Trident's fraudulent *scienter* such to support any primary violation. As the Proxy itself makes clear, Lottery represented and warranted to Trident that it operated in material compliance with law and that its statement in the Proxy (including financial statements

3

and disclosures concerning its business) were true and accurate.  Trident's reliance upon Lottery's documented representations and warranties is a nonculpable explanation that is far more likely than any conclusory claim of intentional or reckless conduct.

For each of these independent reasons, Mr. Hoffman's Section 20(a) claim against Mr. Komissarov should be dismissed with prejudice.

## STATEMENT OF FACTS[1]

**A.    The Parties, the Background of the Action, and Plaintiff's Insufficient Service of Process**

On October 29, 2021, Trident Acquisitions Corp. ("Trident") completed a business combination with AutoLotto, Inc. ("AutoLotto," d/b/a Lottery.com), with the combined business being renamed Lottery.com, Inc. ("Lottery").  *See* Ex. 1 (SAC) at ¶¶ 58-61.  Defendant Vadim Komissarov served as an officer and director of Trident only until the October 29, 2023 business combination.  *See* Ex. 1 (SAC) at ¶ 37.

Plaintiff Harold M. Hoffman was never a Trident shareholder.  Rather, Mr. Hoffman alleges that on November 22, 2021, *after* the business combination, he purchased publicly-traded shares of Lottery.  *See id.* (SAC) at ¶ 30.

On December 21, 2022, Mr. Hoffman originally filed claims solely against Lottery and certain of its officers as to matters that post-dated the business combination.  *See* Opinion and Order dated February 6, 2024 (the "Dismissal Order") [Dkt. No. 131] at 2-3.  On June 18, 2024, Mr. Hoffman filed his SAC, attempting to allege therein for the first time a "control person" claim (Section 20(a)) against Mr. Komissarov for a purported primary-liability securities fraud (Section

---

[1]  The exhibits referenced herein are attached to the accompanying Declaration of John Piskora, dated July 12, 2024 ("Piskora Decl.").

10(b) claim) arising from alleged misstatements in the October 18, 2021 proxy statement (the "Proxy") that was issued in advance of the business combination. *See* Ex. 1 (SAC) at ¶¶ 203-208; Ex. 2 (Proxy).[2]

On June 21, 2024, following the Court's issuance of a supplemental summons, Mr. Hoffman personally attempted to serve Mr. Komissarov by delivering a copy of the summons and SAC to the undersigned counsel. *See* Ex. 3 (Certificate of Service) (Mr. Hoffman's sworn certification that: "On June 21, 2024, at 11:50 AM, I [Harold M. Hoffman] served … Defendant Vadim Komissarov by personal delivery of said documents to Mr. Komissarov's attorney of record in this consolidated action"). Adding to the defects of this attempted service, Mr. Hoffman did not "personally serve" anything. Rather, he delivered a copy of the summons and SAC to the mailroom for the building – not the law firm – where undersigned counsel maintain their offices. *See* Piskora Decl. at ¶ 4.

**B.    The Court's Prior Dismissal Order**

By Decision and Order dated February 6, 2024 ([Dkt. No. 131], the "Dismissal Order"), this Court dismissed the previously-asserted Sections 10(b), 14(a) and 20(a) claims asserted by the Class Plaintiffs and Mr. Hoffman arising from alleged misstatements and/or omissions in the Proxy. *See* Dismissal Order at 74-76 (dismissing claims; "[T]he Court holds that the Proxy contains no material misstatements or omissions under Section 14(a) and Rule 14a-9.").[3]

---

[2]    Thus, while Mr. Hoffman has parroted the allegations of the Class Plaintiffs (*compare* SAC *with* [Dkt. No. 153 (Class Plaintiffs' Third Amended Complaint)), Mr. Hoffman has *added* a claim (control person liability for securities fraud) that the Class Plaintiffs just *dropped* in their amended pleading.

[3]    The Court similarly dismissed the previously-asserted Section 10-b claims. *See* Dismissal Order at 24-74.

1.      **The Court Squarely Held That the Proxy Statements Concerning Lottery's Regulatory Compliance Were Non-Actionable Puffery**

More specifically, the Court previously considered whether Mr. Hoffman had sufficiently alleged a Section 10(b) claim arising from "[t]he Proxy's discussion of [Lottery's] regulatory compliance and potential compliance risks." *See* Dismissal Order at 8, 30 ("Plaintiffs contend that the statements regarding Lottery's work with state regulators in … the Proxy constituted material misstatements or omissions because, 'in fact, [Lottery] was not complying with state and federal laws concerning the state in which tickets are procured as well as order fulfillment.'") (citation omitted).  The Court specifically held that "[t]he pre-merger statements regarding regulatory compliance – contained in the … Proxy [and elsewhere] – were non-actionable puffery."  *See* Dismissal Order at 31-32 ("The challenged pre-merger regulatory-compliance statements are akin to other statements about regulatory compliance and integrity that courts have deemed non-actionable puffery.") (*citing cases*).

The Court further held that the statements about Lottery's regulatory compliance were not material, but were "too general to cause a reasonable investor to rely upon them," and that "Plaintiffs' claim that these statements were knowingly and verifiably false when made does not cure their generality, which is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment."  *See* Dismissal Order at 31 (*quoting City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,* 752 F.3d 173, 183 (2d Cir. 2014)).

2.      **The Court Squarely Held That the Proxy Statements Concerning Lottery's Revenue Projections Were Forward Looking and Non-Actionable Under the Bespeaks Caution Doctrine**

Separately, the Court previously considered whether Mr. Hoffman had sufficiently alleged a Section 10(b) claim arising from "the Proxy's financial projections for the 2021 fiscal year."  *See* Dismissal Order at 30.  The Court held that such revenue projections were forward-looking and

"protected by the bespeaks-caution doctrine" because the projections "were accompanied by sufficient cautionary language." *See id.* at 30-31.  Specifically, the Court held: "In short, the Proxy addressed the very risk that Plaintiffs allege it failed to disclose: that Lottery 'lacked adequate internal accounting controls, including controls over financial reporting of cash and revenue,' and that the Proxy's statements regarding revenue and cash could therefore be inaccurate." *Id.*

### 3.    The Separate Claims Against Lottery Arising From Its Post-Merger Revenue Statements

Separate and apart from Mr. Hoffman's claims related to the Proxy, the Court considered the allegations underlying his Section 10(b) claims against the Lottery Defendants arising from certain of Lottery's post-merger revenue statements.  *See* Dismissal Order at 40 (considering the "Post-Merger Financial-Performance-Related Statements").  In particular, the Court considered whether certain of Lottery's post-merger public disclosures "were materially false or misleading because they accounted for Lottery's purported sale of $30 million in affiliate-marketing credits – a sale that, Plaintiffs allege, never happened." *See id.*

Although the Court held "that Plaintiffs have plausibly alleged that each of [Lottery's] post-merger financial-performance-related statements was "false [or misleading] at the time it was made" (*see id.* at 45), the Court ultimately dismissed the claim as against the Lottery Defendants on the grounds that Mr. Hoffman failed to adequately allege the Lottery Defendants' fraudulent *scienter*.  *See id.* at 74.

Of course, such allegations of *post-merger* revenue misstatements were wholly irrelevant to Mr. Komissarov, both because Mr. Hoffman did not (and could not) allege that any such revenue misstatement was contained in the Proxy, and because "Mr. Komissarov is not responsible for statements made after the [merger] was effectuated on October 29, 2021.'" *See id.* at 40.

**C.    Mr. Hoffman Has Failed To State A Claim Against Mr. Komissarov**

**1.    The Post-Business Combination Disclosures By Lottery Are Not Attributable to Mr. Komissarov**

Mr. Hoffman's SAC principally concerns the post-business combination operations and public disclosures of Lottery. *See generally* Ex. 1 (SAC) at ¶¶ 74-76, 87, 89, 100-101, 122-124, 156-173 (entitled "Materially False And Misleading Statements Following The Issuance Of The Proxy Statement"); *see also* Dismissal Order at 12-19 ("Post-Merger Events"). None of those allegations are relevant to the control person claim currently asserted against Mr. Komissarov because it is not alleged that Mr. Komissarov was ever an officer or director of Lottery, and he was only an officer and director of Trident until the October 29, 2021 business combination. *See id.* (SAC) at ¶ 37 (alleging that Mr. Komissarov was "CEO and a director of [Trident] … prior to the Business Combination").

**2.    Mr. Hoffman Has Failed to Allege a Primary Securities Fraud Claim as Against Trident Related to the Proxy**

**(a)    The Repeated Allegations Concerning Lottery's Regulatory Compliance**

Although Mr. Hoffman seeks to impose control person liability against Mr. Komissarov related to purported Proxy misstatements (*see* Ex. 1 (SAC) at 204), Mr. Hoffman fails to allege any Section 10(b) primary violation by Trident.

As to purported "misrepresentations," Mr. Hoffman first attempts to allege that "Lottery Misrepresented Its Compliance With State and Federal Laws." *See* Ex. 1 (SAC) at  50 and ¶ 152 (alleging that the Proxy disclosed Lottery's "belief" that the company was in compliance with relevant laws and further disclosing the risks of associated with a regulatory or governmental investigation or proceeding). As above, the Court has already held that such statements constitute non-actionable puffery. *See* Dismissal Order at 31-32.

Now, Mr. Hoffman attempts to allege that such puffery is purportedly actionable because Lottery and certain of its officers – *not* Mr. Komissarov – allegedly knew that Lottery was not operating in accordance with law given that: (1) users of Lottery's web-based system could allegedly (and apparently wrongfully) "skirt any jurisdictional requirement for ticket purchases" (*see* Ex.1 (SAC) at ¶¶ 15, 142, 169); and (2) Lottery allegedly fulfilled ticket purchases for numerous states via its "backup hub in Texas" (*see id.,* (SAC) at ¶¶ 139-141, 150-151). *See id.,* (SAC) at ¶ 143 (alleging that: "The Lottery Defendants, as the Company's senior management members, were clearly aware of these hundreds of thousands of repeated legal violations."). These new allegations cannot support a claim as against Mr. Komissarov for two independent reasons.

*First*, and as the Court already held in the Dismissal Order: "Plaintiffs' claim that these statements were knowingly and verifiably false when made does not cure their generality, which is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment." *See* Dismissal Order at 31 (*quoting City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,* 752 F.3d 173, 183 (2d Cir. 2014)).

*Second*, and independently, Mr. Hoffman's SAC is devoid of any allegation that Mr. Komissarov or Trident knew of any such noncompliance. *See generally* Ex. 1 (SAC). To the contrary, the alleged misrepresentations are contained in that part of the Proxy authored by Lottery and entitled the "Business of Lottery.com." *See* Ex. 2 (Proxy) at 132-150. Lottery made express representations and warranties to Trident that its disclosures in the Proxy were true and accurate, that there were no pending governmental investigations or governmental proceedings pending as against Lottery, and that Lottery was in material compliance with all applicable laws. *See* Ex. 2 (Proxy) at 74 ("In the Business Combination Agreement, Lottery.com makes certain customary representations and warranties … relating to, among other things: … (xiii) compliance with Laws,

including those relating to foreign corrupt practices and money laundering […]"); Ex. 2 (Business

Combination Agreement attached to Proxy) at A-24, A-31, A-33:

> As an inducement to Trident and Merger Sub to enter into this Agreement and consummate the transactions contemplated by this Agreement, except as set forth in the Company Disclosure Letter (subject to Section 8.13), **the Company [Lottery] hereby represents and warrants to Trident** and the Merger Sub as follows: […]
>
> Section 3.18 <u>Compliance with Laws; Permits</u>.
>
> (a) Except [for tax and other matters not relevant here] **each Target Company is and, since the Lookback Date has been, in material compliance with all Laws applicable to the conduct of the business of the Target Companies** and, since the Lookback Date, no uncured written notices have been received by any Target Company from any Governmental Entity or any other Person alleging a material violation of any such Laws.

(emphasis added); *id.* at A-31 and § 3.12 ("The information supplied in writing by the Company

[Lottery] … for inclusion in the Registration Statement (including the Proxy Statement) … shall

not contain any untrue statement of a material fact or omit to state a material fact necessary to

make the statements therein, in light of the circumstances in which they are made, not

misleading[.]").[4]

### (b)   The Allegations Concerning Lottery's Revenue Recognition

Given that the Court previously held that Lottery's post-merger revenue disclosures were

materially false or misleading, Mr. Hoffman's SAC attempts to make much of the alleged $30

million "sham" transaction arising from Lottery's September 2021 contract for the sale of

LotteryLink Credits (*i.e.*, a form of service credit or affiliate-marketing credit). *See* Ex. 1 (SAC)

at ¶¶ 8-9, 75, 103, 135-137; *see also* Dismissal Order at 40.  But Mr. Hoffman does not allege that

---

[4] Notably, Lottery made similar statements concerning its compliance with law following the business combination, as Mr. Hoffman's SAC admits.  *See* Ex. 1 (SAC) at ¶ 129; *see also* Dismissal Order at 29-30.

the Proxy reported any of these "sham" revenues.  *See generally* Ex. 1 (SAC).[5]  Nor could Mr. Hoffman ever do so, as the Proxy only contains Lottery's historical financial information for the six-month period ending June 30, 2021.  *See* Ex. 2 (Proxy) at 10, 156, 158, 182, F-51 to F-52.[6]

Instead, Mr. Hoffman now attempts to allege that the Proxy purportedly misrepresented how Lottery would recognize revenues *in the future*.  *See* Ex. 1 (SAC) at ¶ 147.  More specifically, Mr. Hoffman alleges that the Proxy purportedly stated that Lottery would recognize future revenues (*i.e.*, any revenues post-dating June 30, 2021) pursuant to "ASC 606."  *Id.*  But the Proxy only states that Lottery "adopted" the ASC 606 revenue recognition standard effective January 1, 2018.  *See* Ex. 2 (Proxy) at 163 ("The Company [Lottery] adopted these standards effective on January 1, 2018, and management concluded the adoption of this standard did not result in any financial statement impacts or changes to revenue recognition policies or processes as revenue is primarily derived from arrangements in which the transfer of control coincides with the fulfillment of performance obligations.").  Mr. Hoffman does not allege that that statement was false, nor does

---

[5]  Mr. Hoffman alleges that the alleged "sham" revenues of $30 million were not disclosed by Lottery until after the business combination, on November 15, 2021.  *See* Ex. 1 (SAC) at ¶ 100.

[6]  Mr. Hoffman's SAC contains other allegations as to Lottery's disclosures after the business combination, including its disclosure of cash balances, revenues, and/or internal controls. These allegations cannot support any claim against Mr. Komissarov because (1) they were not made in the Proxy Statement; and (2) they were allegedly made by Lottery *after* the October 29, 2021 business combination and at a time when Mr. Komissarov was neither an officer or director of Lottery.  *See* Dismissal Order at 40 ("The Class Plaintiffs 'concede that Mr. Komissarov is not responsible for statements made after the [merger] was effectuated on October 29, 2021.'"); *see also* Ex. 1 (SAC) at 26 & n.8-9 (referring to an exhibit to a November 15, 2021 Lottery Form 8-K); at ¶ 75 (referring to Lottery's April 1, 2022 Annual Report); at ¶ 76 (concerning Lottery's May 16, 2022 Form 10-Q); at ¶ 89 (alleging Lottery's failure to disclose a $30 million loan in its April 1, 2022 Annual Report); at ¶ 90 (alleging Lottery's improper recognition of $5 million in revenue for the fourth quarter of 2021); at ¶ 122 (referring to Lottery's November 15, 2021 Form 10-Q disclosure of material weaknesses in internal controls); at ¶ 124 (referring to disclosures of material weaknesses in Lottery's April 1, 2022 Annual Report); at ¶ 125 (referring to disclosures of material weaknesses in Lottery's May 16, 2022 Form 10-Q); at ¶ 129 (referring to statements related to legal compliance in Lottery's April 1, 2022 Annual Report).

11

he allege that that there was any material misstatement of revenue by Lottery in the Proxy, whether pursuant to ASC 606 or otherwise (*see generally* Ex. 1, (SAC)).[7]  Lottery's reported financials, as stated in the Proxy, were historical, and the disclosure thereof was stated in the past tense.  *See* Ex. 2 (Proxy) at 163 ("Our financial statements were prepared in conformity with U.S. GAAP.").  As to its reporting of future revenues, Lottery (which was on the verge of being a public-reporting company via the merger) only stated that:  "We [Lottery] are in the process of assessing the impact of these new [ASC 606] standards on future consolidated financial statements."  *See id*.

Moreover, and critical to the attempted claim against Mr. Komissarov, the events concerning the alleged "sham" contract and Lottery's reporting of "fake" revenues resulting therefrom post-date the Proxy (and the June 30, 2021 cut-off date applicable to the financial information set forth therein), as well as the October 29, 2021 business combination.  As Mr. Hoffman's SAC admits, revenues related to that "sham" transaction were not reported until November 15, 2021; the customer did not offer a check to Lottery for payment under the "sham" contract until December 30, 2021 (which Lottery allegedly did not cash); and Lottery's affiliate did not secure an unreported $30 million loan to facilitate the customer's payment until January 4, 2022.  *See* Ex. 1 (SAC) at ¶¶ 76 & n.9, 78, 100, 103 (alleging that: "The July 15, 2022 disclosure of a $30 million cash overstatement represents an admission that the $30 million 'sale' of LotteryLink Credits previously announced on November 15, 2021, was entirely fabricated, and that [the Lottery] Defendants faked the collection of that money to create the illusion of

---

[7] In any event, and as the Court previously recognized, the Proxy disclosed that Lottery's reported revenues could be inaccurate: "the Proxy addressed the very risk that Plaintiffs allege it failed to disclose: that Lottery 'lacked adequate internal accounting controls, including controls over financial reporting of cash and revenue,' and that the Proxy's statements regarding revenue and cash could therefore be inaccurate."  *See* Dismissal Order at 30-31.

revenues."), 135, 137; *see also* Dismissal Order at 12-13 (referencing Lottery's November 15, 2021 Form 8-K/A).

        **(c)**        **Scienter is Lacking Because the Proxy Statement Makes Clear That Trident Relied Upon Lottery's Representations**

Mr. Hoffman's SAC does not (and cannot) allege that Trident knew of any noncompliance by Lottery with any State or Federal law or "sham" revenues as of the date of the Proxy, or that Trident otherwise had any wrongful intent to defraud. Similarly, the SAC is wholly devoid of any factual allegation establishing the culpable participation by Mr. Komissarov, or that he acted intentionally or recklessly. *See generally* Ex. 1 (SAC).

To the contrary, the Proxy Statement and attached Business Combination Agreement make clear that Trident relied upon Lottery's contractual covenants that the materials it provided to be included in the Proxy were to be true and accurate, as well as Lottery's express representation that Lottery was in material compliance with all applicable laws and its financials fairly and properly stated. *See* Ex. 2 (Proxy Statement) at 74, A-24 at § 3.4, A-31 at § 3.12, A-33. The purported Proxy "misrepresentations" that Mr. Hoffman now alleges are all expressly attributable to Lottery. *See* Ex. 1 (SAC) at ¶ 205 (alleging that "the Individual Lottery … furnished information for inclusion in the Proxy"); Ex. 2 (Proxy) at 87-88 (concerning Lottery's projections); 132 ("BUSINESS OF LOTTERY.COM"; "Unless otherwise specified … all references to 'Lottery.com', 'we', 'us', 'our' and the 'Company' refer to AutoLotto, Inc. and its consolidated subsidiaries."); *id.* at 151 ("LOTTERY.COM MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS").[8]

---

    [8] As the Proxy expressly stated disclosed, the financial projections were not made by Trident (or its directors), were not "fact," and were not to be relied upon. *See* Ex. 2 (Proxy) at 87-89 ("Neither [Trident's] management nor any of its respective representatives has made or makes

## ARGUMENT

I. **MR. HOFFMAN'S CLAIM AGAINST MR. KOMISSAROV SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION AND IMPROPER SERVICE OF PROCESS**

Mr. Hoffman's claim against Mr. Komissarov must be dismissed for lack of personal jurisdiction and insufficient service of process. *See* Fed. R. Civ. P. 12(b)(2) and (5). As the Court noted in the prior Dismissal Order, "service of a summons on the defendant is prerequisite to the exercise of personal jurisdiction." *See In re Lottery.com, Inc. Sec. Litig.*, No. 1:22-cv-07111, 2024 U.S. Dist. LEXIS 20645, at *33 (S.D.N.Y. Feb. 6, 2024) (*quoting BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 409 (2017)).

"Service of process in federal court is generally governed by Federal Rule of Civil Procedure 4 ('Rule 4')." *See id.* Rule 4 specifically provides that service of process cannot be made by a party to the action. *See* Fed. R. Civ. P. 4(c)(2) ("Any person who is at least 18 years old and not a party may serve a summons and complaint."). Because Mr. Hoffman attempted to serve Mr. Komissarov himself (*see* Ex. 3 (Certificate of Service)), and he is a party to the action, the attempted service was defective and the SAC must be dismissed as against Mr. Komissarov. *See* Fed. R. Civ. P. 12(b)(2) and (5); *Gibson v. Mount Vernon Montefiore Hosp. Exec. Dir.*, No. 22-CV-4213 (KMK), 2024 U.S. Dist. LEXIS 50608, at *18 (S.D.N.Y. Mar. 19, 2024) ) ("[P]arties are ineligible to serve their own process under Rule 4(c)(2).") (*citing Kennedy v. Peters*, No. 23-CV-195, 2023 U.S. Dist. LEXIS 162920, 2023 WL 5977237, at *2 (N.D.N.Y. Sept. 14, 2023)); *Duan v. U.S. Citizenship & Immigr. Servs.*, No. 22-CV-1538, 2022 U.S. Dist. LEXIS 121696, 2022 WL 2526896, at *1 (E.D.N.Y. July 6, 2022) ("A party to a lawsuit is not permitted to serve a copy of the summons and complaint on a defendant."). Mr. Hoffman's attempted service was

---

any representations to any person regarding the ultimate performance of Lottery.com relative to the Projections. The Projections are not fact.").

otherwise defective.  While Rule 4(e) provides that individuals may be served by personal service "to an agent authorized to receive process," Mr. Hoffman's delivery of Summons and SAC to the mailroom for the building where undersigned counsel maintains their offices does not constitute personal service, nor was counsel an agent authorized to receive process.  *See* Piskora Decl. at ¶ 4.[9]

## II.    MR. HOFFMAN HAS FAILED TO STATE A CLAIM AGAINST MR. KOMISSAROV UNDER SECTION 20(a)

### A.    APPLICABLE LEGAL STANDARDS

While the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in a plaintiff's favor in deciding a motion to dismiss pursuant Rule 12(b)(6), the Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and dismissal is required) (citation and internal quotation marks omitted); *see also In re Lottery.com, Inc. Sec. Litig.*, No. 1:22-cv-07111, 2024 U.S. Dist. LEXIS 20645, at *32 (S.D.N.Y. Feb. 6, 2024).

---

[9]    Indeed, Mr. Hoffman's summons was defective from the start as it listed Mr. Komissarov's address as his counsel's address, without ever asking whether counsel was an agent authorized to accept service.  *See* ECF No. 155.

To state a claim under Section 20(a) of the Exchange Act, a plaintiff must allege with particularity: "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud," (*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)), as well as that the alleged controlling person acted recklessly or intentionally.  *See, e.g., In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 542 (S.D.N.Y. 2016) ("[C]ulpable participation is a scienter requirement for which a plaintiff must allege some level of culpable participation at least approximating recklessness in the section 10(b) context in order to survive a motion to dismiss.") (citation omitted).

As to the underlying "primary violation," to state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, Plaintiffs must adequately allege with particularity, among other things, "a material misrepresentation or omission by the defendant … [and] scienter[.]"  *See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014) (citation omitted); *see also Singh v. Cigna Corp.,* 918 F.3d 57, 62 (2d Cir. 2019); *also In re Lottery.com*, 2024 U.S. Dist. LEXIS 20645, at *35-36.

Where, as here, the "primary violation" consists of alleged securities fraud, the allegations must also satisfy the more stringent pleading and particularity requirements of Rule 9(b), as well as the Private Securities Litigation Reform Act ("PSLRA," 15 U.S.C. §78u-4 *et seq.*) for the pleading of falsity and scienter.  *See ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (*citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (FRCP Rule 9(b) requires complaints to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent"); 15 U.S.C. § 78u-4(b)(1) (requiring plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, … [to] state with particularity all facts on which that belief is formed"). The PLSRA further mandates that plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind." *Id.* at § 78u-4(b)(2)(A).

Here, Mr. Hoffman has failed to adequately allege a Section 20(a) claim against Mr. Komissarov, and the claim should be dismissed with prejudice for each of the following independent reasons.

**B.    MR. HOFFMAN'S SECTION 20(a) CLAIM FAILS BECAUSE HE HAS FAILED TO ALLEGE THAT MR. KOMISSAROV ACTED RECKLESSLY OR INTENTIONALLY**

Mr. Hoffman's SAC fails to allege any non-conclusory facts to establish that Mr. Komissarov was "a culpable participant in the controlled person's fraud" – *i.e.* that he acted recklessly or intentionally. *See ATSI*, 493 F.3d at 108 (holding that culpable participation is an essential element of a Section 20(a) claim); *In re Virtus Inv. Partners*, 195 F. Supp. 3d at 542 (S.D.N.Y. 2016) ("[C]ulpable participation is a scienter requirement for which a plaintiff must allege some level of culpable participation at least approximating recklessness[.]"); *see also In re Alstom SA,* 406 F. Supp. 2d 433, 491 (S.D.N.Y. 2005) (holding "culpable participation must be pled with particularity").

Here, Mr. Hoffman fails to allege (and cannot allege) *any* intentional, knowing, or reckless conduct by Mr. Komissarov. Rather, he only attempts to allege negligence (*albeit* in summary and wholly conclusory terms that must be disregarded). *See* Ex. 1 (SAC) at ¶ 207 (alleging that: "The Individual Defendants were culpable participants in the violations because they failed to make a

17

reasonable investigation and did not possess reasonable grounds for the belief that the statements in the Proxy Statement[.]").  Far from the "particularized facts" required, Mr. Hoffman's factually bereft and conclusory allegation – *i.e.*, the failure to investigate – fails to establish reckless or intentional, culpable conduct as a matter of law.  *See, e.g., ATSI*, 493 F.3d at 108 (a plaintiff must plead "particularized facts of the controlling person's conscious misbehavior or recklessness"); *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 572 (S.D.N.Y. 2011) (dismissing Section 20(a) claims, holding that general allegation that the controlling person "had access to material information is inadequate circumstantial evidence that does not indicate involvement in perpetrating the fraud"); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 439 (S.D.N.Y. 2014) (holding that Section 20(a) requires plaintiffs to plead "facts indicating that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct").  For this reason alone, Mr. Hoffman's Section 20(a) claim should be dismissed.

Separately and independently, Mr. Hoffman's conclusory allegation that Mr. Komissarov "did not possess reasonable grounds" for Lottery's statements in the Proxy is belied by the Proxy itself.  With respect to Lottery's compliance with law, Trident obtained Lottery's express representation and warranty that Lottery "is and, since the Lookback Date has been, in material compliance with all Laws applicable to the conduct of the business."  *See* Ex. 2 (Proxy) at A-33 and § 3.18.  As to Lottery's financial statements, Trident obtained a similar representation from Lottery that each financial statement "fairly presents … in all material respects, the combined assets, liabilities, and financial condition" of Lottery and its affiliated companies.  *See id.* (Proxy) at A-26 and § 3.18.  And, setting aside that the allegations of Lottery's reporting of alleged "sham" revenues concern events post-dating the October 18, 2021 Proxy, Mr. Hoffman cannot seriously

18

argue that Mr. Komissarov acted culpably with respect to the inclusion of Lottery's projections in the Proxy given that the Proxy contained lengthy risk disclosures concerning the projections, cautioned investors that they were "not fact," not audited, not a representation by Trident or its management, may not be realized for a broad host of reasons, and should not be relied upon. *See id.* (Proxy) at 88. As to other matters, Lottery contractual covenanted that the materials it provided to be included in the Proxy were to be true and accurate.

Given that the SAC is devoid of any allegation that Mr. Komissarov had actual knowledge of the falsity of any Proxy statement, the fair inference to be drawn from these facts is a nonculpable one – that Trident and Mr. Komissarov relied upon Lottery's covenants, representations, and warranties as to the truthfulness of Lottery's statements concerning its business, operations, and financials that were included in the Proxy. *See Tellabs*, 551 U.S. at 314, 323-24 (holding that courts "must [also] consider plausible, nonculpable explanations for the defendant's conduct"); *City of Brockton Ret. Sys. v. Shaw Grp. Inc.,* 540 F. Supp. 2d 464, 472–74 (S.D.N.Y. 2008) (holding that there could be no inference of *scienter* where the plaintiffs failed to allege that individual defendants were provided with contradictory information).

Because Mr. Hoffman has not allege Mr. Komissarov's culpable conduct, the Section 20(a) claim against Mr. Komissarov should be dismissed with prejudice.

### C.   MR. HOFFMAN'S SECTION 20(a) CLAIM FAILS BECAUSE HE HAS FAILED TO ALLEGE AN UNDERLYING SECTION 10(b) CLAIM AGAINST TRIDENT

#### 1.   Trident Did Not Make Any Material Misrepresentation in the Proxy as to Lottery's "Compliance" With State and Federal Law

Mr. Hoffman again attempts to allege that the Proxy purportedly misrepresented Lottery's compliance with State and Federal law. *See* Ex. 1 (SAC) at ¶ 152 (quoting Lottery's statements in the Proxy that: "we [Lottery] believe that we are currently in compliance in all material respects

with all applicable laws and regulatory requirements").[10]  But this Court has already specifically held that "[t]he pre-merger statements regarding regulatory compliance – contained in the … Proxy [and elsewhere] – were non-actionable puffery."  *See* Dismissal Order at 31-32 (*citing City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183, 185 (2d Cir. 2014) ("The challenged pre-merger regulatory-compliance statements are akin to other statements about regulatory compliance and integrity that courts have deemed non-actionable puffery.") ("[G]eneral statements about … compliance with ethical norms are inactionable 'puffery', meaning that they are 'too general to cause a reasonable investor to rely upon them.'") (citation omitted); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir. 1996); *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 101 (2d Cir. 2023) ("[T]he duty to disclose more [information] is triggered only when that which *is* disclosed is sufficiently specific to evoke a reasonable investor's reliance.")); *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG), 20142014 U.S. Dist. LEXIS 137387, at \*42 (S.D.N.Y. Sept. 28, 2014) ("[S]tatements of puffery or mere generalizations are not material misstatements.") (citation omitted) (collecting cases).

Undeterred by the Court's prior holding, Mr. Hoffman realleges the claim and asserts that the Lottery Defendants – *not* Trident – purportedly knew that Lottery was operating illegally.  *See,*

---

[10]  The alleged statements concerning Lottery's compliance with applicable laws and/or use of geo-fencing technology are set forth in Lottery's discussion of its business.  As the Proxy makes clear, Lottery provided the disclosures concerning its business operations, and Trident or was not the "maker" of any such statement.  *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 138 (2011) ("We conclude that [defendant] cannot be held liable because it did not make the statements in the prospectuses."); *SEC v. Rio Tinto PLC*, 41 F.4th 47, 49 (2d Cir. 2022) ("[O]nly the 'maker' of a misstatement, *i.e.*, the person with ultimate authority over the statement, can have primary liability under Rule 10b-5(b)."); *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664, 669 (2d Cir. 2016) (affirming dismissal of claims, holding that plaintiff failed to establish the necessary control to establish that defendant was the "maker" of a statement).

*e.g.,* Ex. 1 (SAC) at ¶ 143 (alleging that: "The Lottery Defendants, as the Company's senior management members, were clearly aware of these hundreds of thousands of repeated legal violations."). But Mr. Hoffman's attempt to state a claim based upon the Lottery Defendants' "actual knowledge" fails as a matter of law. As this Court has already held: "Plaintiffs' claim that these statements were knowingly and verifiably false when made does not cure their generality, which is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment." *See* Dismissal Order at 31-32 (*quoting UBS AG,* 752 F.3d at 183).

Separately, Mr. Hoffman cites a *Bloomberg* article and attempts to claim that Lottery's statements in the Proxy that it used geo-fencing technology for legal compliance purposes was purportedly false. *See, e.g.,* Ex. 1 (SAC) at ¶¶ 2, 3, 15, 150. But Lottery did use geo-fencing technology, as Mr. Hoffman's SAC and the *Bloomberg* article concede – any instance of legal non-compliance was caused by users that wrongfully "skirted" Lottery's then-existing geo-fencing technology. *See id.* (SAC) at ¶¶ 15, 142, 169. Thus, Lottery made no actionable misrepresentation concerning the existence of its geo-fencing technology in the Proxy.

### 2. Trident Did Not Make Any Material Misrepresentation in the Proxy as to Lottery's Revenues or Projections

Separately, Mr. Hoffman's SAC complains that, beginning on November 15, 2021 (*i.e.,* *after* the business combination), Lottery began recognizing and reporting $30 million in "sham" revenues arising from a contract to sell LotteryLink Credits to a customer. Indeed, in the Dismissal Order, the Court concluded that each disclosure of such revenue in Lottery's "Post-Merger Financial-Performance-Related Statements" was "false [or misleading] at the time it was made" by Lottery. *See* Dismissal Order at 45 (citation omitted).

But Plaintiffs cannot convert these later-occurring revenue misstatements by Lottery into a Section 10(b) claim as against Trident. As an initial matter, the Proxy only includes Lottery's revenues through June 30, 2021 – *i.e.*, well before the alleged "sham" contract and Lottery's reporting of allegedly "fake" revenues. *See* Ex. 2 (Proxy) at 10, 156, 158, 181-182, F-51 to F-52. Indeed, Mr. Hoffman does not allege that *any* "sham" revenues were disclosed in the Proxy (*see generally* Ex. 1 (SAC)), but rather admits that Lottery's reporting of allegedly "fake" revenues did not begin until November 15, 2021 – *after* the business combination. *See* Ex. 1 (SAC) at ¶ 135; *see also* Dismissal Order at 40.

In an attempt to generate a Section 10(b) claim arising from the Proxy where none exists, Mr. Hoffman instead alleges (falsely) that Lottery stated in the Proxy that it would recognize future revenues (*i.e.*, any revenues post-dating June 30, 2021) pursuant to ASC 606. But the Proxy only states that Lottery "adopted" the ASC 606 revenue recognition standard effective January 1, 2018. *See* Ex. 2 (Proxy) at 163 ("The Company [Lottery] adopted these standards effective on January 1, 2018 …."). Mr. Hoffman does not allege that that statement was false. As to future financial disclosures, Lottery only stated that it was "in the process of assessing the impact of these new [ASC 606] standards on future consolidated financial statements." *See id*.

While Mr. Hoffman may have adequately alleged that Lottery made materially misleading disclosures concerning its revenues *following the business combination*, he cannot manufacture a Section 10(b) claim against Trident by merely alleging that stated accounting policies were not followed in later financial reports. That attempted claim is an impermissible "fraud by hindsight" and fails for the lack of contemporaneous falsity. *See* Dismissal Order at 41-42 ("The Court accepts the general principle that, for an affirmative misrepresentation of fact to be actionable, the factual assertion must have been false when made.") (*citing Plumber & Steamfitters Loc. 773*

22

*Pension Fund v. Danske Bank A/S,* 11 F.4th 90, 103 (2d Cir. 2021); *Philip Morris Cos.*, 75 F.3d at 812); *see also In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) (a "statement believed to be true when made, but later shown to be false, is insufficient."), *aff'd*, 604 F. App'x 62 (2d Cir. 2015).  Here, Lottery did not report the $30 million in allegedly "fake" revenue until November 15, 2021 – and Mr. Hoffman's SAC fails to plausibly allege that such revenue was "recognized" earlier as an accounting matter.  To the contrary, it was not until Lottery's November 15, 2021 reporting of its unaudited financial statements for the period ending September 30, 2021 that Lottery disclosed the $30 million in revenues, which Lottery further stated had been recognized in accordance with ASC 606.  *See* Ex. 4 (Lottery's 11/15/2021 Form 8-K) at Exhibit 99.2 (Unaudited Financial Statements) at 2, 8.

Further, and critical as to any purported primary claim as against Trident, the "sham" nature of the transaction followed Lottery's receipt of the customer's check for payment on December 29, 2021 (which went uncashed), as well as Lottery's affiliate obtaining a $30 million loan on January 4, 2022 to fund the customer's payment.  All of these events occurred *after* the business combination.  Accordingly, nothing in the Proxy was contemporaneously false.

Finally, in light of the alleged $30 million "sham transaction," Mr. Hoffman attempts to allege that the Proxy contained false statements concerning Lottery's earlier revenue projections.[11]

---

[11]  Mr. Hoffman separately attempts to allege that Trident's Board's stated reasons for approving the business combination were purportedly false and misleading.  *See* Ex. 1 (SAC) at ¶ 148.  But Mr. Hoffman does not allege that Trident's Board did not consider the stated reasons. *See generally id.*; *In re Bemis Co. Secs. Litig.*, 512 F. Supp. 3d 518 (S.D.N.Y. 2021). Nor could he, as the Proxy disclosed that the Board's approval was based upon, among other things, Lottery's financial disclosures and projections which were, as the law requires, included in the Proxy.  *See* Ex. 2 (Proxy) at 8 ("In reaching its decision with respect to the Business Combination and the transactions contemplated thereby, the Board reviewed various industry and financial data and the materials *provided by Lottery.com*.").  Thus, at best, Mr. Hoffman only complains that the financial materials that Lottery provided to the Trident Board, and which the Board considered in approving

23

But this attempted misrepresentation claim fails because, as the Court has already held, Lottery's revenue projections in the Proxy were forward-looking and "protected by the bespeaks-caution doctrine" because the projections "were accompanied by sufficient cautionary language."  *See* Dismissal Order at 35-36 (holding that: "In short, the Proxy addressed the very risk that Plaintiffs allege it failed to disclose: that Lottery 'lacked adequate internal accounting controls, including controls over financial reporting of cash and revenue,' and that the Proxy's statements regarding revenue and cash could therefore be inaccurate."); *see also Bond Opportunity Fund v. Unilab Corp.,* 87 F. App'x 772, 774 (2d Cir. 2004) (affirming dismissal of Section14(a) claims based upon projections); *Champions League, Inc. v. Woodard*, 224 F. Supp. 3d 317, 324 (S.D.N.Y. 2016) (dismissing securities fraud claims, holding that alleged misrepresentations were "projections that the Second Circuit has found cannot give rise to a securities fraud claim") (citation omitted); *In re NTL Inc. Sec. Litig.,* 347 F. Supp. 2d 15, 26-27 (S.D.N.Y 2004) (dismissing securities fraud claim based upon revenue projections, holding that the company's failure to meet these projections "is nothing more than an effort to allege fraud by hindsight," and that "[w]e have not yet come to the point that a lack of clairvoyance constitutes fraud"); *see also* 15 U.S.C. § 78u-5(c) (providing that there is no liability for a forward-looking statement if it is identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement).

Separately and independently, Mr. Hoffman's "projections" claim fails because Trident was not the "maker" of such financial projections, which were not then-existing "fact" in any event, as express disclosed in the Proxy Statement:

---

the business combination, contained allegedly false statements by Lottery.  Such events are not actionable misrepresentations by Trident.

24

> **"Neither [Trident's] management nor any of its respective representatives has made or makes any representations to any person regarding the ultimate performance of Lottery.com relative to the Projections. The Projections are not fact.** The Projections are not a guarantee of actual future performance."

*See* Ex. 2 (Proxy Statement) at 88 (emphasis added). Rather, the Proxy disclosed that Lottery had provided Trident with its financial information, and that Lottery represented and warranted to Trident that such financial information was materially accurate. The SAC does not (and cannot) allege that any of these disclosures were false in any way. *See* Ex. 2 (Proxy Statement) at 87-89; *id.* (Business Combination Agreement attached to Proxy Statement) at A-24, A-26 (evidencing Lottery's representations and warranties to Trident regarding the accuracy of Lottery's financial projections).

Because Mr. Hoffman does not allege any misrepresentation in the Proxy by Trident regarding Lottery's revenues or projections, and because Trident was not the "maker" of any such financial projections, there was no primary violation by Trident.

### 3.    Mr. Hoffman Fails to Allege Trident's Fraudulent *Scienter*

As set forth above (*see* discussion at II.B), Mr. Hoffman's SAC fails to allege with particularity that Mr. Komissarov acted with the requisite *scienter* (*i.e.*, knowingly or recklessly). The SAC is further devoid of any allegation that Trident (or any officer or director of Trident) acted with the requisite fraudulent intent. [12]   Because the SAC fails to allege Trident's fraudulent

---

[12]   Mr. Hoffman does not allege any "motive and opportunity" for Mr. Komissarov to commit securities fraud related to Lottery's statements – it is not alleged that Mr. Komissarov had any independent knowledge of Lottery's business, operations, or financial. Moreover, the lack of any alleged share sales further undercuts any possible inference of scienter. *See, e.g., In re Keyspan Corp. Sec. Litig.,* 383 F. Supp. 2d 358, 381, 383–84 (E.D.N.Y. 2003) (noting that lack of share sales weighed against an inference of scienter). Nor does Mr. Hoffman allege any specific recklessness to support an inference of scienter. *See Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Com.,* 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010) ("Plaintiffs should, but do not, provide specific instances in which Defendants received information that was contrary to their public declarations."); *City of Brockton.,* 540 F. Supp. 2d at 472–74.

intent, there was no primary violation by Trident. *See, e.g., Tellabs*, 551 U.S. at 313 (holding that plaintiff is required to plead with particularity that defendant had an "intention to 'deceive, manipulate, or defraud.'").

Accordingly, Mr. Hoffman's Section 20(a) claim against Mr. Komissarov should be dismissed with prejudice for failure to adequately plead any primary violation by Trident. *See ATSI*, 493 F.3d at 108 (affirming dismissal of Section 20 claims, holding that "[plaintiff] fails to allege any primary violation; thus, it cannot establish control person liability").

## CONCLUSION

For each and all of the foregoing reasons, Defendant Vadim Komissarov respectfully requests that the Court enter an Order dismissing Plaintiff Harold Hoffman's Second Amended Complaint as against him with prejudice.

Dated: July 12, 2024

LOEB & LOEB LLP

By:   /s/ *Jay K. Musoff*
Jay K. Musoff (jmusoff@loeb.com)
John Piskora (jpiskora@loeb.com)
Alex Inman (ainman@loeb.com)
345 Park Avenue
New York, NY  10154
212-407-4000

*Attorneys for Defendant Vadim Komissarov*

26

**Certificate of Compliance with the Hon. Jennifer L. Rochon's Individual Rules 3(C)**

I hereby certify that the number of words in the foregoing Memorandum of Law in Support of Defendant Vadim Komissarov's Motion to Dismiss Plaintiff Hoffman's Second Amended Complaint, according to the word count on the word processing program utilized, inclusive of point headings and footnotes, and exclusive of the caption, table of contents, table of authorities, signature block and this certificate of compliance, is 8,256.

Dated: New York, New York
       July 12, 2024

                              /s/ Jay K. Musoff
                              JAY K. MUSOFF