UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: LOTTERY.COM, INC. SECURITIES LITIGATION | Case No. 1:22-cv-07111 (JLR) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT LOTTERY.COM, INC.'S MOTION TO DISMISS
CLASS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**

Lars L. Berg
Texas State Bar No. 00787072
lars.berg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 878-3503
Facsimile: (817) 878-9280
*Admitted Pro Hac Vice*

Steven P. Benenson
New York State Bar No. 5378773
SPBenenson@pbnlaw.com
PORZIO, BROMBERG & NEWMAN, PC
1675 Broadway, Suite 1810
New York, New York  10019-3800
(212) 265-6888

ATTORNEYS FOR LOTTERY.COM, INC.

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................3

    A.    Factual Allegations ..................................................................................................3

    B.    Relevant Procedural History ...................................................................................4

LEGAL STANDARD...........................................................................................................5

ARGUMENT........................................................................................................................6

    I.    Plaintiffs fail to adequately plead the falsity of general statements of legal and regulatory compliance. ...........................................................................................7

    II.    Plaintiffs fail to adequately plead scienter. ...........................................................8

        A.    Plaintiffs have not sufficiently alleged motive and opportunity............................9

        B.    Plaintiffs have not sufficiently alleged strong circumstantial evidence of conscious misbehavior or recklessness. ..........................................11

            1.    Revenue Recognition ........................................................................... 12

            2.    Legal and Regulatory Compliance......................................................... 18

            3.    Geolocation Technology ........................................................................ 20

CONCLUSION....................................................................................................................21

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*Acito v. IMCERA Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995)......................................................................................................10, 12

*Anschutz Corp. v. Merrill Lynch & Co.*,
  690 F.3d 98 (2d Cir. 2012).........................................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................................5

*ATSI Comms., Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007).....................................................................................................9, 18

*Bisel v. Acasti Pharma, Inc.*,
  21 Civ. 6051 (KPF), 2022 WL 4538173 (S.D.N.Y. Sept. 28, 2022)..........................................6

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
  540 F. Supp. 2d 464 (S.D.N.Y. 2008)..................................................................................16, 17

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)........................................................................................................7

*Cohen v. Kitov Pharms. Holdings, Ltd.*,
  No. 17 CIV. 0917 (LGS), 2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) ................................19

*ECA, Loc. 134 IBEW Joint Penson Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)....................................................................................9, 10, 11, 12, 20

*Francisco v. Abengoa*,
  S.A., 559 F. Supp. 3d 286 (S.D.N.Y. 2021) ........................................................................9, 10

*In re Adient plc Sec. Litig.*,
  No. 18-CV-9116 (RA), 2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ................................11, 12

*In re Axis Cap. Holdings Ltd. Sec. Litig.*,
  456 F. Supp. 2d 576 (S.D.N.Y. 2006)......................................................................................14

*In re: Bristol-Myers Squibb Company CVR Sec. Litig.*,
  No. 21-CV-8255, 2023 WL 2308151 (S.D.N.Y. March 1, 2023) ........................................9, 11

*In re Citigroup Sec. Litig.*,
  No. 20 CIV. 9132 (LAP), 2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) .............11, 13, 15, 20

*In re Eargo, Inc. Sec. Litig.*,
  No. 21-cv-08597-CRB, 2023 WL 1997918 (N.D. Cal. Feb. 14, 2023)...................................16

*In re Henry Schein, Inc. Sec. Litig.*,
  No. 18-CV-01428 (MKB), 2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019)..............................19

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014)..................................................................................8

*In re Optionable Sec. Litig.*,
    577 F. Supp. 2d 681 (S.D.N.Y. 2008)...............................................................................17

*In re Philip Morris Int'l Inc. Sec. Litig.*,
    89 F.4th 408 (2d Cir. 2023) .............................................................................................7

*In re PXRE Group, Ltd., Sec. Litig.*,
    600 F.Supp.2d 510 (S.D.N.Y. 2009)................................................................................19

*In re Ultrafem Inc. Sec. Litig.*,
    91 F. Supp. 2d 678 (S.D.N.Y. 2000)................................................................................16

*Jackson v. Abernathy*,
    960 F.3d 94 (2d Cir. 2020) (per curiam)............................................................................9

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000).....................................................................................10, 16

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013)...............................................................................................6

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019)...............................................................................................6

*Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010).................................................................................17, 19, 20

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015)........................................................................................11, 14

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008)................................................................................12, 13, 20

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)...........................................................................................6, 8, 9, 17

*Weslowski v. Zugibe*,
    96 F. Supp.3d 308 (S.D.N.Y. 2015).................................................................................8

**STATUTES**

15 U.S.C. § 78u-4(b)(1) ..................................................................................................6

15 U.S.C. § 78u-4(b)(2) ..................................................................................................8

15 U.S.C. § 78u-4(b)(2)(A)..............................................................................................6

Defendant Lottery.com, Inc. ("Lottery.com") respectfully submits this memorandum in support of its Motion to Dismiss the Class Plaintiffs' Third Amended Class Action Complaint [ECF No. 153] (the "Third Amended Complaint" or "TAC") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4 (the "PSLRA").

## INTRODUCTION

This Court previously dismissed the securities fraud claims brought by Class Plaintiffs RTD Bros LLC, Todd Benn, Tom Benn, Tomasz Rzedzian, and Preston Million (collectively, "Plaintiffs") on the grounds that many of the alleged misstatements or omissions were non-actionable puffery or statements of opinion and that Plaintiffs failed to adequately allege scienter. Plaintiffs have attempted to remedy their deficient pleading in their Third Amended Complaint. But even this latest complaint—Plaintiffs' fourth attempt—fails in many respects to adequately allege falsity or scienter.

*First*, the Third Amended Complaint still fails to adequately plead claims based on general statements of legal and regulatory compliance. As the Court previously held, statements such as that Lottery.com "work[s] closely with state regulators," TAC ¶ 129, are non-actionable puffery because they are too general to cause a reasonable investor to rely on them. And statements that Lottery.com "believe[d] that [it was] in compliance" with laws and regulations, *id.*, are non-actionable statements of opinion. Again, Plaintiffs' claims based on those statements should be dismissed for failure to adequately plead falsity.

*Second*, Plaintiffs still fail to adequately plead scienter. The claims in the Third Amended Complaint are based on alleged statements or omissions concerning (1) revenue recognition, (2) legal and regulatory compliance, and (3) geolocation technology. Plaintiffs do not adequately plead that when Lottery.com included revenue in its financial results that it later restated,

1

Lottery.com or any other Defendant was knowingly misrepresenting the company's performance. As with Plaintiffs' Amended Class Action Complaint (the "Amended Complaint" or "AC"), there are no adequate allegations in the Third Amended Complaint of Defendants' motive and opportunity to commit fraud.  Nor have Plaintiffs adequately alleged strong circumstantial evidence of conscious misbehavior or recklessness.  At most, Plaintiffs have alleged only that Defendants "must have known," which is insufficient.

Plaintiffs' legal and regulatory compliance allegations fare no better. The best Plaintiffs can do is discuss revelations after-the-fact: first, of a board member's comment in June 2022 about breaking the law as reported by Bloomberg Tax, and second, of an internal investigation disclosed in July 2022.  But even if true, both of those occurred *after* the alleged misstatements or omissions about legal and regulatory compliance, and so say nothing about Lottery.com's scienter when they were made.

Plaintiffs also fail to adequately plead scienter concerning Lottery.com's geolocation technology.  The Third Amended Complaint adds new allegations that Lottery.com misrepresented technology that allowed it to confirm a user's location for purchasing and printing lottery tickets. Plaintiffs allege that Lottery.com users could skirt the technology's jurisdictional requirements. But again, Plaintiffs fail to plead specific facts that show that Lottery.com (or anyone whose knowledge may be imputed to it) knew—at the time the statements or omissions were made— about any problems with the technology.

Lottery.com therefore respectfully requests that the Third Amended Complaint be dismissed with prejudice.

2

## BACKGROUND

### A.    Factual Allegations

Trident Acquisitions Corp. ("TDAC"), a special purpose acquisition company, entered into a "Business Combination Agreement" with AutoLotto, Inc., pursuant to which Lottery.com would become a publicly traded company.  TAC ¶¶ 5, 50, 65.  The transactions contemplated by the Business Combination Agreement (the "Business Combination") were completed on October 29, 2021, and soon thereafter, Lottery.com began trading on the NASDAQ.  *Id.* ¶ 65.

Lottery.com operates a proprietary online platform to play official, state-sanctioned lottery games.  *Id.* ¶ 63.  On October 18, 2021, Lottery.com filed its proxy statement and prospectus on Form 424B3 (the "Proxy").  *Id.* ¶ 146.  The Proxy included statements concerning Lottery.com's financial performance and compliance with laws and regulations.  *See, e.g. id.* ¶¶ 147-152.  For example, the Proxy disclosed Lottery.com's expected revenue for 2021, that Lottery.com purchased lottery tickets for users geolocated where the lottery is being conducted, and that it believed it was in compliance with applicable laws and regulations.  *Id.* ¶¶ 148, 150, 152. Lottery.com continued to make similar disclosures after the Proxy was filed.  *See, e.g., id.* ¶¶ 154-172.  Those disclosures included statements about Lottery.com's revenue, regulatory and legal compliance, and geolocation technology.  *See, e.g., id.* ¶¶ 156, 166, 168.

On July 6, 2022, Lottery.com disclosed in a Form 8-K that an internal investigation had revealed "issues pertaining to the Company's internal accounting controls" and "instances of non-compliance with state and federal laws concerning the state in which tickets are procured as well as order fulfillment."  *Id.* ¶ 18.  Lottery.com disclosed on July 15, 2022, that its internal investigation had revealed that "it has overstated its available unrestricted cash balance by approximately $30 million and that, relatedly, in the prior fiscal year, it improperly recognized revenue in the same amount."  *Id.* ¶ 19.  Lottery.com subsequently disclosed on July 22, 2022, that

its auditor had determined that its financial statements for 2021 and Q1 2022 should no longer be relied upon. *Id.* ¶ 20. In subsequent disclosures, Lottery.com informed investors that "there is substantial doubt about the Company's ability to continue as a going concern" and that it had furloughed the majority of its employees. *Id.* ¶¶ 21-22.

## B.    Relevant Procedural History

Plaintiffs filed their Amended Complaint on January 23, 2023. The Amended Complaint asserted securities fraud claims against Lottery.com based on alleged misrepresentations and omissions concerning Lottery.com's financial performance and reporting, legal and regulatory compliance, and Sarbanes Oxley certifications.[1] *See, e.g.*, AC ¶¶ 74, 80, 85, 99. With respect to financial performance, the Amended Complaint primarily alleged that Lottery.com had, in 2021, improperly recognized revenue by approximately $30 million based on a sale of affiliate marketing credits. *See, e.g.*, AC ¶ 65.

Defendants moved to dismiss the Amended Complaint. *See, e.g.*, ECF No. 77. On February 6, 2024, the Court granted Defendants' motions. *See generally* Opinion and Order [ECF No. 131] ("MTD Op."). In granting the motions, the Court held that:

- pre-merger statements regarding regulatory compliance were non-actionable puffery, *id.* at 31-34;

- the Proxy's financial projections were protected by the bespeaks-caution doctrine, *id.* at 34-36;

- the Proxy complied with Item 303 of Regulation S-K, *id.* at 36-38;

- the October 21, 2021 Press Release's preliminary revenue results were protected by the bespeaks-caution doctrine, *id.* at 38-40;

---

[1] Specifically, the Amended Complaint asserted claims against Lottery.com for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder. AC ¶¶ 170-174, 179-182.

- Plaintiffs adequately alleged that post-merger financial-performance-related statements were false when made, *id.* at 40-51;

- certain post-merger reports contained material omissions, *id.* at 52-55;

- the SOX certifications were non-actionable statements of opinion, *id.* at 55-57;

- the 2021 Annual Report's discussion of regulatory compliance was non-actionable puffery and statement of opinion, *id.* at 57-59; and

- Plaintiffs did not adequately plead scienter, either by way of motive and opportunity or strong circumstantial evidence of conscious misbehavior or recklessness, *id.* at 60-74.

The Court granted Plaintiffs leave to amend their complaint. *Id.* at 77.[2]

Plaintiffs filed their Third Amended Complaint on June 12, 2024. ECF No. 153. The Third Amended Complaint alleges the same securities fraud claims against Lottery.com as the Amended Complaint. TAC ¶¶ 204-208, 213-216. The alleged misstatements and omissions primarily concern Lottery.com's reporting of revenue, legal and regulatory compliance, and related disclosures regarding geolocation technology. *See, e.g.*, *id.* ¶ 2. The Third Amended Complaint adds references to a Bloomberg Tax article published on March 4, 2024 (the "Bloomberg Article").

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 6778 (2009). "To avoid dismissal under Section 10(b) and 10b-5, a complaint must plausibly allege: (1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind;

---

[2] Plaintiffs filed a Second Amended Complaint on February 27, 2024. ECF No. 136. The parties then requested a stay of Defendants' deadlines to answer or move in response thereto in order to explore mediation, which the Court granted. ECF No. 139. When the mediation did not progress, Plaintiffs sought a lift of the stay and leave to file an amended complaint. ECF No. 147. The Court lifted the stay and set a deadline for the filing of the Third Amended Complaint. ECF No. 148. After Plaintiffs filed the Third Amended Complaint, on Defendants' joint request, the Court extended their deadlines to respond to July 12, 2024. ECF No. 159.

(3) a connection with the purchase or sale of a security; (4) reliance . . .; (5) economic loss; and (6) loss causation." *Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019). Similarly, "[t]o state a claim under Section 14(a) and Rule 14a-9(a), a plaintiff must allege that: (1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiffs' injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Bisel v. Acasti Pharma, Inc.*, 21 Civ. 6051 (KPF), 2022 WL 4538173, at *7 (S.D.N.Y. Sept. 28, 2022) (cleaned up and internal quotation marks omitted). While well-pled factual allegations are accepted as true, this Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

Rule 9(b) requires Plaintiffs to specify the time, place, and contents of each misrepresentation, and "explain why the statements were fraudulent." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012). The PSLRA similarly requires Plaintiffs to allege with particularity "each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). These particularized facts must "giv[e] rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The PSLRA thus "requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).

## ARGUMENT

The Court should grant this motion and dismiss Plaintiffs' claims because (1) Plaintiffs fail to adequately plead the falsity of general statements of legal and regulatory compliance, and (2) Plaintiffs fail to adequately plead scienter.

**I.    Plaintiffs fail to adequately plead the falsity of general statements of legal and regulatory compliance.**

In its MTD Opinion, the Court dismissed Plaintiffs' claims based on alleged misstatements and omissions relating to general regulatory and legal compliance. MTD Op. 31-34, 57-59.  Such statements included that Lottery.com "works closely with state regulators," had "strong working relationships with the regulatory authorities," and Lottery.com "believe[d] that [it was] in compliance with all material domestic and international laws and regulatory requirements applicable to [its] business."  MTD Op. 29, 57.  The Court held that the statements about working with regulators were non-actionable puffery and the statements that Lottery.com believed it was in compliance were non-actionable statements of opinion.  *Id.*

The Third Amended Complaint continues to assert these statements as misrepresentations. *See* TAC ¶¶ 129, 152, 166.  Although the Third Amended Complaint adds more specific allegations regarding requirements for the purchase of lottery tickets,[3] *see, e.g.*, *id.* ¶ 130, the more general statements and belief statements are still non-actionable.  As the Court noted, courts frequently hold that "statements about regulatory compliance and integrity" are "non-actionable puffery." MTD Op. 32-33 (citing cases).  Indeed, the general statements about Lottery.com's work with regulators are still "too general to cause a reasonable investor to rely upon them." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) (quoting *ECA, Loc. 134 IBEW Joint Penson Tr. of Chi. v. JP Morgan Chase Co.,*, 553 F.3d 187, 206 (2d Cir. 2009)); MTD Op. 31.

Statements that Lottery.com believed it was in compliance are statements of opinion. *See In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023) (holding that "language

---

[3] As discussed below, Plaintiffs have not adequately pleaded scienter for these more specific statements.

like 'we believe'" suffices "to render a statement one of opinion"); MTD Op. 58. That is because, as discussed in more detail below regarding scienter, Plaintiffs still "do not allege enough facts to support the inference that," when Lottery made these statements of belief, "Lottery did not actually believe that fact" or "Lottery made [these] statement[s] without undertaking 'some meaningful legal inquiry.'" MTD Op. 59. At most, the Third Amended Complaint simply alleges that *after* the statements were made, Lottery.com discovered instances of non-compliance with purchasing regulations. *See* TAC ¶ 153. That says nothing about what Lottery.com believed *when the statements were made*. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) ("A statement believed to be true when made, but later shown to be false, is insufficient.") (citing *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812-13 (2d Cir. 1996)).

The Court dismissed Plaintiffs' claims based on general statements of compliance and related statements of belief. MTD Op. 34, 59. That dismissal is now law of the case and, because the Third Amended Complaint does not make those statements actionable, they should be dismissed. *See Weslowski v. Zugibe*, 96 F. Supp.3d 308, 315-16 (S.D.N.Y. 2015) (applying law of the case doctrine and dismissing amended complaint which was in large part identical to previously-dismissed original complaint).

## II.    Plaintiffs fail to adequately plead scienter.

As with the Amended Complaint, the Third Amended Complaint fails to adequately allege scienter.

The PSLRA requires a private securities fraud complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *Tellabs*, 551 U.S. at 313; MTD Op. 60. "To satisfy that requirement, a complaint must, with respect to each defendant and 'with respect to each act or omission alleged to [constitute

8

securities fraud], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *In re: Bristol-Myers Squibb Company CVR Sec. Litig.*, No. 21-CV-8255, 2023 WL 2308151, at *3 (S.D.N.Y. March 1, 2023) (quoting *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).  The "strong inference" must be "more than merely plausible or reasonable."  *Tellabs*, 551 U.S. at 314.  Using an "inherently comparative" inquiry, the Court "must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."  *Id.* at 323.  A complaint alleging securities fraud will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*  When a corporation is a defendant, a plaintiff must plead "facts that give rise to a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) (per curiam) (quotation marks and citation omitted); MTD Op. 60-61.

The scienter pleading requirement may be satisfied in one of two ways: "by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."  *ATSI Comms.*, 493 F.3d at 99; *accord* MTD Op. 60.  Here, the Third Amended Complaint satisfies neither.

### A.    Plaintiffs have not sufficiently alleged motive and opportunity.

To show that defendants had motive and opportunity, Plaintiffs must allege that the defendant "benefitted in some concrete and personal way from the purported fraud."  *See ECA,* 553 F.3d at 198 (internal quotation marks omitted).  "[G]eneral motives common to most corporate officers do not constitute 'motive' for the purpose of establishing scienter."  *Francisco v. Abengoa,* S.A., 559 F. Supp. 3d 286, 317 (S.D.N.Y. 2021).  "Therefore, the desire for the corporation to

9

appear profitable and the desire to keep stock prices high to increase officer compensation do not suffice to establish motive." *Id.*

After a thorough analysis, this Court held that the Amended Complaint failed to adequately plead motive and opportunity. MTD Op. 66. The same is true of the Third Amended Complaint: it merely adds detail to the allegations of executive compensation already determined to be insufficient. For example, the Third Amended Complaint adds allegations about Defendants DiMatteo's, Dickinson's, and Clemenson's potential compensation after the completion of the Business Combination, *compare* AC ¶¶ 27-29, 139-41 *with* TAC ¶ 36-38, 72-74; Defendant Komissarov's motivation to complete the Business Combination, *compare* AC ¶ 106 *with* TAC ¶¶ 68-70; and the Individual Defendants' rush into the Business Combination, *see* TAC ¶¶ 133-34.

But as in the Amended Complaint, there are no allegations in the Third Amended Complaint that any Individual Defendant "allegedly [made] a misrepresentation in order to sell their own shares at a profit," which would adequately plead motive. *See ECA*, 553 F.3d at 198. Instead, the new allegations in the Third Amended Complaint are more of the same that the Court already rejected. As the Court noted, "the existence, without more, of executive compensation dependent upon stock value does not give rise to a strong inference of scienter." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995); *see also* MTD Op. 63. Simply because the Third Amended Complaint may now include more details regarding certain executives' compensation does not transform that compensation into a motive to commit securities fraud. As before, Plaintiffs have not established that Lottery.com or any other Defendant "benefitted in some concrete and personal way" from the purported fraud as required to properly allege motive and opportunity. *See Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000).

10

**B.    Plaintiffs have not sufficiently alleged strong circumstantial evidence of conscious misbehavior or recklessness.**

Just as they failed to adequately plead motive and opportunity, Plaintiffs also failed to plead "strong circumstantial evidence of conscious misbehavior or recklessness."  To do so, a plaintiff must allege either actual intent or "conscious recklessness — *i.e.*, a state of mind approximating actual intent, and not merely a heightened form of negligence."  *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015).  "More specifically, a plaintiff must allege, 'at the least,' that the defendant engaged in 'conduct which was highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Bristol-Meyers*, 2023 WL 2308151, at *4 (quoting *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)). Because, as discussed above, there is no adequately alleged motive, the "strength of the circumstantial allegations must be correspondingly greater." *ECA*, 553 F.3d at 199.

"At least four circumstances may give rise to a strong inference of the requisite scienter: where the complaint sufficiently alleges that the defendants (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *ECA*, 553 F.3d at 199.  "'[W]here scienter is based on a defendant's knowledge of and/or access to certain facts,' Plaintiffs must allege facts showing that (i) 'specific contradictory information was available to the defendants' (ii) 'at the same time they made their misleading statements.'" *In re Citigroup Sec. Litig.*, No. 20 CIV. 9132 (LAP), 2023 WL 2632258, at *22 (S.D.N.Y. Mar. 24, 2023) (quoting *In re Adient plc Sec. Litig.*, No. 18-CV-9116 (RA), 2020 WL 1644018, at *27 (S.D.N.Y. Apr. 2, 2020)) (emphasis in original). "And 'where plaintiffs contend defendants had access to contrary facts, they must specifically

11

identify the reports or statements containing this information.'" *Id.* (quoting *Novak*, 216 F.3d at 309). Similarly, where scienter is based on a defendant's failed duty to monitor, plaintiffs must specifically identify "any reports or statements that would have come to light in a reasonable investigation and that would have demonstrated the falsity of the allegedly misleading statements." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008).

As noted above, here, Plaintiffs' claims are based on alleged statements or omissions concerning (1) revenue recognition, (2) legal and regulatory compliance, and (3) geolocation technology. For each category of these alleged misstatements or omissions, Plaintiffs have failed to adequately allege scienter.

### 1.    Revenue Recognition

Plaintiffs allege that Lottery.com engaged in a "Sham Transaction" by which it improperly recognized more than $30 million of revenue in 2021 and early 2022. TAC ¶¶ 75-89. Plaintiffs also allege Lottery.com engaged in "other acts of improper revenue recognition" when it improperly recorded a $5 million transaction with a customer, a promissory note with that customer, and $2 million of prepaid advertising credits. *Id.* ¶¶ 90-91. But Plaintiffs fail to adequately plead that any Defendant engaged in these transactions with the required state of mind.

As an initial matter, Plaintiffs fail to adequately plead any of the circumstances that may give rise to a strong inference of scienter. As discussed above regarding motive and opportunity, Plaintiffs do not plead that any Defendant "benefitted in a concrete and personal way from the purported fraud." *See ECA*, 553 F.3d at 199. Obtaining a higher share price or executive compensation is not enough. *Acito*, 47 F.3d at 54; MTD Op. 63. Plaintiffs also do not plead that any Defendant engaged in "deliberately illegal behavior." *See ECA*, 553 F.3d at 199. At most, Plaintiffs plead the Defendants "should have known," but as discussed below, that is not enough.

Plaintiffs also have not adequately alleged that Lottery.com had access to specific contradictory information at the same time its revenues were incorrectly reported.  *See In re Citigroup*, 2023 WL 2632258, at \*22 (regarding access to information); *see also Teamsters Local 445 Freight Div. Pension Fund*, 531 F.3d at 196 (regarding duty to monitor).

Plaintiffs attempt to plead scienter in part by reiterating allegations that this Court has rejected.  For example, Plaintiffs continue to cite the size of the transactions as evidence of scienter. TAC ¶¶ 87 n.12, 103.  In granting Defendants' motions to dismiss the Amended Complaint, the Court found such allegations insufficient, noting that "while the magnitude of a financial restatement is 'certainly a relevant factor, it is well established that the size of the fraud alone does not create an inference of scienter.'"  MTD Op. 70 (quoting *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 366 (S.D.N.Y. 2011)).  The Court held that the Amended Complaint was missing "any allegation that [Defendants] had any contemporaneous basis to believe that the information they related was incorrect."  *Id.* at 71 (quoting *Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 251 (S.D.N.Y. 2012)).  The same is true of the Third Amended Complaint.

Plaintiffs also continue to rely on terminations and resignations of Lottery.com's executives.  TAC ¶¶ 101-102, 104-106.  As before, "the terminations and resignations 'are at least as consistent with punishing those at the helm for their poor judgment and leadership' as with their 'relating to concocting a scheme to defraud shareholders.'"  MTD Op. 72 (quoting *Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp., PLC*, 902 F. Supp. 2d 329, 343 (S.D.N.Y. 2012), *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383 (2d Cir. 2015)).

Plaintiffs' allegations that Defendants simply "must have known" also persist.  TAC ¶¶ 9, 87-88, 92-99.  "But such allegations are not enough."  MTD Op. 68; *see also In re Citigroup*, 2023

WL 2632258, at *22 ("To establish an inference of scienter, Plaintiffs must do more than allege that the [defendants] had or should have had knowledge of certain facts contrary to their public statements simply by virtue of their high-level positions.") (quoting *Lipow v. Net 1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015)).

Plaintiffs have, in the Third Amended Complaint, added new allegations in an attempt to adequately plead scienter of the "Sham Transaction."  Plaintiffs now allege that the "Company's executives were aware of the nature and specifics of these transactions," TAC ¶¶ 9, 77; Defendant Dickinson was the signatory of a loan used to finance a customer's purchase of lottery service credits, *id.* ¶¶ 9, 77, 89; Lottery.com did not disclose the loan, *id.* ¶ 9 n.2, 89; the service credits were non-transferable even though the company sent invoices, *id.* ¶¶ 12, 84, 87; Lottery.com cancelled all transactions with the customer, *id.* ¶¶ 85-86; and Lottery.com's reporting did not comply with GAAP, *id.* ¶¶ 92-99.  None of these allegations suffice.

Plaintiffs' allegations that executives were aware of the "nature and specifics of these transactions" is conclusory and does not satisfy the required heightened pleading standards.  *See, e.g.*, *In re Axis Cap. Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 586 (S.D.N.Y. 2006) (noting that "bald allegations of a scheme … are far too conclusory to satisfy the requirements of Rule 9 and the PSLRA).  In any event, merely being aware of the "nature and specifics" of the transactions does not equate to awareness that the transactions (or how they would be reflected in the financial statements) were wrong or illegal.  *See Stratte-McClure*, 776 F.3d at 106 (requiring "a state of mind approximating actual intent").

Plaintiffs' allegations about Defendant Dickinson signing a loan are also inadequate.  Plaintiffs admit that the loan agreement was entered into on January 4, 2022.  TAC ¶¶ 76 & fn. 9, 108.  But many of the alleged misstatements of revenue occurred *before* that date or concerned

14

revenue *before* the loan was entered into. *See id.* ¶¶ 147-48 (alleging misstatement dated October 18, 2021); *id.* ¶ 154 (alleging misstatement dated October 21, 2021); *id.* ¶¶ 78, 156, 158, 160 (alleging misstatements dated November 15, 2021); *id.* ¶¶ 79, 162, 164 (alleging misstatements of 2021 revenue). The loan agreement cannot suffice to show scienter for those alleged misstatements because the agreement had not yet been entered into. *See, e.g.*, *In re Citigroup*, 2023 WL 2632258, at *22 (noting that contradictory information must be available "at the same time" as the misleading statements). The same is true of Plaintiffs' allegations that Lottery.com failed to disclose the loan: there was no loan to disclose on 2021 financial statements, and there was none to disclose at all before January 4, 2022. Even for the few alleged misstatements of revenue in 2022, *see, e.g.*, TAC ¶ 80, there are no allegations that connect knowledge of the loan agreement to knowledge of improper revenue reporting or deliberate illegality.

Although Plaintiffs allege that the service credits that were the subject of the so-called "Sham Transaction" were non-transferable, *e.g.*, *id.* ¶ 84, Plaintiffs do not plausibly allege anyone at Lottery.com knew at the time that they were non-transferable. To the contrary, the Third Amended Complaint alleges that Lottery.com *later* "discovered that the service credits it had sold to the customer were non-transferable"– "[d]uring 2022." *Id.* ¶ 10. In fact, Plaintiffs' allegation that Lottery.com invoiced the customer in 2021 and the first quarter of 2022, *id.* ¶ 87, suggests that Lottery.com continued to believe throughout that time that the credits were transferable and the transaction was legitimate. Plaintiffs' bald assertion that the "Individual Lottery Defendants…knew that their purported service credits were non-transferable," *id.* ¶ 84, is simply conclusory and unsupported.

Plaintiffs' allegations about Lottery.com's after-the-fact treatment of these transactions fare no better. *See id.* ¶¶ 85-86. That Lottery.com later cancelled the transactions reveals nothing

15

about the company's or its executives' state of mind when the transactions occurred and were reported. *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 472–73 (S.D.N.Y. 2008) ("[I]t is well settled that mere fact of a restatement of earnings does not support a strong, or even a weak, inference of scienter.") (citing *In re Bristol–Myers Squibb Sec. Litig.*, 312 F.Supp.2d 549, 560 (S.D.N.Y. 2004)).

Plaintiffs' new allegations about GAAP compliance also fail to adequately plead scienter. "[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim. Only where such allegations are coupled with evidence of corresponding fraudulent intent, might they be sufficient." *Novak*, 216 F.3d at 309 (cleaned up; internal citations omitted); *see also In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 703 (S.D.N.Y. 2000). Here, there is no evidence of corresponding fraudulent intent.

Moreover, many accounting judgments are inherently subjective. For example, ASC 606, which Plaintiffs rely on, permits a company to recognize revenue from sales to customers when it is "probable" the seller "will collect substantially all of the consideration to which it will be entitled." ASC 606-10-25-1.[4] Management must "assess[] … whether the customer has the ability and intention to pay the consideration," which "requires" management "to use judgment and consider … the entity's customary business practices and its knowledge of the customer." ASC 606-10-25-1(e), 606-10-55-3B. Because this is a subjective standard based on management's beliefs, compliance with ASC 606 is a matter of opinion. *See In re Eargo, Inc. Sec. Litig.*, No. 21-cv-08597-CRB, 2023 WL 1997918, at *7 (N.D. Cal. Feb. 14, 2023) ("ASC 606 tolerate[s] a range

---

[4] ASC 606 may be accessed through the Financial Accounting Standards Board's website at https://asc.fasb.org/606/showallinonepage.

16

of reasonable treatments, leaving the choice among alternatives to management."). The Third Amended Complaint does not adequately allege that any Defendant knowingly violated GAAP.

Finally, the Bloomberg Article does not save Plaintiffs.[5] The article describes the transactions that were the subject of Lottery.com's corrective disclosures, but adds little to nothing to the question of scienter. For example, it describes that "company officials arranged for a courier to collect a check from the buyer two days before New Year's Eve." TAC Ex. A [ECF No. 153-1] at 6. But a company's arranging to be paid before year's end does not indicate intent to commit fraud. *See Tellabs*, 551 U.S. at 324 (requiring inference of scienter to be "at least as compelling as any opposing inference one could draw from the facts alleged"). The article's reporting of an unnamed member of the management team saying the transaction was a "check kite" also does not plead contemporaneous scienter because that statement was, by the article's own admission, "a year later." *Slayton v. Am. Express Co.*, 604 F.3d 758, 776 (2d Cir. 2010) ("[P]laintiffs may not plead fraud by hindsight.").

Rather than providing support for scienter, the Bloomberg Article actually supports a finding there was none. It states that the service credits at issue "*turned out to be* nontransferable." TAC Ex. A [ECF No. 153-1] at 5. As noted above, Lottery.com realized *later* that the credits were non-transferable; that is no evidence of contemporaneous knowledge of a fraud.

Regarding the "other acts of improper revenue recognition," Plaintiffs have alleged only that Lottery.com's financials were restated. *See* TAC ¶¶ 90-91. But again, a restatement does not support an inference of scienter. *See City of Brockton Ret. Sys.*, 540 F. Supp. 2d at 472–73. Beyond

---

[5] Plaintiffs' references to and reliance on the Bloomberg Article are subject to the same pleading standards as the allegations in the Third Amended Complaint. *See, e.g.*, *In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 690 (S.D.N.Y. 2008) ("[N]ewspaper articles should be credited only to the extent that other factual allegations would be—if they are sufficiently particular and detailed to indicate their reliability.").

the restatement itself, Plaintiffs have alleged nothing deliberately illegal about these transactions. *See ATSI Comms.*, 493 F.3d at 99.

Plaintiffs have, therefore, failed to adequately allege scienter based on statements and omissions of Lottery.com's revenue recognition and financial performance.

### 2.    Legal and Regulatory Compliance

Plaintiffs also do not adequately plead scienter of the statements regarding legal and regulatory compliance and ticket printing. While Plaintiffs allege that tickets were illegally being printed or purchased in jurisdictions other than where the lottery was taking place, *see, e.g.*, TAC ¶ 151, Plaintiffs do not adequately allege that such printing was *deliberately* illegal. Instead, Plaintiffs refer only to an after-the-fact internal investigation that revealed instances of non-compliance with legal and regulatory requirements, *id.* ¶¶ 14, 131, 139; a board member's alleged statement, as reported in the Bloomberg Article, in June 2022 that the company was breaking the law, *id.* ¶ 143; and a subsequent disclosure of the internal investigation, *id.* ¶¶ 131, 153, 167.

None of these allegations are sufficient because they merely attempt to establish fraud in hindsight. Plaintiffs plead that the board member's alleged statement about breaking the law was in June 2022. *Id.* ¶ 143. Yet the alleged misstatements/omissions about regulatory and legal compliance were in October 2021 (the Proxy), *id.* ¶¶ 130, 150, 152, and April 2022 (the Annual Report), *id.* ¶¶ 129, 166—*before* the alleged board member's statement. Similarly, the disclosure in July 2022 of an internal investigation that revealed instances of non-compliance with state and federal laws says nothing about whether the alleged printing of tickets in different states was deliberately illegal when it was done and at the time of the disclosures months earlier.[6]  *See*

---

[6] The July 2022 Form 8-K notes that "a report on the findings of the independent investigation" was "on June 30, 2022." Decl. of Amar Ali, Ex. 1 at 1. That is *after* the alleged misstatements and omissions concerning compliance.

*Slayton*, 604 F.3d at 776 (rejecting fraud by hindsight); MTD Op. 12.  A more reasonable explanation is that Lottery.com did not know of any instances of non-compliance until the internal investigation, which prompted the board member's comment in June 2022 and public disclosure shortly thereafter.  This is not scienter of securities fraud.

None of Plaintiffs' other allegations related to legal and regulatory compliance suffice, either.  Plaintiffs allege that the practice of printing tickets other than where the lottery was located was wide-spread.  TAC ¶¶ 141, 153, 167.  But again, "[w]hile certainly a relevant factor, it is well established that the size of the fraud alone does not create an inference of scienter."  *In re PXRE Group, Ltd., Sec. Litig.*, 600 F.Supp.2d 510, 545 (S.D.N.Y. 2009); *see also* MTD Op. 70. Similarly, that a practice is alleged to be "wide spread" within a company is not a basis to infer scienter.

That Lottery.com's SEC filings "repeatedly stressed the importance of legal compliance," TAC ¶ 143, also cannot establish scienter.  Plaintiffs have failed to sufficiently allege that Lottery.com knew before those filings were made that the statements were false.  As courts have held, a defendants' allegedly false statements "— the subject of the purported fraud — cannot be used to reinforce any inference [of scienter] because there was no *prior* inference."  *In re Henry Schein, Inc. Sec. Litig.*, No. 18-CV-01428 (MKB), 2019 WL 8638851, at *22 (E.D.N.Y. Sept. 27, 2019) (emphasis added) (rejecting argument that repeated statements showed scienter).

Finally, Plaintiffs' allegation that Lottery.com was a small company is also insufficient. *See* TAC ¶ 143.  "The size of the company does not give rise to a 'strong inference' that [a defendant] acted with a guilty state of mind."  *Cohen v. Kitov Pharms. Holdings, Ltd.*, No. 17 CIV. 0917 (LGS), 2018 WL 1406619, at *8 (S.D.N.Y. Mar. 20, 2018).

At bottom, Plaintiffs allege merely that Defendants must have known about the alleged noncompliance with lottery laws and regulations.  As this Court recognized, "such allegations are

19

not enough." MTD Op. 68. Plaintiffs have, therefore, failed to adequately allege scienter based on statements and omissions about Lottery.com's legal and regulatory compliance.

### 3. Geolocation Technology

The Third Amended Complaint alleges that "while Lottery had said in SEC filings that it had geolocation technology to confirm that web-based customers were in the state where they said they were located, this turned out to be false." TAC ¶ 142; *see also id.* ¶¶ 15, 129, 131, 150, 168.

Plaintiffs have not adequately alleged scienter for these alleged misstatements or omissions. There are no allegations that any Defendant "benefitted in a concrete and personal way from the purported fraud" concerning geolocation technology. *See ECA*, 553 F.3d at 199. There is no allegation that Lottery.com "engaged in deliberately illegal behavior" regarding the technology. *See id.* And Plaintiffs have not alleged that Lottery.com had access to specific contradictory information at the same time the statements about geolocation technology were made. *See In re Citigroup*, 2023 WL 2632258, at \*22; *see also Teamsters Local 445 Freight Div. Pension Fund*, 531 F.3d at 196 (regarding duty to monitor).

Plaintiffs do plead that "[a]ccording to Lottery's internal investigation, 'Anybody using the web-based system, as opposed to the mobile app, could skirt any jurisdictional requirement for ticket purchases, according to the investigation and interviews.'" TAC ¶ 142; *see also id.* ¶ 169. But there are no allegations that Lottery.com knew the results of the internal investigation before the alleged misstatements about the technology were made. Again, Plaintiffs inadequately plead scienter in hindsight. *Slayton*, 604 F.3d at 776; MTD Op. 12

Plaintiffs have not, therefore, adequately alleged that when Lottery.com's statements regarding geolocation technology were made, Lottery.com knew such statements were false.

20

**CONCLUSION**

The Third Amended Complaint continues to assert claims based on statements of general legal and regulatory compliance that the Court previously held did not satisfy the falsity element of securities fraud claims. Plaintiffs made no effort to remedy that defective pleading, and so those claims should be dismissed. While Plaintiffs did attempt to address their deficient scienter allegations, their pleading is still insufficient because there are no adequate allegations of motive and opportunity or of any contemporaneous intent to defraud. Lottery.com respectfully requests that the Court dismiss Plaintiffs' claims with prejudice.

Respectfully submitted,

*/s/ Lars L. Berg*
Lars L. Berg
Texas State Bar No. 00787072
lars.berg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 878-3503
Facsimile: (817) 878-9280
*Admitted Pro Hac Vice*

Steven P. Benenson
New York State Bar No. 5378773
SPBenenson@pbnlaw.com
PORZIO, BROMBERG & NEWMAN, PC
1675 Broadway, Suite 1810
New York, New York  10019-3800
(212) 265-6888

**ATTORNEYS FOR LOTTERY.COM, INC.**

21

**CERTIFICATE OF WORD COUNT**

Pursuant to the Court's Individual Rules of Practice in Civil Cases, I hereby certify that this memorandum contains less than 8,750 words.

*/s/ Steven P. Benenson*
Steven P. Benenson