aUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE LOTTERY.COM, INC. SECURITIES
LITIGATION

Case No. 1:22-cv-07111 (JLR)

**ORAL ARGUMENT REQUESTED**

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MATTHEW CLEMENSON AND RYAN DICKINSON'S MOTION TO DISMISS THIRD AMENDED CLASS COMPLAINT AND SECOND AMENDED HOFFMAN COMPLAINT

Franklin Monsour Jr.
Kenton Atta-Krah
Christopher J. Whalen
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue,
New York, NY 10017
Tel: (212) 547-5400
fmonsour@mwe.com
katta-krah@mwe.com
chwhalen@mwe.com

*Attorneys for Defendants*
*Matthew Clemenson and Ryan Dickinson*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. PRELIMINARY STATEMENT............................................................................................1

III. FACTUAL BACKGROUND ...............................................................................................3

    A. Lottery.com is a dynamic technology company offering lottery-related products.......................................................................................................3

    B. Lottery.com alerts investors to issues with its internal controls and compliance. .............................................................................................................4

IV. ARGUMENT.........................................................................................................................6

    A. The Rules of Civil Procedure and the PSLRA require detailed allegations for a securities fraud claim to survive dismissal...................................6

    B. Plaintiffs fail to meet the PSLRA's high standards for alleging scienter and falsity to support their Section 10(b) claim. .........................................8

        1. Plaintiffs have not alleged sufficient circumstantial evidence of knowledge or recklessness. .........................................................9

    C. Plaintiffs' Section 14(a) and Rule 14a-9 claim fails. .............................................23

    D. The Section 20(a) claims cannot survive...............................................................24

V. CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
351 F. Supp. 2d 79 (S.D.N.Y. 2004)................................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)...............................................................................................7, 8

*AutoLotto, Inc., d/b/a Lottery.com v. J. Streicher Financial, LLC*,
Case No. 2022-0661 (Del. Ch. Ct. Jul. 29, 2022) .....................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................6

*Bond Opportunity Fund v. Unilab Corp.*,
No. 99 Civ. 11074 (JSM), 2003 WL 21058251 (S.D.N.Y. May 9, 2003)................................8

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014)................................................................................................7

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020)................................................................................14

*Dekalb Cty. Pension Fund v. Transocean Ltd.*,
817 F.3d 393 (2d Cir. 2016), *as amended* (Apr. 29, 2016).......................................................7

*Dobina v. Weatherford Int'l Ltd.*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012)..........................................................................2, 18, 19

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009).................................................................................................7

*In re Cronos Grp. Inc. Sec. Litig.*,
2023 WL 8003324 (E.D.N.Y. Nov. 11, 2023)........................................................................17

*In re Lottery.com, Inc. Sec. Litig.*,
No. 1:22-CV-07111 (JLR), 2024 WL 454298 (S.D.N.Y. Feb. 6, 2024) (ECF
131) ................................................................................................................ *passim*

*In re Optionable Sec. Litig.*,
577 F. Supp. 2d 681 (S.D.N.Y. 2008)...............................................................................20

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
195 F. Supp. 3d 528 (S.D.N.Y. 2016) ...............................................................8, 24

*Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*,
969 F.2d 1384 (2d Cir. 1992) ...................................................................................12

*Oklahoma L. Enf't Ret. Sys. v. Papa John's Int'l, Inc.*,
444 F. Supp. 3d 550 (S.D.N.Y. 2020) ......................................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ...............................................................................................7, 9

*Tung v. Bristol-Myers Squibb Co.*,
412 F. Supp. 3d 453 (S.D.N.Y. 2019) .....................................................................15

**Statutes**

15 U.S.C. § 78u-4(b)(1) ................................................................................................7

15 U.S.C. § 78u-4(b)(2) .............................................................................................7, 8

Exchange Act § 10(b) .........................................................................................7, 8, 10

Exchange Act § 14(a) .................................................................................................7, 8

Exchange Act § 20(a) .....................................................................................................8

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ..............6, 7, 8, 10

**Other Authorities**

Fed. R. Civ. P. 8(a) ........................................................................................................6

Fed. R. Civ. P. 9(b) ........................................................................................................7

"From SPAC Dreams to Riviera Mirage: How Lottery.com Imploded" ............................ *passim*

## I.  INTRODUCTION

Defendants Matthew Clemenson ("Clemenson") and Ryan Dickinson ("Dickinson") respectfully submit this memorandum of law in support of their Motion to Dismiss the Third Amended Complaint ("TAC") (ECF 153) filed by lead plaintiffs RTD Bros LLC ("Class Plaintiffs") and the Second Amended Complaint ("Hoffman SAC") by *pro se* plaintiff Harold Hoffman ("Hoffman," together with Class Plaintiffs, the "Plaintiffs") (ECF 154).[1]  Given that the two complaints are virtually identical, citations for the "Plaintiffs" are to the TAC. Clemenson and Dickinson incorporate as if set forth herein the applicable arguments and authorities in co-defendants' motions to dismiss.

## II.  PRELIMINARY STATEMENT

In the TAC, Plaintiffs remain unable to overcome the deficiencies that led to the Court's dismissal of the exact same claims.  Most notably, Plaintiffs still offer no particularized statements by either Clemenson or Dickinson.  Indeed, as to Clemenson specifically, Plaintiffs' allegations have not changed; they still allege merely that he signed one annual report submitted to the SEC in April 2022 and resigned from Lottery.com (or the "Company").  The Court already rejected those allegations as a basis for the requisite scienter.  As for Dickinson, Plaintiffs again repeat the same allegations concerning the Company's sale of $30 million in LotteryLink advertising credits and a subsidiary's line of credit, adding that Dickinson signed the Promissory Note and Business Loan Agreement associated with the transaction.  The other area of focus for Plaintiffs' renewed allegations concerns statements regarding the Company's legal and

---

[1] Hoffman uses the TAC as an almost verbatim basis for his complaint.  The only material changes are to the definition of parties, Hoffman's omission of claims unique to the Class, *compare* TAC at 78 *with* Hoffman SAC at 76 (omitting allegations regarding special damages suffered by shareholders eligible to vote at the October 28, 2021 special meeting); *compare* TAC at 80-81 *with* Hoffman SAC at 78 (omitting class action allegations).  Hoffman purportedly "purchased 20,000 shares of Lottery.com on November 22, 2021."  Hoffman SAC ¶ 30.

regulatory compliance related to ticket printing and order fulfillment practices and representations.  TAC ¶ 3.

But Plaintiffs fail to fill the gaps in their prior complaint: "[w]hat is noticeably missing from the [Amended Class-Action Complaint and the Hoffman Complaint] is any allegation that [Defendants] had any contemporaneous basis to believe that the information they [restated] was incorrect . . . ."  *See In re Lottery.com, Inc. Sec. Litig.*, No. 1:22-CV-07111 (JLR), 2024 WL 454298, at *34 (S.D.N.Y. Feb. 6, 2024) (ECF 131) (the "Opinion and Order") (quoting *Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 251 (S.D.N.Y. 2012) (alterations in the original)).  Plaintiffs still rely on a grab-bag of circumstantial allegations, which remain more consistent with mistake and mismanagement than knowing fraud.

As to the compliance allegations, which the Court previously held failed to satisfy falsity (not even reaching the scienter requirement), Plaintiffs devote their efforts to incorporating unsubstantiated and unreliable allegations from a March 4, 2024, Bloomberg Tax article, "From SPAC Dreams to Riviera Mirage: How Lottery.com Imploded" (the "Bloomberg Article").  TAC ¶ 2 & Ex. A (ECF 153-1).  As discussed below, this article relies on unnamed sources discussing privileged information from an internal investigation—which presumably neither Clemenson, Dickinson, nor Plaintiffs will ever be able to review, let alone rely on—and it attributes nothing to Clemenson or Dickinson.  Plaintiffs rely on the Bloomberg Article in focusing on statements in the business combination's Proxy Statement (the "Proxy") and an annual report filed with the SEC about the geolocation and geofencing technology the Company employed to meet its legal and regulatory obligations to sell tickets (the "2021 Annual Report").[2] But this is old hat, and does nothing to threaten the Court's prior reasoning that the statements

---

[2] Form 10-K for the 2021 fiscal year, filed with the SEC on April 1, 2022.

about compliance were text-book puffery and shrouded in cautionary language.  Plaintiffs still offer nothing demonstrating that these statements were knowingly false.

Clemenson and Dickinson thus ask the Court to dismiss the TAC and the Hoffman SAC with prejudice.

## III.    FACTUAL BACKGROUND

Because Dickinson and Clemenson bring this motion under Rule 12(b)(6), this memorandum assumes the truth of all non-conclusory factual allegations in the TAC.  The TAC arises out of Lottery.com's public disclosures in 2022 of deficiencies related to internal controls and compliance with state and federal lottery regulations.

### A.    Lottery.com is a dynamic technology company offering lottery-related products.

Lottery.com is a Texas-based publicly owned technology company whose common stock is traded on the Nasdaq exchange.  *See* TAC ¶¶ 35, 63.  The Company is the result of the combination of two predecessor companies (the "Business Combination"):  Trident Acquisitions Corp. ("TDAC") and AutoLotto, Inc ("AutoLotto").  *See id.* ¶¶ 5, 35, 63–65.  Following the Business Combination, Dickinson served as the Company's President, Treasurer and later as acting Chief Financial Officer.  *Id.* ¶ 37.  Clemenson served as Lottery.com's Chief Commercial Officer, and later Chief Revenue Officer, as well as on the Board of Directors.  *See id.* ¶ 38. Anthony DiMatteo III served as CEO and a director ("DiMatteo," collectively with Clemenson and Dickinson, the "Individual Lottery Defendants").  *Id.* ¶¶ 27, 29.  Vadim Komissarov served as CEO and a director of TDAC before the Business Combination ("Komissarov," together, with Lottery.com, and the Individual Lottery Defendants, are hereinafter referred to as the "Defendants").  TAC ¶¶ 41–43.

3

The Company provides access to lottery games to consumers in the U.S. and around the world. *See* TAC ¶¶ 35, 63. Its operations include facilitating the purchase of lottery tickets through its proprietary app and websites, and selling credits to marketing partners. *Id.* ¶ 63. For users located in the U.S., Lottery.com used geolocation technology known as "geofencing" to help comply with federal regulations requiring it to "only purchase[] lottery games for users geolocated to be physically situated within the U.S. state or jurisdiction where the lottery game they are purchasing is being conducted." *Id.* ¶ 130.[3]

Plaintiffs allege that the Proxy and prospectus soliciting approval for the Business Combination contained misstatements. *See* TAC ¶¶ 146–53. The Proxy was allegedly "signed by Komissarov." *Id.* ¶ 146. The TAC also identifies purportedly false statements underlying Komissarov's reasons for approving the Business Combination. *Id.* ¶ 148.

### B.    Lottery.com alerts investors to issues with its internal controls and compliance.

According to Plaintiffs, Lottery.com and its officers also made a series of false statements following the issuance of the Proxy. *See* TAC ¶¶ 154–73. The TAC charges that statements about Lottery.com's compliance, financial results, and projections were false because Defendants misrepresented or failed to disclose that Lottery.com "(i) . . . lacked adequate internal accounting controls, including controls over financial reporting of cash and revenue, (ii) the Company was improperly recognizing revenue and (iii) that as such, the Company's financial results were materially overstated." *Id.* ¶¶ 155, 157, 159. The TAC also alleges that the "Company was claiming it had cash that it did not have . . . ." *E.g., id.* ¶ 163.

---

[3] "Geofencing" is a type of geolocation technology where a mobile app or software uses geolocation technology to create a defined geographical boundary known as a geofence. TAC ¶ 15 n. 3.

The TAC identifies several of these allegedly false statements.  For example, a November 2021 quarterly Form 10-Q noted errors in historical financial statements and stated that the company's "certifying officers had concluded that, due solely to the material weakness identified," which related to particular SEC guidance, certain financials needed to be restated and Lottery.com's controls were not effective.  *Id*. ¶¶ 158.

In March 2022, Lottery.com issued a press release, also attached to a Form 8-K filed with the SEC, reporting the Company's strong financial results for the fourth quarter and full year 2021.  *Id*. ¶ 162.  The reported results included $68.5 million in revenue for 2021.  *Id*.  These statements reported cash for the fourth quarter of 2021 of $62.6 million.  *Id.*

Lottery.com's April 1, 2022, Form 10-K filing, signed by Clemenson and Dickinson, among others, "reiterated the financial results released the prior day" in a Form 8-K reporting significant increases in revenue and cash from the prior year.  *Id*. ¶ 162.  That same April 1, 2022, Form 10-K also disclosed a material weakness in internal controls that "management has identified," noting that the weakness related to the number of personnel with an appropriate level of knowledge and experience in the type of accounting the Company's transactions involved.  *Id*. ¶ 164.

The TAC alleges that the conclusions reached in these earlier statements—that, apart from the specific deficiencies the Company identified, Lottery.com's compliance efforts and internal controls were robust and sound—were false.  A July 6, 2022, Form 8-K filed with the SEC disclosed the findings of an internal investigation that there had been "instances of non-compliance with state and federal laws concerning the state in which [lottery] tickets are procured," as well as "issues pertaining to the Company's internal accounting controls."  *Id*. ¶ 180.  That same filing disclosed that the Board had terminated Dickinson.  *Id*.  A week and a half

5

later, another Form 8-K filed with the SEC announced that Clemenson had resigned from his role. *Id.* ¶ 182. The same filing disclosed that Lottery.com had overstated its "available unrestricted cash balance by approximately $30 million" and "improperly recognized revenue" related to the sale of LotteryLink advertising credits. *See id.* In connection with the sale of credits, a Company subsidiary secured a $30 million line of credit evidenced by a $30 million promissory note (the "Promissory Note") that Dickinson signed as President. TAC ¶¶ 76–77, 76 n. 9, 83, 108. The Company later "discovered that the service credits were non-transferable" leading the Company to "cancel[] the transaction" and reverse revenue associated with it. TAC ¶ 83, 108.

The TAC alleges that Lottery.com's stock value fell significantly over the course of July 2022 while the accounting and compliance deficiencies were being disclosed. *See id.* ¶¶ 180–87.

## IV. ARGUMENT

### A. The Rules of Civil Procedure and the PSLRA require detailed allegations for a securities fraud claim to survive dismissal.

For the Complaint to proceed in the face of a Rule 12(b)(6) motion, it must satisfy both the plausibility requirements of Rule 8(a) and the heightened particularity requirements of Rule 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA").

Under Rule 8(a), a plaintiff must plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Those "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and dismissal is required. *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

6

A complaint alleging securities fraud must also "satisfy the heightened pleading requirements of the PSLRA and Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud." *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)).  First, Rule 9(b) requires complaints to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  Second, the Reform Act requires Plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . [to] state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  Crucially, the PSLRA also requires Plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind."  *Id*. § 78u-4(b)(2)(A).

To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, Plaintiffs must allege, among other things, "a material misrepresentation or omission by the defendant . . . [and] scienter."  *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014) (citation omitted).

Section 14(a) of the Exchange Act prohibits "solicitation ... made by means of any proxy statement . . . containing any statement which . . . is false or misleading with respect to any material fact."  *Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 397 (2d Cir. 2016), *as amended* (Apr. 29, 2016).  Courts within this circuit apply the PSLRA's requirements for plaintiffs to "plead with particularity facts that give rise to a strong inference of negligence on

7

the part of all Defendants" to Section 14(a) claims as well.  *Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ. 11074 (JSM), 2003 WL 21058251, at *4 (S.D.N.Y. May 9, 2003).

Last, to advance a claim under Section 20(a) of the Exchange Act, Plaintiffs must show "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *ATSI*, 493 F.3d at 108.  "Most courts in this district have held that . . . culpable participation is a scienter requirement for which a plaintiff must allege some level of culpable participation at least approximating recklessness in the section 10(b) context in order to survive a motion to dismiss."  *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 542 (S.D.N.Y. 2016) (quotation omitted).

> **B.    Plaintiffs fail to meet the PSLRA's high standards for alleging scienter and falsity to support their Section 10(b) claim.**

"The PSLRA requires a private securities-fraud complaint to state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.  15 U.S.C. § 78u-4(b)(2).  To do so, a complaint must allege facts showing (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness."  *See Lottery.com*, 2024 WL 454298, at *29 (quotation marks and citation omitted).

Here, Plaintiffs have offered no new allegations in the TAC pertaining to Defendants' motive and opportunity.  Accordingly, the Court's prior holding that "Plaintiffs have failed to establish the requisite scienter as to any Defendant under a motive-and-opportunity theory" need not be revisited.  *Id.* at *32.

As for a showing of conscious misbehavior or recklessness, Plaintiffs must plead with particularity facts demonstrating a "strong inference" of scienter as to each defendant, which is

8

"cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.*, 551 U.S. at 314. "[C]ourts must consider both the inferences urged by the plaintiff and any competing inferences rationally drawn from all the facts alleged, taken collectively." *Id*. Moreover, and pertinent here, "[i]f no motive or opportunity (other than a generalized business motive) is shown, the circumstantial evidence of conscious misbehavior must be *correspondingly greater* and show highly unreasonable behavior or that which evinces an extreme departure from the standards of ordinary care." *Lottery.com*, 2024 WL 454298, at \*32 (citation omitted) (emphasis added).

Plaintiffs fail to meet this standard. Notably, they fail to allege any specific or particularized misrepresentations by Clemenson and Dickinson. Nor do they provide the details—specific instances of conflicting information, statements of confidential informants, etc.—showing that any statement was knowingly false or reckless at the time it was made.

> **1. Plaintiffs have not alleged sufficient circumstantial evidence of knowledge or recklessness.**

Without direct, particularized statements attributed to Clemenson or Dickinson, or information contrary to the content of Defendants' allegedly false statements, Plaintiffs instead rely on a grab-bag of facts, none of them sufficient—individually or together—to show fraudulent intent. Those allegations include the same sort of conclusory claims that courts routinely rule are insufficient to support the strong inference of scienter that the PSLRA demands—and which this Court properly ruled did not "give rise to a strong inference of scienter[.]" *Lottery.com*, 2024 WL 454298, at \*35.

9

### a. *Termination and resignation of senior officers and auditor.*

The Court previously held that the "timing and circumstances" of the "departures of the [C]ompany's executives and auditor. . . . do not give rise to a strong inference of scienter." *Id.* at *34–35 (citation omitted). The Court reasoned:

> [o]fficials resign from public companies for many innocuous reasons. . . . It is also axiomatic that nascent companies with uncertain futures are especially prone to turnover. . . . [M]embers of management resign [or are terminated] for all sorts of reasons, including that they were negligent in overseeing the responsible employees or simply because the optics of changing management are better for investors and regulators. Section 10(b), however, requires more than mere negligence: it requires recklessness. As presently pleaded, the terminations and resignations are at least as consistent with punishing those at the helm for their poor judgment and leadership as with their relating to concocting a scheme to defraud shareholders.

*Id.* (citation and quotations omitted) (alterations in original).

Plaintiffs now contend that the resignation letters of two directors somehow bolster their claims. But to do so, Plaintiffs misleadingly assert that the directors "stated in their resignation letters . . . that the events leading to Dickinson's departure could not be chalked up to mere incompetence or mismanagement but were indicative of 'potentially inappropriate activity.'" TAC at ¶ 105 (quoting Form 8-K (Sep. 9, 2022)).[4] However, the resigning directors, Lisa Borders and William Thompson, did not mention Dickinson; rather, in their identical resignation letters, they stated that the Company had "uncovered potentially inappropriate activity, as referenced in our 8-K filings." Form 8-K (Sep. 9, 2022) at 17.1, 17.3. None of this is evidence of fraud or inconsistent with the Court's prior reasoning in dismissing the claims.

---

[4] Plaintiffs cite to resignation letters "attached as exhibits to the Company's Form 8-K filed on September 2, 2022." TAC ¶ 105. The letters are dated September 2, 2022 but the 8-K was filed on September 9, 2022.

Indeed, the 8-K and the resignation letters it attaches reveal that the directors resigned because of "recent Board practices" including long-standing "dysfunction[]" and "acrimony" that were just the "most recent example of a breakdown" in Company leadership. *See* Form 8-K (Sep. 9, 2022).

Next, Plaintiffs point to the resignation of the auditing company, Armanino LLP ("Armanino"). However, as discussed *infra* Section IV.B.1.b. in relation to the alleged GAAP violations, Armanino resigned because of its "evaluation of the facts and circumstances pertaining to matters disclosed in the Company's **recent** Form 8-K filings regarding the resignations of certain officers and directors[.]" Form 8-K (Oct. 6, 2022) (emphasis added); *see also* TAC ¶ 97 (regarding Armanino's "resignation announcement").[5] Clemenson and Dickinson are not mentioned by name and there are several resignations identified in 8-Ks in this period that were more "recent" than the 8-Ks disclosing Clemenson and Dickinson's departures, including the 8-K filed on September 9, 2022, disclosing that the entire Board had resigned because of dysfunction. *See* Form 8-K (Sep. 9, 2022). At no point did Armanino attribute its resignation to misrepresentations or misconduct by Clemenson or Dickinson. Moreover, according to the Bloomberg Article, Armanino ceased being an auditing company, further indicating that its resignation could have been for myriad unrelated reasons. Bloomberg Article at 9.

Finally, Plaintiffs' attempts to show scienter by relying on allegations in an unrelated complaint in Delaware Chancery Court titled*, AutoLotto, Inc., d/b/a Lottery.com v. J. Streicher Financial, LLC*, Case No. 2022-0661 (Del. Ch. Ct. Jul. 29, 2022) ("*Streicher*"), and arguments in

---

[5] Plaintiffs quote but do not cite to Armanino's "resignation announcement." *See* TAC ¶ 97. Lottery.com announced Armanino's resignation in the October 6, 2022 8-K. *See* Form 8-K (Oct. 6, 2022).

Kathryn Lever's ("Lever") motion to dismiss filed in this case (ECF 112), are misguided. Allegations and arguments by other parties are neither facts nor admissions by Clemenson or Dickinson. The statements have no probative value and the Court should not consider them. *See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (Courts "may take judicial notice of a document filed in another court [but] not for the truth of the matters asserted in the other litigation[.]"); *see also Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 96 (S.D.N.Y. 2004) ("the general rule [in the Second Circuit is] that a judicial admission only binds the party that makes it in the action in which it is made[.]").

In any event, despite Plaintiffs' best efforts, the other party statements do not help them. The quote Plaintiffs borrow from the *Streicher* complaint is that Lottery.com stated that "its available unrestricted cash balance had been overstated by approximately $30 million by the actions of [Dickinson], which actions were undertaken without the knowledge of LTRY's Audit Committee." TAC ¶ 101 n. 16. From this one sentence Plaintiffs somehow conclude that Dickinson was terminated "with cause" and was "an active and knowing participant in the fraud." *Id*. But none of that language is in the *Streicher* complaint. This is simply a textbook conclusory allegation. And that Dickinson allegedly took action without the audit committee's knowledge is hardly evidence of fraud.

Likewise, Plaintiffs assert that Clemenson and Dickinson's involvement in "misconduct" is "confirmed" by the argument in Lever's motion to dismiss that her "efforts and this investigation caused the quick termination or resignation of the three other members of senior management." (TAC ¶ 106 (*quoting* ECF 112 at 2)). But again, the actual quote Plaintiffs point to is consistent with mismanagement and error—common reasons for termination and resignation. And again, this was a co-defendant's argument.

12

### b. GAAP Violations and Nondisclosure.

The Court previously rejected Plaintiffs' attempt to allege scienter through Lottery.com's financial reporting and restatements because they failed to allege "any contemporaneous basis" to believe that the restated information was incorrect. *Lottery.com*, 2024 WL 454298, at \*34. Plaintiffs continue to repeat variations on the same theme that significant failures in the reporting of its cash and revenue must be the result of fraud. The TAC fails to allege a single legal opinion on compliance, piece of advice from an outside auditor or internal accounting professional, or other form of notice to any Defendant that conflicted with the allegedly false statement. We cannot know, for example, whether and when anyone advised Clemenson, Dickinson, or anyone else that the discretionary judgments involved in recognizing revenue were flawed. As stated in the Court's prior Opinion and Order, these failures require dismissal. *See Lottery.com*, 2024 WL 454298, at \*35 ("If scienter could be pleaded based solely on such allegations, virtually every company that issues a large restatement of revenue could be forced to defend securities-fraud actions – a result that is hard to square with this Circuit's understanding of the law.").

In addition to the same allegations relating to Lottery.com's restatements, the TAC includes allegations relating to Lottery.com's purported irregularities in its financial reporting on the $30 million sale of advertising credits and the transactions relating to a $30 million line of credit obtained by Lottery.com subsidiary AutoLotto in accordance with Accounting Standards Certification ("ASC") 606 and 230. *See e.g.*, TAC ¶¶ 64, 92–99. In particular, Plaintiffs claim that failing to properly report the $30 million transactions in accordance with GAAP "further demonstrates intent, or at least severe recklessness" that is sufficient to allege scienter here. *See e.g.*, TAC ¶ 99. This is not so.

13

First, the Court has already held that Plaintiffs' "post-merger financial-performance-related statements," which include "allegations of GAAP violations or accounting irregularities" were insufficient to show scienter. *Lottery.com*, 2024 WL 454298, at *25 (citation omitted). Plaintiffs remain focused on Lottery.com's purported irregularities in its financial reporting on the $30 million sale of advertising credits and the transactions relating to a $30 million line of credit. *See e.g.*, TAC ¶¶ 75–109. But this subject was briefed by the parties and opined on extensively by the Court. The only new alleged facts in the TAC are that: the Company's pledging of its own cash accounts to secure a $30 million line of credit did not satisfy ASC 606-10-25-1; the Company failed to include a $30 million loan as a liability on its balance sheets; and the Company recorded the collateral security to the loan as cash on the Company balance sheets in violation of ASC 230-10-20. *See* TAC ¶¶ 95–97.

Plaintiffs previously failed to show "corresponding fraudulent intent" for the GAAP violations or accounting irregularities. *Lottery.com*, 2024 WL 454298, at *25 (citation omitted); *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 421 (S.D.N.Y. 2020) ("[T]he Second Circuit made clear that 'allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim.' To succeed, Plaintiffs must put forward 'evidence of corresponding fraudulent intent,' *separate and apart* from the accounting violations themselves.") (citation omitted) (emphasis in original). Plaintiffs' TAC fails to cure this deficiency because it again relies on conclusory allegations that assume Lottery.com's GAAP violations were known to be false when made. *See id.* ¶¶ 89, 92–99.

Plaintiffs allege only that the "Company's executives must have known" the accounting treatment was "clearly improper" because "[a]ny accountant or individual with basic accounting

14

knowledge, such as the Individual Lottery Defendants, would know as much." *Id.* ¶¶ 96–97.

This is not sufficient to demonstrate scienter. "[C]onclusory allegations of a [ ] . . . defendant's

skill or experience" are insufficient to show scienter "unless it is specifically shown how or why

the [defendant] should have believed the [misrepresentations] to be inaccurate." *Tung v. Bristol-

Myers Squibb Co.*, 412 F. Supp. 3d 453, 460 (S.D.N.Y. 2019). Moreover, Lottery.com even

disclosed in the Proxy that Clemenson and Dickinson lacked "appropriate public company

experience" and "the appropriate resources or level of experience and technical expertise" to

"oversee financial reporting processes or to address the accounting and financial reporting

requirements." *See* Proxy at 51.

Likewise, Plaintiffs contention that Lottery.com's failure to include the $30 million line

of credit in the discussion of its other loans and promissory notes in SEC filings demonstrates

"intentional, or at a minimum extremely reckless" conduct by the Defendants is based on SEC

filings alone. TAC ¶ 89. Plaintiffs refer to a discussion of Lottery.com's loans and promissory

notes in Lottery.com's 2021 Annual Report, which the TAC misleadingly refers to here as "the

April 1, 2022 Annual Report," as evidence of intentional or reckless conduct. *Id.* But the TAC

fails to explain why Lottery.com would be expected to discuss a loan entered in January 2022 in

a report encompassing "the fiscal year end[ing] December 31, 2021." 2021 Annual Report at 1;

*see also* TAC ¶ 89 n. 14 ("Armanino advised and determined subsequent to the audit and review

of such financial statements, respectively, that a Company subsidiary entered into a line of credit

in January 2022 that was not disclosed in the footnotes to the December 31, 2021 financial

statements" (emphasis added)).

The TAC also does not explain why this omission could not have been a mistake by

Lottery.com and/or its auditors. As alleged by Plaintiffs, Lottery.com dismissed Marcum LLP as

15

the Company's auditing firm on November 15, 2021, mere weeks after the Business

Combination, TAC ¶ 100, and engaged Armanino as its "independent registered public

accounting firm to audit the Company's consolidated financial statements for the year ended

December 31, 2021[.]" *See* Form 8-K (Nov. 15, 2021); TAC ¶ 178.  Changing auditors weeks

after becoming a public company, days before the holidays, and just prior to the end of the fiscal

year, would presumably challenge even mature companies.  Without actual statements made by

the Defendants or allegations that pertain to what they actually knew or believed at the time a

statement was made—and certainly given the above context— the more plausible conclusion

regarding accounting and reporting errors is that they were inadvertent not deliberate and

fraudulent.  *See Lottery.com*, 2024 WL 454298, at *29 (in evaluating scienter, a "court must

consider plausible, nonculpable explanations for the defendant's conduct.") (citation and

quotation marks omitted).

The same reasons apply to Plaintiffs' arguments concerning why the $30 million line of

credit "was not recorded in the March 31, 2022 financial statements."  TAC ¶ 89 n.14.  Again,

the TAC offers no explanation why Lottery.com's failure to record the line of credit in these

financial statements was an intentional or "extremely reckless" act perpetuated by Clemenson or

Dickinson and not merely a mistake that was subsequently identified by Armanino.  In fact,

when Armanino later resigned in September 2022, the Company and Armanino agreed that,

> there were no disagreements between the Company and Armanino on accounting
> principles or practices, financial statement disclosure or auditing scope or
> procedure, which, if not resolved to the satisfaction of Armanino, would have
> caused them to make reference to the disagreement in their report for such period,
> or any subsequent interim period preceding Armanino's resignation.

Form 8-K (Oct. 6, 2022); TAC ¶ 97 (quoting Armanino's "resignation announcement").

16

More specific allegations are needed other than mere reliance on a defendant's purported skills or experience to satisfy the heightened pleading standard. *See In re Cronos Grp. Inc. Sec. Litig.*, 2023 WL 8003324, at *6 (E.D.N.Y. Nov. 11, 2023) (holding that the plaintiff's "complaint is devoid of any particularized allegations that defendants had advanced notice of fraudulent reporting" and that "picking off past titles from their curricula vitae is where the specific pleading begins and ends").

Without alleging a contemporaneous basis as to why the Defendants acted with knowledge or recklessness of Lottery.com's GAAP violations, the TAC's continued reliance on the Defendants' purported accounting skill and expertise and fraud by hindsight allegations still fall short of the PSLRA's standard for pleading scienter. *See id.*; *see also Lottery.com*, 2024 WL 454298, at *34 (finding that "any allegation that [Defendants] had any contemporaneous basis to believe that the information they related was incorrect" was "noticeably missing" from Plaintiffs' prior complaints).

### c.  *Signing SEC filings and financial documents.*

Beyond the circumstances of their departure from Lottery.com, the TAC's allegations specific to Clemenson and Dickinson relate almost entirely to their signatures on various SEC filings or, as to Dickinson, loan documents. *See, e.g.*, TAC. ¶¶ 162, 172.  Indeed, Plaintiffs have not attempted to add to the substantive allegations specific to Clemenson, which remain merely that he signed the 2021 Annual Report and that he resigned from the Company after its accounting failures were disclosed. *See, e.g.,* TAC ¶¶ 18, 102, 126, 162.  The Court has already held that those allegations are not enough. *See, e.g., Lottery.com*, 2024 WL 454298, at *33–35.

Plaintiffs also allege that "the Individual Lottery Defendants that negotiated the terms of the September 2021 transaction knew that their purported service credits were non-transferable"

and that their knowledge is "confirmed by the fact that the Company invoiced more than $35 million to the customer over the next two fiscal quarters for purported 'various services and advertising credit.'" TAC ¶ 84. Plaintiffs continue that "[i]t strains credulity to suggest that an individual at the Company, who was either involved in or responsible for accounting for all of these transactions . . . never realized it was non-transferable." *Id.*

But Plaintiffs fail to allege who purportedly negotiated the transaction or provide any support for the allegation that those negotiators knew the credits were non-transferable until the Company discovered and announced as much in the Form 10-Q/A filed on May 15, 2023. TAC ¶ 83. Collectively then, based on Plaintiffs' own allegations, the "compelling," "plausible," "nonculpable inference" is that the negotiators made a mistake in interpreting or reviewing the initial contract. *Dobina*, 909 F. Supp. 2d at 251–52 (finding that nonculpable inference for $500 million tax expense understatement that persisted on the books for 3 years, "compounding over time, and leading to incorrect financial reporting" was "the result of merely careless mistakes at the management level" and did not rise to the level of scienter).

Similarly, as to Dickinson, Plaintiffs allege that he signed the loan agreement for the Promissory Note and line of credit. TAC ¶ 76–77, 88. The TAC contends that "it belies belief that the Company's executives who negotiated the terms with the major customer and the bank that enabled the scheme would not know the entire transaction was a sham. Certainly, as the CFO, Dickinson had to have known" that the transactions were a sham. TAC ¶ 88. But, as stated, scienter cannot rest on the inference that a defendant must have known of the misrepresentation because of the defendant's position at the Company. This is merely a variation of the core operations doctrine and an attempt to position access to information as a basis for scienter that this Court rejected. *See Lottery.com*, 2024 WL 454298, at *33 ("In this District, the

18

majority rule is to consider the core operations allegations to constitute supplementary, but not an independent, means to plead scienter. . . . Here, because the Amended Complaint does not contain other allegations of scienter, plaintiffs' core operations theory fails as well.") (citations and quotation marks omitted); *Dobina.* 909 F. Supp. 2d at 249.

What remains missing from the TAC is "any allegation that Defendants had any contemporaneous basis to believe that the information they related was incorrect that would be sufficient to allege the requisite 'conscious recklessness.'" *Lottery.com*, 2024 WL 454298, at *34 (*quoting Dobina*, 909 F. Supp. 2d at 251).

### d.  *Lottery.com's Compliance with State and Federal Laws.*

Plaintiffs again attempt to base their claims on Defendants' statements about Lottery.com's compliance with state and federal laws.  The Court previously held that these allegations failed to satisfy falsity.  That is largely because the statements on which Plaintiffs rely are qualified as statements of belief and accompanied by ample cautionary language.  *See Lottery.com*, 2024 WL 454298, at *28–29 (Plaintiffs do "not allege enough facts to support the inference that when Lottery[.com] stated . . . that it believed it was complying with applicable laws, Lottery[.com] did not actually believe that fact, or that Lottery[.com] made this statement without undertaking 'some meaningful legal inquiry'" for such statements to be actionably false).  Plaintiffs even admitted at oral argument on the motions to dismiss that: "regulatory compliance is the harder argument for us.  It simply is.  As I said, we don't have insiders or confidential witnesses."  Transcript of oral arguments on the motions to dismiss (ECF No. 132 at 40:25–41:2), *In re Lottery.com, Inc. Sec. Litig.*, No. 1:22-CV-07111 (JLR) (S.D.N.Y. Feb. 9, 2024).

19

Plaintiffs attempt to compensate for their deficient pleading by alleging that Lottery.com printed lottery tickets at its backup hub in Texas that were purchased by customers outside of the state in violation of applicable state and federal laws. *E.g.*, TAC ¶¶ 14, 139–41, 167. They also attempt to fill the gap by alleging that Defendants knowingly or recklessly misrepresented the efficacy of Lottery.com's geofencing technology to ensure compliance with applicable laws. *E.g.*, TAC ¶¶ 15 n. 3, 70, 130–31, 150–51, 168–69. To support these allegations, Plaintiffs rely on claims made in the Bloomberg Article. The article itself, however, is an insufficient basis for Plaintiffs' allegations for several reasons.

First, the Bloomberg Article is an unsubstantiated article that often relies on unnamed sources. *See e.g.*, Bloomberg Article at 8 (relying on comments made by unnamed board members).[6] Second, the Bloomberg Article does not attribute conduct relating to the out-of-state lottery ticket printing or geofencing to either Clemenson or Dickinson. *See id.* at 8. The TAC attempts to impute knowledge to Clemenson and Dickinson by arguing that as "senior management members" they "were clearly aware" of the "repeated legal violations." TAC ¶ 143. But, once again, this Court previously held that Plaintiffs may not rely on either hindsight pleading or the core-operations doctrine to "bridge the gap" when Plaintiffs fail to allege a contemporaneous basis that Defendants possessed information contrary to what was relayed by Lottery.com. *See Lottery.com*, 2024 WL 454298, at *32-34. It further bears noting that neither Clemenson nor Dickinson have legal backgrounds.

---

[6] Statements taken from the Bloomberg Article are subject to the same pleading standards as any other allegation included in the TAC. *See In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 690 (S.D.N.Y. 2008) ("[N]ewspaper articles should be credited only to the extent that other factual allegations would be—if they are sufficiently particular and detailed to indicate their reliability.").

And third, the article is heavily based on information purportedly obtained from an internal investigation "initiated by the [C]ompany's chief legal officer" and conducted by an outside law firm—which would necessarily be privileged.  Bloomberg Article at 8.  Information leaked from privileged internal investigations will not be admissible as evidence; indeed, neither Clemenson, Dickinson nor Plaintiffs will likely ever see it.  All of this of course makes the Bloomberg Article a particularly unreliable source of information.

In any event, the substance of the article does not demonstrate that any statements were knowingly false when made.  Plaintiffs rely on the Bloomberg Article to allege that the out-of-state ticket printing practice "had been going on since before 2020 and was so wide-spread that in 'a seven-month period, Lottery.com printed out more than 500,000 tickets worth more than $1.1 million in Texas for out-of-state lottery players.'"  TAC ¶¶ 141-42.  Plaintiffs also rely on the Bloomberg Article's discussion of an "internal investigation" that purportedly found that "[a]nybody using [Lottery.com's] web-based system, as opposed to the mobile app, could skirt any jurisdictional requirement for ticket purchases according to the investigation report and interviews."  *Id.*

But nothing indicates exactly when Lottery.com's purported violations of law with respect to the out-of-state ticket printing and geofencing actually occurred and, notably, whether they occurred before or after the Proxy or the 2021 Annual Report were issued.  *See, e.g.,* TAC ¶ 141; Bloomberg Article at 8.  While the TAC and Bloomberg Article claim that Lottery.com's out-of-state ticket printing "had been going on since before 2020," neither explains whether this practice occurred in isolated incidents or otherwise evaded detection.  *See id.*  Similarly, neither the TAC nor the Bloomberg Article offer any detail about the timing of Lottery.com's issues relating to geofencing, and no information as to whether these issues were known before the July

21

2022 internal investigation. *See* TAC ¶¶ 15 n. 3, 70, 130-31, 150-51, 168-69; Bloomberg Article at 8. Without connecting the alleged violations of law to facts showing that they were known to Defendants at the time, Plaintiffs cannot plead either falsity or scienter with respect to Lottery.com's statements about its compliance with state and federal laws under the PSLRA's heightened pleading standard.

Plaintiffs also allege that Lottery.com's statements in the Proxy and 2021 Annual Report that it will "ensure transparent regulatory compliance" were false in light of the claims made in the Bloomberg Article about Lottery.com's out-of-state ticket printing and geolocation features. *E.g.*, TAC ¶¶ 6, 70, 129-31, 152-53, 166-67. Statements about a company's plans to "ensure" legal and regulatory compliance are "quintessential puffery," and Plaintiffs cannot rely on them to plead falsity. *Oklahoma L. Enf't Ret. Sys. v. Papa John's Int'l, Inc.*, 444 F. Supp. 3d 550, 560 (S.D.N.Y. 2020); *see also Lottery.com*, 2024 WL 454298, at *16 ("[G]eneral statements about reputation, integrity, and compliance with ethical norms are inactionable puffery, meaning that they are too general to cause a reasonable investor to rely upon them." (citation omitted)).

Additionally, Plaintiffs claim that Lottery.com "lacked the technological ability to enforce . . . jurisdictional requirements." TAC ¶ 151 and that "anybody using the web-based system, as opposed to the mobile app, could skirt any jurisdictional requirement for ticket purchases." *Id.* at 151, 169. But the allegation that someone "could skirt" the technology is in no way inconsistent with Lottery.com having the technology in place and believing it effective. And again, the allegations offer nothing to show that Clemenson and Dickinson knew about the apparent issues with the geofencing technology when the statements were made in the Proxy and 2021 Annual Report.

22

Further, both the Proxy and 2021 Annual Report contain the identical cautionary language about the efficacy of features contained in Lottery.com's application and web-based products:

> [O]ur application and web-based products may contain errors, bugs, flaws, or corrupted data, and these defects may only become apparent after their launch . . . Furthermore, programming errors, defects, and data corruption could disrupt our operations, adversely affect the experience of our users or customers, harm our reputation, cause our users to stop utilizing our offerings, divert our resources, and delay market acceptance of our offerings, any of which could result in liability to us or harm our business, financial condition, and results of operations.

Proxy at 32; 2021; Annual Report at 32.

Plaintiffs have therefore not adequately alleged how Lottery.com's failure to disclose risks about its geofencing technology is inconsistent with the Proxy and 2021 Annual Report's cautionary language. *See Lottery.com*, 2024 WL 454298, at *18 (rejecting Plaintiffs' claims that the Proxy's cautionary language was inadequate where "the Proxy addressed the very risk that Plaintiffs allege it failed to disclose").

The TAC and Hoffman SAC fall short of the PSLRA's standards under either approach to alleging either falsity or scienter. The Court should therefore dismiss the TAC and Hoffman SAC.

\*      \*      \*

**C.     Plaintiffs' Section 14(a) and Rule 14a-9 claim fails.**

Plaintiffs' claim under Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder, turn on allegedly false or misleading statements in the Proxy. TAC ¶¶ 146-153, 213-216. The only new claims about the Proxy in the TAC concern the geolocation and geofencing, which Plaintiffs contend did not work as intended and thus resulted in the Company "illegally" printing tickets, despite its belief that it remained "in compliance in all material respect with all applicable laws." *Id.* ¶ 150-152. The Court already ruled that such legal and regulatory

23

compliance statements in the Proxy were "non-actionable puffery." *Lottery.com,* 2024 WL 454298, at *16.

Further, Plaintiffs fail to identify the roles allegedly played by Clemenson and Dickinson with respect to the geofencing technology, and fail to allege facts to support the inference that "when Lottery[.com] stated . . . that it believed it was complying with applicable laws, Lottery did not actually believe that fact, or that Lottery[.com] made this statement without undertaking some meaningful legal inquiry[.]" *Id.* at *29 (citation omitted). These failures require dismissal of this claim. Further still, as with the other Proxy statements the Court already dismissed, the geofencing statements cannot sustain a claim because the "Proxy addressed the very risk that Plaintiffs allege it failed to disclose[.]" *Id.* at *18; Proxy at 32 (cautionary statements).

## D.     The Section 20(a) claims cannot survive.

Plaintiffs' Section 20(a) "control person" liability claims should be dismissed. First, for the reasons explained above, there was no primary violation of either Section 10(b) or Section 14(a). Because a Section 20(a) must be premised on a primary violation, that failure dooms Plaintiffs' Section 20(a) claims. *Lottery.com,* 2024 WL 454298, at *36. Second, Plaintiffs have failed to allege Clemenson's or Dickinson's scienter, or "culpable participation" in any violation. *Id*. Because "culpable participation [under Section 20(a)] is a scienter requirement for which a plaintiff must allege some level of culpable participation at least approximating recklessness," the same failure to scienter explained above requires dismissing the Section 20(a) claims. *In re Virtus*, 195 F. Supp. 3d at 543.

24

## V.    CONCLUSION

For the foregoing reasons, Clemenson and Dickinson respectfully ask the Court to dismiss the TAC and Hoffman SAC with prejudice.

Dated:  New York, New York

July 12, 2024

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

By:  *s/Franklin Monsour Jr.*

Franklin Monsour Jr.
Kenton Atta-Krah
Christopher J. Whalen
One Vanderbilt Avenue,
New York, NY 10017
Tel: (212) 547-5400
fmonsour@mwe.com
Katta-krah@mwe.com
chwhalen@mwe.com

*Attorneys for Defendants*
*Matthew Clemenson and Ryan Dickinson*

25

**WORD COUNT CERTIFICATION**

I hereby certify that the foregoing Memorandum of Law complies with Rule 3(c) of this Court's Individual Rules of Practice (July 3, 2024).

By:  *s/Franklin Monsour Jr.*

Franklin Monsour Jr.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of July, 2024, the foregoing Memorandum of Law was filed electronically with the Court using the CM / ECF system, which will electronically serve all counsel of record.

By:  *s/Franklin Monsour Jr.*

Franklin Monsour Jr.

26