UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: LOTTERY.COM, INC. SECURITIES LITIGATION | Case No. 1:22-cv-07111 (JLR)<br><br>**ORAL ARGUMENT REQUESTED** |

**OMNIBUS REPLY IN SUPPORT OF DEFENDANT LOTTERY.COM, INC.'S MOTIONS TO DISMISS CLASS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT AND PLAINTIFF HOFFMAN'S SECOND AMENDED COMPLAINT**

Lars L. Berg
Texas State Bar No. 00787072
lars.berg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 878-3503
Facsimile: (817) 878-9280
*Admitted Pro Hac Vice*

Steven P. Benenson
New York State Bar No. 5378773
SPBenenson@pbnlaw.com
PORZIO, BROMBERG & NEWMAN, PC
1675 Broadway, Suite 1810
New York, New York  10019-3800
(212) 265-6888

**ATTORNEYS FOR LOTTERY.COM, INC.**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT ................................................................................................................................1

    I.     The general statements of legal and regulatory compliance and related statements of belief are non-actionable...........................................................................................1

    II.    Plaintiffs' scienter arguments fail. ...................................................................3

         A.     Plaintiffs' re-hashed motive and opportunity theory fails. ....................3

         B.     Plaintiffs' conscious misbehavior or recklessness arguments fail............5

             1.     Revenue Recognition ...................................................................5

             2.     Legal and Regulatory Compliance................................................7

             3.     Geolocation Technology ............................................................10

CONCLUSION............................................................................................................................10

# TABLE OF AUTHORITIES

CASES                                                                                                                        PAGE(S)

*Acito v. IMCERA Grp., Inc.,*
    47 F.3d 47 (2d Cir. 1995)............................................................................................................3

*City of Brockton Ret. Sys. v. Avon Prod., Inc.,*
    No. 11 CIV. 4665 PGG, 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014)...................................7

*Cohen v. Kitov Pharms. Holdings, Inc.,*
    No. 17 Civ. 917, 2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) ................................................6

*Glaser v. The9, Ltd.,*
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)........................................................................................4

*In re AT&T/DirecTV Now Sec. Litig.,*
    480 F. Supp. 3d 507 (S.D.N.Y. 2020)........................................................................................8

*In re Bristol Myers Squibb Co. Sec. Litig.,*
    586 F. Supp. 2d 148 (S.D.N.Y. 2008)........................................................................................7

*In re Fairway Grp. Holdings Corp. Sec. Litig.,*
    No. 14 CIV. 0950 LAK AJP, 2015 WL 4931357 (S.D.N.Y. Aug. 19, 2015), *report and
    recommendation adopted,* No. 14 CIV. 0950 LAK AJP, 2015 WL 5255469 (S.D.N.Y. Sept.
    9, 2015) ......................................................................................................................................2

*In re Gentiva Sec. Litig.,*
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) ........................................................................................7

*In re Grupo Televisa Sec. Litig.,*
    368 F. Supp. 3d 711 (S.D.N.Y. 2019).......................................................................................10

*In re Henry Schein, Inc. Sec. Litig.,*
    No. 18-CV-01428 (MKB), 2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019)...............................6

*In re Lululemon Sec. Litig.,*
    14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd,* 604 F. App'x 62 (2d Cir. 2015)...........................2

*In re Marsh & Mclennan Companies, Inc. Sec. Litig.,*
    501 F. Supp. 2d 452 (S.D.N.Y. 2006).......................................................................................10

*In re Mylan N.V. Sec. Litig.,*
    No. 16-CV-7926 (JPO), 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018).....................................7

*In re Nielsen Holdings PLC Sec. Litig.,*
    510 F. Supp. 3d 217 (S.D.N.Y. 2021).........................................................................................9

*In re Scholastic Corp. Sec. Litig.,*
    252 F.3d 63 (2d Cir. 2001)..........................................................................................................3

*Lipow v. Net1 UEPS Techs., Inc.,*
    131 F. Supp. 3d 144 (S.D.N.Y. 2015)..................................................................................7

*Pirnik v. Fiat Chrysler Automobiles, N.V.,*
    No. 15 Civ. 7199 (JMF), 2016 WL 5818590 (S.D.N.Y., 2016)...............................................9

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.,*
    No. 22-CV-6339 (AS), 2024 WL 1898512 (S.D.N.Y. May 1, 2024)...................................8, 9

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.,*
    75 F.3d 801 (2d Cir. 1996).................................................................................................4

*Slayton v. Am. Express Co.,*
    604 F.3d 758 (2d Cir. 2010)...............................................................................................9

Defendant Lottery.com, Inc. ("Lottery.com") respectfully submits this omnibus reply in support of its Motions to Dismiss the Class Plaintiffs' Third Amended Class Action Complaint [ECF No. 176] and Hoffman's Second Amended Complaint [ECF No. 172].

## INTRODUCTION

Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss the Third Amended Class Action Complaint ("Plaintiffs' Brief" or "Pls.' Br.") confirms that Plaintiffs' latest complaints do not revive their claims from this Court's earlier MTD Opinion.[1] Largely for the same reasons, the Court should now dismiss the Class Plaintiffs' Third Amended Complaint ("Class TAC") and Hoffman's Second Amended Complaint ("Hoffman SAC").

## ARGUMENT

**I.    The general statements of legal and regulatory compliance and related statements of belief are non-actionable.**

Plaintiffs apparently do not dispute that general statements of legal and regulatory compliance are non-actionable puffery  *i.e.*, statements such as that Lottery.com "works closely with state regulators," had "strong working relationships with the regulatory authorities," was being operated to "ensure [Lottery] remain[ed] in compliance with applicable laws," and was "fully committed to full compliance with all applicable laws." Class TAC ¶¶ 129, 152, 166; Hoffman SAC ¶¶ 129, 152, 166. Instead, Plaintiffs now claim that such statements "are not the focus of the TAC's allegations." Pls.' Br. 24. But whether or not these allegations are a "focus," they persist. Plaintiffs ignore Lottery.com's argument (echoing what the Court held in its MTD

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as in Lottery.com's Memorandum of Law in Support of its Motion to Dismiss Class Plaintiffs' Third Amended Class Action Complaint [ECF No. 177] ("Lottery.com Brief" or "Lottery.com Br."). Because Lottery.com's memoranda in support of its motions to dismiss the Class TAC and Hoffman's SAC are substantially identical, we will refer only to the former memoranda. References to "Plaintiffs" includes the Class Plaintiffs and Plaintiff Hoffman.

Opinion) that these statements are "too general to cause a reasonable investor to rely on them."[2] MTD Op. 31 (quoting *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014)).  Plaintiffs have made no real effort to explain why the alleged statements about Lottery.com's relationship and work with regulators or general compliance with laws are actionable.  Accordingly, the Court should dismiss the claims based on such statements.

Plaintiffs also continue to assert claims based on statements that Lottery.com "believe[d] that [it was] in compliance with all material domestic and international laws and regulatory requirements applicable to [its] business."  *See, e.g.*, Class TAC ¶ 152; Hoffman SAC ¶ 152.  As the Court held, these are non-actionable statements of opinion because Plaintiffs allege insufficient facts to support the inference that Lottery.com did not actually believe the statements when they were made.  MTD Op. 59.  Plaintiffs' argument that legal violations were widespread (the "geofencing" and "ticket printing" allegations) are insufficient because there are no allegations tying them to any Defendant or other person whose knowledge may be imputed to Lottery.com.  *See, e.g., In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 580 (S.D.N.Y. 2014) (rejecting allegations of widespread deficiencies in part because "it is the facts known to, and the intent of, the maker of the statements which is ultimately relevant when the Court considers the falsity of statements of belief or opinion"), *aff'd*, 604 F. App'x 62 (2d Cir. 2015); *see also In re Fairway Grp. Holdings Corp. Sec. Litig.*, No. 14 CIV. 0950 LAK AJP, 2015 WL 4931357, at *19 (S.D.N.Y. Aug. 19, 2015) (finding that arguments about widespread behavior do not establish contemporaneous falsity of statements of opinion), *report and recommendation adopted*, No. 14 CIV. 0950 LAK AJP, 2015 WL 5255469 (S.D.N.Y. Sept. 9, 2015).

---

[2] The only place Plaintiffs address this argument is in the context of their Section 14(a) claims, but even there, Plaintiffs appear to concede these statements are non-actionable and instead point to other allegedly misleading statements in the Proxy. *See* Pls.' Br. 46.

2

As before, the Court should dismiss Plaintiffs' claims to the extent they are based on general statements of legal and regulatory compliance and related statements of belief.

## II.    Plaintiffs' scienter arguments fail.

### A.    Plaintiffs' re-hashed motive and opportunity theory fails.

Plaintiffs advance a motive and opportunity theory of scienter, but largely make the same previously rejected argument, citing the same cases, that "the desire to artificially inflate a company's stock price in advance of a public offering establishes a cognizable motive." Pls.' Br. 41; *see* MTD Op. 64-65. The Court held that this contention is foreclosed by cases like *Acito*, which held that the existence of executive compensation dependent on stock value does not give rise to a strong inference of scienter. *Id.* 63-64 (discussing *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995)). The Court also determined that none of Plaintiffs' cases "held that, by itself, the desire to artificially inflate a company's stock price in advance of a public offering is sufficient to establish motive." *Id.* 64-65. Unlike in the cases they cite, here "Plaintiffs fail to establish that any Defendant made unusual sales." *Id.* 65.

Plaintiffs argue that the "Court merely held that the January 31, 2023 Amended Complaint did not plead sufficient information concerning the insider selling." Pls.' Br. 42. Not so. The Court did find that, other than the amount of shares sold by DiMatteo and Clemenson after the business combination was completed, "Plaintiffs provide no further details about the sales." MTD Op. 65. But, more importantly, the Court also found that Plaintiffs did not "explain how these sales were sufficiently unusual to support a finding of motive" as to any Defendant. MTD Op. 65 (distinguishing *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74 (2d Cir. 2001)).

Plaintiffs' current complaints do not remedy either defect. Plaintiffs' latest complaints add some detail about DiMatteo's and Clemenson's sales, such as the share price, date of sale, and approximate proceeds. *See, e.g.*, Class TAC ¶¶ 36, 38, 72, 73. But those details are immaterial

because the Court already held that Plaintiffs' earlier contention that "DiMatteo and Clemenson each sold 375,000 shares shortly after the business combination was completed" was insufficient. MTD Op. 65 (cleaned up). Plaintiffs' complaints make no allegation about any "insider sales" by Dickinson, instead alleging only his potential compensation after the completion of the Business Combination. *See, e.g.*, Class TAC ¶¶ 37, 73. This lack of sales by Dickinson undermines Plaintiffs' argument. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 814 (2d Cir. 1996) ("[T]he fact that other defendants did not sell their shares during the relevant class period sufficiently undermines plaintiffs' claim regarding motive.").

Even with these new immaterial details, Plaintiffs do not address the most critical part of the Court's finding: the sales were not sufficiently unusual to support a finding of motive. Plaintiffs appear to argue that the sales are unusual simply because they followed the Business Combination and Plaintiffs have continued to allege misstatements and omissions from the pre-merger period. *See* Pls.' Br. 41. But "[w]hether trading was unusual or suspicious turns on factors including (1) the amount of net profits realized from the sales; (2) the percentages of holdings sold; (3) the change in volume of insider defendant's sales; (4) the number of insider defendants' selling; (5) whether sales occurred soon after statements defendants are alleged to know to be misleading; (6) whether sales occurred shortly before corrective disclosures or materialization of the alleged risk; and (7) whether sales were made pursuant to trading plans such as Rule 10b5 1 plans." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 587 (S.D.N.Y. 2011) (rejecting Plaintiffs' motive and opportunity arguments). Plaintiffs have made no allegations or arguments on the majority of these factors, including (2), (3), (4), and (7), and thus have still failed to show that any of the alleged sales were sufficiently unusual.

### B.       Plaintiffs' conscious misbehavior or recklessness arguments fail.

For each category of the alleged misstatements or omissions   revenue recognition, legal and regulatory compliance, and geolocation technology   Plaintiffs' efforts to infer scienter from conscious misbehavior or recklessness fail.

### 1.       Revenue Recognition

As shown in the table attached as Appendix A, most of Plaintiffs' scienter arguments concerning revenue recognition were rejected by the Court in its MTD Opinion.[3]  Plaintiffs make those same arguments now.  *See, e.g.*, App'x A; Pls.' Br. 32-38.  Yet, crucially, Plaintiffs do not explain why or how the latest complaints change any of those arguments or the Court's previous rulings on them.  For the same reasons, the Court should reject them again.

Even if those arguments are coupled with Plaintiffs' new allegations, they are still unconvincing.  For example, Plaintiffs repeatedly cite their allegations that the service credits that were the subject of the alleged "Sham Transaction" were non-transferable.  *E.g.*, Pls.' Br. 31, 33, 36.  So too does Plaintiffs' argument based on the alleged promissory note ultimately rest on Defendants' knowledge that the credits were non-transferable.  *See id.* at 33.  But Plaintiffs do not plausibly allege Lottery.com knew at the time that the credits were non-transferable.  Plaintiffs ignore that Plaintiffs' complaints acknowledge the company discovered the credits were non-transferrable only later, in 2022.  *See* Lottery Br. 15.  The Bloomberg Article supports this view

---

[3] The table at Appendix A compares the arguments in Plaintiffs' Brief with the arguments in Class Plaintiffs' Opposition to Defendant Lottery.com's Motion to Dismiss the Amended Class Action Complaint [ECF No. 95] ("Plaintiffs' Prior Brief" or "Pls.' Prior Br.) and includes the Court's rulings on those arguments.

because it says that the service credits *"turned out to be* nontransferable."[4]  TAC Ex. A [ECF No. 153-1] at 5 (emphasis added).  Plaintiffs fail to explain how service credits later turning out to be non-transferrable equates to knowledge of misrepresentations when the representations were made.

Plaintiffs appear to argue that because the improper revenue recognition was in violation of ASC 606, scienter may be inferred.  Pls.' Br. 31-32.  But Plaintiffs do not address the critical issue   whether any Defendant *knowingly* violated ASC 606.   On that, the complaints and Plaintiffs' Brief are conspicuously silent.  *See id.*  Plaintiffs also do not address Lottery.com's argument that allegations of GAAP violations are insufficient without evidence of corresponding fraudulent intent (of which there is none), and ASC 606 is inherently subjective and a matter of opinion.  Lottery Br. 16-17 (citing cases).  A mere alleged violation of ASC 606 cannot suffice to show scienter.  *See In re Henry Schein, Inc. Sec. Litig.*, No. 18-CV-01428 (MKB), 2019 WL 8638851, at *22 (E.D.N.Y. Sept. 27, 2019) (emphasis added) (holding that an allegedly false statement does not reinforce any inference of scienter).

Plaintiffs also argue that the small size of the company "makes the inference of scienter inescapable." Pls.' Br. 39.  But courts in this district have recognized that the "size of the company does not give rise to a 'strong inference' that [defendant] acted with a guilty of state of mind" even where there were "at most ten employees and consultants." *Cohen v. Kitov Pharms. Holdings, Inc.*, No. 17 Civ. 917, 2018 WL 1406619, at *8 (S.D.N.Y. Mar. 20, 2018).

---

[4] Plaintiffs appear to acknowledge that the Bloomberg Article does not support scienter for the alleged improper revenue recognition because they do not discuss it in that section of their brief. *See* Pls. Br. 31-40 (arguing scienter for "Sham Transaction" but failing to mention the Bloomberg Article).

6

The only other new argument or allegation is Plaintiffs' contention that DOJ and SEC investigations allow the Court to infer scienter. Pls.' Br. 40. Plaintiffs' cases recognize that while a government investigation may be considered, "the existence of an investigation alone is not sufficient to give rise to a requisite cogent and compelling inference of scienter." *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013) (finding no scienter); *see also In re Mylan N.V. Sec. Litig.*, No. 16-CV-7926 (JPO), 2018 WL 1595985, at *13 (S.D.N.Y. Mar. 28, 2018) (quoting *Gentiva*, 932 F. Supp. 2d at 380). And, "government investigations cannot bolster allegations of scienter that do not exist." *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 167 (S.D.N.Y. 2015) (finding no scienter); *cf. In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 168 (S.D.N.Y. 2008) (noting an investigation as one of many other indications not present here). Here, Plaintiffs have no adequate allegations of scienter and so, as in *Lipow*, there is nothing for the investigations to bolster. *See Lipow*, 131 F. Supp. 3d at 167. As there, "as currently plead, the government investigations are just that, investigations;" not evidence of scienter. *See id.* The government investigations also should be balanced against the company's own internal investigation. *See City of Brockton Ret. Sys. v. Avon Prod., Inc.*, No. 11 CIV. 4665 PGG, 2014 WL 4832321, at *24 (S.D.N.Y. Sept. 29, 2014) ("[T]he fact that [the company] commenced an internal investigation tends to undermine any inference of scienter.") (citing *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 343 (W.D.N.Y. 2008); *Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010)).

### 2.    Legal and Regulatory Compliance

Plaintiffs' scienter arguments concerning the alleged legal and regulatory compliance statements also fail. Plaintiffs first argue that the "Bloomberg Article notes that the Company's senior management members were clearly aware of…hundreds of thousands of repeated legal violations, with one member of the Board explaining: 'We are breaking the law in 42 different

ways.'" MTD Op. 26. That is misleading, because the Bloomberg Article is referring to what was discovered during an after-the-fact internal investigation, not what was known at the time of the alleged misstatements. Class TAC Ex. A [ECF No. 153-1] at 8. The board member's alleged statement was in June 2022, which is after the alleged misstatements/omissions. *Id.* Contrary to Plaintiffs' position, the Bloomberg Article supports that Lottery.com was not aware of legal or regulatory violations until after the internal investigation.

Plaintiffs argue that "[g]iven that nearly all of the Company's business depends on lottery game sales, the frequency and magnitude of Defendants' violations of applicable lottery laws and regulations supports an inference of scienter." Pls.' Br. 27. Plaintiffs refer to the Bloomberg Article's reporting that Lottery printed over 500,000 tickets worth more than $1.1 million in Texas for out-of-state lottery players. *Id.* But Plaintiffs have failed to adequately allege the "frequency and magnitude" of violations because they provide no relative figures that would allow the Court to conclude the printing described in the article was significant to Lottery.com's operations. *See generally* Class TAC.

Even if Plaintiffs did adequately plead that out-of-state printing was a significant part of Lottery.com's operations, such allegations would be insufficient. Plaintiffs' cited cases confirm that this is a "core operations" argument. *See, e.g.*, *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, No. 22-CV-6339 (AS), 2024 WL 1898512, at *8 (S.D.N.Y. May 1, 2024). But as this Court recognized in the context of Plaintiffs' revenue recognition allegations, the Second Circuit has not addressed the vitality of the core operations doctrine after the PSLRA. MTD Op. 68. As a result, "courts in this circuit have generally invoked the doctrine only to bolster other evidence of scienter, rather than relying on it as an independently sufficient basis." *In re*

8

*AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 533 (S.D.N.Y. 2020).  Here, there are no other adequate allegations of scienter.

Next, Plaintiffs argue that Defendants' alleged awareness of the laws and regulations governing lottery ticket purchases equates to scienter.  MTD Opp. 27-28.  It does not.  Although Lottery.com may have disclosed applicable laws and regulations, this does not mean the company (or individuals whose knowledge may be imputed to it) were aware of any *violations* of those laws and regulations *at the time* of the compliance statements.  *See Slayton*, 604 F.3d at 776.

Plaintiffs also argue that the "specificity in which Defendants discuss these regulations" supports scienter.[5]  Pls.' Br. 28.  While repeated and detailed assurances can sometimes support an inference of scienter, the underlying logic is that "[i]n order to speak so knowledgeably … [the defendant] must have educated himself … presumably by reviewing data … and by performing his own due diligence."  *See Nielsen*, 510 F.Supp.3d at 237 (quoting *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 850 (S.D.N.Y. 2019)).  For example, *Dentsply Sirona*, 2024 WL 1898512, at *7-8, involved executives repeatedly, on different occasions, making detailed statements about the company's inventory and supply chain issues.  In contrast, here, the Defendants are not alleged to have made different and detailed statements about their legal or regulatory compliance — instead, the language at issue is essentially the same repeated boilerplate in Lottery.com's SEC filings.  *See, e.g.*, Class TAC ¶ 150.

---

[5] Plaintiffs' cases on this point are distinguishable.  *See Pirnik v. Fiat Chrysler Automobiles, N.V.*, No. 15 Civ. 7199 (JMF), 2016 WL 5818590, at *7 (S.D.N.Y., 2016) (finding scienter because the defendants did not dispute that the defendants' top executives "had knowledge of the company's noncompliance" with the vehicle recalls at issue); *In re Nielsen Holdings PLC Sec. Litig.*, 510 F. Supp. 3d 217, 237 (S.D.N.Y. 2021) (dismissing claims based on statements made by the defendants about the effect of GDPR before the defendants knew the impact).

Finally, Plaintiffs argue that printing out-of-state lottery tickets was deliberately illegal behavior.  MTD Op. 28-29.  But, as presented, that argument begs the question because Plaintiffs do not adequately allege *deliberate* illegality  in other words, Plaintiffs do not plausibly allege that the individuals printing the tickets out-of-state knew that the practice was illegal.  In contrast, such allegations were present in Plaintiffs' cited cases.  *See, e.g.*, *In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711, 721 (S.D.N.Y. 2019) (finding scienter for a company's failure to disclose known bribery payments when there was testimony in another case that it participated in the bribery scheme); *In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 482 (S.D.N.Y. 2006) (finding scienter when two senior executives "were directly involved in, or aware of" the improper practices at issue). Without any allegations that out-of-state ticket printing was deliberately illegal, Plaintiffs cannot rely on a deliberate illegality theory.

### 3.    Geolocation Technology

Plaintiffs also have not adequately alleged scienter of the alleged geolocation technology representations.  Plaintiffs make no effort to explain how they adequately allege that Lottery.com had knowledge at the time of its disclosures about the technology that the app was defective. Without such allegations, Plaintiffs' claims based on these alleged misstatements or omissions fail.

### CONCLUSION

For all the foregoing reasons, Lottery.com respectfully requests that the Court dismiss Plaintiffs' claims with prejudice.

10

Respectfully submitted,


/s/ Lars L. Berg
Lars L. Berg
Texas State Bar No. 00787072
lars.berg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 878-3503
Facsimile: (817) 878-9280
*Admitted Pro Hac Vice*

Steven P. Benenson
New York State Bar No. 5378773
SPBenenson@pbnlaw.com
PORZIO, BROMBERG & NEWMAN, PC
1675 Broadway, Suite 1810
New York, New York  10019-3800
(212) 265-6888

**ATTORNEYS FOR LOTTERY.COM, INC.**


## CERTIFICATE OF WORD COUNT

Pursuant to the Court's Individual Rules of Practice in Civil Cases, I hereby certify that this memorandum contains less than 3,500 words.


/s/ Steven P. Benenson
Steven P. Benenson

11