UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LOTTERY.COM, INC. SECURITIES LITIGATION | Case No. 1:22-cv-07111 (JLR)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF DEFENDANTS MATTHEW CLEMENSON AND RYAN DICKINSON'S MOTION TO DISMISS THE THIRD AMENDED CLASS COMPLAINT AND SECOND AMENDED HOFFMAN COMPLAINT**

Franklin Monsour Jr.
Kenton Atta-Krah
Christopher J. Whalen
MCDERMOTT WILL & EMERY
One Vanderbilt Avenue,
New York, NY 10017
Tel: (212) 547-5400
fmonsour@mwe.com
katta-krah@mwe.com
chwhalen@mwe.com

*Attorneys for Defendants*
*Matthew Clemenson and Ryan Dickinson*

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................. 1

II. ARGUMENT ........................................................................................................... 1

  A. Plaintiffs fail to demonstrate why their reliance on the Bloomberg Article
    is proper ...................................................................................................... 1

  B. Plaintiffs fail to meet the PSLRA's high standards for alleging scienter
    and falsity to support their Section 10(b) claim .......................................... 3

    1. Motive and Opportunity ................................................................. 3

    2. Plaintiffs have not alleged sufficient circumstantial evidence of
      knowledge or recklessness ............................................................. 5

  C. Plaintiffs' Section 14(a) claim fails ......................................................... 11

  D. Plaintiffs' Section 20(a) claims cannot go forward ................................. 11

III. CONCLUSION ...................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Grp., Inc.,*
47 F.3d 47 (2d Cir. 1995)..................................................................................................4

*AT&T Corp. v. Syniverse Techs., Inc.,*
No. 12-cv-1812, 2014 WL 4412392 (S.D.N.Y. Sept. 8, 2014) ................................................2

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.,*
477 F. Supp. 3d 123 (S.D.N.Y. 2020)..............................................................................7

*Gregory v. ProNAi Therapeutics Inc.,*
297 F. Supp. 3d 372 (S.D.N.Y. 2018)..........................................................................2, 3

*In re Bank of Am. Corp.,*
757 F. Supp. 2d 260 (S.D.N.Y. 2010)...............................................................................11

*In re Cronos Group Inc. Securities Lit.,*
2023 WL 8003324 (E.D.N.Y. Nov. 11, 2023)........................................................................8

*In re Gentiva Sec. Litig.,*
932 F.Supp.2d 352 (S.D.N.Y.2013)..................................................................................10

*In re Inv. Tech. Grp., Inc. Sec. Litig.,*
No. 15-cv-6369, 2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018)...........................................11

*In re Lottery.com, Inc. Sec. Litig.,*
No. 1:22-CV-07111, 2024 WL 454298 (S.D.N.Y. Feb. 6, 2024) (ECF 131)................... *passim*

*In re Optionable Sec. Litig.,*
577 F. Supp. 2d 681 (S.D.N.Y. 2008).................................................................................3

*In re Veeco Instruments, Inc. Sec. Litig.,*
235 F.R.D. 220 (S.D.N.Y. 2006) .......................................................................................6

*In re Virtus,*
195 F. Supp. 3d 528 (S.D.N.Y. 2016)...............................................................................12

*Lipow v. Net1 UEPS Techs., Inc.,*
131 F. Supp. 3d 144 (S.D.N.Y. 2015)...............................................................................10

*Long Miao v. Fanhua, Inc.,*
442 F. Supp. 3d 774 (S.D.N.Y. 2020)................................................................................7

*McIntosh v. Katapult Holdings, Inc.*,
   No. 21-CV-7251, 2023 WL 5049044 (S.D.N.Y. Aug. 8, 2023)...............................................11

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
   229 F.R.D. 441 (S.D.N.Y. 2004) ...............................................................................................2

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)..................................................................................................2, 3

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
   2016 WL 5818590 (S.D.N.Y. Oct. 5, 2016) ..............................................................................9

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
   No. 22-CV-6339, 2024 WL 1898512 (S.D.N.Y. May 1, 2024) ..................................................9

*Sec. & Exch. Comm'n v. Hurgin*,
   484 F. Supp. 3d 98 (S.D.N.Y. 2020).......................................................................................11

*Tung v. Bristol-Myers Squibb Co.*,
   412 F. Supp. 3d 453 (S.D.N.Y. 2019)........................................................................................8

*Vanderhoef v. China Auto Logistics Inc.*,
   No. 18-CV-10174, 2021 WL 3260849 (D.N.J. July 30, 2021)...................................................6

*Winter v. Stronghold Digital Mining, Inc.*,
   686 F. Supp. 3d 295 (S.D.N.Y. 2023)......................................................................................10

*Yannes v. SCWorx Corp.*,
   No. 20-CV-03349, 2021 WL 2555437 (S.D.N.Y. June 21, 2021) ..............................................5

## I.   PRELIMINARY STATEMENT

In dismissing the Amended Class-Action Complaint and the Hoffman Complaint, the Court held that both failed to sufficiently plead scienter for several reasons, including the failure to allege "any contemporaneous basis to believe that the information they [restated] was incorrect . . . ." *See In re Lottery.com, Inc. Sec. Litig.*, No. 1:22-CV-07111, 2024 WL 454298, at *34 (S.D.N.Y. Feb. 6, 2024) (ECF 131) ("Order") (citation omitted).  Plaintiffs filed the TAC[1] seeking to remedy these defects and hold liable Lottery.com and several of its former executives, including Clemenson and Dickinson ("Defendants"), for fraud.  But Plaintiffs' opposition, ECF 186 (the "Opposition"), ignores most of Defendants' arguments.  Instead, Plaintiffs continue to rely on their prior (dismissed) allegations and repeatedly invoke claims from the Bloomberg Article and public filings in their attempt to overcome the PSLRA's heightened pleading standard for proving scienter and/or falsity.  These allegations remain insufficient.  The Court should thus dismiss the TAC and Second Amended Hoffman Complaint with prejudice.[2]

## II.   ARGUMENT

### A.   Plaintiffs fail to demonstrate why their reliance on the Bloomberg Article is proper

Plaintiffs' *new* allegations concern the same sale of $30 million in advertising credits and a subsidiary's line of credit, adding only immaterial details, and the same statements regarding the Company's legal and regulatory compliance concerning ticket printing and order fulfillment.  *See* Opposition at 17-20.  These allegations are pulled from public filings and the unsubstantiated Bloomberg Article.  *See id* at Section II.B-D, and III.1.a.  The public filings containing these

---

[1] This reply brief incorporates all terms defined in Clemenson and Dickinson's original motion (the "Motion") unless indicated otherwise.

[2] As with their Motion, Clemenson and Dickinson adopt all relevant arguments raised in the replies submitted by their co-defendants.

allegations are dated prior to the Amended Complaint and/or Plaintiffs' Opposition to the first Motion to Dismiss, ECF 95, and Plaintiffs deemed them immaterial enough to omit until the TAC. Thus, the only allegations in the TAC that are truly new come from the Bloomberg Article.

As argued in the Motion, the Bloomberg Article suffers from fundamental problems, including its reliance on information from a leaked privileged internal investigation. Motion at 21. Plaintiffs fail to address these privilege concerns or cite any authority indicating that reliance on inadmissible privileged information at the pleadings stage is proper. Opposition at 20–21, 26–30. That is because such privileged information is clearly unavailable and undiscoverable. *See Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445 (S.D.N.Y. 2004) (finding reports of internal investigation conducted under the guidance of counsel were privileged and not discoverable). Since Plaintiffs fail to address the privilege issue, the Court should consider the point conceded and preclude any reliance on the Bloomberg Article. *AT&T Corp. v. Syniverse Techs., Inc.*, No. 12-cv-1812, 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014) (holding that plaintiff's failure to address an issue in its opposition brief "concedes the point").

The problems with the Bloomberg Article do not stop there. Plaintiffs incorrectly argue that reliance on unidentified sources including unnamed confidential witnesses is "of no consequence" because "Courts routinely credit allegations in a PSLRA complaint" that are derived from news articles. Opposition at 20. Plaintiffs cite to only one inapposite case, *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 407–08 n.21 (S.D.N.Y. 2018), where the court, in a footnote, held that "a plaintiff may rely on an unnamed confidential witness" but "must identify the roles occupied by the witness with 'sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.'" *Gregory*, 297 F. Supp 3d at 408 n.21 (quoting *Novak v. Kasaks,* 216 F.3d 300, 314 (2d Cir. 2000)). *Novak*

makes clear that reliance on an unnamed confidential source requires the source to be "personal." *See Novak*, 216 F.3d at 314 ("where plaintiffs rely on confidential *personal* sources . . . [or when] . . . *personal* sources must be identified, there is no requirement that they be named . . . . [T]he new [PSLRA] pleading requirement . . . [requires] documentary evidence and/or a sufficient general description of the *personal* sources of the plaintiffs' beliefs") (emphasis added).

Confidential witnesses in *Gregory* were research scientists known to plaintiffs who researched and tested the efficacy of a drug that the plaintiff claimed was inaccurately marketed as effective. 297 F. Supp. 3d at n.21. Here, Plaintiffs rely on a quote from an unnamed Lottery.com board member in the Bloomberg Article that Lottery.com was "breaking the law in 42 different ways" (a vague, visceral comment if there ever was one) without providing any further details about the board member or the basis of the statement. *See* Opposition at 14, 20. Moreover, the board member was not interviewed by Plaintiffs or even by Bloomberg, who pulled this quote from an undescribed "transcript"; and, of course, the board member did not mention Clemenson or Dickinson. Such statements are clearly insufficient under the PSLRA's pleading standards. *Novak*, 216 F.3d at 314; *see also* Motion at n.6 (citing *In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 690 (S.D.N.Y. 2008) ("[A]rticles should be credited only to the extent that other factual allegations would be … [and c]onclusory allegations of wrongdoing are no more sufficient if they come from [an article]")). Accordingly, the Bloomberg Article is an insufficient basis for Plaintiffs' allegations.

> **B.    Plaintiffs fail to meet the PSLRA's high standards for alleging scienter and falsity to support their Section 10(b) claim**

> **1.    Motive and Opportunity**

The Court previously rejected Plaintiffs' attempts to establish motive through Defendants' purported personal gain from the business combination. Order at *31 ( "[E]xecutive compensation

3

dependent upon stock value" and "incentive compensation" can "hardly be the basis on which an allegation of fraud is predicated"). Plaintiffs claim that the TAC adds "far more detail concerning the insider sales, including date of sales, number of shares, share prices, and proceeds." Opposition at 41–42. Plaintiffs fail to explain how this "detail" overcomes the Court's holding that the desire to benefit personally from a merger is insufficient to establish motive to defraud. Order at *31. Moreover, these "details" are not new to the Court; the TAC repeats the same facts about Dickinson's incentive package and Clemenson's sale of shares, only adding the dollar value of the shares and estimated proceeds of the sale.[3] *See id.* at *30. What's more, Plaintiffs have the share sale backwards: as Clemenson's SEC Form 4 provides, he sold his shares pursuant to a loan agreement entered into prior to the business combination in October 2021 that provided the lenders the right to purchase at $2.00 per share, which right they exercised on December 2, 2021. On that date the share price was between $6.35-$6.87—meaning Clemenson sold for less than a third of the share value.[4] The same is true for DiMatteo. There is simply nothing to show that these facts are sufficiently "unusual" or "suspicious" to warrant an inference of culpable motive. *Id.* at *30–31 (finding that neither Dickinson's incentive compensation package or Clemenson's sale of 375,000 shares was unusual enough to establish motive) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) ("[T]he existence, without more, of

---

[3] The Court noted that the Amended Complaint (ECF No. 52) did not include "precise figures" about the number of shares sold but that Plaintiffs provided that information in their opposition to the prior motions to dismiss. *Id.* at n.9. The Court then considered and rejected Plaintiffs' argument regarding motive.

[4] *See* https://www.sec.gov/Archives/edgar/data/1673481/000121390021063747/xslF345X03/ownership.xml

executive compensation dependent upon stock value does not give rise to a strong inference of scienter.").

### 2.    Plaintiffs have not alleged sufficient circumstantial evidence of knowledge or recklessness

Plaintiffs fail to allege scienter for the same reason their prior pleadings failed—the TAC lacks "any allegation that [Defendants] had any contemporaneous basis to believe that the information they related was incorrect." Order at *34–35. For example, neither the TAC nor the Bloomberg Article indicate whether anyone, including Clemenson or Dickinson, knew about the purported geofencing issues before the July 2022 internal investigation. *See* Motion at 21–22. Further, Plaintiffs continue to argue that it is "simply unbelievable" that Defendants could have made mistakes regarding their transactions. Opposition at 42–44. But such exclamations—no matter how often repeated—provide no basis for Plaintiffs' claims. Section 10(b) requires a showing of recklessness and not "mere negligence," so the Court previously weighed competing theories concerning, for example, terminations/resignations of Lottery.com executives in determining a lack of scienter. Order at *34–35 (citing "many innocuous reasons" why executives resign).[5]

*Termination and resignations of senior officers and auditor*

Plaintiffs again argue that Lottery.com auditor Armanino's resignation supports an inference of scienter because Armanino claimed that it was "unable to rely on representations of management." Opposition at 38. But Plaintiffs fail to explain how a vague statement about

---

[5] Plaintiffs' citation to *Yannes v. SCWorx Corp.*, No. 20-CV-03349, 2021 WL 2555437 (S.D.N.Y. June 21, 2021) does nothing to alter the Court's reasoning. There, the court found recklessness where the executive failed to conduct due diligence on business partners despite representing that he had "personally spent weeks" doing so. *Id.* at *2, 4–6. Plaintiffs allege no such personal contemporaneous facts here.

Lottery.com's "management" that does not name Clemenson and Dickinson and which was made months after their departure, "relat[es] to concocting a scheme to defraud shareholders" as opposed to Lottery.com "punishing those at the helm for their poor judgment and leadership,"  Order, at *34–35,  or even why Armanino's inability "to rely on representations of management" could not have resulted from mismanagement or mistake.  *See* Motion at 11, 16.  The out-of-circuit *Vanderhoef v. China Auto Logistics Inc.* case is distinguishable because defendants there actively obstructed an internal investigation.  Opposition at 38 (citing No. 18-CV-10174, 2021 WL 3260849, at *3 (D.N.J. July 30, 2021)).  Plaintiffs allege no such conduct here.

### GAAP Violations and Nondisclosure

Plaintiffs argue that Lottery.com's reporting of the $30 million transaction purportedly in violation of ASC 606 "provides strong evidence that" Lottery.com's allegedly false financial statements "were made recklessly or knowingly."  Opposition at 31-32.  This Court already held that "allegations of GAAP violations or accounting irregularities" relating to the $30 million transaction were insufficient to show scienter because Plaintiffs failed to show "corresponding fraudulent intent."  Motion at 14 (citing Order at *25).  The TAC does not cure this deficiency. Opposition at 31–32.

Plaintiffs argue that accounting errors in Lottery.com's financials impute knowledge of fraud on Defendants.  Opposition at 32-33, 36-37.  This Court has rejected this argument too. Order at *32 (holding that disclosure of accounting errors "do not suffice to establish scienter"). The cases Plaintiffs rely upon are distinguishable because plaintiffs in those cases "identif[ied] specific facts constituting strong circumstantial evidence of" scienter.  *See, e.g.*, *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 231 (S.D.N.Y. 2006) (alleging that accounting issues were discussed at twice-monthly conference calls and that defendant specifically ordered

overstatements to be "buried" with other adjustments). Plaintiffs still fail to adequately plead that Defendants "had any [such] contemporaneous basis to believe that the information they related was incorrect." Order, at \*34.

Plaintiffs' allegations specific to Defendants relate almost entirely to their signatures on various SEC filings, or, as to Dickinson, loan documents. Opposition at 33-35. Plaintiffs offer no new substantive allegations for Clemenson, who is alleged only to have signed an annual report and to have resigned. *See, e.g.*, TAC ¶¶ 67, 126. The Court already deemed those allegations insufficient, *see* Order, at \*33–35, and it is well settled that Plaintiff "cannot raise an inference of fraudulent intent based on the signing of a certification without alleging any facts to show a concomitant awareness of or recklessness to the materially misleading nature of the statements." *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 807 (S.D.N.Y. 2020). So too, Dickinson's signing of a loan document in no way demonstrates intent to commit GAAP violations. Motion at 17–19.

Plaintiffs again argue that it is "simply unbelievable" that Defendants did not know that the $30 million transaction was wrongly reported given their executive positions. Opposition at 33-34. The Court already held that it cannot infer fraudulent intent from Defendants' roles at the company because "such allegations are not enough" to allege the "requisite 'conscious recklessness[.]'" Order, at \*33–34 (citation omitted). None of the cases Plaintiffs cite hold differently. In *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, for example, the Court found scienter where defendants admitted in a sworn declaration that defendant "knew facts or had access to information suggesting that their public statements were not accurate." 477 F. Supp. 3d 123, 136 (S.D.N.Y. 2020). There is no such admission here.

7

Contrary to Plaintiffs' contention, DiMatteo's statement in the (unsubstantiated) Bloomberg Article that "[t]hey were eager to get a deal done . . . We had no idea what this game was. They were the grownups in the room," Opposition at 26, 30,  in no way suggests that Defendants were aware of any wrongdoing. DiMatteo's vague statement underscores Defendants' lack of "appropriate public company experience" and "technical expertise" to oversee Lottery.com's financial reporting, as the Proxy cautioned. Motion at 14–15 (quoting Proxy at 51).[6] Plaintiffs' reassertion of the "core operations doctrine" to support scienter also remains unavailing. *See* Order at *33. Plaintiffs once again fail to offer any allegations that Defendants had any "corresponding fraudulent intent" for the GAAP violations or accounting irregularities to allege scienter. *Id.* at *25, 34.

### *Lottery.com's Compliance with State and Federal Laws*

Aside from the host of preliminary issues Plaintiffs face in relying on the Bloomberg Article, *see supra* Section II.A., Plaintiffs fail to explain how the Bloomberg Article offers any details about how these statements were knowingly false when made. *See* Opposition at 26–30, 37. Plaintiffs argue that allegations in the Bloomberg Article concerning the out-of-state printing support an inference of scienter because they alleged the practice had been ongoing "since before 2020" and that "Lottery[.com] printed out more than 500,000 tickets worth more than $1.1 million

---

[6] Plaintiffs' attempt to distinguish *Tung v. Bristol-Myers Squibb Co.*, 412 F. Supp. 3d 453 (S.D.N.Y. 2019) is misplaced. Clemenson and Dickinson's Motion cites *Tung* for the assertion that a defendant's skill or experience alone is insufficient to show scienter "unless it is specifically shown how or why the [defendant] should have believed the [misrepresentations] to be inaccurate." *Id.* at 15. Plaintiffs claim that having "basic accounting knowledge" supports a showing of scienter, but they offer no more detail as to why Clemenson and Dickinson should have believed contested statements were false. This deficiency is precisely why the Courts in *Tung* and the *In re Cronos Grp.* cases cited in Clemenson and Dickinson's Motion, did not find a defendant's experience alone was sufficient to demonstrate scienter. *See* Motion at 17 (citing 2023 WL 8003324, at *6 (E.D.N.Y. Nov. 11, 2023)).

in Texas for out of state lottery players," which would have been known by Defendants "[g]iven that nearly all of the Company's business depends on lottery game sales." Opposition at 26–27. However, the Opposition and the Bloomberg Article acknowledge that Lottery.com's executive leadership were unaware of this practice until June 2022, and neither the Opposition nor Bloomberg Article indicate that Defendants knew about the apparent issue before June 2022. Opposition at 13–14; Bloomberg Article at 8. Plaintiffs' allegations fail absent Defendants' contemporaneous knowledge of the alleged violations. *See* Motion at 20–21.

Plaintiffs further fail to allege how Defendants were in a position to know intricacies of Lottery.com's compliance with relevant laws and regulations or had the technical expertise to be aware of any shortcomings. *See* Order at *32. Plaintiffs even fail to explain how 500,000 tickets worth more than $1.1 million in this non-descript period was significant enough to put Defendants on notice that such practice was occurring. The cases Plaintiffs cite supporting this assertion are distinguishable for this reason. *See e.g., San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, No. 22-CV-6339, 2024 WL 1898512, at *8 (S.D.N.Y. May 1, 2024) (alleging details how defendant was "highly attuned to defect complaints," including attendance at meetings where defects were discussed and receiving calls from complaining customers).

Plaintiffs incorrectly argue that "inform[ing] the public of the existence of" applicable regulations in public SEC filings supports scienter. Opposition at 27–28. The cases Plaintiffs cite are distinguishable. For example, in *Pirnik v. Fiat Chrysler Automobiles, N.V.* the court found scienter where defendants also "frequently discussed" regulatory compliance in press releases and earning calls. No. 15-CV-7199(JMF), 2016 WL 5818590, at *7 (S.D.N.Y. Oct. 5, 2016). No such statements are identified or attributed to Defendants here; and nothing negates the forward-looking

9

nature of the challenged statements, such as "ensuring" and being "committed" to compliance. Motion at 22–23.

Plaintiffs also argue that Lottery.com's disclosure that "certain of [its] former officers are currently the subject of investigations and inquiries" by government agencies supports a finding of scienter.  Opposition at 40.  The statement offered by Plaintiffs does not even mention Defendants by name, and it does not provide any further information about their knowledge.  Even so, "[G]overnment investigations cannot bolster allegations of scienter that do not exist, and, as currently plead, the government investigations are just that, investigations." *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 167 (S.D.N.Y. 2015); *In re Gentiva Sec. Litig.*, 932 F.Supp.2d 352, 363, 380 (S.D.N.Y.2013) (finding no scienter despite allegations that two government agencies were investigating the defendants).

Plaintiffs also argue that cautionary language about the efficacy of features contained in Lottery.com's application and web-based products "cannot immunize" Defendants from liability because the disclosed risks had already transpired at the time such statements were made. Opposition at 23.  However, Plaintiffs fail to adequately allege that Defendants knew about such risks at the time Lottery.com issued the cautionary language, which distinguishes the cases Plaintiffs' cite in support.  *See, e.g., Winter v. Stronghold Digital Mining, Inc.*, 686 F. Supp. 3d 295, 309 (S.D.N.Y. 2023) (holding that cautionary language regarding delayed shipments was unavailing where plaintiffs alleged that defendants knew on time shipments were not possible at the time of the IPO).

Thus, Plaintiffs allegations of non-compliance fall short of the PSLRA's standards for alleging falsity or scienter.

### C.    Plaintiffs' Section 14(a) claim fails

Plaintiffs' claim under Section 14(a) turns on allegedly false or misleading statements in the Proxy about the Business Combination. *See* Opposition at 46–47. The same falsity analysis that undermines Plaintiffs' Section 10(b) claims are fatal to Plaintiffs' Section 14(a) claim. *See* Motion at 22–23.

Plaintiffs' claim that "the basis for Section 14(a) liability is simply whether the defendant has solicited or permitted his or her name to be used in the allegedly unlawful proxy" is misplaced. Opposition at 47. Section 14(a) requires "a substantial connection between the use of the person's name and the solicitation effort." *Sec. & Exch. Comm'n v. Hurgin*, 484 F. Supp. 3d 98, 117 (S.D.N.Y. 2020). Thus, "the use of an officer's name in the text of [a proxy], without more, provides an insufficient basis to bring the [officer] within the ambit of Section 14(a)." *See In re Bank of Am. Corp.*, 757 F. Supp. 2d 260, 295 (S.D.N.Y. 2010). Pleadings in cases cited by Plaintiffs all contained allegations specifying an individual defendant's "substantial connection" to challenged statements. *See, e.g.*, *McIntosh v. Katapult Holdings, Inc.*, No. 21-CV-7251, 2023 WL 5049044, at *13 (S.D.N.Y. Aug. 8, 2023) (alleging that each of the individual defendants were aware of a decline in business when they failed to disclose risks of a waterfall structure).

Plaintiffs fail to specifically identify either Clemenson or Dickinson's connection to the Proxy statements at issue, which requires dismissal of this claim. Motion at 22–23.

### D.    Plaintiffs' Section 20(a) claims cannot go forward

Plaintiffs' Section 20(a) "control person" liability claims—one for each of the two primary violations charged in the Complaint—should be dismissed. First, without pleading facts sufficient to support their Sections 10(b) or 14(a) claims, a Section 20(a) claim—which must be based on a primary violation—cannot go forward. *In re Inv. Tech. Grp., Inc. Sec. Litig.*, No. 15-cv-6369, 2018 WL 1449206, at *7 (S.D.N.Y. Mar. 23, 2018). Second, Plaintiffs' failure to allege scienter

11

independently dooms the Section 20(a) claim: Section 20(a) claims require alleging "culpable participation," which "is a scienter requirement." *In re Virtus*, 195 F. Supp. 3d 528, 542 (S.D.N.Y. 2016).

## III.   CONCLUSION

For these reasons and those explained in their Motion, Mr. Clemenson and Mr. Dickinson respectfully ask the Court to dismiss Plaintiffs' TAC and Hoffman's Second Amended Complaint.

Dated:  New York, New York

August 22, 2024

Respectfully submitted,

**MCDERMOTT WILL & EMERY**

By:  *s/Franklin Monsour Jr.*

Franklin Monsour Jr.
Kenton Atta-Krah
Christopher J. Whalen
One Vanderbilt Avenue,
New York, NY 10017
Tel: (212) 547-5400
fmonsour@mwe.com
Katta-krah@mwe.com
chwhalen@mwe.com

*Attorneys for Defendants*
*Matthew Clemenson and Ryan Dickinson*

12

## WORD COUNT CERTIFICATION

I hereby certify that the foregoing Reply Memorandum of Law complies with Rule 3(c) of this Court's Individual Rules of Practice (July 3, 2024).

By:  *s/Franklin Monsour Jr.*

Franklin Monsour Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of August, 2024, the foregoing Reply Memorandum of Law was filed electronically with the Court using the CM / ECF system, which will electronically serve all counsel of record.

By:  *s/Franklin Monsour Jr.*

Franklin Monsour Jr.