**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
                                                                        :
IN RE LOTTERY.COM, INC.                                                 :
SECURITIES LITIGATION                                                   :
                                                                        :        No. 22 Civ. 07111 (JLR)
                                                                        :
------------------------------------------------------------------------x


## THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## UNOPPOSED APPLICATION TO INTERVENE AND FOR A COMPLETE STAY


                                        JAY CLAYTON
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for the United States
                                             of America.



Justin V. Rodriguez
Assistant United States Attorney
      *- Of Counsel -*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ **1**

**BACKGROUND** ....................................................................................................................... **2**

**ARGUMENT** ............................................................................................................................. **7**

    I.    THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE ...... 7

    II.    A COMPLETE STAY OF THIS ACTION IS APPROPRIATE ................................... 8

        A.   Applicable Law ................................................................................................... 8

        B.   Discussion .......................................................................................................... 9

**CONCLUSION** ...................................................................................................................... **15**

# TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*Bd. of Governors of the Federal Reserve System v. Pharaon,*
  140 F.R.D. 634 (S.D.N.Y. 1991) ................................................................................ 14

*Bureerong v. Uvawas,*
  167 F.R.D. 83 (C.D.Cal. 1996) ................................................................................... 8

*Campbell v. Eastland,*
  307 F.2d 478 (5th Cir. 1952) ..................................................................................... 14

*In re Par Pharm, Inc. Sec. Litig.,*
  133 F.R.D. 12 (S.D.N.Y. 1990) ................................................................................. 11

*Kashi v. Gratsos,*
  790 F.2d 1050 (2d Cir. 1986) ...................................................................................... 8

*Landis v. N. Am. Co.,*
  299 U.S. 248 (1936) ..................................................................................................... 9

*Louis Vuitton Malletier S.A. v. LY USA, Inc.,*
  676 F.3d 83 (2d Cir. 2012) ....................................................................................... 8, 9

*Parker v. Dawson,*
  06 Civ. 6191 (JFB), 2007 WL 2462677 (E.D.N.Y. Aug. 27, 2007) ........................ 10

*Phillip Morris Inc. v. Heinrich,*
  95 Civ. 328 (LMM), 1996 WL 363156 (S.D.N.Y. June 28, 1996) .......................... 14

*SEC v. Beacon Hill Asset Management LLC,*
  02 Civ. 8855 (LAK), 2003 WL 554618 (S.D.N.Y. Feb. 27, 2003) .......................... 13

*SEC v. Calabrigo,*
  22 Civ. 3096 (LJL), 2022 WL 4752427 (S.D.N.Y. Sept. 30, 2022) ......................... 14

*SEC v. Carroll,*
  19 Civ. 7199 (AT), 2020 WL 1272287 (S.D.N.Y. Mar. 17, 2020) ....................... 1, 9

*SEC v. Chestman,*
  861 F.2d 49 (2d Cir. 1988) .......................................................................................... 8

*SEC v. Contorinis,*
  09 Civ. 1043 (RJS), 2012 WL 512626 (S.D.N.Y. Feb. 3, 2012) ............................. 12

*SEC v. Nicholas,*
  569 F. Supp. 2d 1065 (C.D. Cal. 2008) ............................................................... 13, 14

*SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.,*
  11 Civ. 6500 (RA), 2012 WL 5505738 (S.D.N.Y. Nov. 9, 2012) ........................... 12

*SEC v. Shkreli*
  15 Civ. 7175 (KAM), 2016 WL 1122029 (E.D.N.Y. Mar. 22, 2016) ..................... 1, 10, 11, 12

*SEC v. Treadway,*
  04 Civ. 3464 (VM) (JCF), 2005 WL 713826 (S.D.N.Y. March 30, 2005) ............... 9

*Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.,*
  886 F. Supp. 1134 (S.D.N.Y. 1995) .......................................................................... 11

*Twenty First Century Corp. v. LaBianca,*
  801 F. Supp. 1007 (E.D.N.Y. 1992) ....................................................................... 7, 12

*United States v. McCarthy,*

292 F. Supp. 937 (2d Cir. 1968) .............................................................................................. 13

*United States v. One 1964 Cadillac Coupe DeVille*,
   41 F.R.D. 352 (S.D.N.Y. 1966) ............................................................................................ 10

*United States v. Percevault*,
   490 F.2d 126 (2d Cir. 1974)................................................................................................... 13

*Volmar Distrib., Inc. v. New York Post Co., Inc.*,
   152 F.R.D. 36 (S.D.N.Y. 1993) .............................................................................................. 9

Statutes

18 U.S.C. § 3500.......................................................................................................................... 13
18 U.S.C. § 3500(b) ..................................................................................................................... 15

**PRELIMINARY STATEMENT**

The United States of America, by and through the United States Attorney for the Southern District of New York (the "Government"), respectfully submits this memorandum of law in support of its application (i) to intervene in the above-captioned case, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (ii) to stay this matter in its entirety until the conclusion of the criminal case captioned *United States* v. *Vadim Komissarov*, *Matthew Clemenson*, and *Ryan Dickinson*, 25 Cr. 61 (AKH) (the "Criminal Case"). With the exception of *pro se* plaintiff Harold Hoffman, all parties, through counsel, have informed the Government that they do not oppose the relief sought herein. Mr. Hoffman personally informed the Government that he does not oppose the relief sought herein.

Courts in this district frequently stay civil cases when there is a related criminal prosecution. Here, the Criminal Case arises from the same set of facts and circumstances that underlie this action. As a result, a stay is especially appropriate because any exchange of discovery would allow Komissarov, the lead defendant in both cases, to circumvent the criminal discovery rules that apply in the Criminal Case. In similar situations, courts in this Circuit have often entered a stay of civil actions when there is a related criminal prosecution with overlapping defendants and facts, even where, as is not the case here, a defendant objects. *See, e.g.*, *SEC v. Leech*, 24 Civ. 09017 (KPF) (S.D.N.Y. Jan. 21, 2025) (Dkt. 16) (granting full stay on consent); *SEC v. Dagar & Bhiwapurkar*, 23 Civ. 05564 (VM) (S.D.N.Y. Sept. 7, 2023) (Dkt. 19) (granting full stay on consent); *SEC v. Milton*, 21 Civ. 6445 (AKH) (S.D.N.Y. Aug. 8, 2022) (Dkt. 40) (granting government's motion for a full stay over defendant's objection); *SEC v. Carroll,* 19 Civ. 7199 (AT), 2020 WL 1272287 (S.D.N.Y. Mar. 17, 2020) (granting, over defendants' opposition, full stay); *SEC v. Shkreli*, 15 Civ. 7175 (KAM), 2016 WL 1122029, at *2-7 (E.D.N.Y. Mar. 22, 2016) (granting, over defendants' opposition, full stay).

In light of the overlapping set of facts between this case and the Criminal Case, the complications that civil discovery would cause in that Criminal Case, and the consent of the defendants, the Government respectfully requests that the Court impose a complete stay in this matter until the conclusion of the Criminal Case.

## BACKGROUND

This case, and the Criminal Case, arise out of the same underlying events. On February 20, 2025, Indictment 25 Cr. 61 (AKH) (the "Indictment") was unsealed, charging Vadim Komissarov with (i) conspiracy to commit securities fraud, to make false and misleading statements in proxy statements, and to make false filings with the SEC, (ii) securities fraud, (iii) false and misleading statements in proxy statements, (iv) obstruction of justice, and (v) perjury.

In summary, between November 2020 and May 2022, Komissarov engaged in a scheme to defraud investors in Trident Acquisitions Corp. ("TDAC") and investors in TDAC's successor company (Lottery.com) by publicly reporting false and misleading revenue and business information about a prospective acquisition target (AutoLotto, Inc.) and by profiting from the effect of the deception by selling Lottery.com shares before other market participants realized the true state of the company (the "Revenue Scheme"). (Indictment ¶ 1).

The Revenue Scheme arose from an effort by Komissarov to identify a suitable target for TDAC before TDAC reached a deadline to either use or return investor funds that had been raised to support an acquisition. In November 2020, Komissarov settled on AutoLotto, Inc., d/b/a Lottery.com, as a target for TDAC. To deceive TDAC shareholders about the nature of AutoLotto's business, and to thereby secure their approval for TDAC's acquisition of AutoLotto (the "Business Combination"). Komissarov worked with two AutoLotto executives—Matthew Clemenson and Ryan Dickinson—to improperly and misleadingly inflate AutoLotto's revenue and

2

to report those inflated figures to TDAC's shareholders through public filings with the Securities and Exchange Commission ("SEC"). (Indictment ¶ 2).

The Revenue Scheme created the false appearance of revenue-generating business activity through a series of sham transactions.

First, AutoLotto executives, acting at the direction of Komissarov induced executives at a data company ("Data Company-1") to execute a sham sale agreement, whereby AutoLotto appeared to agree to sell data to Data Company-1 over three fiscal quarters: $2 million in the fourth quarter of 2020, $2 million in the first quarter of 2021, and $5 million in the second quarter of 2021. AutoLotto did not, in fact, receive $9 million in payments from Data Company-1 and instead paid approximately $500,000 to Data Company-1 to obtain the sham contract. (Indictment ¶ 3(a)).

Second, Komissarov, at times using the alias "Vlad" and acting through a company called Pan European Associates ("Pan Euro"), engineered a transaction to conceal the absence of a $9 million payment from Data Company-1. Using approximately $1 million obtained from AutoLotto, Komissarov acquired ownership stakes in two gaming companies based in Mexico (together, the "Mexico Gaming Companies") and then Komissarov purported to sell those ownership stakes to AutoLotto for approximately $10 million, plus hundreds of thousands of shares of AutoLotto. In truth, not only did AutoLotto never receive payment from Data Company-1, but it also never sent $9 million to Pan Euro for the purchase of the ownership stake in the Mexico Gaming Companies. (Indictment ¶ 3(b)).

Third, after the Business Combination, Lottery.com executives, responding to pressure from Komissarov, purported to sell media credits for $30 million to another data company ("Data Company-2"). Lottery.com then obtained a $30 million bank loan, secured by $30 million of Lottery.com cash, and transmitted $29.7 million of loan proceeds ($30 million minus a 1 % origination fee) to Data Company-2 to cover its payment to Lottery.com for the media credits. In

addition, Lottery.com issued a sham invoice to Data Company-2 for approximately $17.1 million for good and services, in large part, that Lottery.com had not been provided. (Indictment ¶ 3(c)).

The cumulative effect of the various transactions made it appear that AutoLotto and later Lottery.com had received $9 million from Data Company-1, had subsequently spent those funds to acquire ownership stakes in the Mexico Gaming Companies from a third party, and had generated $47 million in revenue from Data Company-2. TDAC and Lottery.com conveyed these statements about AutoLotto's and Lottery.com's revenue and business transactions to their respective shareholders, and to the market as whole, through Form S-4 registration statements and proxy statements, which Komissarov reviewed, approved, caused to be filed, and, in most instances, signed as the principal executive, financial, and accounting officer of TDAC, and through annual and quarterly reports filed on Form 10-K and Form 10-Q, which Lottery.com executives signed. (Indictment ¶ 4).

Contrary to Komissarov and his coconspirators reported, Data Company-1 had never paid $9 million to AutoLotto; the purchase of the equity stakes in the Mexico Gaming Companies had been arranged by Komissarov and occurred at purposefully inflated prices; the $30 million Lottery.com received from Data Company-2 for the media credits was largely funded by an undisclosed Lottery.com bank loan; Lottery.com owed a bank $30 million for the loan and was using $30 million of its cash as collateral for the loan; and the $17.1 million invoice was for good and services that were, in large part, not provided. (Indictment ¶ 5).

On October 28, 2021, the Business Combination was approved at a special meeting of TDAC shareholders. Upon the closing, the combined company was renamed Lottery.com Inc. and its common stock began trading on the Nasdaq stock exchange under the ticker symbol LTRY. In April 2022 and May 2022, following the filing of Lottery.com's annual report, which contained additional misstatements and misleading omissions, and after the expiration of a six-month lock-

4

up period, Komissarov sold almost 300,000 Lottery.com shares for more than $600,000. (Indictment ¶ 6).

Within months, the company's new leadership publicly disclosed that they had identified errors in the company's reported revenue and available cash. Following a series of disclosures on that subject, and disclosure that the company may not have the funds to continue to operate, Lottery.com's share price declined. As a result, investors who purchased or held Lottery.com stock following the Business Combination incurred substantial losses. (Indictment ¶ 7).

By June 2023 and August 2023, the enforcement staff of the SEC had begun to investigate TDAC's and Lottery.com's public filings surrounding the Business Combination. After receiving a subpoena from the SEC for documents and testimony in connection with the SEC's investigation, Komissarov schemed to obstruct the SEC's investigation. For example, during a call with Clemenson and Dickinson, Komissarov said he wanted to "sync" his "clock[]" with Clemenson and Dickinson and align with them on a false and misleading narrative that concealed his involvement in the fraudulent roundtrip transaction involving Data Company-1, AutoLotto, and Pan Euro, and his involvement with Pan Euro's and then Auto Lotto's acquisition of ownership stakes in the Mexico Gaming Companies. Komissarov warned Clemenson and Dickinson, "guys, you do understand, you say that I was involved with this transaction .... if Trident and me specifically knew about it, then I am in deep, deep, deep, deep water .... So, if you come out and say that I was involved, then I am in deep shit." (Indictment ¶ 8).

Komissarov also personally tried to misdirect the SEC. On November 20, 2024, Komissarov provided sworn testimony to the SEC in connection with the SEC investigation into TDAC and Lottery.com. During his testimony, Komissarov gave false and misleading answers about his prior communications with Clemenson and Dickinson and his involvement in the

5

fraudulent roundtrip transaction involving Data Company-1, AutoLotto, and Pan Euro. (Indictment ¶ 9).

On May 22, 2024, Matthew Clemenson and Ryan Dickinson pleaded guilty, pursuant to cooperation agreements with the Government, to Superseding Informations S1 25 Cr. 61 (AKH) and S2 25 Cr. 61 (AKH), which charged Clemenson and Dickinson with (i) conspiracy to commit securities fraud, to make false and misleading statements in proxy statements, and to make false filings with the SEC, (ii) securities fraud, and (iii) false SEC filings, and which charged Dickinson with improperly influencing the conduct of audits. As reflected by their guilty to the Superseding Informations, Clemenson and Dickinson have accept responsibility for engaging in a scheme with Komissarov to fraudulently inflate AutoLotto's and Lottery.com's reported revenue and, in the course of such scheme, making material misrepresentations and misleading omissions about (a) AutoLotto's and Lottery.com's revenue and financial condition and (b) the circumstances of AutoLotto's acquisition of ownership stakes in the Mexico Gaming Companies. (S1 Superseding Information ¶ 6, S2 Superseding Information ¶ 6).

The Criminal Case has been assigned to Judge Hellerstein. Komissarov's deadline for the filing of pretrial motion in October 10, 2025, and the next conference before Judge Hellerstein is scheduled for November 19, 2025.

In this case, on June 26, 2025, lead plaintiffs filed a Fifth Amended Class Complaint and, on July 2, 2024, plaintiff Harold Hoffman filed a Fourth Amended Complaint, which assert claims of securities fraud and proxy statement fraud against Komissarov, Lottery.com, Tony DiMatteo, Dickinson, and Clemenson. (Dkts. 242 & 243). These operative complaints rely significantly on the allegations in the Indictment and the Superseding Informations. (*See, e.g.*, Dkt. 242 at 32 ("As The Komissarov Indictment And Dickinson's And Clemenson's Guilty Pleas Confirm, The

Individual Defendants Knowingly Engaged In Sham Transactions To Inflate Revenue After The Business Combination."); Dkt. 243 at 32 (same)).

## ARGUMENT

The Government's requests to intervene and for a complete stay of this civil action should be granted. If this case were to proceed, there would be a risk of significant interference with the Criminal Case. A complete stay would prejudice no party to this civil action; would prevent the circumvention of important statutory limitations on criminal discovery and avoid asymmetrical discovery; and would preserve the Court's resources because many of the issues presented by the civil action are likely to be resolved in the Criminal Case. Significantly, none of the parties to this civil action opposes the Government's request.

## I.    THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." The Government respectfully submits that its application satisfies both of these provisions given the effect this civil proceeding would have on the Criminal Case and the similarity of claims and facts between the related actions.

As a general rule, courts "have allowed the government to intervene in civil actions—especially when the Government wishes to do so for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter."

*SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

As an initial matter, intervention is warranted because the Government's interests in upholding the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represent the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D.Cal. 1996) ("the Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . .  Clearly neither the plaintiff or the defendants have this identical interest.").

Moreover, discovery and a trial in this action in advance of a criminal trial could impair or impede the Government's ability to protect its interests in the enforcement of federal criminal law. This case and the related Criminal Case arise from the same alleged Revenue Scheme, as described above. Holding a civil trial before the criminal proceedings would create the possibility that there will be two trials covering the same acts. This would raise the probability that witnesses would be unnecessarily burdened by having to testify twice. In light of those circumstances, the Government respectfully submits that its unopposed application to intervene should be granted.

## II.    A COMPLETE STAY OF THIS ACTION IS APPROPRIATE.

### A.  Applicable Law

This Court has the inherent power to stay civil proceedings in the interests of justice pending the completion of a related criminal case. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action.") (internal citations and quotations omitted). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting

8

*Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When considering whether to grant a stay, courts balance the following factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest.

*Carroll*, 2020 WL 1272287 at *2 (quoting *Louis Vuitton*, 676 F.3d at 99); *SEC v. Treadway*, 04 Civ. 3464 (VM) (JCF), 2005 WL 713826, at *2-*3 (S.D.N.Y. March 30, 2005); *see also Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (listing similar factors). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Id.* But the factors "can do no more than act as a rough guide for the district court as it exercises its discretion" and do not replace the Court's "studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Louis Vuitton*, 676 F.3d at 99. The Court's "decision ultimately requires and must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case." *Id.* (quotation marks omitted).

### B. Discussion

Application of these factors here weighs in favor of the Government's requested stay, to which no party objects.

#### 1.    *The Extent of Overlap*

That the facts of the civil case overlap substantially with the Criminal Case and that similar issues will be decided in each case weigh heavily in favor of a stay. "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues." *Volmar*

*Distrib.*, 152 F.R.D. at 39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also Parker v. Dawson*, 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (same); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

Here, as described above, the facts of this case overlap significantly with the facts alleged in the Criminal Case. Three defendants in the Criminal Case—Komissarov, Clemenson, and Dickinson—are also charged in the Civil Case and the Criminal Case will involve proof of substantially all of the same facts through the same witnesses.

Even in situations where a civil action includes allegations against additional defendants, or even alleged additional misconduct, courts generally stay discovery where there is "substantial overlap between the civil and criminal proceedings." *SEC v. Tuzman*, 15 Civ. 7057 (AJN), ECF No. 43, at 2-3 (S.D.N.Y. Mar. 1, 2016) (ordering a partial stay of discovery, over opposition, notwithstanding that some fraudulent conduct charged in the civil case was not referenced in the criminal indictment); *SEC v. Bauer*, 22 Civ. 3089 (RA), ECF No. 62 (ordering complete stay of discovery where the fraudulent conduct charged in the civil case included defendants not named as defendants in the criminal case and covered a broader set of stocks than the criminal indictment). That is not surprising given that, whether the civil action is broader than the Criminal Case or vice-versa, the issue relevant to whether a stay is appropriate is the same: whether it is likely that substantially the same set of facts would have to be proven twice in two different proceedings, draining resources from the courts and from the Government, and inconveniencing witnesses. *See, e.g., Shkreli*, 2016 WL 1122029, at *4; *Tuzman*, 15 Civ. 7057 (AJN), ECF No. 43, at 3. Here, that is unambiguously the case.

10

Accordingly, this factor weighs heavily in favor of a stay. *See, e.g., Shkreli*, 2016 WL 1122029, at *4; *Tuzman*, 15 Civ. 7057 (AJN), Dkt. 43, at 3 (S.D.N.Y. Mar. 1, 2016).

### 2.    *Status of the Criminal Case*

The filing of the Indictment in the Criminal Case is also a factor that weighs in favor of a stay. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (quotation and citation omitted). Indeed, "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990); *see also Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved."). Although a trial date has not yet been set, Komissarov has been indicted, the Government has produced substantial Rule 16 material, and pretrial motions are due to be filed in the Criminal Case by October 10, 2025. The steady forward progress of the Criminal Case strongly favors a stay. *See Tuzman*, 15 Civ. 7057 (AJN), at 3 (noting that an indictment normally weighs heavily in favor of a stay absent particular facts indicating that the criminal case may not be resolved expeditiously).

### 3.    *The Potential Prejudice to the Parties*

No prejudice to the parties will result from the requested stay. As noted, the parties do not oppose the stay. Moreover, a stay will prevent defendants in this case from having to choose between asserting their Fifth Amendment rights during civil discovery and thereby being prejudiced in this action or asserting those rights and thereby being prejudiced in the Criminal

11

Case. *See Shkreli*, 2016 WL 1122029, at *3 n.3 ("[C]riminal defendants frequently seek stays in parallel civil enforcement proceedings, often due to an adverse inference that can arise from a party's invocation of the Fifth Amendment privilege against self-incrimination."). In addition, as there are not currently any discovery deadlines or a trial date in place in this action, there will be no undue delay in the proceedings as a result of the stay. Accordingly, the parties will not be prejudiced by a stay.

### 4.    *The Interests of the Court*

Considerations of judicial economy also weigh in favor of granting a stay. Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action. *Cf. SEC v. Contorinis*, 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*, 11 Civ. 6500 (RA), 2012 WL 5505738, at *4 (S.D.N.Y. Nov. 9, 2012) ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered). Because the Criminal Case's outcome will likely affect the conduct, scope, and result of the civil proceeding, potentially streamlining issues in this matter and avoiding duplication of effort and judicial resources, this factor favors the Government's application.

### 5.    *The Public Interest*

The Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery— restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture

12

evidence or intimidate witnesses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

In *Tuzman*, Judge Nathan outlined three principal Government interests justifying a stay of discovery of civil proceedings while parallel criminal proceedings are pending:

> First, broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence. Second, revelation of the identity of prospective witnesses may create the opportunity for intimidation. Third, criminal defendants may unfairly surprise the prosecution at trial with information developed through [civil] discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.

*Tuzman*, 15 Civ. 7057 (AJN), at 3-4 (internal citations and quotations omitted). Based on these concerns, judges in this District have frequently granted Government requests to limit discovery in a related civil action to prevent the civil discovery rules from being subverted into a device for improperly obtaining discovery in the criminal proceeding. *See, e.g., id.* (granting stay sought by Government); *SEC v. Beacon Hill Asset Management LLC*, 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting government's motion to stay, court noted: "The principal concern with respect to prejudicing the government's criminal investigation is that

13

its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Phillip Morris Inc. v. Heinrich*, 95 Civ. 328 (LMM), 1996 WL 363156, at \*19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'" (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952))).

Indeed, the rationale underlying a stay is even stronger in case where the defendant has been indicted, given that a defendant in a charged criminal case will likely invoke his Fifth Amendment rights in the civil case and not participate in the very civil discovery process he seeks to use affirmatively. *See, e.g., SEC v. Calabrigo*, 22 Civ. 3096 (LJL), 2022 WL 4752427, at \*5 (S.D.N.Y. Sept. 30, 2022) (discussing strategic use by a defendant of his Fifth Amendment right in civil proceedings); *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants"). A denial of the Government's requested stay would therefore result in asymmetrical discovery in this case, pursuant to which Komissarov would be able to obtain statements from relevant witnesses through depositions and use other discovery mechanisms such as requests for admission and interrogatories to obtain information from the plaintiffs, while the plaintiffs would be unable to use any of these discovery mechanisms to obtain information from Komissarov (and possibly Clemenson and Dickinson) because of their likely assertion of Fifth Amendment rights. Such asymmetry is both

14

unfair and a circumvention of the criminal discovery rules that govern when criminal defendants are entitled to obtain prior statements of the Government's trial witnesses. *See* 18 U.S.C. § 3500(b) (prior statements of Government witnesses must be made available after the witnesses have testified on direct examination).

Therefore, in order to avoid circumvention of the criminal discovery restrictions, including the provisions that are designed to prevent a defendant from tailoring his testimony and obtaining asymmetrical discovery, and because defendants will not in any way be prejudiced in preparing and defending themselves, this factor weighs in favor of the Government's application

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that its application to intervene and for a complete stay of this matter be granted.


Dated: New York, New York
        September 4, 2025


                            Respectfully submitted,

                            JAY CLAYTON
                            United States Attorney


            By:    _____
                   Justin V. Rodriguez
                   Assistant United States Attorney
                   Telephone: (212) 637-2591

15